LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209
Ryan Berghoff, State Bar No. 308812
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
rberghoff@lexlawgroup.com

Attorneys for Plaintiff
KATHLEEN SMITH

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH, on behalf of herself and all others similarly situated, | Case No. 4:18-cv-06690-HSG |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| KEURIG GREEN MOUNTAIN, INC., | |
| Defendant. | |

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiff Kathleen Smith ("Plaintiff"), on behalf of herself and those similarly situated, based on information, belief and investigation of her counsel, except for information based on personal knowledge, hereby alleges:

## INTRODUCTION

1.      The problems associated with plastic waste management are increasing on a local, national and global scale.  This affects the amount of plastic in the ocean, in freshwater lakes and streams, on land, and in landfills.  Nearly 90% of plastic waste is not recycled, with billions of tons of plastic becoming trash and litter.  As consumers become increasingly aware of the problems associated with plastic waste, they are increasingly susceptible to marketing claims reassuring them that the plastic used to make and package the products that they purchase are recyclable.  Many consumers concerned with the proliferation of plastic waste actively seek to purchase products that are either compostable or recyclable to divert such waste from the ocean and landfills.  Seeking to take advantage of consumers' concerns, defendant Keurig Green Mountain, Inc. ("Defendant") markets and sells plastic single serve coffee pods as recyclable, when the pods cannot in fact be recycled.

2.      This Complaint seeks to remedy Defendant's unlawful, unfair and deceptive business practices with respect to the advertising, marketing and sales of plastic single serve pods that contain coffee and that are labeled as "recyclable" (the "Products").[1] The Products are advertised, marketed and sold as recyclable.  However, even if consumers take the many steps required to place the Products in their recycling bins, they are not in fact recyclable because municipal recycling facilities ("MRFs") are not properly equipped to capture and segregate such small materials, nor can they handle such materials since they are inevitably contaminated with foil and food waste.  Furthermore, even to the extent facilities exist that are capable of segregating the Products from the general waste stream, and then cleaning any contamination in the Products, the Products end up in landfills anyway as there is no market to reuse the Products

---

[1] For example, one popular Product is sold under the brand name K-Cup®.

DOCUMENT PREPARED ON RECYCLED PAPER

or convert them into a material that can be reused or used in manufacturing or assembling another item.

3.     Despite Defendant's marketing and advertising of the Products as recyclable, Defendant knows that the Products typically end up in landfills.  Defendant's representations that the Products are recyclable are material, false, misleading and likely to deceive members of the public.  These representations also violate California's legislatively declared policy against misrepresenting the characteristics of goods and services.

4.     Plaintiff purchased the Products in reliance on Defendant's false representations that the Products are recyclable.  Plaintiff viewed Defendant's false representations on the labels and other marketing materials for the Products.  If Plaintiff had known that the Products were not recyclable, Plaintiff would not have purchased the Products and would have instead sought out single serve pods or other coffee products that are otherwise compostable, recyclable or reusable.  At a minimum, she would not have paid as much as she did if she knew the Products could not be recycled.  Defendant thus breached its express warranty under the California Commercial Code § 2313; violated the California Consumers Legal Remedies Act ("CLRA") by making representations that the Products have characteristics, benefits and qualities which they do not have and by advertising the Products without the intent to sell them as advertised; and violated the Business and Profession Code § 17200 based on fraudulent, unlawful and unfair acts and practices.

5.     Plaintiff and the Class seek an order enjoining Defendant's acts of unfair competition and other unlawful conduct, an award of damages to compensate them for Defendant's acts of unfair competition, false and misleading advertising, and breaches of warranty, and restitution to the individual victims of Defendant's fraudulent, unlawful and unfair acts and practices.

## **PARTIES**

6.     Plaintiff Kathleen Smith is a resident of Lafayette, California.  Plaintiff is concerned about the environment and seeks out products that are compostable, recyclable or reusable so that she can minimize her impact on the environment in general and on the country's

DOCUMENT PREPARED
ON RECYCLED PAPER

1   plastic waste problems in particular.  Therefore, Plaintiff specifically selected the Products in

2   reliance on Defendant's representations that the Products are recyclable.  The false

3   representations are located on the labels and other marketing materials for the Products.  Had

4   Plaintiff known that the Products are not recyclable in Lafayette or anywhere else, she would not

5   have purchased the Products or would not have paid as much as she did for the Products.

6       7.      Defendant Keurig Green Mountain, Inc. is a Delaware corporation with its

7   principal place of business in Burlington, Massachusetts.  Defendant Keurig Green Mountain,

8   Inc. manufactures, distributes and sells the Products in California.

9                           **JURISDICTION AND VENUE**

10      8.      By removing this case to federal court, Defendant has alleged that this Court has

11  jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28

12  U.S.C. § 1332(d)(2).  *See* Notice of Removal, filed Nov. 2, 2018 [ECF Docket No. 1] ("Notice of

13  Removal").

14      9.      This Court has jurisdiction over Defendant because it is a corporation or other

15  entity that has sufficient minimum contacts in California, is a citizen of California, or otherwise

16  intentionally avails itself of the California market either through the distribution, sale or

17  marketing of the Products in the State of California or by having a facility located in California so

18  as to render the exercise of jurisdiction over it by the California courts consistent with traditional

19  notions of fair play and substantial justice.

