KENT J. SCHMIDT (SBN 195969)
schmidt.kent@dorsey.com
NAVDEEP K. SINGH (SBN 284486)
singh.navdeep@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

CREIGHTON R. MAGID (*admitted pro hac vice*)
magid.chip@dorsey.com
DORSEY & WHITNEY LLP
1401 New York Avenue NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 442-3555
Facsimile:  (202) 442-3199

Attorneys for Defendant KEURIG
GREEN MOUNTAIN, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:18-cv-06690-HSG<br>Assigned to: Hon. Haywood S. Gilliam, Jr.<br><br>**DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:            March 21, 2019<br>Time:           2:00 p.m.<br>Courtroom:   2, 4th Floor<br><br>FAC filed:  December 28, 2018<br>Trial Date:  None Set |

/ / /

/ / /

---

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    FACTS ..............................................................................................................3

III.   ARGUMENT .....................................................................................................6

     A.    The Pleading Standard Applicable to this FAC .............................................6

     B.    Plaintiff Lacks Standing to Pursue the Requested Relief. ...............................7

          1.    Plaintiff Has Not Made Plausible Allegations of Injury-in-Fact. ........................7

          2.    Plaintiff Has No Standing to Pursue Injunctive Relief. .....................................9

     C.    Plaintiff Fails to State Any Actionable Claim Because the Labeling is Entirely Truthful and Consistent With the Green Guides.........................................11

     D.    The CLRA Claim and "Unfair" and "Fraudulent" Prongs of the UCL Claim Fail the Reasonable Consumer Test. ..................................................13

          1.    *Claims Pursuant to Consumer Protection Statutes Must Be Independently Actionable Separate and Apart from Section 17580.5 and the Green Guides.* ................................................................................13

          2.    *Plaintiff's CLRA and UCL Claim Fail under the Reasonable Consumer Standard.* ...................................................................................14

     E.    Keurig's Qualified Statement of Recyclability Does Not Support an Express Warranty Claim..........................................................................16

     F.    Plaintiff Fails to State an Actionable Claim for Unjust Enrichment.............................16

     G.    Applying the EMCA to Keurig's Recyclability Claims Would Infringe Keurig's First Amendment Free Speech Rights. ..........................................17

     H.    The Class Allegations Should Be Stricken. ..................................................21

IV.    CONCLUSION................................................................................................23

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Acedo v. DMAX, Ltd.*, No. 15-cv-02443, 2015 WL 12696176, 2015 U.S. Dist. LEXIS
192128 (C.D. Cal. Nov. 13, 2015) ..................................................................16

*American Beverage Ass'n. See Nat'l Ass'n of Wheat Growers v. Zeise*, 2018 U.S. Dist.
LEXIS 152283 (E.D. Cal. Sept. 6, 2018) ..................................................18

*American Beverage Association v. City and County of San Francisco*, 871 F.3d 884 (9th
Cir. 2017) ........................................................................................18

*American Western Door & Trim v. Arch Specialty Ins. Co.*, No. 15-cv-00153, 2015 WL
1266787, 2015 U.S. Dist. LEXIS 34589 (C.D. Cal. March 18, 2015) ...............23

*Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133 (S.D. Cal. 2016) ...................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................6, 8, 12

*Ass'n National Advertisers v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ..........................19

*Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-cv-1804, 2016 WL 4595947, 2016 U.S.
Dist. LEXIS 122688 (S.D. Cal. Jan. 26, 2016) ..........................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................6

*Browning v. Unilever United States, Inc.*, 2017 U.S. Dist. LEXIS 220294 (C.D. Cal. April
26, 2017) ........................................................................................17

*Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468 (9th Cir. 2017) ..............................17

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) ...........................19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...........................................10, 11

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) ...................................23

*CTIA-The Wireless Ass'n v. City of Berkeley*, 138 S. Ct. 2708 (2018) ..........................18

*CTIA-The Wireless Ass'n v. City of Berkeley*, 2018 U.S. App. LEXIS 23944 (9th Cir. Aug.
23, 2018) ........................................................................................18

*CTIA-The Wireless Association v. City of Berkeley*, 854 F.3d 1105 (9th Cir. 2017).........................18

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).........................7, 10, 11

*Davis v. HSBC Bank*, 691 F.3d 1152 (9th Cir. 2012) ...........................................7

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ........................................................15

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ...............................................................15

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. App'x 561 (9th Cir. 2008) ...................15

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 190 Cal. Rptr. 3d 599, 353
    P.3d 319 (2015) ................................................................................................................17

*Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) .....................................................13, 14

*Hovsepian v. Apple, Inc.*, No. 08-cv-5788, 2009 WL 5069144, 2009 U.S. Dist. LEXIS
    117562 (N.D. Cal. Dec. 17, 2009) ...................................................................................22

*In re Nexus 6p Prods. Liab. Litig.*, No. 17-cv-02185, 2017 WL 3581188, 2017 U.S. Dist.
    LEXIS 132698 (N.D. Cal. Aug. 18, 2017) .......................................................................16

*Italian Colors Rest. v. Becerra*, 878 F. 3d 1165 (9th Cir. 2018) .............................................17

*Kamm v. Cal. City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) ....................................................22

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .........................................................................20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......................................................6

*Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985 ....................................................................16

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ..............................................14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................................7, 8

*Manchouck v. Modelez Int'l, Inc.*, No. 13-cv-02148, 2013 WL 5400285, 2013 U.S. Dist.
    LEXIS 13887  (N.D. Cal. Sept. 26, 2013) ...........................................................................6

*Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013) ..........................................22

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................................................8

*National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ............18, 19, 20, 21

*Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018) ......................18

*Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ..........................................22

*Pinon v. Tristar Prods., Inc.*, 2016 U.S. Dist. LEXIS 118611 (E.D. Cal. Sept. 1, 2016) ........................9

*Rasmussen v. Apple, Inc.* 27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...........................................22

*Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct.
    25, 2012) ...........................................................................................................................6

*Riley v. National Federation of Blind of N.C., Inc.*, 487 U. S. 781 (1988).............................................19

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ...............................................................22

*Serova v. Sony Music Entm't*, 26 Cal. App. 5th 759 (2018)....................................................................18

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ................................................................8

*Stuart v. Cadbury Adams USA, LLC*, 548 F. App'x 689 (9th Cir. 2011) ................................................15

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l, Inc.*, 83 F. Supp. 3d 855 (N.D. Cal. 2015)......16

*U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (1991) ..........................................16

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ................................................22

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976).............20

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................................................14

*Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287 (N.D. Ill. 2014)...................................................23

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..............................................................6

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)...19, 20, 21

**Statutes**

16 C.F.R. § 260.12(b)(1)..........................................................................................................................12

16 C.F.R. § 260.12(b)(2)..........................................................................................................................21

16 C.F.R. § 260.12(a).................................................................................................................................2

16 C.F.R. § 260.12(b) .....................................................................................................................2, 12, 19

Cal. Bus. & Prof. Code § 17508.5 ...........................................................................................................19

Cal. Comm. Code § 2316(1) ....................................................................................................................16

**Rules**

Fed. R. Civ. P. 12(f) .......................................................................................................................v, 21, 22

Fed. R. Civ. P. 23 .....................................................................................................................................21

Fed. R. Civ. P. 23(b)(3).............................................................................................................................22

Fed. R. Civ. P. 8(a)(2) ................................................................................................................................6

Rule 12(b)(6) ...............................................................................................................................................v

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**TO THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 21, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, 4th Floor, of the above-entitled Court, located at the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Keurig Green Mountain, Inc. ("Defendant" or "Keurig") will and hereby does move this Court for an Order dismissing the First Amended Class Action Complaint ("FAC") filed by Plaintiff Kathleen Smith ("Plaintiff") in the above-captioned action, in its entirety with prejudice.

