1  LEXINGTON LAW GROUP
   Howard Hirsch, State Bar No. 213209
2  Ryan Berghoff, State Bar No. 308812
   503 Divisadero Street
3  San Francisco, CA 94117
   Telephone: (415) 913-7800
4  Facsimile: (415) 759-4112
   hhirsch@lexlawgroup.com
5  rberghoff@lexlawgroup.com

6  Attorneys for Plaintiff
   KATHLEEN SMITH
7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 KATHLEEN SMITH, on behalf of herself and      Case No. 4:18-cv-06690-HSG
   all others similarly situated,                Assigned to Hon. Haywood S. Gilliam, Jr.
13
                       Plaintiff,                 **PLAINTIFF KATHLEEN SMITH'S
14                                                OPPOSITION TO DEFENDANT
          v.                                     KEURIG GREEN MOUNTAIN,
15                                               INC.'S MOTION TO DISMISS FIRST
   KEURIG GREEN MOUNTAIN, INC.,                  AMENDED CLASS ACTION
16                                               COMPLAINT; MEMORANDUM OF
                       Defendant.                POINTS AND AUTHORITIES**
17

18                                                Date: March 21, 2019
                                                  Time: 2:00 p.m.
19                                                Courtroom: 2, 4th Floor
20
                                                  Complaint Filed: Sept. 28, 2018
21                                                First Amended Complaint Filed: Dec. 28,
                                                  2018
22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………………...1

II.    FACTS………………………………………………………………………3

III.   ARGUMENT………………………………………………………………...4

        A. The Pleading Standard…………………………………………………4

        B. Plaintiff Has Standing To Pursue All of Her Claims……………………….5

           1. Plaintiff's Purchase of the Products Is An Injury in Fact…..…………...5

           2. Plaintiff's Injury Is Directly Traceable to Defendant's
             Misrepresentation That the Products Are Recyclable……………….………7

           3. Plaintiff's Injury Will Be Redressed By a Favorable Decision Because
             Damages Will Make Her Whole and an Injunction Will Prohibit
             Defendant From Injuring Her In the Future…………………….……...8

        C. Plaintiff Has Standing To Pursue Injunctive Relief……………………….9

        D. Plaintiff's Claims that the Products Are Deceptively Labeled As Recyclable
          Are Actionable………………………………………….………………11

        E. A Reasonable Consumer Would Be Deceived By Defendant's Representation
          Regarding the Recyclability of the Products…………………………….13

           1. Plaintiff's Claims Pursuant To the CLRA and UCL Unfair and
             Fraudulent Prongs Are Independent From Her Other Claims……..….…13

           2. Defendant's Recyclability Representations Are Likely To Deceive a
             Reasonable Consumer…………………………………………...14

        F. Defendant's Recycling Claim Creates an Express Warranty…………………15

        G. California Recognizes a Cause of Action For Unjust Enrichment……………17

        H. Plaintiff's Claims Do Not Impact Defendant's First Amendment Rights………17

        I. Defendant's Motion to Strike Plaintiff's Class Allegations Is Premature and
          Meritless…………………………………………………………….20

IV. CONCLUSION……………………………………………………………...24

# TABLE OF AUTHORITIES

## CASES

*Acedo v. DMAX, Ltd.*, No. CV-15-02443-MMM (ASx), 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) .......................................................................................................... 16

*Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) .......................................................................................................... 17

*Am. Acad. Of Pain Mgmt. v. Joseph*, 353 F.3d 1099 (9th Cir. 2004) ........................................... 17

*Am. Beverage Ass'n v. City & Cty. of San Francisco*, No. 16-16072, 2019 WL 387114 (9th Cir. Jan. 31, 2019) .................................................................................... 18, 19

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV-15-00153-BRO (SPx), 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ..................................................................... 23

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-HSG, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) .............................................................................................................. 9

*Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ............................................................................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 3, 4, 11

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ......................................... 3, 17

*Barned v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167 (N.D. Cal. 2010) .................................................................................................................. 20

*Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-CV-1804-JAH(DHB), 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ...................................................................................... 15

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) ..................................................................... 14

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ....................................................................... 2, 14

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980) ..................... 17

*CTIA-The Wireless Association v. City of Berkeley*, 854 F.3d 1105 (9th Cir. 2017) ..................... 18

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ......................................... passim

*Fayer v. Vaughn*, 649 F.3d 1061 (9th Cir. 2011) .......................................................... 2, 4, 9, 14

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ...................................................................... 15

*Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ............................................................................................................ 17

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561 (9th Cir. 2008) ....................... 15

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................... 15

*Haley v. Macy's, Inc.*, No. 15-CV-06033-HSG, 2017 WL 6539825 (N.D. Cal. Dec. 21, 2017) ................................................................................................ 4, 9

*Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................... 15

*Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) ................................................ 13

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ................................................. 5

*Hovsepian v. Apple, Inc.,* No. 08-5788-JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ............................................................................................. 23

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010) ............................................................................................... 22

*In re Hulu Privacy Litig.*, No. C-11-03764-LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ......................................................................................................... 22

*In re LinkedIn User Privacy Litig.,* No. 5:12-CV-03088-EJD, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ................................................................................... 7

*In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018) ........................ 16, 20

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .......................................................... 17, 19

*Krommenhock v. Post Foods, LLC*, No. 16-CV-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ........................................................... 11, 17, 19

*Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011) ............................................... passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 5

*Martin v. Tradewinds Beverage Co.*, No. CV-16-9249-PSG (MRW), 2017 WL 6816608 (C.D. Cal. Sept. 5, 2017) ...................................................................... 17

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ..................................... 5

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................... 22

*Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018) .............. 18

*National Institute of Family & Life Advocates v Becerra*, 138 S. Ct. 2361 (2018) .......... 18

*Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...................................................................................... 7

*Ogola v. Chevron Corp.,* No. 14-CV-173-SC, 2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ........................................................................................................... 21

*Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................ 21, 22, 23

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222 (N.D. Cal. 2014) ............................... 17

*Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ............................... 23

*Pinon v. Tristar Prod., Inc.*, No. 1:16-CV-00331-DAD (SAB), 2016 WL 4548766
(E.D. Cal. Sept. 1, 2016) .................................................................... 9, 10

*Rasmussen v. Apple, Inc.*, 27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................ 23

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................... 23

*Shin v. BMW of N. Am.*, No. CV-09-00398-AHM (AJWx), 2009 WL 2163509 (C.D.
Cal. July 16, 2009) ............................................................................ 15

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .................................................................. 4

*Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2019 WL 330911
(N.D. Cal. Jan. 25, 2019) ..................................................................... 21

*Stuart v. Cadbury*, 458 F. App'x 689 (9th Cir. 2011) .......................................................... 15

*Supercargoes & Checkers of Intern. Longshoremen's & Warehousemen's Union*,
543 F.2d 1259 (9th Cir. 1976) ................................................................ 22

*T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal.
Apr. 17, 2018) ................................................................................ 21

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803-EMC, 2014 WL
1048710 (N.D. Cal. Mar. 14, 2014) ...................................................... 21, 23

*Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-CV-03889-JD, 2018 WL
1116715 (N.D. Cal. Mar. 1, 2018) ........................................................... 15

*Williams v. Gerber Prods. Co.*, 552 F. 3d 934 (9th Cir. 2008) ...................................... 5, 6, 12, 14

*Wilson v. Frito-Lay North Am. Inc.*, No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal.
April 1, 2013) ................................................................................. 15

*Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355-JCS, 2013 WL 1632697
(N.D. Cal. Apr. 16, 2013) ..................................................................... 23

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1981) ............................................. 19

## STATUTES

16 C.F.R. § 260.12(a) .......................................................................................... 1

16 C.F.R. § 260.12(b)(1) ................................................................................. 12, 18

16 C.F.R. § 260.12(d) ................................................................................ 6, 12, 14, 18

16 C.F.R. § 260.1(a) .......................................................................................... 18

16 C.F.R. § 260.1(d) ...................................................................................... 13, 18

16 C.F.R. § 260.12(b)(2) ............................................................................... 12, 18, 20

Cal. Business & Prof. Code § 17580.5 ......................................................................................... 1

