# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

KATHLEEN SMITH, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

KEURIG GREEN MOUNTAIN, INC.

    Defendant.

Case Number: 4:18-cv-06690-HSG

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION

1. **PURPOSE**

    This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

    The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **DEFINITIONS**

    a. "Electronically stored information" or "ESI" shall include all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

    b. "Bates Number" means a unique number affixed to each page of a document produced in the Litigation.

    c. "Document" shall include both Hard Copy Documents and Electronic Document as defined herein.

    d. "Database" means a collection of related Electronic Data organized (often in rows, columns and tables) in an electronic environment for a particular purpose. Databases often perform various functions, including data analysis, data sorting, and report generation. Microsoft Access and Oracle are common database platforms.

e. "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to: email, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g. PDF).

f. "Hard Copy Document" means Documents existing in paper form at the time of collection.

g. "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.

h. "Native Format" means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

i. "Producing Party" shall refer to the party producing documents and ESI in response to a discovery request propounded by another party.

j. "Receiving Party" shall refer to the party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

4. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a. Only ESI created or received between January 1, 2014 and the present will be preserved;

b. The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary. Identification of a potential document custodian by a Receiving Party does not, by itself, obligate a Producing Party to produce documents for that custodian; instead, this exchange of information is intended to constitute part of the meet-and-confer process and each party may provide information regarding whether inclusion of a proposed source of ESI or potential document custodian has potentially relevant information and is proportional to the needs of the case.

c. The parties agree to exchange policies, processes, and procedures regarding storage and preservation of ESI, including those related to deletion, removal, or transfer of data from a location;

d. The parties have issued litigation hold notices to those custodians with data, and persons or entities responsible for maintenance of non-custodial data, which possibly contain discoverable information;

e. All processes and procedures which would result in the elimination, or transfer to a less accessible medium, of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced has been suspended;

f. If a party learns that responsive ESI was, or documents that once existed were, lost, destroyed, or no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the party shall explain where and when the responsive ESI was last retrievable in its original format, or the responsive documents last existed, and to disclose the circumstances surrounding the change in status of that responsive ESI or documents, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI or documents exists.

g. To the extent reasonably possible, the production of documents shall be conducted to maximize the identification of responsive Documents, and efficient and quick access to Documents and minimize related discovery costs. The terms of this Stipulation should be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any Orders by this Court.

5. **DOCUMENTS AND DATA SOURCES**

Sources of custodial documents and ESI that are reasonably accessible and contain discoverable information include, but are not limited to, local hard drives, network folders, home or personal file shares, removable storage, email, removable storage media, on-line data storage such as Dropbox or Google Drive, on line email systems such as Google Mail, messaging phones, tablets, physical files, and Plaintiff's social media accounts and Defendant's company-controlled or company-affiliated social media accounts.

Sources of non-custodial data sources that are reasonably accessible and contain discoverable information include, but are not limited to, databases, file servers, email servers, web servers, on line data stores such as Dropbox and Google Drive, document management systems (DMS), record management systems (RMS), content management systems (CMS), source code repositories, and hard-copy document repositories.

3

The parties reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources whose relevance was discovered via documents, data produced, or testimony given. If a party objects to the inclusion of such non-custodial or custodial sources, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the Court or its designee will determine the matter.

6. **SEARCH**

The parties agree that they will meet and confer about methods to search ESI (*i.e.*, keywords, search terms, file type culling, e-mail thread suppression, technology-assisted review, etc.) in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to production.

7. **PRODUCTION FORMATS**

No party will produce Documents or ESI to another party in a manner which unnecessarily diminishes the ability of the information to be searched, or which unnecessarily results in the loss of the information's structure, categorization, or utility. The purpose of this provision is to avoid unnecessary expense and duplicative effort by causing a party to recreate structure, organization, or searchable format where it already exists and where it can be preserved by the producing party.