20      10.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendant is a resident

21  of this District pursuant to 28 U.S.C. § 1391(c), and a substantial part of the events or omissions

22  giving rise to the claim occurred in this District.

23      11.     **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3.5(b))**:  This action arises in

24  Contra Costa County, in that a substantial part of the events which give rise to the claims asserted

25  herein occurred in Contra Costa County.  Pursuant to L.R. 3-2(c), all civil actions which arise in

26  Contra Costa County shall be assigned to the San Francisco Division or the Oakland Division.

27

28

**BACKGROUND FACTS**

12.     In the past decade humans across the globe have produced 8.3 billion metric tons of plastic, most of it in disposable products that end up as trash.  Of the 8.3 billion tons produced, 6.3 billion tons have become plastic waste and only 9% of that has been recycled.  The Environmental Protection Agency estimates that Americans alone disposed of more than 33 million tons of plastic in 2014, most of which was not recycled.  While California has a goal to achieve a 75% recycling rate by 2020, California's recycling rate is actually in decline.  In 2015, California's recycling rate was 50%, dropping to 47% in 2015 and down to 44% in 2017.

13.     The staggering amount of plastic waste accumulating in the environment is accompanied by an array of negative side effects.  For example, plastic debris is frequently ingested by marine animals and other wildlife, which can be both injurious and poisonous.  Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can leach harmful chemicals into ground water that is absorbed by humans and other animals.  Plastic litter on the streets and in and around our parks and beaches also degrades the quality of life for residents and visitors.  More recently, scientists have discovered that plastic waste releases large amounts of methane, a powerful greenhouse gas, as it degrades.  Thus, plastic waste is also thought to be a significant potential cause of global climate change.  Consumers, including Plaintiff, actively seek out products that are compostable, recyclable or reusable to prevent the increase in global waste and to minimize their environmental foot print.

14.     Single serve coffee pods have received extensive criticism for their contribution to the plastic waste crisis.  For instance, on January 7, 2015, an anonymous person posted a YouTube video entitled "Kill the K-Cup," which portrays an apocalyptic scene in which giant alien monsters who are themselves composed of K-Cups® invade a city and fire missile and bullet-like K-Cups® at terrified citizens.   The video concludes with the message "Kill The K-Cup Before It Kills Our Planet," and provides statistics to drive home the point that single serve coffee pods have dire consequences to the environmental health of the planet.  Nearly 1 million people viewed the video, which spawned the popular hashtag #KillTheKCup and the killthekcup.org website.

DOCUMENT PREPARED
ON RECYCLED PAPER

15.     According to online estimates, in 2014 alone over 9.7 billion K-Cups® were produced, enough to circle the globe 12.4 times.  As consumer backlash to single serve coffee pods has increased over the years, even the inventor of K-Cups®, John Sylvan, has publicly stated his regret for inventing them and expressed doubts about whether they could ever be recycled.

16.     The Legislature of the State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs."  *Id*. § 42355(a).

17.     The California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."  Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides").  *Ibid*; *see also* 16 C.F.R. § 260.1, *et seq*. Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).

18.     The Green Guides' definition of "recyclable" is consistent with reasonable consumer expectations.  For instance, the dictionary defines the term "recycle" as: (1) convert (waste) into reusable material, (2) return (material) to a previous stage in a cyclic process, or (3) use again. Oxford Dictionary, Oxford University Press 2018.  Accordingly, reasonable consumers expect that products advertised, marketed, sold, labeled and/or represented as recyclable will be

DOCUMENT PREPARED ON RECYCLED PAPER

collected, separated or otherwise recovered from the waste stream through an established

recycling program for reuse or use in manufacturing or assembling another item.

19.     In an attempt to counter negative publicity regarding the impacts of single serve

coffee pods, and to take advantage of consumers' concerns with respect to the environmental

consequences caused by such products, Defendant advertises, markets and sells the Products as

recyclable.  More specifically, the packaging of Defendant's Products state that consumers can

"Have your cup and recycle it, too," in large green font.  Adjacent to that statement on

Defendant's packaging are instructions for how to recycle, including illustrations with the terms

"PEEL," "EMPTY," and "RECYCLE," accompanied by the chasing arrow symbol that is

commonly used and understood to mean that a product is recyclable.  These claims are uniform,

consistent and prominently displayed on each of the Products' labels.  Following is a

representative example of a Product label:



DOCUMENT PREPARED
ON RECYCLED PAPER

20.     Defendant's marketing, advertising and promotional materials for the Products, including Defendant's website, also uniformly represent that the Products are recyclable.  For instance, Defendant's website advertises the Products as recyclable as follows:



FIRST AMENDED CLASS ACTION COMPLAINT

DOCUMENT PREPARED
ON RECYCLED PAPER



Keurig® Recyclable K-Cup® pods are here and **by the end of 2020, 100% of our K-Cup® pods will be recyclable.**

To learn more about recycling, or the many other ways Keurig is making a difference in the environment, visit KeurigRecycling.com

21.     The claims made by Defendant that the Products are recyclable are uniform, consistent and material.  Because the claims are false and misleading, ordinary consumers, including members of the Class, are likely to be deceived by such representations.