This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Keurig seeks dismissal of the FAC, with prejudice, on the grounds that the FAC fails to state a claim against Keurig upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  In the alternative, Keurig moves to strike the class allegations of the FAC pursuant to Fed. R. Civ. P. 12(f).

This Motion is based upon the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the files and evidence in this case, and such evidence and argument as may be proffered at the hearing of the Motion.

Respectfully submitted,

DATED:  January 28, 2019        **DORSEY & WHITNEY LLP**


By:   _/s/ Kent J. Schmidt_____
     KENT J. SCHMIDT
     NAVDEEP K. SINGH
     CREIGHTON R. MAGID
     Attorneys for Defendant KEURIG GREEN
     MOUNTAIN, INC.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.        <u>INTRODUCTION</u>

Plaintiff Kathleen Smith ("Plaintiff") filed a putative class action complaint on September 28, 2018, alleging that defendant Keurig Green Mountain, Inc. ("Keurig") deceived her and similarly-situated California consumers by labeling Keurig's single-serve coffee pods (the "Recyclable Pods") as recyclable, with the stated qualification that, because of varying capabilities of local recycling facilities, the Recyclable Pods "are not recycled in all communities."  (The Recyclable Pods' product advertising and labeling further direct consumers to "check locally" to determine whether their local recycling facility accepts and recycles Recyclable Pods.)

Keurig moved to dismiss the Complaint, noting, among other things, that Plaintiff had alleged, without substantiation or reference to any study, that "the majority of municipal recycling facilities in the United States" were "not properly equipped" to recycle "the Products" – the Complaint did not distinguish between Keurig's original single serving coffee pods and its Recyclable Pods – yet made no allegations regarding the recyclability of the Recyclable Pods in *California*, or in Lafayette, California, where Plaintiff resides.  Motion to Dismiss (Dkt. 18) at 4, 6.  Keurig also pointed out that although Plaintiff had alleged that "most" of America's "plastic waste" is not recycled, the Complaint did not contain any allegations specifically concerning the recycling rates for #5 plastic (polypropylene), of which the Recyclable Pods are comprised.  *Id.* at 4.  Keurig's motion also pointed out that Plaintiff had failed to allege when and where she allegedly purchased the Recyclable Pods and had failed to allege any harm, as Keurig's Recyclable Pods were priced the same as Keurig's original single serving coffee pods.

To remedy those deficiencies, Plaintiff has filed a FAC that asserts a cause of action for "unjust enrichment," claims that Plaintiff purchased Recyclable Pods "on October 1, 2016 and November 25, 2016," contains the unsupported assertion that the Recyclable Pods cannot be recycled by "the facility that handles recycling in Lafayette, California," and includes a list of California communities that Plaintiff asserts will not accept "single serve coffee pods" for recycling – while conveniently omitting any mention of whether those communities have specifically addressed the Recyclable Pods, as opposed to single serving coffee pods generally.

Despite Plaintiff's attempt to remedy some of the more glaring omissions in her original Complaint, the FAC still fails to state an actionable claim and still fails to set forth any bases for standing – both generally and specifically with respect to Plaintiff's effort to seek injunctive relief.

The gravamen of Plaintiff's FAC is the allegation that Keurig has violated California's Environmental Marketing Claims Act ("EMCA") (Cal. Bus. & Prof. Code § 17580 *et seq.*), a statute that prohibits companies from making misleading "environmental marketing claims," which the EMCA defines as "any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission."  As pertinent to this case, the "Guides for the Use of Environmental Marketing Claims" issued by the Federal Trade Commission ("FTC") – known as the "Green Guides" – state that the FTC considers it "deceptive to misrepresent, directly or by implication, that a product or package is recyclable."  *See* 16 C.F.R. § 260.12(a).  The Green Guides further direct that, when recycling facilities are not available for the product or package to at least 60 percent of the product's consumers or in at least 60 percent of the communities in which the product is sold, recycling claims are to be qualified with statements indicating that the product may not be recyclable in the consumer's community.  *See* 16 C.F.R. § 260.12(b).

The FAC fails to state an actionable claim for several reasons.

First, Plaintiff lacks standing because the FAC is devoid of any plausible allegation that the Recyclable Pods are not recyclable in Plaintiff's community – or, for that matter, anywhere in California. Plaintiff further lacks standing because any alleged injury, if she had one, is not the result of the Recyclable Pods' labeling or advertising, but of decisions and capabilities of her local recycling facility.

Second, Plaintiff lacks standing to assert a claim for injunctive relief because she, being fully aware of the Recyclable Pods' characteristics and having access to all necessary information regarding the ability of her local recycler to recycle the pods, cannot plausibly claim to be at risk of being harmed in the future by the Recyclable Pods' labeling or advertising.

Third, Plaintiff fails to state a plausible claim that the Recyclable Pods are not recyclable – or that the product's recyclability claim, qualified by the statement that the pods are "not recycled in all communities" is false, misleading, or violative of the Green Guides (which permit such qualified claims) in any respect.

Fourth, Plaintiff's claims fail to meet the reasonable consumer test, providing no plausible allegation that a reasonable consumer, informed that the Recyclable Pods are recyclable but are "not recycled in all communities" – along with the directive to "check locally" – would in any respect be deceived.

Fifth, Plaintiff's express warranty claims fail because the alleged warranty – recyclability – is qualified by the disclaimer that the Recyclable Pods are "not recycled in all communities," rendering the alleged warranty equivocal and therefore non-actionable.

Sixth, Plaintiff's newly-minted unjust enrichment claim fails because there is no such independent claim under California law.

Seventh, applying the EMCA to the labeling of the Recyclable Pods would constitute a regulation of speech violative of Keurig's First Amendment rights.

Finally, the FAC itself demonstrates that the requirements for maintaining a class action cannot be met, such that the Court may – and should – strike the FAC's class allegations at the pleadings stage.

## II.     FACTS

Keurig sells, among other things, single serving coffee pods for use in coffee makers designed to brew coffee with such pods.  In 2017, the company introduced a new line of redesigned Keurig coffee pods (the "Recyclable Pods") made of No. 5 plastic designed specifically to be recycled.[1]  (FAC at ¶ 20.[2]) The launch followed testing with recyclers to ensure the recyclability of the pods.  (Id.[3])

---

[1]     Keurig continues to sell the original coffee "K-Cup®" pods, which are not recyclable.  Keurig has a goal of converting its entire line of coffee pods to recyclable pods by 2020.  (FAC at ¶ 20.)
[2]     The webpage pictured at the top of page 8 of the Complaint may be found, and viewed more legibly, at www.keurig.com/recyclable.
[3]     The timeline at the top of page 8 of the Complaint may be found, and viewed more legibly, at www.keurig.com/recyclable.

Keurigs's website includes a *qualified* claim of recyclability, instructing consumers to "check locally" regarding the recyclability of the Recylable Pods in the consumer's community:



(FAC at ¶ 20.)