Cal. Comm. Code § 2316(1) ...................................................................................................... 16

## **RULES**

Fed. R. Civ. P. 12(f) ................................................................................................................ 20

Fed. R. of Civ. P. 23 ................................................................................................................ 4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      <u>INTRODUCTION</u>**

3      "Simply stated: labels matter." *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

4   Defendant Keurig Green Mountain, Inc. ("Defendant") sells single serve coffee pods labeled as

5   recyclable (the "Products"), when, in fact, they are not.  As a result of Defendant's false and

6   misleading statements, consumers such as plaintiff Kathleen Smith ("Plaintiff") were deceived into

7   purchasing products they reasonably believed were recyclable.  By representing that the Products

8   have benefits and characteristics they do not have, Defendant violates California false advertising

9   and express warranty laws.  Defendant's conduct is even more egregious than most false

10   advertising cases because by misrepresenting that the products are recyclable, Defendant is also

11   violating: (1) California's Environmental Marketing Claims Act ("EMCA"), which makes it

12   unlawful to make any untruthful, deceptive or misleading environmental marketing claim, and (2)

13   the Federal Trade Commission's ("FTC") Guides for use of Environmental Marketing Claims (the

14   "Green Guides"), which are incorporated by reference into California law and prohibit

15   misrepresenting that a product or package is recyclable.  Cal. Business & Prof. Code § 17580.5; 16

16   C.F.R. § 260.12(a).  Plaintiff filed this action to stop Defendant's ongoing unlawful conduct and to

17   recover monetary relief in the form of restitution and damages.

18        Defendant's Motion to Dismiss ("MTD") fails with respect to each argument raised.  First,

19   Defendant argues that Plaintiff does not have standing and that the First Amended Complaint

20   ("FAC") is otherwise subject to dismissal since it lacks plausible allegations that the Products are

21   not in fact recyclable.  This argument ignores the detailed allegations in the FAC, describing why

22   materials recovery facilities ("MRFs") in the United States, including those in California (and

23   including in particular the facility that handles recycling in Plaintiff's hometown of Lafayette,

24   California), cannot recycle the Products due to their size, their inevitable contamination with foil

25   and food waste, and the lack of a market to turn them into raw material for reuse in other items.

26   FAC, ¶¶ 2, 22-30.  Defendant's disagreement with the veracity of these allegations – which are

27   presumed true for purposes of the MTD – does not provide a valid ground to dismiss this action.

28

1     Second, Defendant challenges Plaintiff's standing on the ground that any injury suffered by

2    her was not caused by Defendant's conduct but by the decisions of her local recycling facility.

3    Defendant elected to label the Products as recyclable, which in turn led Plaintiff to purchase them

4    and suffer economic injury as a result.  Having lured environmentally-minded consumers like

5    Plaintiff to purchase the Products based on its recyclability representations, Defendant cannot

6    blame MRFs for its decision to falsely advertise the Products as recyclable.

7     Third, Defendant argues that a ruling in Plaintiff's favor will not redress her injury, and that

8    she lacks standing to seek injunctive relief, since she has now been made aware of the fact that the

9    Products are not recyclable as advertised.  MTD, p. 2:21-24.  The Ninth Circuit's rejection of the

10   same argument in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ("*Davidson*

11   *II*"), along with Defendant's admission that the FAC includes the precise allegations the court

12   found sufficient in that case (MTD, p. 10:11-12), disposes of these issues.

13    Fourth, Defendant relies upon the qualification on the label of the Product, "[c]heck locally

14   to recycle empty cup," and on other language on its website to challenge Plaintiff's claims that its

15   labels are deceptive.  MTD, p. 2:25-28.[1]  Defendant's argument ignores the FAC's allegations that

16   the Products are not recyclable anywhere.  *See, e.g.,* FAC, ¶¶ 30, 31 and 38.  Defendant is not

17   entitled to cure a statement of fact that is false everywhere with a qualification that its

18   misrepresentation may not be true everywhere.

19    Defendant's argument also ignores the FAC's allegations detailing why the qualifications

20   upon which Defendant relies do not cure but rather exacerbate its misrepresentations and breach of

21   express warranty.  *See, e.g.,* FAC, ¶¶ 33-36.  For instance, by instructing consumers to "[c]heck

22   locally to recycle empty cup," Defendant creates the false impression that the Products are

23   recyclable everywhere and that a consumer need only check locally to determine how to recycle

24

---

25   [1] Defendant contends that its advertising included the qualification that the Products "are not
26   recycled in all communities."  *See* MTD, p. 1:7, 2:26-27, 3:2-7, 15:3.  Notably, this phrase did not
     appear in the original Complaint, the FAC, or on the packaging of the Products Plaintiff purchased.
27   In fact, Defendant has not identified any source for this language.  Thus, any argument by
     Defendant based on this disclaimer is irrelevant to the MTD and should be disregarded by the
28   Court.  *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*; *see
     also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

1    them.  FAC, ¶ 33.  Moreover, many recycling facilities are operated by private companies that are

2    unwilling to answer detailed consumer inquiries about their recycling capabilities.  FAC, ¶ 34.

3         Fifth, Defendant attacks Plaintiff's unjust enrichment cause of action on the ground that

4    California law does not recognize such a claim.  The Ninth Circuit has ruled otherwise.  *See*

5    *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

6         Sixth, Defendant's First Amendment challenge to the EMCA misses the mark.  Contrary to

7    Defendant's argument, Plaintiff does not seek to require Defendant to make any particular

8    qualification on the label of its Products, nor does Plaintiff challenge Defendant's right to comment

9    on the state of the recycling industry.  In fact, Plaintiff does not seek to compel Defendant to say

10   anything.  Rather, Plaintiff seeks to enjoin Defendant from misrepresenting the characteristics of its

11   Products, and Defendant has no First Amendment right to do so.

12        Finally, the Court should reject Defendant's premature attempt to defeat class certification.

13   This is not one of the exceptional cases in which a court can foreclose the possibility of class

14   certification at the pleadings stage.  Rather, this is a classic case for class treatment as Plaintiff and

15   the class were all injured in the same relatively small way by the same course of conduct.

16                              **II.    FACTS**

17        All of the following facts are presumed true for purposes of the MTD.  *See Ashcroft v.*

18   *Iqbal*, 556 U.S. 662, 678 (2009).  Single serve coffee pods, including those marketed and sold by

19   Defendant, have received extensive criticism for their contribution to the proliferation of plastic

20   waste.  FAC, ¶ 14.  According to online estimates, over 9.7 billion single serve coffee pods were

21   produced by Defendant in 2014 alone.  FAC, ¶ 15.  After consumer backlash, Defendant began

22   marketing and selling some single serve coffee pods as recyclable; the FAC defines these particular

23   items as the "Products."  FAC, ¶¶ 2, 19.

24        Defendant labels the Products as recyclable.  FAC, ¶ 2.  The Products are not recyclable

25   because MRFs in the United States are not properly equipped to capture and segregate such small

26   materials from the general waste stream.  FAC, ¶¶ 2, 22-30.  Exacerbating the problem, by the time

27   the Products reach the sorting line of a typical recycling facility, the Products are likely to be

28   crushed, compacted and mangled.  FAC, ¶ 22.  In addition to these size and sorting issues, the

Products are not recyclable since they are inevitably contaminated with foil and food waste.  FAC, ¶¶ 2, 22-30.  Even in the rare instance where the Products can be segregated and cleaned of any contamination, there is no market to convert them for use in manufacturing or assembling another item.  FAC, ¶¶ 2, 25.  Due to these challenges, the Products cannot be recycled anywhere.  FAC, ¶¶ 30, 31 and 38.

The packaging of Defendant's Products prominently state that consumers can "Have your cup and recycle it, too," in large green font.  FAC, ¶ 19.  Adjacent to that statement on the packaging are instructions for how to recycle the Products, including illustrations with the terms "PEEL," "EMPTY," and "RECYCLE," accompanied by the chasing arrow symbol that is commonly understood to mean that a product is recyclable.  *Id*.  These statements on the packaging of the Products are uniform, consistent and material.  FAC, ¶ 21.

Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23.  FAC, ¶ 41.  The class is defined as "All persons who purchased the Products for personal, family, or household purposes in California (either directly or through an agent) during the applicable statute of limitations period (the 'Class')."

## III.  ARGUMENT

### A.  The Pleading Standard.

To survive a motion to dismiss, the FAC must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In reviewing the plausibility of a complaint, courts must accept the factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.  *Fayer*, 649 F.3d at 1064; *see also Haley v. Macy's, Inc.,* No. 15-CV-06033-HSG, 2017 WL 6539825, at *3 (N.D. Cal. Dec. 21, 2017).  Plaintiff does not need to substantiate her claims at this point in the litigation, and Plaintiff's FAC "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."  *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011).  Furthermore, whether a business practice is deceptive will usually be a question of

1   fact not appropriate for decision on a motion to dismiss.  *Williams v. Gerber Prods. Co.*, 552 F.3d

2   934, 938-939 (9th Cir. 2008) ("the facts of this case . . . do not amount to the rare situation in which

3   granting a motion to dismiss is appropriate.").

4          **B.  Plaintiff Has Standing To Pursue All of Her Claims.**

5          Plaintiff satisfies the three elements of Article III standing: (1) an injury in fact that is

6   concrete and particularized as well as actual or imminent; (2) a causal connection between the

7   injury and the conduct complained of; and (3) likelihood that the injury complained of will be

8   redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561

9   (1992).  Plaintiff has suffered an injury because she purchased a product that she would not have,

10  or paid more for that product than she otherwise would have, because of Defendant's false

11  recyclability representations.  This injury was caused directly by Defendant's false advertising.  A

12  court order in Plaintiff's favor will redress her injury by refunding her money and by prohibiting

13  Defendant from making untruthful claims so that she will not be harmed again.

14          **1.  Plaintiff's Purchase of the Products Is An Injury in Fact.**

15         Consumers who paid more for a product than they otherwise would have, or bought it when

16  they otherwise would not have done so, have suffered an Article III injury in fact.  *Hinojos v.*

17  *Kohl's Corp.*, 718 F.3d 1098, 1104 n. 3 (9th Cir. 2013) (*citing Mazza v. Am. Honda Motor Co.*, 666

18  F.3d 581, 595 (9th Cir. 2012)).  More specifically, a consumer sustains an economic injury that

19  suffices for Article III purposes when "a consumer relies on a product label and challenges a

20  misrepresentation contained therein . . . [and] he or she would not have bought the product but for

21  the misrepresentation."  *Id.* (*citing Kwikset Corp.*, 51 Cal. 4th at 329).  Here, Plaintiff purchased the

22  Products in reliance on Defendant's false representations that the Products are recyclable.  FAC,

23  ¶¶ 4, 6, 37-39.  Plaintiff's purchase meets the standard for an economic injury under the UCL, and

24  there is no doubt that an economic injury is sufficient for Article III standing.  *See Hinojos*, 718

25  F.3d at 1104 n. 3.

26         Defendant argues that Plaintiff fails to allege an injury in fact because Defendant qualifies

27  its recyclability representation with a statement to "check locally" to recycle.  MTD, p. 7:16-20.

28  However, Plaintiff alleges that the Products are not recyclable anywhere.  FAC, ¶¶ 30, 31 and 38.

- 5 -

1   Thus, no qualification could cure the falsity of the recyclability representation.

2          Furthermore, Plaintiff alleges that the label and website qualifications are both deceptive

3   and misleading.  The label statement "check locally to recycle empty cup" does not signify that the

4   Products cannot be recycled in all communities; instead, a reasonable consumer is likely to believe

5   that the Products are recyclable, and that he or she need only check locally to find out how to

6   recycle them.  FAC, ¶ 33.  In fact, the Green Guides specifically state that this type of qualification

7   is deceptive to a reasonable consumer because it does not disclose the limited availability of

8   recycling facilities that can recycle the Products.  16 C.F.R. § 260.12(d), Example 4.  Worse yet,

9   even if a consumer followed Defendant's directive to check locally, many recycling facilities

10  (which are often operated by private companies) have no duty to provide such information and are

11  unwilling to answer detailed consumer inquiries about their recycling capabilities.  FAC, ¶ 34.

12         Defendant's admonition on its website instructing consumers to check with their local

13  community to confirm whether "polypropylene (#5) is currently accepted for recycling" is even

14  more egregious.  MTD, p. 7:16-20.  As an initial matter, Plaintiff is not required to peruse

15  Defendant's website to determine the veracity of a label statement.  *See Gerber Prods.,* 552 F.3d at

16  939.  In any event, checking to see whether polypropylene (#5) is accepted for recycling will not

17  cure the misrepresentation because Plaintiff does not challenge the recyclability of #5 plastic

18  generally.  Rather, as alleged in the FAC, the Products cannot be recycled due to their size,

19  contamination, and lack of a market for such small and contaminated pieces of #5 plastic.  FAC,

20  ¶¶ 22-31.  Thus, a consumer who follows Defendant's website directive to check whether #5 plastic

21  is recycled in his or her community will essentially be asking the wrong question, and a favorable

22  response from the locality (assuming any answer is given) will not mean that the Products

23  themselves are recyclable.  FAC, ¶ 36.

24         Defendant also argues that Plaintiff makes no plausible allegation that the Products are not

25  recyclable because Plaintiff does not distinguish between the Products and all other single serve

26  coffee pods.  MTD, p. 8:1-12.  To the contrary, the FAC defines the term "Products" to mean single

27  serve coffee pods sold by Defendant that are labeled as "recyclable."  FAC, ¶ 2.  Thus, all of the

28  allegations in the FAC directed to the Products are by definition limited to single serve coffee pods

labeled as recyclable.

In addition, Defendant mischaracterizes Plaintiff's allegations in the FAC with respect to California localities that urge consumers to place single serve coffee pods in the trash. *See* MTD, p. 7:26-8:6. The list in ¶ 28 of the FAC identifies California localities that do not recycle single serve coffee pods, regardless and without mention of labeling claims as to recyclability. This list includes large cities such as Los Angeles and Sacramento, and entire counties such as El Dorado, Monterey, and Shasta Counties. *Id.* However, the localities identified in ¶ 29 of the FAC specifically state that single serve coffee pods labeled as recyclable (*e.g.*, the Products) are not recyclable due to their size and should be placed in the trash.[2] This list also includes entire counties, such as Lake County and San Luis Obispo County. *Id.* Thus, Plaintiff distinguished the Products from single serve coffee pods that are not labeled as recyclable, and pled with more than sufficient detail that the Products are not recyclable in any community. FAC, ¶¶ 22-31, 38.

### 2. Plaintiff's Injury Is Directly Traceable to Defendant's Misrepresentations That the Products Are Recyclable.

For purposes of Article III's causation requirement, a plaintiff in a false advertising case "may establish that the defendant's misrepresentation is an immediate cause of the Plaintiff's conduct by showing that in its absence, the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Ogden v. Bumble Bee Foods, LLC,* No. 5:12-CV-01828-LHK, 2014 WL 27527, at *7 (N.D. Cal. Jan. 2, 2014); *see also In re LinkedIn User Privacy Litig.,* No. 5:12-CV-03088-EJD, 2014 WL 1323713, at *6 (N.D. Cal. Mar. 28, 2014) (holding that plaintiff's injuries were fairly traceable to defendant because defendant made the misrepresentation). Here, Plaintiff's injury of purchasing the Products was directly caused by Defendant's decision to label them as recyclable.

Defendant argues that Plaintiff's injury is not traceable to its conduct because it is based on decisions made by local recycling facilities. MTD, p. 8:13-19. However, the gravamen of this case

---

[2] Defendant's contention that the websites are a reproduced webpage of a blog post is confounding. *See* MTD, p. 8 n. 6. "Recyclist" is a website developer that allows individual cities or counties to create websites specific to their needs, which is why each website contains different information regarding a myriad of recycling issues.