Except as otherwise provided herein, Documents, including Hard Copy Documents and ESI, will be provided as single page TIFF images with the associated metadata as listed in Appendix A and extracted or OCR text. When productivity files such as word processing files, presentation files, etc., are imaged, their corresponding image files shall convey the same information and image as the original Document, including all elements and formatting which are visible in any view of the document in its native application, such as color. In general, for any ESI imaged from a native file, it shall be similarly imaged in such a way as to display the same information and image as the original ESI, including all elements and formatting which are visible in any view of the ESI in its native application. If the TIFF format of a particular document is found to be inadequate (*e.g.*, embedded video files), the requesting party may notify the producing party of the inadequacy, and the parties will agree to produce native files

4

on an individual document basis.  The corresponding native file versions of presentation files (e.g., Microsoft Powerpoint), and word processing files (e.g., Microsoft Word) shall be included with the production.

Media files such as video and audio files shall be produced in native format with a corresponding placeholder TIFF image and any available metadata, e.g., custodian, file name, file path.

Excel spreadsheets shall be produced in native format, unless the file requires redaction as set forth below.  Any Excel spreadsheet that is produced in native format must have a corresponding placeholder TIFF image indicating its place in the production, its relationship to other documents in the production, and any other corresponding metadata.

If a document that otherwise would be produced in native format requires redaction, such documents may be produced in TIFF format in accordance with this protocol.  The native file version of redacted documents need not be produced unless the parties agree otherwise.

Discrete document collections, such as material test files and communications with regulatory agencies, shall be produced in their entirety without regard to whether or not each document in the collection has been identified as possibly responsive, or deemed to be classified as, responsive, or, if search terms are used, contains a search term, except that privileged documents in such a collection may be withheld and listed in a privilege log as specified elsewhere in this order.

No redactions for relevance may be made within a produced document or ESI item.  A Producing Party may redact information that it considers to be "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of the Protective Order entered in this case.  Any Document so redacted shall have "REDACTED" stamped on each page from which information has been redacted.  Within ten (10) days of the production of such Documents with redacted information, the Producing Party shall produce a log describing the nature of the redacted information with sufficiently specific information to enable the Receiving Party to evaluate the basis for the redaction.

For redacted items which were originally ESI, all metadata fields will be provided and

will include all non-redacted data, except to the extent that the metadata reveals privileged or confidential information, in which case that information may be excluded with "Redacted" substituted. Redacted documents shall be identified as such in the load file provided with the production. To the extent that a responsive document contains information protected by attorney-client privilege or attorney work product protection, the producing party may produce that document in redacted form. Any redactions, and the reasons therefore, shall be clearly indicated on the face of the document. To the extent that any document contains information that is redacted, those documents shall be produced in the form of a redacted TIFF image. The basis for all redactions shall be logged in the privilege log.

The presumptive source of extracted text shall be from the native file. Where a document image has been redacted and produced in a TIFF format, OCR may be used to generate the source of extracted text.

Each Party shall bear its or her own costs for the production of ESI and Hard Copy Documents. In the event, however, that a Party requests additional searches or the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense, the Producing Party may object. Upon objection, the Parties shall work in good faith to resolve the issue. In the event that the Parties are unable to resolve their differences, the Producing Party may move the Court for an Order shifting the cost of production of additional searches or the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Requesting Party.

Images will be placed on encrypted media and transmitted to counsel. Alternatively documents may be produced via secure electronic file transfer. Each Document produced in Native Format will be named by its Bates Number, e.g., ABC0001.xls. Each produced TIFF image or hard copy page will be labeled with a Bates Number. The CD / DVD will also be labeled with the Bates range contained therein and the date of production.

8. **DE-DUPLICATION**

Parties may de-duplicate documents on a family basis; that is, where an entire family of documents is duplicative of another family in the collection, a party need not review and

produce the family multiple times. Parties may also de-duplicate stand-alone documents. De-duplication may be done on a global basis, i.e., across custodians. To the extent that a party de-duplicates prior to production, the party shall include "all file paths" and all file names fields identifying the file paths of all versions of the de-duplicated document, as well as an "other custodians" field identifying all custodians possessing the document. The original ESI will be preserved.