22.     MRFs in the United States, including those in California (and including in particular the facility that handles recycling in Lafayette, California), are not properly equipped to capture materials as small as the Products or to segregate such small items from the general waste stream.  The problem of "smalls" is well-documented and well known in the recycling industry.  This problem is exacerbated because the Products' already small size is further reduced when the Products are compressed into recycling bins and then compacted by recycling collection trucks prior to being delivered to MRFs.  Ultimately, by the time they reach the sorting line of a typical recycling facility, the Products are likely to be crushed, compacted and mangled.  Of course Plaintiff and consumers have no way of discerning the precise size and shape of the Products after consumers place the Products in their recycling bins.

23.     Defendant's recycling instructions require consumers to go through a number of time-consuming steps in order to recycle the Products, including waiting until the Products cool, separating the foil lid from the plastic pod, and removing the pod's contents.  Worse yet, Defendant's instructions exacerbate the deceptiveness of Defendant's representations that the Products are recyclable by ensuring that the Products will not be recycled.  For instance, while

Defendant instructs consumers to "peel [the] lid and dispose," the foil lid on the Products is extraordinarily difficult to remove as the foil sticks to the edge of the plastic cup and there is no extra tab (as one would find on a yogurt container, for instance) to use to peel off the lid.  From a recycling standpoint, the inevitable presence of foil on the Products is contamination that renders the Products impossible or extremely difficult to recycle.

24.     In addition, while Defendant instructs consumers to "Empty" the Product and "Compose or dispose of contents," Defendant also explicitly states that the paper filter attached to the inside of the Products "can remain."  By instructing consumers that they can leave the filter in place, Defendant is ensuring that some coffee grounds will also remain.  In fact, in many of Defendant's advertisements, the Products are placed in the recycling bin with coffee grounds clearly visible, as evidenced by the web page depicted above.  And in some of Defendant's video advertisements, both the coffee grounds and foil are visible in and on the Products as they are placed in the recycling bin.[2]  Thus, following Defendant's instructions inevitably leads to further contamination issues, as the Products will be placed in recycling bins with foil remnants, used coffee grounds and a paper filter inside.  From a recycling standpoint, this contamination renders the Products impossible or extremely difficult to recycle.  The fact that MRFs typically process waste at speeds of 25 to 40 tons per hour makes it even less likely that small, compacted and contaminated single serve coffee pods such as the Products will be collected, separated or otherwise recovered from the waste stream.

25.     Even in the rare instance where the Products can be segregated and cleaned of any contamination, the Products still end up in landfills as there is no market to reuse the Products or convert them into a material that can be reused or used in manufacturing or assembling another item.

26.     Worse yet, by encouraging consumers to place the Products in recycling bins, Defendant is contaminating the recycling stream with unrecyclable materials that will hinder the ability of recycling facilities to properly recycle items that are legitimately recyclable.  And the

---

[2] https://www.keurig.com/recyclable (last visited Dec. 20, 2018).

DOCUMENT PREPARED
ON RECYCLED PAPER

contamination on the Products themselves is also likely to contaminate other materials that would otherwise be recyclable.  Environmentally motivated consumers who purchase the Products in the belief that they are recyclable are thus unwittingly hindering recycling efforts.  Moreover, Plaintiff and consumers have no way of knowing whether the Products are actually segregated from the general waste stream, cleaned of contamination, or reused or converted into a material that can be reused or used in manufacturing or assembling another item.

27.  Most consumers believe that if their Products are accepted into a recycling program, then those Products are recyclable.  And consumers who spend the time and effort to follow Defendant's cumbersome recycling instructions do not expect that the Products will end up in a landfill.  However, the Products will end up in a landfill as they cannot be recycled by MRFs in the United States, including those in California (and including in particular the facility that handles recycling in Lafayette, California).  Defendant's representations that the Products are recyclable are therefore per se deceptive under the Green Guides and under California law.

28.  Many recycling facilities in California and elsewhere have refuted Defendant's recycling claims or otherwise instructed consumers to place single serve coffee pods, including those labeled as recyclable like the Products, in the trash.  For instance, the following California localities or waste management companies have explicitly stated that single serve coffee pods, including those labeled as recyclable like the Products, should be placed in the trash:

a. Berkeley
b. Cal-Waste Recovery Systems (localities in Sacramento, Calaveras, Alpine and San Joaquin Counties)
c. El Dorado County
d. Eureka
e. Lake County
f. Lincoln
g. Los Angeles
h. Mission Country Disposal (Los Osos, Cayucos, Cambria and Harmony)
i. Monterey County
j. Mill Valley
k. Morro Bay
l. Paradise
m. Redding

n.  Sacramento
o.  San Luis Obispo County
p.  South County Sanitary (Avila Beach, Shell Beach, Pismo Beach, Grover Beach, Oceano, Arroyo Grando and Nipomo)
q.  Shasta County
r.  Tri-CED Community Recycling (Hayward and Union City)
s.  Truckee