Keurig's website, as copied into the FAC, includes a link to www.KeurigRecycling.com for consumers interested in more information concerning the recyclability of Recyclable Pods. (FAC at ¶ 20.) www.KeurigRecycling.com, in turn, provides detailed information regarding the extent to which the Recyclable Pods are recyclable.[4] That website also includes a detailed qualification of the Recyclable Pods' recyclability claim:

**What makes the Vue®, K-Mug®, K-Carafe®, and select K-Cup® pods recyclable?** 

The plastic cup used in our K-Mug®, K-Carafe®, and Vue®, and select K-Cup® pods is made of polypropylene (#5) plastic, which you can separate from the lid and filter and recycle wherever #5 plastic is accepted. Polypropylene (#5) plastic is currently accepted for recycling in approximately 60 percent of communities in the United States and 93% of communities in Canada. We recommend checking with your local municipality or waste hauler to determine if your community recycles #5 plastic.

(Exhibit 2 to the Request for Judicial Notice.)

The Recyclable Pods' packaging also contains a *qualified* recycling claim. As the FAC notes, packages of the Recyclable Pods contain instructions to "check locally to recycle empty cup:"

---

[4]   A copy of the landing page of www.KeurigRecycling.com is attached as Exhibit 1 to the accompanying Request for Judicial Notice. A copy of the "frequently asked question," "What Makes the Vue®, K-Mug®, K-Carafe®, and select K-Cup® pods recyclable?" from www.KeurigRecycling.com is attached as Exhibit 2 to the accompanying Request for Judicial Notice.

4

1
2
3
4
5
6
7
8



9    (FAC at ¶ 19.)

10        The FAC conveniently blurs the line between the Recyclable Pods, single serving coffee pods

11   generally, and Keurig's original single serving coffee pods.  For example, the FAC refers to a 2015

12   YouTube video anonymously posted in January, 2015, and "online estimates" of Keurig pod production

13   in 2014 – both well before the introduction of Recyclable Pods in 2017.  (*See, e.g.*, FAC at ¶¶ 14, 15,

14   20.)  The FAC's claims that certain California communities will not recycle the Recyclable Pods all refer

15   generally to "single serve coffee pods" and not specifically to the Recyclable Pods.  (*See, e.g.*, FAC at

16   ¶¶ 28, 29.)  The FAC also treats as synonymous "plastics" generally and #5 plastic (polypropylene) –

17   the plastic used in the Recyclable Pods.  (*See, e.g.*, FAC at ¶¶ 12 – 13 ("plastic" generally), 19

18   (Recyclable Pods made of #5 plastic).)

19        The FAC alleges, without substantiation or reference to any study, that "MRFs [materials

20   recovery facilities] in the United States, including those in California . . . are not properly equipped to

21   capture materials as small as the [Recyclable Pods] or to segregate such small items from the general

22   waste stream," FAC at ¶ 22, but fails to allege what *percentage* of MRFs in the United States are

23   supposedly "not properly equipped" to capture and segregate Recyclable Pods.

24        Although the FAC alleges that "most" of America's "plastic waste" is not recycled, the FAC

25   does not contain any allegations concerning #5 plastic (polypropylene) in particular.  (FAC at ¶ 12.)  The

26   FAC also is silent as to whether "most" plastic is not recycled is because consumers choose not to

27   recycle, or whether recycling is unavailable.  Similarly, although the FAC refers to a decline in

28   "California's recycling rate," *id*. at ¶ 12, the FAC does not indicate the recycling rate for #5 plastic and

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

does not address whether the "recycling rate" refers to the *availability* of recycling or merely the percentage of consumers who *choose* to recycle.  (*Id.*)

### III.    ARGUMENT

#### A.    The Pleading Standard Applicable to this FAC

Fed. R. Civ. P. 8(a)(2) requires that a complaint "show the pleader is entitled to relief", meaning that it must "give the defendant fair notice what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See id.* at 570.  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Courts within the Ninth Circuit have made clear that the "plausibility" standard applies to claims brought pursuant to state-law statutory causes of action such as Plaintiff's claims here.  *See, e.g.*, *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (granting motion to dismiss CLRA and UCL claims because "plaintiff has not met *Iqbal's* plausibility requirement"); *Manchouck v. Modelez Int'l, Inc.*, No. 13-cv-02148, 2013 WL 5400285, 2013 U.S. Dist. LEXIS 138877, at *1, 6-7 (N.D. Cal. Sept. 26, 2013) (dismissing CLRA and UCL causes of action where plaintiff's allegations were not plausible); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at *6 (C.D. Cal. Oct. 25, 2012) ("Obviously, the familiar *Iqbal/Twombly* standard also applies [to Plaintiff's UCL and CLRA claims]: 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief.'") (citations omitted).

Moreover, to the extent Plaintiff's state law causes of action are predicated on an alleged course of fraudulent conduct, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies with equal force to each of Plaintiff's statutory claims.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL and CLRA claims alleging a "unified course of fraudulent conduct"); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1140 (S.D. Cal. 2016) (observing that causes of action for violations of the CLRA, UCL and fraud were "premised on a uniform course of fraudulent conduct . . . [and] therefore, all claims are subject to the heightened pleading standard of Rule 9(b).") (citations omitted).

1

**B.   Plaintiff Lacks Standing to Pursue the Requested Relief.**

2

**1.   Plaintiff Has Not Made Plausible Allegations of Injury-in-Fact.**

3

Article III of the U.S. Constitution "authorizes the judiciary to adjudicate only 'cases' and

4

'controversies.'" *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 967 (9th Cir. 2018) ("*Davidson II*").

5

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."

6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff has the

7

burden of establishing that she "suffered an 'injury in fact' – an invasion of a legally protected interest

8

which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'"

9

*Id*. (internal citations omitted).  Further, the plaintiff must show "a causal connection between the injury

10

and the conduct complained of" and that it is "'likely,' as opposed to merely 'speculative,' that the injury

11

will be 'redressed by a favorable decision.'"  *Id*. at 560 – 61 (internal citations omitted).

12

Plaintiff wholly fails to allege that the Plaintiff has suffered a concrete and particularized "injury

13

in fact" caused by Keurig's labeling that will be redressed by a ruling in her favor in this action.  Plaintiff

14

alleges that she purchased the Recyclable Pods "numerous times over the course of the past couple years"

15

from Keurig's website based upon what she read about the recyclability of the Recyclable Pods on

16

Keurig's website and on the product package.  (FAC at ¶ 38.)  The website expressly advises potential

17

purchasers to "check locally" regarding the recyclability of the (FAC at ¶ 20) and to "check locally to

18

recycle empty cup" (FAC at ¶ 19), and explains that "polypropylene (#5) is currently accepted for

19

recycling in approximately 61% of communities in the U.S. and 93% of communities in Canada.  *Please*

20

*check with your local community to confirm*."  (FAC at ¶ 36 (emphasis added).)  Plaintiff therefore either

21

*ignored* the qualified statements regarding recyclability or purchased the products *knowing* that they

22

were not recyclable in all communities.  In either case, Plaintiff cannot show that different qualifiers

23

would have made a difference in her purchasing decisions.  *See, e.g., Davis v. HSBC Bank*, 691 F.3d

24

1152, 1163 (9th Cir. 2012) (there can be no reasonable reliance on a writing that the plaintiff failed to

25

read).