1    is whether Defendant's representations that the Products are recyclable are false or misleading.

2    Given that Defendant is the entity that makes the recyclability representations to take advantage of

3    consumers' concerns with respect to the environmental consequences caused by such products

4    (*e.g.*, FAC, ¶ 19), and that Plaintiff relied on such representations (*e.g.*, FAC, ¶¶ 4, 6, 37-39),

5    Plaintiff's injury is directly traceable to Defendant's conduct.[3]

6            **3.   Plaintiff's Injury Will Be Redressed By a Favorable Decision Because Damages
              Will Make Her Whole and an Injunction Will Prohibit Defendant From Injuring
7             Her In the Future.**

8            Plaintiff's injury will be redressed by a favorable ruling.  Since Plaintiff would not have

9    purchased the Products but for Defendant's false representations, damages or restitution will make

10   her whole.  Likewise, because Plaintiff is still interested in purchasing single serve coffee pods that

11   are recyclable, an injunction will prevent Defendant from using misleading statements that could

12   injure her in the future.  *See* FAC, ¶ 39; *see also Davidson II*, 889 F.3d at 972 (an injunction

13   preventing defendant from making false representations would redress plaintiff's injury because it

14   would require defendant to "only make truthful representations on their [products] upon which

15   [plaintiff] could reasonably rely.").

16           Defendant contends that Plaintiff will be no better off if she prevails because she will still

17   be faced with the alternative of using the Products or non-recyclable single serve coffee pods.

18   MTD, p. 9:6-10.  Defendant's argument ignores Plaintiff's allegations that there is no practical

19   difference from a recycling standpoint between the Products and non-recyclable single serve coffee

20   pods; neither can be recycled.  FAC, ¶¶ 25, 30-31, 38.  An injunction in Plaintiff's favor, however,

21   will ensure that in the future she can rely upon any recycling representations made by Defendant as

22   truthful and not misleading.

23           Defendant's argument is also based on the false premise that the only way to brew coffee at

24   home is with single serve coffee pods.  MTD, p. 9:5-6.  The FAC clearly alleged that if Plaintiff

25   had known that the Products were not recyclable, she "would have instead sought out single serve

26   pods *or other coffee products* that are otherwise compostable, recyclable or reusable."  FAC, ¶ 4

27   ───────────────
     [3] Defendant's citation to *Lujan* is inapposite; in that case the plaintiff was challenging a

28   government regulation that regulated someone other than plaintiff.  Here, Plaintiff is directly
     challenging Defendant's misleading labels.

1   (emphasis added).  Plaintiff does not deny that single serve coffee pods are convenient; however,

2   she would only purchase such a product at the price Defendant charged if the product was

3   recyclable or compostable.  *Id.*

4          Finally, Defendant challenges redressability based on its argument that there is no price

5   premium for the Products.  Plaintiff's allegation that she would not have paid as much as she did if

6   she knew the Products could not be recycled disposes of this argument.  FAC, ¶¶ 4, 6, 38; *see also*

7   *Kwikset Corp.*, 51 Cal. 4th at 330 ("For each consumer who relies on the truth and accuracy of a

8   label and is deceived by misrepresentation into making a purchase, the economic harm is the same:

9   the consumer has purchased a product that he or she paid more for than he or she otherwise might

10  have been willing to pay if the product had been labeled accurately.").  For Plaintiff, there was a

11  price premium associated with the Products since she would not have paid as much as she did had

12  she known they were not recyclable.  Defendant's argument to the contrary fails as an improper

13  attempt to resolve factual disputes at the motion to dismiss stage.[4]  *See Fayer*, 649 F.3d at 1064.

14          **C.  Plaintiff Has Standing To Pursue Injunctive Relief.**

15          Defendant's argument that Plaintiff does not have standing to pursue injunctive relief

16  because she now knows the falsity of Defendant's recycling representations is based on a strained

17  reading of the Ninth Circuit's decision in *Davidson II.  See Davidson II*, 889 F.3d at 969-970, *cert.*

18  *denied*, 139 S. Ct. 640 (2018); *see also Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-HSG,

19  2018 WL 4181896, at *10 (N.D. Cal. Aug. 31, 2018) (holding plaintiff has standing because

20  plaintiff alleged "but for the alleged mislabeling, he would buy the products in the future."); *Haley,*

21  2017 WL 6539825, at *3.[5]  Because Plaintiff alleges that she continues to desire to purchase

---

[4] For instance, Defendant's contention that the Products are priced the same as conventional single
serve coffee pods is based on a reference to a webpage that is not cited in the FAC.  MTD, p. 9:15-
16.  As explained in Plaintiff's Opposition to Defendant's Request for Judicial Notice, the Court
cannot consider this isolated evidence at the motion to dismiss stage.  *Branch*, 14 F.3d at 453 (as a
general rule a court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6)
motion).

[5] Keurig cites *Pinon v. Tristar Prod., Inc.*, No. 1:16-CV-00331-DAD (SAB), 2016 WL 4548766, at
*1 (E.D. Cal. Sept. 1, 2016) for the proposition that a plaintiff aware of the deception is not likely
to be misled again.  MTD, p. 9:26-10:2.  However, that case was decided before *Davidson II*, and
the court there still ruled that that plaintiff had standing for injunctive relief.  *Pinon*, 2016 WL
4548766, at *2.

1 recyclable single serve coffee pods, and would purchase such products from Defendant in the

2 future if she could rely on Defendant's representations with confidence, Plaintiff may seek

3 injunctive relief to prohibit Defendant from mislabeling its Products. *See* FAC, ¶ 39.

4       Defendant correctly admits that the FAC includes the allegations required by *Davidson II* to

5 establish standing to pursue injunctive relief. *See* MTD, p. 10:11-12. This admission alone is fatal

6 to Defendant's argument.

7       In any event, Defendant's attempts to distinguish *Davidson II* from this case fail.

8 According to Defendant, this case is different than *Davidson II* because Plaintiff can determine

9 whether the Products are recyclable in the future since the size of the Products is apparent and since

10 she can contact her local MRF to learn about its recycling capabilities for small items like the

11 Products. MTD, p. 11:8-13. Defendant's argument ignores that: (1) the plaintiff in *Davidson II*

12 could also tell whether the wipes at issue there were truly flushable by observing whether the items

13 dispersed or disintegrated in the toilet bowl (*Davidson II*, 889 F.3d at 971); (2) the FAC alleges that

14 the Products are likely to be crushed, compacted and mangled by the time they reach a MRF,

15 making it impossible for Plaintiff and consumers to know the ultimate size and shape of the

16 Products (FAC, ¶ 22); (3) the FAC alleges that many MRFs (which are often operated by private

17 entities) are unwilling to answer detailed inquiries about their recycling capabilities, making it

18 difficult or impossible for Plaintiff and consumers to discern whether the Products can be recycled

19 by their local facility (FAC, ¶ 34); and (4) Plaintiff alleges that the Products are not recyclable for

20 reasons that have nothing to do with their size (*i.e.,* their contamination and the lack of a market to

21 convert them into other items) (FAC, ¶¶ 2, 22-31).

22       Contrary to Defendant's interpretation, the central issue under *Davidson II* is whether

23 plaintiff will continue to suffer harm as a result of "her inability to rely upon the validity of the

24 information" presented on a product label. *Davidson II*, 889 F.3d at 971. Here, it is not Plaintiff's

25 duty to determine whether recycling facilities can recycle the Products, but Defendant's duty to

26 properly label its Products. By way of analogy, a consumer seeking a kosher product should be

27 able to trust the label; it is the manufacturer's duty to label the product properly, not the consumer's

28 duty to determine whether the farmer and butcher are following kashrut. *See, e.g., Kwikset*, 51 Cal.

4th at 328-332.  Simply put, a consumer is entitled to rely on a product's label claims.