## 9. DATABASES

The parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. Prior to any such meet and confer, the producing party will provide sufficient information to enable the receiving party to evaluate the best method and format of production, including such information as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer and user manuals. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

## 10. HARD COPY DOCUMENTS

Where legacy hard copy documents and writings have been scanned into a document management system and stored as image files, or where ESI document files are assembled or maintained within the framework of a document management system (*i.e.*, Documentum®, OpenText®, etc.), the parties will meet and confer to agree on the data to be produced and the appropriate format of production. Prior to such meet and confer, the producing party shall identify each such system, its capabilities, and its usage in sufficient detail for the receiving party to be able to meet and confer effectively. If the parties are unable to agree on the data to be produced and the appropriate format of production, the matter will be submitted to the Court or its designee for determination.

To the extent not otherwise specified by this protocol or another order applicable to these coordinated cases, documents that exist in hard copy will be produced in accordance with Fed. R.

Civ. P. 34.  Documents in hard copy that are identified for production, either by the producing party or by the requesting party, shall be scanned with OCR, and shall be produced as black and white, Group IV compression, single-page TIFF images, at not less than 300 dpi resolution with the document boundaries and other applicable metadata (BEGDOC, ENDDOC, BEGATT, ENDATT, CUSTODIAN as referenced in Appendix A) contained in a separate file.

In scanning paper documents for production, the parties will use their best efforts in the unitization of the document and ensuring attachments are maintained as it existed in the original when creating the image file.  For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.  The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.  If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document.  Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized).  Parent-child relationships (the association between an attachment and its parent document) shall be preserved by a producing party in the course of production.  Documents will be unitized at the lowest possible level and attachment information preserved.  For example, if a physical folder contains two documents, the folder and each document will constitute a separate document, but the relationship among the documents in the folder should be reflected in proper coding of the fields in the data load file.

**11. BATES NUMBERING**

Bates numbers and any confidentiality designations will be electronically branded on each produced TIFF or PDF image.  Bates number ranges will be contiguous.  Bates number ranges will not be reused, except with prior written agreement to cover specific reproduction of selected materials.  If documents need to be reproduced due to initial production mishaps, then

STIPULATED ORDER RE: DISCOVERY OF ESI – Case No. 4:18-cv-06690-HSG

the replacement documents should have the same Bates ranges as previously used. For image files (*i.e.*, TIFF and PDF images), each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically stamped onto the TIFF or PDF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be electronically stamped onto the document's image at a location that does not obliterate or obscure any information from the source document, other than material being redacted.

Any documents that are replaced in later productions shall be clearly designated as such, by appending an "_R" to the end of the production number. When a party produces a replacement production indicated by "_R," the receiving party must discard or return to the producing party all copies, including working copies, of the original, replaced image, and excluding any copies contained in production media produced by the producing party and being retained by the receiving party as a record of production.

**12. DOCUMENTS PROTECTED FROM DISCOVERY**

    a. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

    b. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

    c. The parties shall provide a log of the documents withheld or redacted for privilege from the production, with a log populated with the following extracted metadata fields: Custodian, From, To, CC, BCC, Subject, File Name, File Path, Date Created, Date Last Modified, Basis of Withholding/Redaction. If there is more than one redaction, each redaction shall be addressed in the log with

sufficient information to allow the requesting party to understand the basis for the redactions. Forwarded emails withheld from disclosure or redacted shall be separately logged. In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk.