29.     By way of example, San Luis Obispo County, Lake County, the Town of Truckee, and the City of Lincoln have all stated, "Coffee Capsules [Are] Never Recyclable Curbside." These jurisdictions go on to explain, "Coffee capsule creators often tout their products as 'recyclable.'  In theory, the plastic portion of a coffee capsule is (not the lid or filter).  In practice, however, the cups are actually too small to be captured and recycled in recycling facilities where objects are separated based on size and density."[3]

30.     The Green Guides are clear: "if any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive.  An item that is made from recyclable material, but because of its shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable." 16 C.F.R. § 260.12(d).  Here, the Products are not recyclable due to their small size, their contamination with foil, filter paper and food waste, and the lack of a market to recycle them.  Defendant's marketing of the Products as recyclable is thus a direct violation of the Green Guides.

31.     Because the Products are not recyclable, Defendant cannot make any recycling claims as to the Products.  However, at a minimum, Defendant is required to clearly and prominently qualify recyclable claims to avoid deception about the availability of recycling programs and collection sites to consumers if consumers do not have access to facilities that can recycle their products.  16 C.F.R. § 260.12(b).  A marketer may only make an unqualified recyclable claim if a substantial majority of consumers or communities have access to recycling

---

[3] https://www.iwma.com/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://lakecountyrecycles.com/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://www.keeptruckeegreen.org/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://www.recyclinginlincoln.com/guide/coffee-capsules/ (last visited Dec. 19, 2018).

DOCUMENT PREPARED
ON RECYCLED PAPER

facilities capable of recycling the items.[4]  *Id*. § 260.12(b)(1).  Because a substantial majority of consumers do not have access to recycling facilities capable of recycling the Products, Defendant must at a minimum qualify any recyclability claim about the Products.

32.    According to the Green Guides, marketers may qualify recyclable claims by stating the percentage of consumers or communities that have access to facilities that recycle the item. 16 C.F.R. § 260.12(b)(2).  In the alternative, marketers may use qualifications that vary in strength depending on facility availability.  *Ibid*.  Thus, the strength of the qualification depends on the level of access to an appropriate facility.  For example, if recycling facilities are available to slightly less than a substantial majority of consumers or communities where the item is sold, the Green Guides recommend that a marketer should qualify the recyclable claim by stating "this product may not be recyclable in your area," or "recycling facilities for this product may not exist in your area." *Ibid*.  If recycling facilities are available only to a few consumers, the Green Guides recommend a marketer to qualify its recyclable claim by stating "this product is recyclable only in a few communities that have appropriate recycling facilities." *Ibid*.  Under these guidelines, to the extent Defendant can make any recycling claim at all for the Products, Defendant must provide an unequivocally strong qualification for its recyclability claim because few, if any, consumers have access to recycling facilities capable of recycling the Products.

33.    Defendant's labeling for the Products states: "Check locally to recycle empty cup." This statement does not comply with the Green Guides.  The Green Guides specifically state that this type of qualification is deceptive.  In Green Guide Example 4, the qualification "[c]heck to see if recycling facilities exist in your area" is considered deceptive because it does not adequately disclose the limited availability of recycling programs.  16 C.F.R. § 260.12, Example 4.  Defendant's qualification is nearly identical to the deceptive statement identified in Example 4 because it advises the consumer to check for the availability of recycling programs, rather than inform the consumer of the extremely limited chance that the Products will ultimately be recycled.  In fact, Defendant's qualification exacerbates the misrepresentation that the Products

---

[4] A "substantial majority" means at least 60 percent.  16 C.F.R. § 260.12(b)(1).

DOCUMENT PREPARED ON RECYCLED PAPER

1   are recyclable by suggesting that the Products are recyclable everywhere, and that a consumer

2   need only check locally to find out how to recycle the Products.

3       34.     Worse yet, even if a consumer followed Defendant's directive to "[c]heck locally,"

4   many recycling facilities (which are often operated by private companies) are unwilling to answer

5   detailed consumer inquiries about their recycling capabilities.

6       35.     Not only does this qualification violate the Green Guides, but it is also not likely to

7   be understood by a reasonable consumer.[5]  Plaintiff and most other consumers believe that if their

8   municipality offers recycling services, then all products marketed as "recyclable" can be recycled.

9   Thus, most consumers will place the Products in the recycling bin under the false impression that

10  the Products can be recycled, when the Products cannot in fact be recycled in their area.  In

11  addition, most consumers will follow Defendant's cumbersome recycling instructions despite the

12  fact that the Products cannot be recycled and Defendant's instructions are misleading and

13  incomplete.  Defendant's labeling, advertising and marketing claims that the Products are

14  recyclable are therefore likely to deceive a reasonable consumer.