26

Further, although Plaintiff attempts to remedy a serious omission in her original Complaint by

27

alleging, without support, that "[m]any recycling facilities in California and elsewhere have refuted

28

Defendant's recycling claims or otherwise instructed consumers to place single serve coffee pods,

including those labeled as recyclable like the Products, in the trash," FAC at ¶ 28[5], the FAC does not distinguish between Recyclable Pods and *all* "single serve coffee pods." *See also* FAC at ¶ 29 (web references to a blog post claiming that "coffee capsules" in general are "never recyclable curbside").[6] Plaintiff's sleight of hand continues with the assertion that certain recycling facilities have "instructed consumers to place single serve coffee pods, including those labeled as recyclable like the Products, in the trash." *Id*.  The FAC carefully avoids alleging that recycling facilities instruct consumers to place the Recyclable Pods in the trash; instead, the FAC refers, first, to *all* "single serve coffee pods" – many of which cannot be recycled – and, second, to a subset of those pods that are "labeled as recyclable." *Id*. Importantly, adding "like the Products" to a general allegation regarding coffee pods "labeled as recyclable" does not convert the general statement regarding "coffee pods" into a specific allegation regarding the recyclability of the Recyclable Pods.  Because Plaintiff makes no plausible assertion that the Recyclable Pods are not, in fact, recyclable, Plaintiff cannot establish that she was injured.

Moreover, even if Plaintiff could somehow be said to have alleged any injury, the FAC fails to explain how such injury was "fairly traceable" to Keurig's website and labeling.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  To the extent that Plaintiff could establish that she cannot recycle the Recyclable Pods in Lafayette, the problem lies not in Keurig's product, but as a "result [of] the independent action of some third party not before the court" – namely, the operations of her local recycling facility.  *See Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 41-42 (1976) (alteration in original).

Finally, Plaintiff has not alleged that a ruling in her favor will alleviate her alleged injury. Plaintiff alleges that she "places a high priority on environmental concerns in general, and on the negative consequences regarding the proliferation of plastic waste in particular," and that she "was particularly concerned about the recyclability of single serve pods that contain coffee."  (FAC at ¶ 30.) Despite her avowed concern concerning plastic, Plaintiff sought to purchase single serve coffee pods

---

[5]    The FAC's unsupported assertion that recycling facilities have "refuted" Keurig's recycling claims cannot save the FAC from dismissal.  *See Iqbal*, 556 U.S. at 662 (a complaint does not satisfy the plausibility requirement "if it tenders 'naked assertion[s]' devoid of further factual enhancement.'").

[6]    Plaintiff cites four websites, all of which reproduce a webpage produced by (as indicated at the bottom of the webpage) "Recyclist," blogger and website developer whose source of information is unspecified.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

rather than other forms of brewing coffee.  (FAC at ¶ 4.)  The FAC is silent as to when Plaintiff purchased her pod coffee maker, but alleges that "had [she] known that the Products were not recyclable," she "would have instead sought out single serve pods or other coffee products that are otherwise compostable, recyclable, or reusable."  (*Id*.)  The FAC does not allege that any coffee pods other than the Recyclable Pods are, in fact, recyclable.  The implication is that Plaintiff looked to the Recyclable Pods as an alternative to conventional single serve coffee pods.  If Plaintiff were to obtain the relief that she seeks in this case, she would be no better off:  she could continue to use the Recyclable Pods – which Plaintiff does not deny *can be recycled*, even if they are not recycled by as many recycling facilities as she would prefer – or she could use conventional single serve coffee pods, which are not recyclable in any event.

In a telling alternative argument, Plaintiff claims that perhaps she would have purchased the Recyclable Pods anyway, but "would not have paid as much" for Recyclable Pods had she known that they were not universally recycled by all recycling facilities.  (FAC at ¶ 38.)  Yet the very website Plaintiff cites at paragraph 20 of her FAC makes clear that both Recyclable Pods and conventional single serve coffee pods are priced identically.  (*See* Exhibits 3 and 4 to the accompanying Request for Judicial Notice (standard and recyclable pods both priced at $14.99 for a 24 count package at www.keurig.com).)  There can be no compensable injury based on an alleged price premium.

The FAC fails to allege that Plaintiff suffered an injury-in-fact, that any alleged injury was the result of Keurig's labeling as opposed to the operations of her local recycling facility, or that her alleged injury will be alleviated by the relief sought in this case.  For all three reasons, Plaintiff fails to meet her burden of establishing standing.

### 2.    Plaintiff Has No Standing to Pursue Injunctive Relief.

In addition to lacking standing to obtain a monetary remedy of damages or disgorgement, Plaintiff lacks standing to pursue injunctive relief.  In bringing this action, Plaintiff demonstrates that she is fully familiar with the extent to which the Recyclable Pods may be recycled, and is therefore incapable of being deceived by the Recyclable Pods' labeling in the future.  As the court in *Pinon v. Tristar Prods., Inc*., 2016 U.S. Dist. LEXIS 118611, *4 (E.D. Cal. Sept. 1, 2016), put it, "plaintiffs who

are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future and, therefore, are not capable of being harmed again in the same way."

Plaintiff implicitly seeks refuge in the Ninth Circuit's opinion in *Davidson II* by making the conclusory assertion that she "would like to buy recyclable single serve coffee pods from Defendants in the future, but is unable to determine with confidence, based on the labeling and other marketing materials, whether the Products are truly recyclable." (FAC at ¶ 39.)  *See Davidson II*, 889 F.3d at 970 ("Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly flushable wipes."); *id*. at 971 ("[s]hould [Davidson] encounter the denomination ['flushable'] on a [Kimberly-Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence.") (alterations in original).  Despite parroting the language of *Davidson II*, Plaintiff cannot make the requisite showing of standing to pursue injunctive relief.

Although holding "in a close question" that the plaintiff in *Davidson II* established standing to pursue injunctive relief based on the facts of that case, *Davidson II*, 889 F.3d at 971, the Ninth Circuit made clear that "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Id*. at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  The key element of the Ninth Circuit's holding in *Davidson II* is that a plaintiff *may,* in the correct circumstances, establish a threat of future injury by establishing that the *plaintiff has no way of knowing whether the intrinsic properties of the product in question have changed over time to render the labeling at issue true*:

> *In some cases*, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume *the product was improved*.

*Davidson II*, 889 F.3d at 969 -70 (emphasis added).

The plaintiff in *Davidson II* made such a showing, according to the Ninth Circuit, by plausibly alleging that she "'would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible' . . . but has 'no way of determining whether the representation 'flushable' is in fact true.'"  *Davidson II*, 889 F.3d at 970 – 71.  In other words, the Ninth Circuit found that the plaintiff in *Davidson*

*II* plausibly alleged that she wanted to buy wipes that were truly flushable; was confronted by advertising claiming that Kimberly-Clark's wipes *were* flushable; but had no way of knowing if *future design changes* to Kimberly-Clark wipes, *imperceptible to the consumer*, might make the wipes live up to the claims made in the products' labeling.