Defendant's argument is also based on the mistaken premise that, since Defendant has no control over recycling facilities, and since it is the recycling facilities that cannot recycle the Products, the only "variable subject to change is wholly outside Defendant's control."  MTD, p. 11:13-14.  However, Defendant controls the labeling of the Products and there are other ways to recycle them without relying on recycling facilities (such as Defendant recycling its own products).

The injunctive relief that Plaintiff seeks would prohibit Defendant from falsely representing the qualities of its Products.  *See* FAC Prayer for Relief, ¶ D.  Should the Products become recyclable, such as by Defendant recycling its own Products or by recycling facilities improving their processes to convert the Products into reusable material, Defendant could then label its Products as recyclable and Plaintiff could rely on such labels with confidence.  *Davidson II*, 889 F.3d at 969-970.  Plaintiff therefore has standing to seek injunctive relief.

### D.  Plaintiff's Claims that the Products Are Deceptively Labeled As Recyclable Are Actionable.

Plaintiff properly alleges that Defendant's marketing, labeling and advertising of the Products are false and misleading.  Defendant's arguments to the contrary amount to an improper attempt to force Plaintiff to prove her claims at the motion to dismiss stage.  *See Krommenhock v. Post Foods, LLC,* No. 16-CV-04958-WHO, 2018 WL 1335867, at *4 (N.D. Cal. Mar. 15, 2018) (plaintiff does not have the burden to prove his or her false advertising claims at the pleading stage).

Defendant argues that Plaintiff does not provide a "source," "specific data," "particular percentages," "particular geography," or other support for her allegations, and thus characterizes her assertions as "naked" under *Iqbal*.  MTD, p. 12:1-7.  However, the Supreme Court's admonition against "naked assertions" in *Iqbal* refers to formulaic recitations of the elements of a cause of action.  *Iqbal*, 556 U.S. at 678.  Here, Plaintiff alleges how the Products are mislabeled as recyclable with ample specific factual details and examples to support her claims.  *See* FAC, ¶¶ 2, 22-30.  Plaintiff is not required to allege specific sources, data, or percentages as Defendant proposes.

1    Defendant further argues that its recyclable claims are not deceptive because they are

2    qualified in compliance with the Green Guides.  MTD, p. 12:8-9.  However, Plaintiff alleges that

3    the Products are not recyclable anywhere.  FAC, ¶¶ 30, 31 and 38.  Therefore, Defendant cannot

4    cure its false representation with any qualification.

5        The FAC pleads in the alternative that, to the extent the Products can be recycled at all,

6    there are very few facilities capable of doing so.  FAC, ¶ 32.  Under the Green Guides, marketers

7    should use qualifications that vary in strength depending on the availability of recycling facilities

8    that can recycle the Products.  16 C.F.R. § 260.12(b)(2).[6]  Because of the extremely limited

9    availability of recycling facilities capable of recycling the Products (to the extent any exist at all),

10   Defendant should make a particularly strong qualification to comply with the Green Guides.

11       Defendant's only qualification on the label is its statement to "check locally to recycle

12   empty cup."  As alleged in the FAC, this statement fails to comply with the Green Guides since it

13   does not adequately disclose to consumers the extremely limited chance the Products will

14   ultimately be recycled.  FAC, ¶ 33; *see also* 16 C.F.R. § 260.12(d), Example 4.  In fact, the labeling

15   qualification exacerbates the deceptiveness of the misrepresentation because it suggests that the

16   Products are recyclable everywhere, and that a consumer need only check locally to find out how to

17   recycle them.  FAC, ¶ 33.  It is also unlikely that a consumer could obtain such information even if

18   he or she did check locally since many recycling facilities are operated by private companies that

19   are unwilling to provide such information.  FAC, ¶ 34.

20       Defendant also points to language on its website stating "[w]e recommend checking with

21   your local municipality or waste hauler to determine if your community recycles #5 plastic."  Of

22   course, any qualification on Defendant's website does no good for consumers who rely on the

23   Product packaging and do not peruse the "FAQs" on Defendant's website.  *See Gerber Prods.*, 552

24   F.3d at 939; *see also* FAC, ¶ 36.  In any event, the website qualification is even more egregious

---

[6] Pursuant to the Green Guides, a marketer should only make an unqualified recyclable claim if 60 percent of consumers or communities have access to recycling facilities capable of recycling the items.  16 C.F.R. § 260.12(b)(1).  Defendant argues that Plaintiff fails to allege that the Products cannot be recycled in at least 60 percent of the communities where they are sold.  MTD, p. 12:20-26.  This argument ignores the FAC's allegation that the Products cannot be recycled in any communities.  FAC, ¶¶ 30, 31 and 38.

than the label language because it suggests that if #5 plastic is recyclable, then the Products are recyclable, regardless of their size, contamination and lack of a market for them to be recycled. FAC, ¶ 36.

In sum, Plaintiff properly alleges that Defendant cannot make any recyclability claims because the Products are not recyclable, and that Defendant's qualifications are ineffective.

### E. A Reasonable Consumer Would Be Deceived By Defendant's Representation Regarding the Recyclability of the Products.

#### 1. Plaintiff's Claims Pursuant To the CLRA and UCL Unfair and Fraudulent Prongs Are Independent From Her Other Claims.

Plaintiff's claims brought pursuant to the CLRA and the UCL unfair and fraudulent prongs are independently actionable and properly pled.  Defendant argues that it is insufficient to simply cite to the definition of "deceptive" in the Green Guides to claim that the Products are not recyclable, but Plaintiff's claims are not so limited.  MTD, p. 13:14-17.  Plaintiff refers to examples in the Green Guides because they are specifically provided by the FTC as its "views on how reasonable consumers likely interpret certain claims."  16 C.F.R. § 260.1(d).  Plaintiff also relies on the dictionary definition of "recycle" in conjunction with the Green Guides to point out that Defendant's representations are untrue, deceptive and misleading under the CLRA and UCL.  FAC, ¶¶ 18, 27, 35.

Defendant relies on a single case, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (Ct. App. 2011), to argue that Plaintiff's CLRA and UCL claims are not sufficiently independent of the EMCA and the Green Guides.  MTD, p. 13:17-14:12.  In *Hill*, the court effectively determined that no reasonable consumer would be duped into believing that a green water drop symbol on a water bottle means that the water contained therein is environmentally superior to other waters.  *Hill*, 195 Cal. App. 4th at 1304.  Notably, in reaching this conclusion the Court did not find the need to differentiate between the Green Guides and California consumer protection laws as both apply the same reasonable consumer standard.  *Id.*  Here, by contrast, it requires no stretch of the imagination to conclude that reasonable consumers believe that a product labeled as recyclable will in fact be recyclable.

**2. Defendant's Recyclability Representations Are Likely To Deceive a Reasonable Consumer.**

Under the reasonable consumer standard, the California Supreme Court has recognized that the CLRA and UCL not only prohibit "advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Gerber Prods.,* 552 F.3d at 938-939.  Courts routinely hold that ambiguous or hidden qualifiers cannot ameliorate a tendency of the label to mislead and consumers should not have to take action to determine the veracity of a representation. *Id.* at 939 (holding that consumers need not refer to the back label to substantiate claims on the front label); *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167-1168 (Ct. App. 2018).  Here, a reasonable consumer would believe that the term "RECYCLE," along with the statement "Have your cup and recycle it, too," means that the Products can be recycled. FAC, ¶¶ 18, 27, 35.