**13. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: 7/23/2019  /s/Howard Hirsch
Howard Hirsch
Ryan Berghoff
Attorneys for Plaintiff
KATHLEEN SMITH

Dated: 7/23/2019  /s/Creighton Magid
Kent Schmidt
Creighton Magid
Attorneys for Defendant
KEURIG GREEN MOUNTAIN, INC.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 7/24/2019

Hon. Haywood S. Gilliam Jr.
UNITED STATES DISTRICT JUDGE

# APPENDIX A

MetaData Fields for Production

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |
| 4 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 5 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 6 | CUSTODIAN | Custodian to which the data is associated with. | John Doe |
| 7 | OTHER CUSTODIAN | Other custodians to whom the document is associated | Mary Smith; Michael Jones |
| 8 | RECORDTYPE | Type of electronic record: | Email, Attachments, eDoc |
| 9 | FROM | Author of the e-mail message | Mary.Smith@hotmail.com |
| 10 | TO | Main recipient(s) of the e-mail message, by email address. | JohnDoe@gmail.com |
| 11 | CC | Recipient(s) of "Carbon Copies of the e-mail message. | Michael123@yahoo.com |
| 12 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| 13 | SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| 14 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 15 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 16 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 17 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 18 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 22 | CONFIDENTIALITY | Confidentiality designation | Confidential; Attorney's Eyes Only |
| 25 | FILESIZE | Size of native file, in bytes | 2546683 |
| 26 | PAGECOUNT | Number of pages | 3 |
| 29 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| 33 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| 35 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA00000001.txt |
| 36 | NATIVELINK | Path to the produced native file version (if applicable), for mapping | Natives\001\ABC00001.xls |
| 37 | FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file extension, and, in the case of email, email folder. | |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
|  |  | Any container name should be included in the path. |  |
| 38 | HASREVISIONS | Y if a Word document with revisions, otherwise N or empty |  |
| 39 | HASCOMMENTS | Y if a Word or Excel document with comments, otherwise N or empty |  |
| 40 | HASHIDDENTEXT | Y if a Word document with hidden text, otherwise N or empty |  |
| 41 | HASHIDDENSLIDES | Y if a PowerPoint document with hidden slides, otherwise N or empty |  |
| 42 | HASSPEAKERNOTES | Y if a PowerPoint document with speaker's notes, otherwise N or empty |  |
| 43 | HASHIDDENROWS | Y if a Excel document with hidden rows, otherwise N or empty |  |
| 44 | HASHIDDENCOLUMS | Y if a Excel document with hidden columns, otherwise N or empty |  |
| 45 | HASHIDDENWORKSHEETS | Y if a Excel document with hidden worksheets, otherwise N or empty |  |
| 46 | HASVERYHIDDENWORKSHEETS | Y if a Excel document with very hidden worksheets, otherwise N or empty |  |
| 47 | ATTACHCOUNT | Number of attachments (email only) |  |
| 48 | Importance | High Importance - indicates Priority E-mail message. |  |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 49 | Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. | |
| 50 | RedactionReason | Basis of redaction. If more than one, separate reasons by semi-colons | |
| 51 | ProdVol | Name of media that data was produced on. | |
| 52 | ATTACH_NAMES | Names of attachments (email only) | |
| 53 | CONVERSATIONID | Email thread identifier | |
| 54 | PARENTMSGID | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | |
| 55 | OtherFilepaths | Original file/path of the locations where the unproduced duplicate items were located at the time of collection. This should include location, file name, and file extension, and, in the case of email, email folder. Multiple values should be separated by semi-colons | |
| 56 | OtherFilenames | Original file names of the unproduced de-duplicated documents. Multiple values separated by semi-colons. | |
| 57 | DATERCVD (mm/dd/yyyy hh:mm:ss AM) | Date Received | |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 58 | E-MAILDATSORT (mrn/dd/yyyy hh:mm:ss AM) | Sent Date of the parent e-mail (most recent e-mail in a chain) | |
| 59 | E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | |
| 60 | LAST MODIFIED BY | Last person who modified (saved) a document | |
| 61 | LASTMODD (mrn/dd/yyyy hh:mm:ss AM) | Last Modified Date | |