15      36.     Defendant has buried other disclaimers about the recyclability of the Products on

16  its website.  For instance, Defendant's website has stated at some times, "[w]e recommend

17  checking with your local municipality or waste hauler to determine if your community recycles

18  #5 plastic."  *See* Defendant's Request for Judicial Notice In Support of Motion to Dismiss, Exh. 2

19  [ECF No. 19].  This disclaimer is problematic since, even if a local recycling facility was willing

20  to answer such an inquiry, and even if the response was favorable, this does not mean that the

21  facility is capable of recycling the Products due to their size, contamination, and the lack of a

22  market for them to be recycled.  In fact, Defendant's webpage for Frequently Asked Questions

23  ("FAQ") asks whether the new recyclable K-Cup® are recyclable everywhere, to which the

24  website responds "[t]he new recyclable K-Cup® pods, which can be easily identified through our

25  on-the-box packaging and with a #5 recycling symbol on the bottom of the pod itself, can be

26

27  _____
    [5] The examples in the Green Guides are specifically provided by the Federal Trade Commission
    as its "views on how reasonable consumers likely interpret certain claims."  16 C.F.R. § 260.1(d).

28

recycled in communities that accept #5 plastics.  Polypropylene (#5) is currently accepted for recycling in approximately 61% of communities in the U.S. and 93% of communities in Canada. Please check with your local community to confirm."[6]  Defendant's FAQ is misleading for the same reason its website disclaimer is misleading: it indicates to a consumer that the Products are recyclable solely because they are made of #5 plastic, regardless of their size, contamination, and lack of market for them to be recycled, which is not the case.

37.     Plaintiff places a high priority on environmental concerns in general, and on the negative consequences regarding the proliferation of plastic waste in particular.  In shopping for coffee products for her home, Plaintiff was particularly concerned about the recyclability of single serve pods that contain coffee.  Based on the labeling and advertising of Defendant's Products, Plaintiff believed that the Products are recyclable in all locations, including Lafayette, California, where Plaintiff resides.  Defendant's representations that the Products are recyclable are thus material to Plaintiff.

38.     Plaintiff purchased the Products numerous times over the course of the past couple years directly from Defendant's website believing the recycling claims both on the Products' packaging as well as the website.  For instance, on October 1, 2016 and November 25, 2016, Plaintiff purchased from Defendant's website Green Mountain Coffee Roasters Breakfast Blend Decaf, K-Cup Box 24 ct., labeled as recyclable.  Plaintiff purchased the Products in reliance on Defendant's representations that the Products are recyclable, when they are not in fact recyclable in Lafayette, California or anywhere else.  Plaintiff followed Defendant's instructions on the labeling to recycle the Products, but was not aware that the Products would end up in a landfill anyway.  Had Plaintiff and the other members of the Class known that the Products are not recyclable — contrary to Defendant's representations — they would not have purchased the Products or would not have paid as much as they did for the Products.

39.     Plaintiff continues to desire to purchase recyclable single serve coffee pods. Plaintiff would purchase single serve coffee pods manufactured by Defendant in the future if

---

[6] http://www.keurigrecycling.com/faq/ (last visited Dec. 20, 2018).

DOCUMENT PREPARED
ON RECYCLED PAPER

Defendant's representations that the Products are recyclable are true.  Plaintiff would like to buy recyclable single serve coffee pods from Defendant in the future, but is unable to determine with confidence, based on the labeling and other marketing materials, whether the Products are truly recyclable.  Plaintiff would not have purchased the Products, or would not have paid as much as she did for the Products, if Defendant had disclosed that the Products were not recyclable.

40.     Defendant is aware that the Products are not recyclable, yet Defendant has not undertaken any effort to notify its end use customers of the problem.  Defendant's failure to disclose that the Products are not recyclable is an omission of fact that is material to Plaintiff and the other members of the Class.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of herself and the following Class of similarly situated individuals:

> All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations period (the "Class").  Specifically excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

42.     Plaintiff is unable to state the precise number of potential members of the proposed Class because that information is in the possession of Defendant.  However, the number of Class members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1).  The exact size of the proposed Class and the identity of its members will be readily ascertainable from the business records of Defendant and Defendant's retailers as well as Class members' own

DOCUMENT PREPARED ON RECYCLED PAPER

records and evidence.  In its Notice of Removal, Defendant avers that the proposed Class may have well over 100 members.  *See* Notice of Removal ¶ 15.  Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable.  The disposition of the claims of the members of the Class in this class action will substantially benefit both the parties and the Court.

43.     There is a community of interest among the members of the proposed Class in that there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2), including whether Defendant's labels, advertisements and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Class to believe the Products are recyclable when they are not.  Proof of a common set of facts will establish the liability of Defendant and the right of each member of the Class to relief.

44.     Plaintiff asserts claims that are typical of the claims of the entire Class for purposes of Rule 23(a)(3).  Plaintiff and all members of the Class have been subjected to the same wrongful conduct because they have purchased the Products that are labeled and sold as single serve coffee pods that are recyclable, when they are not in fact recyclable.

45.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in complex litigation of this nature to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

46.     Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting the Class as a whole.  Defendant utilizes advertising campaigns that include uniform misrepresentations that misled Plaintiff and the other members of the Class.