The situation presented in the instant case is far different.  Plaintiff does not dispute that the Recyclable Pods are made of recyclable plastic.  The issue, according to Plaintiff, is whether *recycling facilities* can recycle the Recyclable Pods *based on their size*.  The size of the Recyclable Pods is known, consistent (so as to fit into a coffee machine), and measurable by the consumer.  The only unknown is whether a particular consumer's local recycling facility accepts and recycles such pods – a question that the consumer can answer at any time by contacting the recycling facility or local recycling agency. Unlike *Davidson II*, where the plaintiff had no way of determining whether "the product was improved," *Davidson II*, 889 F.3d at 970, all pertinent information regarding the Recyclable Pods is known to the Plaintiff or can be ascertained by making an inquiry of the local recycling facilities.  The variable subject to change is wholly outside Keurig's control and is, at all times, fully knowable by Plaintiff.  Therefore, Plaintiff cannot claim, as the plaintiff did in *Davidson II*, that she will continue to suffer continuing harm as a result of "her inability to rely upon the validity of the information" provided by Keurig.  *See Davidson II*, 889 F.3d at 971.  As a result, Plaintiff cannot make the constitutionally required showing of "a sufficient likelihood that [she] will again be wronged in a similar way."  *Lyons*, 461 U.S. at 111. Being informed both about the Recyclable Pods and the state of the recycling market, Plaintiff lacks standing to assert a claim for injunctive relief.

**C.     Plaintiff Fails to State Any Actionable Claim Because the Labeling is Entirely Truthful and Consistent With the Green Guides.**

Plaintiff premises her entire FAC on the notion that the labeling of the Recyclable Pods is a "deceptive" environmental marketing claim under the FTC's Green Guides.  Yet the FAC fails to allege any plausible facts that would support such a conclusion.

Plaintiff does not dispute that the Recyclable Pods, comprised of #5 plastic, are *capable* of being recycled.  Rather, the FAC asserts that "MRFs in the United States, including California . . . are not properly equipped to capture materials as small as the Products or to segregate such small items from

the general waste stream." (FAC at ¶ 22.)  The FAC, however, provides no source or factual support for this assertion.  Although, on a motion to dismiss, the allegations in a complaint are generally taken as true, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff's naked assertions of non-recyclability, which lack any citation to a source, any specific data, any particular percentages, any particular geography, or the specific characteristics of products deemed too "small" to be recycled, are insufficient to survive a motion to dismiss.

Further, even if the Court were to accept Plaintiff's unsubstantiated assertions as true, the qualifications on the Recyclable Pods defeat Plaintiff's claims.

The Green Guides, upon which all of Plaintiff's claims rely, expressly provide that claims of recyclability are not deceptive if they are properly qualified "to avoid deception about the availability of recycling programs and collection sites."  *See* 16 C.F.R. § 260.12(b).  The Green Guides specify that a product may be labeled "recyclable" without qualification if recycling facilities are available to at least 60 percent of the product's consumers or in at least 60 percent of the communities in which the product is sold.  *See* 16 C.F.R. § 260.12(b)(1).  If recycling facilities are *not* available to at least 60 percent of the product's consumers or in at least 60 percent of the communities in which the product is sold, the Green Guides specify that a recycling claim is not deceptive if it is qualified with a statement indicating that the product may not be recyclable in the consumer's community.  *See* 16 C.F.R. § 260.12(b)(2). The Green Guides do *not* require a specific qualifier.  Rather, the Green Guides provide *examples* of appropriate qualifiers:  "This product [package] may not be recyclable in your area" and "Recycling facilities for this product [package] may not exist in your area."  *See* 16 C.F.R. § 260.12(b)(2).

The FAC fails to make any plausible assertion that the Recyclable Pods cannot be recycled in at least 60 percent of the communities in which the product is sold.  Plaintiff therefore has no basis for asserting that *any* qualification is required.  *See* 16 C.F.R. § 260.12(b)(1) ("When recycling facilities are available to a substantial majority of consumers or communities where the item is sold, marketers can make unqualified recyclable claims.")  Even if the Court were to accept Plaintiff's claim that less than 60 percent of purchasers of Recyclable Pods could recycle the product, Keurig's website and the labeling on the Recyclable Pods' packaging provide clear qualifiers consistent with the examples provided in the

12

Green Guides.  Both the website and the packaging emphasize that a consumer should "check locally" to determine if the Recyclable Pods may be recycled in the consumer's community.  (FAC at ¶¶ 19 - 20).  The website goes further: "We recommend checking with your local municipality or waste hauler to determine if your community recycles #5 plastic." (FAC at ¶ 36; Exhibit 2 to the Request for Judicial Notice.)  Keurig's statements are entirely consistent with the Green Guides' example of an acceptable qualifier:  "This product [package] may not be recyclable in your area."  *See* 16 C.F.R. § 260.12(b)(2).[7]

By the express terms of the Green Guides, such qualifiers render representations of recyclability non-deceptive.  Because the qualified recycling claims on the website and packaging do not meet the definition of "deceptive" in the Green Guides, Plaintiff has no actionable claim under the EMCA and, by extension, the CLRA and UCL.

### D.     The CLRA Claim and "Unfair" and "Fraudulent" Prongs of the UCL Claim Fail the Reasonable Consumer Test.

#### 1.     *Claims Pursuant to Consumer Protection Statutes Must Be Independently Actionable Separate and Apart from Section 17580.5 and the Green Guides.*

In order to state a claim under the CLRA or the "fraudulent" or "unfair" prongs of the UCL, Plaintiff must allege facts establishing that Keurig's qualified recyclability claims for the Recyclable Pods are untruthful, deceptive, or misleading.  It is insufficient simply to cite to the definition of "deceptive" in the Green Guides.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011), one of the only reported cases to analyze 17580.5, makes this clear:

> Our state Legislature, by incorporating the FTC guides into the CLRA definition of environmental marketing claims (§ 17580.5, subd. (a)), has elevated the guides to tests of illegality, retaining the safe harbor feature only in that conformity with the guides is a defense to any CLRA action. (§ 17580.5, subd. (b); see fn. 4, ante.) This change was achieved by an amendment in 1995 that added section 17580.5 (Stats. 1995, ch. 642, § 4, p. 5079), ***but the gravamen of a CLRA action remains that the environmental marketing claim must be "untruthful, deceptive, or misleading***." (§ 17580.5, subd. (a).)"

*Id.* at 1302-03 (emphasis added).

---

[7]     The FAC's reference to Example 4 of the Green Guides, FAC at ¶ 33, is misplaced.  Example 4, by its terms, refers to a situation in which there is only a "limited availability of recycling programs" for the product.  Even if the FAC could be read plausibly to assert that less than 60 percent of customers could recycle their Recyclable Pods – and it can't – there is nothing in the FAC that would lead to the plausible conclusion that the availability of recycling for the Recyclable Pods was "limited."

The Court of Appeals in *Hill* explained the interplay between the EMCA and the CLRA as follows:

> Looking to the well-pleaded facts of Hill's complaint, and ignoring its hyperbole and legal conclusions, we assume as true that consumer demand for "green" products has grown, spawning a competitive "green marketing" strategy by companies to market their products as "green," a strategy that can be abused through misleading environmental claims. We assume as well that Hill actually was, as she claims, misled in the context to believe that the green drop symbol on Fiji water was a seal implicitly indicating approval by a third party organization, and thus believed that the Fiji product was environmentally superior to competitors' bottled water. We also assume, for demurrer purposes, that Fiji water is in fact not environmentally superior.

> The problem is that Hill's beliefs do not satisfy the reasonable consumer standard, as expressed in the FTC guides (16 C.F.R. § 260.7(a) (2011) [material implied claims conveyed 'to reasonable consumers']) and as used in our state's consumer laws. The reasonable consumer test used in the UCL and FAL derives from parallel parts of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.), ***which requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances—not just any consumers***.

*Hill*, 195 Cal. App. 4th at 1303-04 (emphasis added, citations omitted).