Defendant contends that Plaintiff's claims fail under the reasonable consumer standard for several reasons (MTD, p. 14:28), but Defendant essentially just provides the same arguments with respect to its qualification, discussed above. *See* Sections III. B.1 and III.D, *supra*.  This argument once again fails because:

- The Products cannot be recycled anywhere, so no qualification can cure the deceptiveness of the representation;

- Defendant's admonition on the label to "check locally to recycle empty cup" will be interpreted by a reasonable consumer to mean that the Products are recyclable everywhere, and that he or she need only check locally to find out how to recycle them;

- A consumer who does check locally is unlikely to receive an answer because many recycling facilities are operated by private companies that have no duty to disclose their recycling capabilities and are unwilling to provide such information;

- The Green Guides specifically recognize that the type of qualification used by Defendant is deceptive to a reasonable consumer because it does not adequately disclose the limited availability of recycling facilities (16 C.F.R. § 260.12(d), Example 4);

- Any website qualifications are ineffective to cure Defendant's front label misrepresentations as consumers are not required to peruse a company's website to verify the truth of its label claims (*see Gerber Prods.,* 552 F.3d at 938-939; *see also Brady*, 26 Cal. App. 5th at 1167-1168); and

- The statement "[n]ot recyclable in all communities" relied upon by Defendant without any factual support did not appear in the original Complaint, the FAC, or on the packaging of the Products Plaintiff purchased and is thus irrelevant and improper for consideration at the motion to dismiss stage (*see Branch,* 14 F.3d at 453; *see also Fayer*, 649 F.3d at 1064).

Defendant relies on several cases to support its argument that its recyclable representations could not deceive reasonable consumers. *See* MTD, p. 15:4-22. However, in each of those cases the court could determine from the face of the Complaint and the advertisements themselves that no reasonable consumer could possibly be deceived. For instance, in both *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) and *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561, 563 (9th Cir. 2008), the court noted that the allegedly omitted information was provided to the plaintiff. *See Shin v. BMW of N. Am.,* No. CV-09-00398-AHM (AJWx), 2009 WL 2163509, at *1 (C.D. Cal. July 16, 2009) ("In both [*Freeman*] and [*Girard*], the defendants' advertisements disclosed precisely the information that the plaintiffs alleged were not adequately disclosed."); *see also Stuart v. Cadbury*, 458 F. App'x 689, 690-91 (9th Cir. 2011) (no reasonable consumer would believe gum alone, without oral hygiene, would whiten teeth); *Barrett v. Milwaukee Elec. Tool, Inc.,* No. 14-CV-1804-JAH(DHB), 2016 WL 4595947, at *4 (S.D. Cal. Jan. 26, 2016) (no reasonable consumer would believe metal could be handmade).

Here, by contrast, it is plain that a reasonable consumer would believe that the Products are recyclable. Thus, Defendant's label qualification does not cure its misrepresentation. *See Wilson v. Frito-Lay North Am. Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *12 (N.D. Cal. April 1, 2013) ("made with…" qualifier not sufficient to qualify to a reasonable consumer that the product contained non-natural ingredients); *see also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1172-1173 (E.D. Cal. 2013) ("up to…" qualifications could mislead reasonable consumers because it creates an expectation, and thus even if true, it could still have the tendency to mislead").

### F. Defendant's Recycling Claim Creates an Express Warranty.

An express warranty claim must allege: (1) the exact terms of the warranty; (2) Plaintiff's reasonable reliance thereon; and (3) breach of that warranty which proximately caused plaintiff's injury. *Van Mourik v. Big Heart Pet Brands, Inc.,* No. 3:17-CV-03889-JD, 2018 WL 1116715, at *4 (N.D. Cal. Mar. 1, 2018). To satisfy the first element, plaintiff must identify a specific and unequivocal statement about the product. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017). Defendant's label statement that consumers can "Have your cup and recycle it, too" and use of the term "RECYCLE" are specific and unequivocal statements that the Products are

1   recyclable.  FAC, ¶ 19.  Plaintiff relied on such representations and Defendant breached its

2   warranty because the Products are not recyclable.

3       Defendant argues that qualifying language used on the packaging of the Products is

4   sufficient to negate any breach of express warranty claims.  MTD, p. 16:13-25.  As an initial

5   matter, Defendant mischaracterizes the packaging.  The labels on the Products purchased by

6   Plaintiff do not say "not recycled by all communities," nor is there a directive that the consumer

7   "check the capabilities" of local recycling facilities.  MTD, p. 16:8-12.  The only qualifying

8   language says "check locally to recycle empty cup," which merely directs consumers to determine

9   how to recycle the Products in their locality, not whether they are recyclable.  FAC, ¶ 33.

10      In any event, while the California Commercial Code does allow for qualifying language to

11  negate or limit an express warranty, any such "negation or limitation is inoperative to the extent

12  that such construction is unreasonable."  Cal. Comm. Code § 2316(1); *see also In re Nexus 6p*

13  *Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 941 (N.D. Cal. 2018) (holding that plaintiffs can move

14  forward with their express warranty claims despite a disclaimer).[7]  Here, construing the language

15  "check locally to recycle empty cup" to mean that a consumer should determine how to recycle the

16  Products, instead of whether the Products are recyclable, is both reasonable and consistent with the

17  express warranty.  It would be unreasonable to construe such language to mean that the Products

18  are not recyclable at all, or that they are only recyclable in a limited number of communities.

19      The cases relied upon by Defendant are distinguishable as the disclaimers at issue in those

20  cases were sufficiently clear to negate any express warranty.  *See* MTD, p. 16:21-24.  For instance,

21  in *Acedo v. DMAX, Ltd.,* No. CV-15-02443-MMM (ASx), 2015 WL 12696176, at *12 (C.D. Cal.

22  Nov. 13, 2015), the court ruled that there was no express warranty that a car could drive 680 miles

23  on a single fill-up because the statement at issue said that the product offered a "maximum highway

24  range of up to 680 miles" and "may be less" than the EPA mileage estimate.  *Id*.  Thus, the court

25  determined that it was unreasonable for the plaintiff to believe he could drive the maximum range.

26  *Id*.  Here, by contrast, the statement "check locally to recycle empty cup" does not suggest that the

---

[7] This case is subsequent history to the one cited by Defendant: *In re Nexus 6p Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017).

1   Products may not be recyclable, nor does it suggest that the Products are only recyclable in a

2   limited number of communities.  *See Arroyo v. TP-Link USA Corp.,* No. 5:14-CV-04999-EJD,

3   2015 WL 5698752, at *10 (N.D. Cal. Sept. 29, 2015) (ruling that the statement "up to" 500 Mbps

4   could not be construed to mean that the products were not capable of reaching 500 Mbps).[8]

5          In sum, Defendant's unequivocal statement that the Products can be recycled creates an

6   express warranty, and the label statement to "check locally" does not disclaim that warranty.

7          **G.  California Recognizes a Cause of Action For Unjust Enrichment.**

8          Defendant is incorrect that California does not recognize a standalone claim for "unjust

9   enrichment" in a false or misleading advertising or labeling action.  When a plaintiff is enticed to

10  purchase products through false or misleading labeling and a defendant is unjustly enriched as a

11  result, the court may construe such a claim as an actionable quasi-contract cause of action.  *Astiana*,

12  783 F.3d at 762; *see also Allen v. ConAgra Foods, Inc.,* No. 3:13-CV-01279-WHO, 2018 WL

13  6460451, at *11 (N.D. Cal. Dec. 10, 2018); *Gasser v. Kiss My Face, LLC,* No. 17-CV-01675-JSC,

14  2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017).  Here, Plaintiff alleges that she purchased the

15  Products based on Defendant's false representations that they are recyclable and Defendant

16  unjustly retained the benefits of such purchases.  FAC, ¶¶ 91-99.  Thus, Plaintiff has adequately

17  stated a claim for unjust enrichment.

18         **H.  Plaintiff's Claims Do Not Impact Defendant's First Amendment Rights.**

19         Misleading commercial speech is not protected by the First Amendment.  *Central Hudson*

20  *Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563. (1980); *Am. Acad. Of Pain Mgmt.*

21  *v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004); *Martin v. Tradewinds Beverage Co.,* No. CV-16-

22  9249-PSG (MRW), 2017 WL 6816608, at *6 (C.D. Cal. Sept. 5, 2017); *Perkins v. LinkedIn Corp.*,

23  53 F. Supp. 3d 1222, 1252 (N.D. Cal. 2014); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953 (2002).