47.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  These common legal and factual questions, which do not vary among

Class members and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

    a.  whether Defendant advertises and markets the Products by representing that the Products are recyclable;

    b.  whether the Products are recyclable as advertised and labeled by Defendant;

    c.  whether Defendant's marketing, advertising and labeling claims regarding the recyclability of the Products are likely to deceive a reasonable consumer;

    d.  whether Defendant knows the Products cannot be recycled;

    e.  whether Defendant's recycling instructions are adequate;

    f.  whether Defendant's representations regarding the recyclability of the Products are likely to be read and understood by a reasonable consumer;

    g.  whether Defendant's representations regarding the recyclability of the Products are in compliance with the Green Guides;

    h.  whether Defendant's claims regarding the recyclability of the Products would be material to a reasonable consumer of the Products;

    i.  whether Defendant's conduct in advertising, marketing and labeling of the Products constitutes a violation of California consumer protection laws;

    j.  whether Defendant's representations concerning the Products constitute express warranties with regard to the Products;

    k.  whether Defendant breached the express warranties it made with regard to the Products;

    l.  whether Defendant's representations regarding recycling constitute representations that the Products have characteristics, benefits or qualities which they do not have;

    m.  whether Defendant advertised its Products without an intent to sell them as advertised;

    n.  whether Defendant has been unjustly enriched from the sale of the Products;

    o.  whether punitive damages are warranted for Defendant's conduct and, if so, an

1    appropriate amount of such damages; and

2    p.   whether Plaintiff and the Class members are entitled to injunctive, equitable

3    and monetary relief.

4    48.    Defendant utilizes marketing, advertisements and labeling that include uniform

5    misrepresentations that misled Plaintiff and the other members of the Class.  Defendant's claims

6    regarding the recyclability of the Products are one of the most prominent features of Defendant's

7    marketing, advertising and labeling of the Products.  Nonetheless, the Products are not in fact

8    recyclable.  Thus, there is a well-defined community of interest in the questions of law and fact

9    involved in this action and affecting the parties.

10    49.    Proceeding as a class action provides substantial benefits to both the parties and

11    the Court because this is the most efficient method for the fair and efficient adjudication of the

12    controversy.  Class members have suffered and will suffer irreparable harm and damages as a

13    result of Defendant's wrongful conduct.  Because of the nature of the individual Class members'

14    claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for

15    the wrongs complained of herein, and a representative class action is therefore appropriate, the

16    superior method of proceeding, and essential to the interests of justice insofar as the resolution of

17    Class members' claims are concerned.  Absent a representative class action, members of the Class

18    would continue to suffer losses for which they would have no remedy, and Defendant would

19    unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by

20    individual members of the Class, the resulting multiplicity of lawsuits would cause undue

21    hardship, burden and expense for the Court and the litigants, as well as create a risk of

22    inconsistent rulings which might be dispositive of the interests of the other members of the Class

23    who are not parties to the adjudications or may substantially impede their ability to protect their

24    interests.

25    **FIRST CAUSE OF ACTION**

26    **(Plaintiff, on Behalf of Herself and the Class, Alleges Breach of Express Warranty)**

27    50.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 49 of

28    this Complaint.

51.     The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

52.     As detailed above, Defendant marketed and sold the Products as recyclable. Defendant's representations that the Products are recyclable constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

53.     Defendant's representations regarding the recyclability of the Products are uniformly made in the Products' advertising, internet sites and other marketing materials, and on the Products' labeling and packaging materials, and are thus part of the basis of the bargain between Defendant and purchasers of the Products.

54.     California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code § 2313).

55.     At the time that Defendant designed, manufactured, sold and distributed the Products, Defendant knew that the Products were not recyclable.

56.     As set forth in the paragraphs above, the Products are not recyclable and thus do not conform to Defendant's express representations to the contrary.  Defendant has thus breached its express warranties concerning the Products.

57.     On July 23, 2018, Plaintiff sent a pre-suit demand letter to Defendant notifying Defendant that the Products are not recyclable.  Defendant therefore has actual and constructive knowledge that the Products are not recyclable and were thus not sold as marketed and advertised.

58.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and Class members have suffered damages.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

1

## SECOND CAUSE OF ACTION

2

**(Plaintiff, on Behalf of Herself and the Class, Alleges Violations of the
California Consumers Legal Remedies Act – Injunctive Relief and Damages)**

3

4

59.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 58 of

this Complaint.

5

6

60.     Plaintiff and the Class members purchased the Products for personal, family or

household purposes.

7

8

61.     The acts and practices of Defendant as described above were intended to deceive

9

Plaintiff and the Class members as described herein and have resulted and will result in damages

10

to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in at

least the following respects:

11

12

a.     In violation of Section 1770(a)(5) of the CLRA, Defendant's acts and

13

practices constitute representations that the Products have characteristics, uses or benefits

14

which they do not;

15

b.     In violation of Section 1770(a)(7) of the CLRA, Defendant's acts and

16

practices constitute representations that the Products are of a particular quality, which they

17

are not; and

18

c.     In violation of Section 1770(a)(9) of the CLRA, Defendant's acts and

19

practices constitute the advertisement of the Products without the intent to sell them as

20

advertised.