## 2. *Plaintiff's CLRA and UCL Claim Fail under the Reasonable Consumer Standard.*

California state and federal courts have made clear that the basis for liability under the CLRA and UCL is analyzed under the same rubric: a plaintiff must show that the allegedly false/misleading advertising or labeling is likely to deceive a "reasonable consumer."  *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[A plaintiff's] claims under these California statutes are governed by the 'reasonable consumer' test . . . . [T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer'. . . . '[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'") (citation omitted); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (recognizing that the "reasonable consumer" standard requires more than a mere possibility that the allegedly false advertisement "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner;" rather, it requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.").  Applying those standards to the allegations that purportedly support the CLRA and UCL "fraudulent" and "unfair" theories here, the claims fail for several reasons.

It is simply implausible that a reasonable consumer – particularly one who, like Plaintiff, is concerned about the environment, would not read and understand the Recyclable Pod's clear labeling that the pods are "[n]ot recyclable in all communities" and the label's directive to "check locally" to determine whether the pods are recyclable in the consumer's community.  Courts have consistently dismissed claims, where, as here, the full terms of the purported advertisement or label make deception implausible.  *See, e.g.*, *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. App'x 561, 563 (9th Cir. 2008) (affirming dismissal of UCL and CLRA claims because "a reasonable consumer would not be misled by [defendant's] statements . . . .  Each of the two-page documents at issue includes numerous eligibility disclaimers and recommendations to seek [independent] advice . . ."); *Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995) (upholding dismissal of a challenge to a sweepstakes mailer because it explicitly contained disclaimer that plaintiff would win only if he had the winning number; the advertisement itself thus made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived. ); *Stuart v. Cadbury Adams USA, LLC*, 548 F. App'x 689, 690-91 (9th Cir. 2011) (affirming dismissal of plaintiff's CLRA and UCL claims as defendant was not required to provide further detailed, commonsense information:  "[Plaintiff] alleges that [defendant's] failure to tell consumers that Trident White only removes stains in conjunction with an oral hygiene program is deceptive.  Only an ***unreasonable consumer*** would be confused or deceived by [defendant's] failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly") (emphasis added); *Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-cv-1804, 2016 WL 4595947, 2016 U.S. Dist. LEXIS 122688, at *11-12, 15 (S.D. Cal. Jan. 26, 2016) (recognizing that a court may dismiss UCL claims where "the claim alleges [that] a consumer will read a true statement then disregard 'well-known facts of life,' not assuming things the statement actually says").[8]

Because no reasonable consumer would understand that the Recyclable Pods are recyclable in all communities, Plaintiff's UCL and CLRA claims must be dismissed.

---

[8]    *Cf. Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (recognizing that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

### E.   Keurig's Qualified Statement of Recyclability Does Not Support an Express Warranty Claim.

To state a claim for breach of express warranty, a plaintiff must allege (1) the exact terms of the warranty; (2) his or her reasonable reliance thereon; and (3) breach of that warranty which proximately causes plaintiff's injury.  *See T & M Solar & Air Conditioning, Inc. v. Lennox Int'l, Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal.  2015).  "To constitute an actionable express warranty, the statement must be specific and unequivocal."  *Id.* (internal quotation marks omitted) (emphasis added); *see also Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (1985).

Identifying the Recyclable Pods as "recyclable" cannot give rise to a claim for breach of an express warranty because the recyclability claim is qualified and is therefore a non-actionable equivocal claim.  The "recyclable" claim is accompanied by the statement that the Recyclable Pods are "[n]ot recycled by all communities" and by a directive that the consumer check the capabilities of local recycling facilities.  This renders the express warranty equivocal.

California law is clear that qualifying language such as that used on the Recyclable Pods' packaging is sufficient to negate any breach of express warranty claims.  *See, e.g.*, Cal. Comm. Code § 2316(1) (observing that "[w]ords or conduct relevant to the creation of an express warranty and ***words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other***") (emphasis added); *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1449 (1991) (holding that express warranty claim was not actionable in light of defendant's conspicuous disclaimer and limiting language); *In re Nexus 6p Prods. Liab. Litig.*, No. 17-cv-02185, 2017 WL 3581188, 2017 U.S. Dist. LEXIS 132698, at *6-7 (N.D. Cal. Aug. 18, 2017) (recognizing that defendant may disclaim or limit express warranty); *Acedo v. DMAX, Ltd.*, No. 15-cv-02443, 2015 WL 12696176, 2015 U.S. Dist. LEXIS 192128, at *70-71 (C.D. Cal. Nov. 13, 2015) (holding that statement that a product "offers a maximum highway range of up to 680 miles on a single fill-up" accompanied by disclaimer that the range "may be less" did not constitute actionable express warranty).   Plaintiff's express warranty claims therefore fail as a matter of law.

### F.   Plaintiff Fails to State an Actionable Claim for Unjust Enrichment.

In response to Keurig's motion to dismiss the original Complaint, which pointed out that Plaintiff failed to plead any injury, since the cost of Recyclable Pods was no different from the cost of original

16

Keurig single serving coffee pods, Plaintiff has added a claim for "unjust enrichment," by which Plaintiff seeks to recover "restitution or disgorgement."  FAC at ¶ 99.  There is no standalone cause of action for "unjust enrichment" in a false or misleading advertising or labeling action, however.  *See, e.g., Browning v. Unilever United States, Inc*., 2017 U.S. Dist. LEXIS 220294, *10 (C.D. Cal. April 26, 2017).  Although a Ninth Circuit panel, in an 2015 unpublished opinion, noted that California had recently recognized a standalone claim for unjust enrichment in the insurance context, *see Bruton v. Gerber Prods. Co*., 703 Fed. Appx. 468 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C*., 61 Cal. 4th 988, 1000, 190 Cal. Rptr. 3d 599, 353 P.3d 319 (2015)), insurance remains the sole area in which a standalone "unjust enrichment" action is recognized.  *See Browning*, 2017 U.S. Dist. LEXIS 220294, *10; *see also Victor v. R.C Bigelow, Inc*., 2015 U.S Dist. LEXIS 127039, *4 (N.D. Cal. Sept. 21, 2015) ("The only aspect of [*Hartford*] that could be portrayed as a 'change' of law is narrowly confined to the question of the unjust enrichment of insureds' counsel when counsel's fees are excessive and not incurred for the benefit of the insured.").

Because California does not recognize a standalone claim of "unjust enrichment," Plaintiff's Sixth Cause of Action must be dismissed.

### G.    Applying the EMCA to Keurig's Recyclability Claims Would Infringe Keurig's First Amendment Free Speech Rights.

Invoking the EMCA to mandate that Keurig use particular language to convey its qualified claims of recyclability constitutes "compelled speech" violative of Keurig's First Amendment rights.  To be clear, Keurig does *not* challenge statutory prohibitions on deceptive speech and does *not* challenge the EMCA, UCL or CLRA generally.  Rather, Keurig challenges Plaintiff's attempt to invoke the EMCA to mandate *specific* qualifying language instead of Keurig's truthful, non-deceptive qualified statements of recyclability.