24  Because Plaintiff plausibly alleges that Defendant deceptively labeled the Products as recyclable,

25  the Court need not analyze Defendant's First Amendment defense further at the motion to dismiss

26  stage.  *See Krommenhock*, 2018 WL 1335867, at *4.

27
─────────────────────
[8] Defendant's citation to *U.S Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (Ct.
28  App. 1991) is equally unavailing.  That court determined that it was not unconscionable to
explicitly disclaim all warranties, which is not the issue here.

In any event, Defendant's First Amendment defense fails on the merits.  Defendant argues that Plaintiff's invocation of the Green Guides, which is incorporated into California law by the EMCA, compels specific qualifying language in violation of Defendant's First Amendment rights. MTD, p. 18:13-19:4.  However, as Defendant acknowledges, the Green Guides do not mandate specific language.  *See* 16 C.F.R. § 260.12(b)(1)-(2); *see also* FAC, ¶¶ 31-33; MTD, p. 12:19, 21:7-9.  Nor is Plaintiff seeking any particular qualifying language.  Rather, the FAC merely seeks an injunction prohibiting Defendant from making any false or misleading representations about the recyclability of the Products.  FAC Prayer for Relief, ¶ D.  Thus, Plaintiff is not seeking to compel any speech by Defendant.

In this way, this case is distinguishable from the cases relied upon by Defendant because each of those cases involved a situation where commercial speech was compelled.  *See Am. Beverage Ass'n v. City & Cty. of San Francisco,* No. 16-16072, 2019 WL 387114 (9th Cir. Jan. 31, 2019) (San Francisco ordinance requiring soda manufacturers to display sugar warning on products); *see also National Institute of Family & Life Advocates v Becerra*, 138 S. Ct. 2361 (2018) (California law requiring health clinics to notify women about abortions); *CTIA-The Wireless Association v. City of Berkeley*, 854 F.3d 1105 (9th Cir. 2017) (Berkeley ordinance requiring cell phone retailers to inform customers that carrying a cell phone may expose them to radio-frequency radiation); *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018) (lawsuit seeking to compel manufacturers of herbicide to display chemical warnings on products).  Unlike those cases, Plaintiff simply seeks to enjoin Defendant from misrepresenting the characteristics of its Products.

Defendant is also incorrect that the Green Guides compel commercial speech.  The Green Guides merely provide advice to marketers to avoid making environmental marketing claims that are unfair or deceptive to a reasonable consumer.  16 C.F.R. § 260.1(a), (d).  To prevent such deception, the Green Guides recommend that marketers "should qualify all recyclable claims" when recycling facilities capable of recycling the Products are not available to 60 percent of consumers or communities where the items are sold.  *Id*. § 260.12(b)(2).  The Green Guides then provide examples of qualifications that the FTC has determined are deceptive.  *Id*. § 260.12(d),

1  Example 4.  Thus, instead of mandating specific language, the Green Guides highlight language

2  that is likely to be deceptive and should therefore be avoided.

3      Defendant further argues that Plaintiff invokes the Green Guides to compel Defendant to

4  make statements about the state of the recycling industry.  MTD, p. 19:21-20:2.  To the contrary,

5  Plaintiff's claims are limited to challenging Defendant's misrepresentations about the Products.

6  *See*, *e.g.*, FAC, ¶ 31.  Even if Plaintiff prevails and the Court enjoins Defendant from

7  misrepresenting the recyclability of the Products, Defendant remains free to comment in any form

8  as to the state of the recycling industry generally.

9      Defendant's attempt to profit from a Product labeled as recyclable is no different than a

10  company attempting to profit from a product labeled as healthy or "Made in U.S.A."  *See*, *e.g.*,

11  *Krommenhock*, 2018 WL 1335867, at *4; *see also*, *e.g.*, *Kwikset*, 51 Cal. 4th at 328-332.  In each

12  situation, the marketer is likely to have better information with respect to its own products than

13  consumers.  *See*, *e.g.*, *Kasky*, 27 Cal. 4th at 962 ("[W]hen a speaker promotes its own products, it is

14  less necessary to tolerate inaccurate statements for fear of silencing the speaker because the

15  described speech is both more easily verifiable by its disseminator and less likely to be chilled by

16  proper regulation.") (quotations omitted).  In each case, there is no First Amendment problem with

17  prohibiting misleading advertising.

18      Because Plaintiff is not seeking to compel speech (*see*, *e.g.*, FAC Prayer for Relief, ¶ D), it

19  is unnecessary for the Court to determine the level of scrutiny that applies to compelled commercial

20  speech.  Nonetheless, the Ninth Circuit recently made it clear that the more deferential test

21  elaborated in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1981) is the correct

22  test for analyzing such speech.  *Am. Beverage Ass'n,* 2019 WL 387114, at *4.  Under that test, the

23  government may compel speech that is: (1) purely factual; (2) noncontroversial; and (3) not

24  unjustified or unduly burdensome.  *Id*.  Defendant ignores the first two prongs and contends only

25  that the application of the Green Guides to Defendant through the EMCA is unduly burdensome.

26      First, Defendant argues that the recommendations contained in the Green Guides are

27  onerous because they would require Defendant to determine the percentage of recycling facilities

28  that can recycle the Products.  MTD, p. 21:3-18.  However, the Green Guides do not require

- 19 -

1    Defendant to make such precise calculations.  Rather, if Defendant wants to avoid making a

2    deceptive claim as to the recyclability of its Products, the Green Guides recommend that at a

3    minimum Defendant should inform consumers about the severe lack of recycling facilities capable

4    of recycling the Products.  16 C.F.R. § 260.12(b)(2).

5         Second, Defendant argues that a qualification required by the Green Guides may be over-

6    inclusive and under-inclusive owing to differing recycling capabilities in different localities.  MTD,

7    p. 21:12-18.  However, the examples set forth in the Green Guides only recommend disclosing

8    pertinent information so that a reasonable consumer is not deceived.  For example, the qualification

9    "this product [package] is recyclable only in the few communities that have appropriate recycling

10   facilities" (16 C.F.R § 260.12(b)(2)), does not communicate one way or another whether the

11   Products are recyclable in a particular consumer's community.  However, it does disclose the

12   limited availability of recycling facilities, thereby placing consumers on alert that the Products are

13   unlikely to be recyclable in their community.  Thus, the recommendations in the Green Guides are

14   not unduly burdensome.

15        In sum, Defendant's First Amendment defense fails because Plaintiff seeks only to enjoin

16   Defendant's deceptive labeling, the Green Guides do not mandate or compel commercial speech,

17   and the recommendations in the Green Guides are not unduly burdensome.

18   **I.   Defendant's Motion to Strike Plaintiff's Class Allegations Is Premature and
          Meritless.**

19

20        Defendant's attempt to strike Plaintiff's class allegations is premature and lacks merit.

21   Under Fed. R. Civ. P. 12(f), a Court may strike from a pleading any "redundant, immaterial,

22   impertinent or scandalous matter."  Such motions are generally disfavored as potential delaying

23   tactics and because of the strong policy favoring resolution on the merits.  *See In re Nexus 6P*

24   *Prods. Liab. Litig.*, 293 F. Supp. 3d at 906-907 (*citing Barned v. AT&T Pension Ben. Plan-*

25   *Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010)).  In the Northern District,

26   there is a split as to whether a motion to strike class action allegations may even be entertained at

27   the motion to dismiss stage.  *Id.* (*citing Ogola v. Chevron Corp.,* No. 14-CV-173-SC, 2014 WL

28   4145408, at *1 (N.D. Cal. Aug. 21, 2014)); *see also Tasion Commc'ns, Inc. v. Ubiquiti Networks,*

1   *Inc.,* No. C-13-1803-EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) ("motions to strike

2   are not the proper vehicle for seeking dismissal of class allegations.").  And even when courts are

3   willing to entertain such a motion at this stage, they have applied a very strict standard: the court

4   may only strike the class allegations if it is "convinced that any questions of law are clear and not

5   in dispute, and that under no circumstances could the claim or defense succeed."  *Id.*

6        The FAC defines the class as "[a]ll persons who purchased the Products for personal, family

7   or household purposes in California (either directly or through an agent) during the applicable

8   statute of limitations period."  FAC, ¶ 41.  As alleged in the FAC, there are questions of both law

9   and fact that are common to the proposed Class, such as whether Defendant's labels,

10  advertisements and packaging include uniform misrepresentations that misled Plaintiff and other

11  members of the Class to believe the Products are recyclable when they are not.  FAC, ¶ 43.  Thus,

12  this is not one of the rare and exceptional cases in which class allegations should be stricken at the

13  motion to dismiss stage.  *See Ogola*, 2014 WL 4145408, at *6*; see also T. K. v. Adobe Sys. Inc.,*

14  No. 17-CV-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) (declining to address

15  challenges to a putative class's ability to satisfy Rule 23 at the pleading stage); *Stiner v. Brookdale*

16  *Senior Living, Inc.,* No. 17-CV-03962-HSG, 2019 WL 330911, at *12 (N.D. Cal. Jan. 25, 2019)

17  (stating that class allegations typically are tested on a motion for class certification, not at the

18  pleading stage, and ruling that each contention raises factual issues that the court cannot decide at

19  the pleading stage).  To the contrary, this is a classic case for class treatment since all class

20  members are injured in the same way in relatively small amounts by the same course of conduct.

21  Absent class treatment, Plaintiff and the Class are unlikely to have the means or incentive to seek

22  relief for Defendant's false advertising.

23        Defendant argues that the class definition is overbroad and implicates individualized

24  inquiries because it excludes persons whose local recycling programs accept and recycle the

25  Products.  MTD, p. 21:23-22:1.  However, Plaintiff alleges that the Products are not recyclable in

26  any communities.  FAC, ¶¶ 30, 31 and 38.  This allegation is presumed true at this stage, and

27  Defendant's contention that some recycling programs may accept and recycle the Products raises a

28  factual issue that is premature to resolve at this juncture.  *See Perkins v, LinkedIn Corp.*, 53 F.

1  Supp. 3d 1190, 1221 (N.D. Cal. 2014) (class certification rulings require discovery and

2  development of the record).

3      Even if Defendant ultimately proves that the Products can be recycled in some

4  communities, the Class definition is still proper as pled.  Consumers who purchased the Products

5  are environmentally conscientious and motivated to purchase products that do not contribute to a

6  growing plastic waste crisis.  FAC, ¶ 13, 26.  Thus, even if the Products are recyclable in a small

7  number of locations that happen to include an individual Class member's community, that Class

8  member is still injured by Defendant's misrepresentation because he or she was deceived into

9  purchasing Products he or she believed were recyclable in most communities.  In other words,

10 Plaintiff and the Class do not purchase the Products just because they can be recycled in a few rare

11 instances, but rather they purchase them in the belief that they are generally recyclable.

12     In any event, even if the factual record developed at the class certification stage indicates

13 that the Class needs to exclude a handful of communities where recycling the Products proves to be

14 feasible, the proper solution is to amend the class definition.  Courts always have discretion to

15 modify and refine proposed class definitions.  *See, e.g., Gibson v. Loc. 40, Supercargoes &*

16 *Checkers of Intern. Longshoremen's & Warehousemen's Union*, 543 F.2d 1259, 1264 (9th Cir.

17 1976) (certifying narrower class than pled); *In re Hulu Privacy Litig.,* No. C-11-03764-LB, 2014

18 WL 2758598, at *14 (N.D. Cal. June 17, 2014) ("definitional flaws 'can and often should be

19 resolved by refining the class definition rather than by flatly denying class certification on that

20 basis'") (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir.

21 2012)).  Courts in this District often exercise their discretion to allow plaintiffs to seek class

22 certification based on a narrower class definition in light of "factual developments that have

23 occurred since the filing of the complaint."  *In re Conseco Life Ins. Co. LifeTrend Ins. Sales &*

24 *Mktg. Litig.*, 270 F.R.D. 521, 530 (N.D. Cal. 2010).

25     Next, Defendant argues that the class definition is overbroad since it includes persons who

26 may not have seen or relied on the labeling or advertising at issue when deciding to purchase the

27 Products.  MTD, p. 21:23-22:1.  Defendant's argument ignores the age-old mantra that "labels

28 matter."  *Kwikset*, 51 Cal. 4th at 328 ("The marketing industry is based on the premise that labels

1  matter—that consumers will choose one product over another similar product based on its label").

2  Furthermore, it is improper for the Court to analyze unnamed class members' standing where

3  Defendant has not successfully challenged standing of the named Plaintiff.  *See Won Kyung Hwang*

4  *v. Ohso Clean, Inc.,* No. C-12-06355-JCS, 2013 WL 1632697, at *6 (N.D. Cal. Apr. 16, 2013)

5  (*citing Lewis v. Casey*, 518 U.S. 343, 395 (1996)); *see also Perkins*, 53 F. Supp. 3d at 1221

6  (declining to strike class allegations based on argument that individual issues will predominate).

7      The *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-991 (N.D. Cal. 2009) line of cases that

8  Defendant relies upon are distinguishable because it was undisputed in those cases that the

9  allegedly misleading statements were not aimed at all of the members of the class.  *See Won Kyung*

10  *Hwang*, 2013 WL 1632697, at *9; *see also Tasion Communs.*, 2014 WL 1048710, at *3

11  (questioning viability of *Sanders*).  In *Sanders*, the class consisted of "all persons within the United

12  States who own a 20-inch aluminum iMac."  *Sanders*, 672 F. Supp. 2d at 991.[9]  The plaintiffs in

13  that case alleged that in a press conference, on a press release, and on its website, Defendant

14  misrepresented that the screen on the 20-inch iMac was equal in function to the screen on the 24-

15  inch iMac, when it was not because of a defect.  *Id*. at 983.  The Court ruled that the class definition

16  was overbroad because it necessarily included individuals who did not purchase the 20-inch iMac,

17  individuals who did not see or who were not deceived by the advertisements, and individuals who

18  suffered no damages.  *Id*. at 991.  Here, on the other hand, Plaintiff defines the Class as all persons

19  who "purchased" the Products, and the misrepresentations are uniform and prominently displayed

20  on the labels of the Products.  Likewise, cases where courts struck nationwide class allegations due

21  to differing state law interpretations do not apply here since Plaintiff's class allegations are limited

22  to California state law.  *See Am. W. Door & Trim v. Arch Specialty Ins. Co.,* No. CV-15-00153-

23  BRO (SPx), 2015 WL 1266787, at *7-10 (C.D. Cal. Mar. 18, 2015); *see also Pilgrim v. Univ.*

24  *Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

25

26

27

28  [9] *See also Rasmussen v. Apple, Inc.*, 27 F. Supp. 3d 1027, 1045-46 (N.D. Cal. 2014); *Hovsepian v. Apple, Inc.,* No. 08-5788-JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009).

# IV.    CONCLUSION

For the reasons set forth above, Defendant's motion should be denied in its entirety.  To the extent the Court grants the motion at all, Plaintiff requests the opportunity to amend her Complaint to cure any deficiency identified by the Court.

Dated: February 22, 2019                    LEXINGTON LAW GROUP


                                            */s/   Ryan Berghoff*
                                            Howard Hirsch (State Bar No. 213209)
                                            Ryan Berghoff (State Bar No. 308812)
                                            LEXINGTON LAW GROUP
                                            503 Divisadero Street
                                            San Francisco, CA 94117
                                            Telephone: (415) 913-7800
                                            Facsimile: (415) 759-4112
                                            hhirsch@lexlawgroup.com
                                            rbergoff@lexlawgroup.com

                                            Attorneys for Plaintiff
                                            KATHLEEN SMITH


## <u>CERTIFICATE OF SERVICE</u>

I, Ryan Berghoff, an attorney, hereby certify that on February 22, 2019, I caused a complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in this case.


                                            */s/   Ryan Berghoff*

- 24 -