21

62.     By reason of the foregoing, Plaintiff and the Class members have suffered

damages.

22

23

63.     By committing the acts alleged above, Defendant violated the CLRA.

24

64.     In compliance with the provisions of California Civil Code § 1782, on July 23,

25

2018, Plaintiff provided written notice to Defendant of her intention to seek damages under

26

California Civil Code § 1750, *et seq.*, and requested that Defendant offer an appropriate

consideration or other remedy to all affected consumers.  As of the date of this complaint,

27

28

1   Defendant has not done so.  Accordingly, Plaintiff seeks damages pursuant to California Civil

2   Code §§ 1780(a)(1) and 1781(a).

3        65.    Pursuant to California Civil Code § 1780(a)(2) Plaintiff and the Class members are

4   entitled to an order enjoining the above-described wrongful acts and practices of Defendant,

5   providing actual and punitive damages and restitution to Plaintiff and the Class members, and

6   ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and

7   proper by the Court under California Civil Code § 1780.

8        Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

9                          **THIRD CAUSE OF ACTION**

10
11   **(Plaintiff, on Behalf of Herself, the Class and the General Public,
    Alleges Violations of California Business & Professions Code § 17200,
    *et seq*. Based on Fraudulent Acts and Practices)**

12

13        66.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 65 of

14   this Complaint.

15        67.    Under Business & Professions Code § 17200, any business act or practice that is

16   likely to deceive members of the public constitutes a fraudulent business act or practice.

17        68.    Defendant has engaged and continues to engage in conduct that is likely to deceive

18   members of the public.  This conduct includes, but is not limited to, representing that the Products

19   are recyclable.

20        69.    Plaintiff purchased the Products in reliance on Defendant's representations that the

21   Products are recyclable.  Defendant's claims that the Products are recyclable are material, untrue

22   and misleading.  These recyclable claims are prominent on all of Defendant's marketing,

23   advertising and labeling materials, even though Defendant is aware that the claims are false and

24   misleading.  Defendant's claims are thus likely to deceive both Plaintiff and a reasonable

25   consumer.  Plaintiff would not have purchased the Products, or would not have paid as much for

26   the Products, but for Defendant's false representations that the Products are recyclable.  Plaintiff

27   has thus suffered injury in fact and lost money or property as a direct result of Defendant's

28   misrepresentations and material omissions.

70.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

71.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

**FOURTH CAUSE OF ACTION**

**(Plaintiff, on Behalf of Herself, the Class and the General Public,
Alleges Violations of California Business & Professions Code § 17200, *et seq*.
Based on Commission of Unlawful Acts)**

72.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 71 of this Complaint.

73.     The violation of any law constitutes an unlawful business practice under Business & Professions Code § 17200.

74.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein were intended to or did result in the sale of the Products in violation of the CLRA, California Civil Code §1750, *et seq*., and specifically California Civil Code § 1770(a)(5), § 1770(a)(7) and § 1770(a)(9).

75.     Defendant's conduct also violates Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce.  By misrepresenting that the Products are recyclable, Defendant is violating Section 5 of the FTC Act.

76.     Defendant's conduct also violates California Business & Professions Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Products are recyclable, Defendant is violating Business & Professions Code § 17500.

77.     Defendant's conduct also violates California Business & Professions Code § 17580.5, which makes it unlawful for any person to make any untruthful, deceptive or misleading environmental marketing claim.  Pursuant to § 17580.5, the term "environmental marketing claim" includes any claim contained in the Green Guides.  16 C.F.R. § 260.1, *et seq*.  Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  By misrepresenting that the Products are recyclable as described above, Defendant is violating Business & Professions Code § 17580.5.

78.     Defendant's conduct is also a breach of warranty.  Defendant's representations that the Products are recyclable constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Defendant and purchasers of the Products.  Because those representations are material, false and misleading, Defendant has breached its express warranty as to the Products and has violated California Commercial Code § 2313.

79.     By violating the CLRA, the FTC Act, Business & Professions Code §§ 17500 and 17580.5, and California Commercial Code § 2313, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.  Plaintiff would not have purchased the Products, or would not have paid as much for Products, but for Defendant's unlawful business practices.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

80.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

**FIFTH CAUSE OF ACTION**

**(Plaintiff, on Behalf of Herself, the Class and the General Public,
Alleges Violations of California Business & Professions Code § 17200, *et seq*.
Based on Unfair Acts and Practices)**

81.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 80 of this Complaint.

82.    Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

83.    Defendant has engaged and continues to engage in conduct which is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.  This conduct includes, but is not limited to, advertising and marketing the Products as recyclable when they are not.  By taking advantage of consumers concerned about the environmental impacts of plastic waste, Defendant's conduct, as described herein, far outweighs the utility, if any, of such conduct.

84.    Defendant has engaged and continues to engage in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits and quality of goods for sale.  Defendant has further engaged, and continues to engage, in conduct that violates the legislatively declared policy of Cal. Pub. Res. Code § 42355.5 against deceiving or misleading consumers about the environmental impact of plastic products.