It is well recognized that consumer protection laws may violate the First Amendment's protection of speech, whether enforced by the government or through a private citizen's civil action for damages. *See, e.g., Italian Colors Rest. v. Becerra*, 878 F. 3d 1165, 1173 (9th Cir. 2018) (California consumer protection statute violated business' free speech rights even if the state did not enforce the statute because the threat of a civil action by a private citizen triggered First Amendment considerations); *Serova v. Sony*

---

17

1  *Music Entm't*, 26 Cal. App. 5th 759, 776 (2018) (UCL and CLRA claims infringed defendant's rights to

2  free speech).

3        In *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"),

4  the U.S. Supreme Court recently clarified the narrow grounds for government regulation of speech.

5  Although the mandated speech in *NIFLA* was categorized as "professional" speech, the sweeping

6  statements in *NIFLA* expounded more broadly on the First Amendment's limitations on attempts to

7  compel commercial speech more broadly.[9]  The Court made clear that regulations or statutes "compelling

8  individuals to speak a particular message" are "content-based regulation of speech" and therefore

9  "presumptively unconstitutional." *NIFLA*, 138 S. Ct. at 2371.  Accordingly, such regulations or statutes

10  are subject to strict scrutiny.  *Id.*  "States cannot choose the protection that speech receives under the

11  First Amendment, as that would give them a powerful tool to impose 'invidious discrimination of

12  disfavored subjects." *NIFLA*, 138 S. Ct. at 2375.

13        By incorporating the Green Guides, the ECMA mandates that marketers who designate products

14  as recyclable use particular types of messages to inform consumers when less than a substantial majority

15  (defined as less than 60%) of the relevant recycling facilities are capable of accepting the product:

16        When recycling facilities are available to less than a substantial majority of consumers
        or communities where the item is sold, marketers should qualify all recyclable claims.
17        Marketers may always qualify recyclable claims by stating the percentage of consumers
        or communities that have access to facilities that recycle the item. Alternatively,
18        marketers may use qualifications that vary in strength depending on facility availability.
        The lower the level of access to an appropriate facility is, the more strongly the marketer
19        should emphasize the limited availability of recycling for the product. For example, if
        recycling facilities are available to slightly less than a substantial majority of consumers

20

21        [9]  The fact that *NIFLA*'s reach extends beyond professional speech to encompass commercial
        speech is evident from the decision itself as well as the fact that the Court also vacated the Ninth Circuit's
22        decision in *CTIA-The Wireless Association v. City of Berkeley*, 854 F.3d 1105 (9th Cir. 2017), which
        had upheld the constitutionality of a Berkley ordinance requiring cell phone providers to warn users
23        about potentially receiving higher-than-recommended levels of radiation if they keep their cell phone in
        their pockets.  *See CTIA-The Wireless Ass'n v. City of Berkeley*, 138 S. Ct. 2708 (2018).  *CTIA* is now
24        being re-considered *en banc*.  *See CTIA-The Wireless Ass'n v. City of Berkeley*, 2018 U.S. App. LEXIS
        23944 (9th Cir. Aug. 23, 2018).  The Ninth Circuit has also called for *en banc* review, in light of *NIFLA*,
25        of *American Beverage Association v. City and County of San Francisco*, 871 F.3d 884 (9th Cir. 2017),
        in which the court struck down a San Francisco ordinance that required a warning label on sugar-
26        sweetened beverages sold within the city.  Additionally, *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F.
        Supp. 3d 842 (E.D. Cal. 2018), in which Judge Schubb granted a preliminary injunction blocking
27        enforcement of Prop 65's warning requirement as to glyphosate on free speech grounds, has been stayed
        pending further guidance from the Ninth Circuit in *CTIA* and *American Beverage Ass'n. See Nat'l Ass'n
28        of Wheat Growers v. Zeise*, 2018 U.S. Dist. LEXIS 152283 (E.D. Cal. Sept. 6, 2018).

or communities where the item is sold, a marketer may qualify a recyclable claim by stating: "This product [package] may not be recyclable in your area," or "Recycling facilities for this product [package] may not exist in your area." If recycling facilities are available only to a few consumers, marketers should use stronger clarifications. For example, a marketer in this situation may qualify its recyclable claim by stating: "This product [package] is recyclable only in the few communities that have appropriate recycling facilities."

16 C.F.R. § 260.12(b)(2).

Because the FAC asserts a violation of the EMCA based on Keurig's choice of words to qualify its recycling claims – which wording conveys the spirit of, but not the *verbatim* language of the *examples* in the Green Guides, the law as invoked by Plaintiff compels speech. The EMCA is being used to compel Keurig "to speak a particular message" and thereby to "'alte[r] the content of [its] speech.'" *NIFLA*, 138 S. Ct. at 2371 (quoting *Riley v. National Federation of Blind of N.C., Inc.*, 487 U. S. 781, 795 (1988)).

California does not have a compelling governmental interest in mandating Keurig's use of the specific wording set forth in the Green Guides to qualify recycling claims. Nor is the EMCA's incorporation of the Green Guides narrowly tailored to achieve any compelling governmental interest. Plaintiff's EMCA claims fail to pass constitutional muster and must be dismissed.[10]

Although the courts apply a lower level of scrutiny to regulation of speech in some contexts as outlined in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985), this more deferential review is limited to situations in which the compelled speech involves only "purely factual and uncontroversial information about the terms under which . . . services will be available." *NIFLA*, 138 S. Ct. at 2372 (quoting *Zauderer*, 471 U.S. at 650-53). But the more deferential standard of *Zauderer* is inapplicable here.

Plaintiff does not invoke the EMCA to compel Keurig to make statements regarding the Recyclable Pods themselves or the terms under which it offers the Recyclable Pods. Rather, Plaintiff

---

[10]   The strict scrutiny standard mandated by *NIFLA* is far less deferential than the standard applied by Ninth Circuit to Cal. Bus. & Prof. Code § 17508.5, an earlier version of the EMCA. The constitutionality of that predecessor statute was challenged in *Ass'n National Advertisers v. Lungren*, 44 F.3d 726 (9th Cir. 1994). The Ninth Circuit there applied a "'more relaxed inquiry' applicable to restrictions on commercial speech . . . . Under this intermediate scrutiny, the asserted governmental interest must be 'substantial', rather than 'compelling', and the regulation adopted must 'directly advance' this interest, rather than be 'precisely drawn.'" *Lungren*, 44 F.3d at 728-29 (citing *Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)). Although the version of the statute in *Lungren* (Section 17508.5) survived *Central Hudson* scrutiny, Section 17580.5, does not survive the strict scrutiny standard required under *NIFLA* – or even, as explained *infra*, *Zauderer* intermediate-level scrutiny.

looks to the EMCA to compel Keurig to make statements about the state of the *recycling industry* at particular points in time.  Compelled speech that is not limited to the attributes of the speaker's product or services does not qualify for *Zauderer*'s lower level of scrutiny.  In *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), the California Supreme Court emphasized this distinction and observed that a lower level of First Amendment protection is given to false or misleading commercial speech precisely because the seller is uniquely qualified to know the truth about its products or services:

> Our understanding of the content element of commercial speech is also consistent with the reasons that the United States Supreme Court has given for denying First Amendment protection to false or misleading commercial speech. The high court has stated that false or misleading commercial speech may be prohibited because the truth of commercial speech is "more easily verifiable by its disseminator" and because commercial speech, being motivated by the desire for economic profit, is less likely than noncommercial speech to be chilled by proper regulation. (*Va. Pharmacy Bd. v. Va. Consumer Council, supra*, 425 U.S. at p. 772, fn. 24 [96 S. Ct. at pp. 1830-1831].) ***This explanation assumes that commercial speech consists of factual statements and that those statements describe matters within the personal knowledge of the speaker or the person whom the speaker is representing and are made for the purpose of financial gain***.