85.    Defendant's conduct also violates the policy of the Green Guides.  The Green Guides mandate that "[a] product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  It further states that "[a]n item that is made from recyclable material, but because of its shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable."  16 C.F.R. § 260.12(d).  As explained above, the Products cannot be recycled.  Nonetheless, some recycling facilities may accept the Products even though they must eventually send the Products to a landfill.  It is unfair for Defendant to make a recyclable claim

DOCUMENT PREPARED
ON RECYCLED PAPER

1   based on the fact that some recycling facilities may accept the Products, despite the recycling

2   facilities' inability to actually recycle the Products.  Moreover, consumers believe that products

3   are recyclable when they are accepted by a recycling program, even if the recycling facilities end

4   up sending the products to a landfill.  Taking advantage of consumer perception of recycling

5   programs violates the policy of the Green Guides.

6          86.    Defendant's conduct, including failing to disclose that the Products will end up in

7   landfills and not be recycled, is substantially injurious to consumers.  Such conduct has caused

8   and continues to cause substantial injury to consumers because consumers would not have

9   purchased the Products but for Defendant's representations that the Products are

10  recyclable.  Consumers are concerned about environmental issues in general and plastic waste in

11  particular and Defendant's representations are therefore material to such consumers.  Misleading

12  consumers — and instructing them to follow cumbersome instructions in order to recycle the

13  Products even though the Products will end up in a landfill despite those efforts — causes injury

14  to such consumers that is not outweighed by any countervailing benefits to consumers or

15  competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.

16  Defendant gains an unfair advantage over its competitors, whose advertising must comply with

17  the CLRA, Cal. Pub. Res. Code § 42355.5, the FTC Act, Cal. Business & Professions Code §

18  17508, and the Green Guides.  Since consumers reasonably rely on Defendant's representations

19  of the Products and injury results from ordinary use of the Products, consumers could not have

20  reasonably avoided such injury.

21         87.    Although Defendant knows that the Products are not ultimately recycled,

22  Defendant failed to disclose that fact to Plaintiff and the Class.

23         88.    By committing the acts alleged above, Defendant has engaged in unfair business

24  acts and practices which constitute unfair competition within the meaning of California Business

25  & Professions Code § 17200.

26         89.    An action for injunctive relief and restitution is specifically authorized under

27  California Business & Professions Code § 17203.

28

90.     Plaintiff would not have purchased the Products, or would not have paid as much for Products, but for Defendant's unfair business practices.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

## SIXTH CAUSE OF ACTION

### (Plaintiff, on Behalf of Herself and the Class, Alleges Unjust Enrichment)

91.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 90 of this Complaint.

92.     Plaintiff and the Class members conferred benefits on Defendant by purchasing the Products.

93.     Defendant has knowledge of such benefits.

94.     Defendant voluntarily accepted and retained the benefits conferred.

95.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

96.     Retention of that money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented through its labeling, advertising and marketing materials that the Products are recyclable, when the Products are not in fact recyclable.

97.     These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the Products are not recyclable.

98.     Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendant ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.

99.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.    That the Court declare this a class action;

B.    That the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

C.    That the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits and quality Defendant has claimed;

D.    That the Court order Defendant to cease and refrain from marketing and promotion of the Products that state or imply that the Products are recyclable;

E.    That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

F.    That the Court order Defendant to notify each and every Class member of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and damages from Defendant;

G.    That the Court order Defendant to pay restitution to restore all Class members all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising, plus pre- and post-judgment interest thereon;

H.    That the Court order Defendant to disgorge all money wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

I.    That the Court award damages to Plaintiff and the Class to compensate them for the conduct alleged in this Complaint;

J.    That the Court award punitive damages pursuant to California Civil Code § 1780(a)(4);

DOCUMENT PREPARED ON RECYCLED PAPER

FIRST AMENDED CLASS ACTION COMPLAINT

1    K.    That the Court grant Plaintiff her reasonable attorneys' fees and costs of suit

2    pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the

3    common fund doctrine, or any other appropriate legal theory; and

4    L.    That the Court grant such other and further relief as may be just and proper.

5                                **JURY DEMAND**

6    Plaintiff demands a trial by jury on all causes of action so triable.

7

8    Dated:    December 28, 2018                Respectfully submitted,

9                                              LEXINGTON LAW GROUP

10

11                                          _/s/    Howard Hirsch_

12                                          Howard Hirsch (State Bar No. 213209)
                                            Ryan Berghoff (State Bar No. 308812)
13                                          LEXINGTON LAW GROUP
                                            503 Divisadero Street
14                                          San Francisco, CA 94117
                                            Telephone: (415) 913-7800
15                                          Facsimile: (415) 759-4112
                                            hhirsch@lexlawgroup.com
16                                          rbergoff@lexlawgroup.com

17
                                            Attorneys for Plaintiff
18                                          KATHLEEN SMITH

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2        I, Howard Hirsch, an attorney, hereby certify that on December 28, 2018, I caused a

3 complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF

4 notification system, which will serve electronically to all participants in this case.

5

6                              */s/   Howard Hirsch*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT – Case No. 4:18-cv-06690-HSG