*Kasky*, 27 Cal. 4th at 962 (emphasis added).  *See also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 n. 24 (1976) ("The truth of commercial speech, for example, may be more easily verifiable by its disseminator than, let us say, news reporting or political commentary, in that ordinarily the advertiser seeks to disseminate information about a specific product or service that he himself provides and presumably knows more about than anyone else.").

The speech that Plaintiff seeks to compel is of an entirely different sort.  Plaintiff, by means of the EMCA and Green Guides, seeks to require Keurig to make *statements regarding the state of the recycling industry* in various markets, *not* "about a specific product or service" that Keurig "provides and presumably knows more about than anyone else."  *See Virginia State Bd. of Pharmacy*, 425 U.S. at 771 n. 24.  Because the particular language from the Green Guides that Plaintiff seeks to compel Keurig to employ does not pertain to the intrinsic qualities of the Recyclable Pods or the terms under which Keurig offers the Recyclable Pods for sale, *Zauderer*'s lower level of scrutiny does not apply.

Even if the EMCA fell within the ambit of *Zauderer*, it would fail to survive that more deferential standard.  Just as the Supreme Court in *NIFLA* concluded that, even if the regulation of speech at issue were to be subjected to intermediate-level scrutiny under *Zauderer*, it failed to pass First Amendment scrutiny, the EMCA also fails.  Under that standard, the regulation of speech "cannot be 'unjustified or

unduly burdensome,'" and must "extend 'no broader than reasonably necessary'" so as not to "risk 'chilling protected speech." *NIFLA*, 138 S. Ct. at 2377.

Application of the Green Guides to Keurig through the EMCA is unduly burdensome.  It would require constant effort to determine what percentage of recycling facilities accepted #5 plastic or adopted improved sorting technology (or, if Plaintiff's allegations were credible, the percentage of recycling facilities that accepted Recyclable Pods), and revision of Keurig's product labeling depending upon the results of the company's research.  Keurig would, moreover, be subject to constant judicial second-guessing of its labeling and website, as the Green Guides do not specify specific language, but merely direct "marketers [to] use qualifications that vary in strength depending upon facility availability.  The lower the lever of access to an appropriate facility is, the more strongly the marketer should emphasize the limited availability of recycling for the product."  16 C.F.R. § 260.12(b)(2).

The speech that Plaintiff seeks to compel is, furthermore, both over-inclusive and under-inclusive.  By tying required language to the state of the American (or North American) recycling industry, the EMCA would require language that may be both inaccurate and inapplicable to California, owing to differing rates of recycling between California and other locations in the United States.  At the same time, the required language could communicate recyclability in communities where recycling is unavailable, and, at the same time, communicate a lack of recyclability in communities where recycling *is* available – potentially rendering the Green Guides counterproductive by *discouraging* recycling.

Because the speech that Plaintiff seeks to compel is unduly burdensome and also both over-inclusive and under-inclusive, it cannot survive First Amendment scrutiny even under the *Zauderer* standard.

### H.     The Class Allegations Should Be Stricken.

The Court also should strike the FAC's class allegations pursuant to Fed. R. Civ. P. 12(f), as the proposed class definition is plainly overbroad and necessarily implicates individualized inquiries that would not satisfy the requirements of Fed. R. Civ. P. 23.  The putative class – "[a]ll persons who purchased the Product for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations period" – does not exclude (a) persons whose local recycling programs accept and recycle Recyclable Pods or (b) persons who did not see or rely on the

labeling or advertising at issue when deciding to purchase the Recyclable Pods. *See, e.g.*, *Rasmussen v. Apple, Inc*. 27 F. Supp. 3d 1027, 1045-46 (N.D. Cal. 2014) (proposed class "overbroad as it includes within the class individuals who have not experienced any issue or defect" with the product); *Hovsepian v. Apple, Inc.*, No. 08-cv-5788, 2009 WL 5069144, 2009 U.S. Dist. LEXIS 117562, at *18 (N.D. Cal. Dec. 17, 2009) ("[T]he class is not ascertainable because it includes members who have not experienced any problems with [defendant's product].").

Courts have not hesitated to strike such defective allegations at the pleading stage, where it is clear that the proposed class definition is fundamentally flawed. *See, e.g.*, *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210–11 (9th Cir. 1975) (recognizing that class allegations may be stricken at the pleading stage when the court can glean fundamental flaws in plaintiff's class definition without the need for further discovery); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a class-wide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to strike the complaint's class allegations."); *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (recognizing that a court may strike class allegations at the pleading stage where no "discovery or . . . factual development would alter the central defect in [the] class claim").[11]

Given the inherently individualized inquiries posed by the class definition as set forth above, the Court should follow the lead of other district courts that have stricken such allegations under similar circumstances. *See, e.g.*, *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-991 (N.D. Cal. 2009) (granting motion to strike class allegations in deceptive advertising case pursuant to Fed. R. Civ. P. 12(f) where class definition included individuals who did not actually purchase the products or did not see or rely on the alleged false ads at issue; motion to strike was also proper because plaintiff's class definition would not satisfy requirements of Fed. R. Civ. P. 23(b)(3), as individual issues of reliance relating to whether given individuals saw the ads or believed them to be true precluded certification); *American Western Door & Trim v. Arch Specialty Ins. Co.*, No. 15-cv-00153, 2015 WL 1266787, 2015 U.S. Dist. LEXIS

---

[11]   *Cf. Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) (recognizing that Rule 23 contemplates that certification issues will be determined "[a]t an early practicable time" and allows the Court to extract class allegations from the complaint upon a finding that certification is not possible in the case).

22

34589, at *20-26 (C.D. Cal. March 18, 2015) (granting motion to strike class allegations where class definition would necessarily "require individualized inquiries into each class member's [individual] situation"); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293-294 (N.D. Ill. 2014) (granting motion to strike pursuant to Rule 12(f) where class definition was lacking commonality element, because "[i]f the members of a proposed class will need to present evidence that varies from member to member to make a *prima facie* showing on a given question, then it is an individual question"); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n. 3 (D. N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where *the complaint itself demonstrates that the requirements for maintaining a class action cannot be met*.") (emphasis added).

## IV.   CONCLUSION

For the reasons set forth above, Keurig respectfully requests that this Court issue an order dismissing Plaintiff's FAC without leave to amend.  Should the Court not dismiss the FAC, Keurig respectfully requests that the Court strike the strike the class allegations of the FAC.

Respectfully submitted,

DATED:  January 28, 2019                         **DORSEY & WHITNEY LLP**

By:   */s/ Kent J. Schmidt*
KENT J. SCHMIDT
NAVDEEP K. SINGH
CREIGHTON R. MAGID
Attorneys for Defendant KEURIG GREEN
MOUNTAIN, INC.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

All Case Participants are registered for the USDC CM/ECF System

***Kathleen Smith v. Keurig Green Mountain, Inc.***
***Northern District of California Case Number 3:18-cv-06690-JSC***

**DEFENDANT KEURIG GREEN MOUNTAIN, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I hereby certify that on January 28, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of California by using the court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be automatically served by the CM/ECF system.

Dated:  January 28, 2019                    DORSEY & WHITNEY LLP


                                            By:     */s/ Kent J. Schmidt*
                                                    Kent J. Schmidt

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT