UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KATHLEEN SMITH,

Plaintiff,

v.

KEURIG GREEN MOUNTAIN, INC.,

Defendant.

Case No. 18-cv-06690-HSG

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERITIFCATION**

REDACTED VERSION

Re: Dkt. No. 64, 65, 74, 79

Pending before the Court are Plaintiff's motion for class certification and related administrative motions to seal.  For the reasons detailed below, the Court **GRANTS** Plaintiff's motion to certify and **GRANTS** the parties' related motions to seal.

### I.    BACKGROUND

On September 28, 2018, Plaintiff Kathleen Smith filed this putative class action against Keurig Green Mountain, Inc. ("Keurig") in Alameda County Superior Court.  *See* Dkt. No. 1-2, Ex. B.  Keurig removed the action to federal court.  Dkt. No. 1.  Keurig sells various single-serve plastic coffee pods ("K-Cups" or "Pods"), some of which Keurig markets and sells as "recyclable" (the "Products").  Dkt. No. 20 ¶¶ 1–2.  Plaintiff is a California resident who purchased the Products "in reliance on [Keurig]'s false representations that the [Pods] are recyclable," when Plaintiff alleges that they are not in fact recyclable because (a) less than 60% (or a "substantial majority") of facilities will accept the Products, (b) the Products' size prevents them from being properly sorted by recycling programs, and (c) there is a lack of end markets to recycle the Products.  *Id.* ¶¶ 2, 37–38.  Plaintiff alleges the following claims: (1) breach of express warranty, (2) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  ("UCL") based on fraudulent acts and practices (4) violation of the UCL based on

commission of unlawful acts, (5) violation of the UCL based on unfair acts and practices, and (6) unjust enrichment. *See id.* ¶¶ 50–99.

The Court denied Keurig's motion to dismiss on June 28, 2019. *See* Dkt. No. 50. As detailed in its Order, the Court held that Plaintiff had standing to and sufficiently alleged injury-in-fact, causation, and redressability. *Id.* at 4–6. The Court further rejected Keurig's argument that there was no risk of future deception of Plaintiff, distinguishing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

Plaintiff now moves for class certification. *See* Dkt. No. 64-5 ("Mot."), 74-2 ("Opp."), 79-5 ("Reply").

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 23 governs class actions, including the issue of class certification. Class certification is a two-step process. To warrant class certification, a plaintiff "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule.").

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If the four prerequisites of Rule 23(a) are met, a court also must find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs assert that they meet the requirements of both Rule 23(b)(2) and 23(b)(3). *See* Mot. at 17–23, 24. Rule 23(b)(2) provides for certification where "the

United States District Court
Northern District of California

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3), in turn, applies where there is both "predominance" and "superiority," meaning "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (citing *Dukes*, 564 U.S. 350–51). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194–95; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements."). The issue to be decided in a certification motion is whether the case should be "conducted by and on behalf of the individual named parties only" or as a class. *See Dukes*, 564 U.S. at 348.

## III.   ANALYSIS

Plaintiff moves to certify a class of "All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) from June 8, 2016 through the present." Mot. at 11. Plaintiff seeks certification of all six claims for relief. *Id.* at 10. In response, Defendant asserts that (1) Plaintiff fails to meet the requirements of Rule 23(a), (2) Plaintiff fails to meet the requirements of Rule 23(b)(3), and (3) Plaintiff fails to meet the requirements of Rule 23(b)(2) because Plaintiff lacks standing and the proposed relief is not indivisible, and (4) the class definition is overbroad. *See* Opp. The Court addresses each argument in turn.

### A.   Rule 23(a)

As noted above, under Rule 23(a) the class must satisfy the requirements of numerosity,

United States District Court
Northern District of California

commonality, typicality, and adequacy of representation. *Mazza*, 666 F.3d at 588. Keurig argues that Plaintiff cannot satisfy the typicality and adequacy requirements.[1]

### i. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation omitted).

Keurig contends that Plaintiff fails to show that her claims are typical of the claims of the class because "there are defenses unique to" her individual claims. Mot. at 8. Specifically, Keurig argues that Plaintiff had not "read the recycling label on the boxes of [the Products] that she purchased online," had never "seen the revised labels on Laughing Man boxes or the revised labels on all [P]roducts produced after 2017," could not "say whether the recycling agency in her community recycles [Pods]," and cannot "claim to have been deceived in any way by Keurig, because she concede[d] that she [did not] even know how she learned about recyclable K-Cup pods." *Id.* at 9 (citing Dkt. No. 74-18 ("Smith Depo.") at 62–64). But these details do not establish that Plaintiff is susceptible to unique defenses.

Contrary to Keurig's characterization of Plaintiff's deposition testimony, Plaintiff did not testify that she did not read the recyclability labels. She testified instead that she did not see the "Check Locally" asterisk on the "Peel, Empty, Recycle" label until after the suit was filed. *See*

---

[1] Keurig does not contest that Plaintiff satisfies the numerosity and commonality requirements. *See* Mot. at 8 n.8.

1  Dkt. No. 79-6, Ex. 6 at 58:17–19, 66:8-10 (clarifying that Plaintiff did not see the "check locally"

2  label).  She also testified that she was aware of Keurig's representations that the Products were

3  recyclable, including the "Peel, Empty, Recycle" representation.  *See* Dkt. No. 64-6, Ex. 4 at 2

4  (noting awareness of the "Recycle," "Peel, Empty, Recycle," and "Have your cup and recycle it,

5  too" labels). [2]  What matters is that Plaintiff was aware of Keurig's representations that the

6  Products were recyclable and "purchased the Products numerous times over the past couple of

7  years directly from the Defendant's website believing that the recycling claims on the Product's

8  packaging and on the Defendant's website were true."  Dkt. No. 64-6, Ex. 4 at 2.  The fact that

9  Plaintiff did not notice the qualification to Keurig's recyclability representation does not show that

10  her claims are not typical.

11       Additionally, Plaintiff's unawareness of whether her local recycling agency accepts the

12  Pods does not make her claim atypical.  Plaintiff's theory is that even if the Products made from

13  Polypropylene (#5) plastic are collected in over 60% of U.S. communities, the Products are still

14  not recyclable due to their size, which prevents accurate sorting or separation, and the lack of end

15  markets to recycle them.  Mot. at 2 (citing 16 C.F.R. § 260.12(a) ("It is deceptive to misrepresent,

16  directly or by implication, that a product or package is recyclable. A product or package should

17  not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from

18  the waste stream through an established recycling program for reuse or use in manufacturing or

19  assembling another item.").  Whether Plaintiff's particular community recycling facilities accept

20  the Products does not affect her typicality, given the claims' focus on recyclability requirements

21  beyond just collection.  For the same reason, that Plaintiff did not see the labels with updated

22  qualifications after 2017 does not make her atypical.  Keurig still represented that the Pods were

23  recyclable even after it redesigned the label to include a qualification that the Products were "not

---

[2] Thus, Keurig's cited cases in which the plaintiff did not view any of the allegedly deceptive labels or advertisements are inapposite.  *See Aberdeen v. Toyota Motor Sales, U.S.A.*, No. CV-08-1690-PSG, 2009 WL 7715964, at *6 (C.D. Cal. June 23, 2009), *rev'd in part on other grounds*, 422 F. App'x 617 (9th Cir. 2011) (finding plaintiff not typical of the class "[b]ecause Plaintiff did not view any of Toyota's allegedly deceptive advertisements prior to purchasing his Prius"); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *11 (N.D. Cal. Oct. 30, 2015) (similarly noting that named plaintiff who did not read the terms and conditions at issue did not satisfy the typicality requirement).

United States District Court
Northern District of California

1    recycled in all communities."  Dkt. No. 74-14 ("Oxender Decl.") at ¶¶ 24–25.  Plaintiff's theory

2    that the other requirements were not met would still render the representation deceptive, even for

3    the redesigned labels.[3]

4          Finally, Keurig fails to detail how Plaintiff's inability to remember how she learned of the

5    Products' alleged recyclability exposes her to any unique defenses, and the Court sees no reason

6    why this would be the case.  In light of her testimony that she relied on Keurig's representations

7    on the Products' packaging and website, the Court finds that Plaintiff meets the typicality

8    requirement.

9          **ii.    Adequacy**

10         Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

11   the interests of the class."  In assessing adequacy, the Court must address two legal questions: (1)

12   whether the named plaintiffs and their counsel have any conflicts of interest with other putative

13   class members, and (2) whether the named plaintiffs and their counsel will prosecute the action

14   vigorously on behalf of the proposed class.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

15   462 (9th Cir. 2000).  This inquiry "tend[s] to merge" with the commonality and typicality criteria.

16   *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

17         Keurig similarly contends that Plaintiff fails to meet the adequacy requirement because

18   Plaintiff "never read" the labels and "never checked locally to see if she could recycle" the Pods.

19   Opp. at 10.  For the same reasons noted above, Keurig's arguments fail.  Plaintiff may not have

20   read the specific qualifications to the recyclability representation or checked whether her local

21   recycling center accepted the Products, but the class claims concern whether the Pods Keurig

22   claims are recyclable actually can be recycled under the Federal Trade Commission's ("FTC")

23   guidance.  As the Court stated in a previous order, the FTC's Guides for the Use of Environmental

24   Marketing Claims ("Green Guides") state that "if a product is rendered non-recyclable because of

25

26   _____
     [3] Unlike *Wiener v. Dannon Co.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009), cited by Keurig, this case
     does not involve "a variety of products," and thus does not raise the prospect that "a named

27   plaintiff that purchased a different product than that purchased by unnamed plaintiffs" does not
     meet the typicality requirement.  The redesigned label did not create a separate product, and as

28   explained above, Plaintiff's misrepresentation theory encompasses the later labels, as it is the
     fundamental ability to recycle the Products that is at issue in this case.

its size or components—even if the product's composite materials are recyclable—then labeling the product as recyclable would constitute deceptive marketing."  Dkt. No. 50 at 8 (citing 16 C.F.R. § 260.12(d)).  The Green Guides also provide that a marketer may make an unqualified recyclability claim only "[w]hen recycling facilities are available to a substantial majority of consumers or communities where the item is sold."  16 C.F.R. § 260.12(b)(1).  Defendant's arguments do not affect Plaintiff's adequacy to represent the proposed class.

### B.   Rule 23(b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Keurig contends that Plaintiff fails to meet both the predominance and superiority requirements.  Opp. at 11–21.

#### i.   Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted).  The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *Id.* (citation and internal quotation marks omitted) (alterations in original).  This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Id.* (citation and internal quotation marks omitted).  The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a).  *See Comcast*, 569 U.S. at 34 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

##### a.   Reliance

Keurig first argues that there is a lack of classwide reliance on the recyclability statements,

precluding a finding of predominance in this case. Opp. at 11–13. Keurig's Chief Sustainability Officer, Monique Oxender, points to commissioned and internal consumer surveys finding that

██████████████████████████████████████████████████████████████████

███████████████████ and that recyclability ████████████████████████████

███████ *See* Oxender Decl. at ¶¶ 27–28. Ms. Oxender further says that ███████████

████████████████████████████████████████████████████████

███████ *Id.* at ¶ 29. Given these findings, Keurig argues that "the overwhelming majority of members of the proposed class did not read the labeling on [Pod's] boxes and that only a small minority could plausibly claim to have based their purchase decisions on recyclability." Opp. at 11. Additionally, Keurig argues that "absent individualized inquiry, there is no practical way of determining whether a purchase was a putative class member's purchase made in reliance on a recyclability representation." *Id.*

Plaintiff responds first by noting that the majority of her claims do not require a showing of reliance by the proposed class members on recyclability representations. *See* Reply at 6 (arguing that reliance is only an element for Plaintiff's CLRA claim). The Court agrees that Plaintiff's breach of warranty claim does not require proof of reliance. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 915 (N.D. Cal. 2018) ("Because California's express warranty statute conforms to the UCC, the California Court of Appeal has held that a buyer need not show reliance because the California statute "creates a presumption that the seller's affirmations go to the basis of the bargain.") (quoting *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010)).

The Court also agrees that proof of reliance by the proposed class is not required to establish a UCL claim. Instead, a plaintiff must prove that he or she suffered injury "as a result of" the defendant's conduct. Cal. Bus. & Prof. Code § 17204. "The California Supreme Court interpreted this statute to mean that named plaintiffs, but not absent ones, must show proof of 'actual reliance' at the certification stage." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (quoting *In re Tobacco II Cases*, 328, 207 P.3d 20, 40 (Cal. 2009)). This presumption of reliance by the absent class members "will not arise in every UCL case." *Id.* at

United States District Court
Northern District of California

631.  Instead, "[i]n the absence of [some] kind of massive advertising campaign . . . the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 581.  Here, Keurig included representations that the Products were recyclable on the packaging itself, as well as on its website. *See* Oxender Decl. at ¶¶ 17–26 (showing the recycling language included on Pods' packaging and noting "the content on Keurig's website").  Based on this evidence, the Court finds that all the class members were exposed to Keurig's recyclability representations such that the reliance presumption applies to the class as defined (i.e., purchasers of the Products in California).  When the Products were first available, they were only offered for sale on Keurig's website.  *Id.* at ¶ 16 ("None of these packages w[ere] available for retail purchase except through keurig.com.").  Thereafter, the recycling representations were also always included on the Products' packaging.  Since Plaintiff has provided evidence that she relied on those recyclability representations and the reliance presumption applies, individualized inquiries regarding absent class members' reliance on the representations do not preclude a finding of predominance for the UCL claims.

Under California law, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  To establish a quasi-contract claim, "[t]he fact that one person benefits another is not, by itself, sufficient to require restitution.  The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009).  Here, Plaintiff claims that Keurig unjustly retained the revenues derived from class members' purchase of the Products, even though they falsely represented that the Products were recyclable.  *See* Dkt. No. 20 at ¶¶ 95–97.  Plaintiff's unjust enrichment claim, then, is derivative of her UCL claims.  Inquiries regarding unjustness are typically individualized.  *See* 1 McLaughlin on Class Actions § 5:60 (11th ed.) ("The majority view is that unjust enrichment claims usually are not amenable to class treatment because the claim requires evaluation of the individual circumstances of each claimant to determine whether a benefit was conferred on defendant and whether the circumstances surrounding each transaction would make it inequitable

United States District Court
Northern District of California

1   for the Defendant to fail to return the benefit to each claimant"). But the Court finds the inquiry

2   presented here—whether Keurig was unjustly enriched by the proposed class members' purchase

3   of the Products given its allegedly false representations regarding recyclability—raises the same

4   legal issues as to all class members.  Accordingly, predominance is also met for the unjust

5   enrichment claim.

6          Finally, the parties agree that the CLRA requires Plaintiff to establish classwide reliance

7   on the alleged misrepresentations.  Keurig relies on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

8   1024 (9th Cir. 2011), to argue that there "are myriad reasons that someone who was not misled . . .

9   might [still] have chosen" to purchase the Products.  Given Plaintiff's broad class definition,

10  Keurig argues that consumers may have purchased the Products for reasons other than the

11  recyclability representations, precluding a finding of predominance.

12         Plaintiff responds that she may rely on an inference of reliance under the CLRA because

13  recyclability is material to reasonable consumers.  *See* Reply at 8.  Generally, the Ninth Circuit has

14  held that "[i]f the trial court finds that material misrepresentations have been made to the entire

15  class, an inference of reliance arises as to the class."  *Stearns*, 655 F.3d at 1022 (quoting *In re*

16  *Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 95 (Cal. Ct. App. 2009)).  The question becomes whether

17  "a reasonable man would attach importance to [Keurig's recyclability representations'] in

18  determining his choice of action in the transaction in question."  *Id.* (quoting *Steroid Hormone*

19  *Prod. Cases*, 104 Cal. Rptr. 3d 329, 338 (Cal. Ct. App. 2010), *as modified on denial of reh'g* (Feb.

20  8, 2010)).  "If the misrepresentation or omission is not material as to all class members, the issue

21  of reliance 'would vary from consumer to consumer' and the class should not be certified."  *Id.*

22  (quoting *Vioxx*, 103 Cal. Rptr. 3d at 95).

23         As Plaintiff notes, "materiality is generally a question of fact," and is not evaluated on an

24  individualized basis, but instead is assessed under a reasonable consumer standard.  *See In re*

25  *Tobacco II Cases*, 46 Cal. 4th at 327; *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 892

26  (Cal. 2011).  Plaintiff also points to the California Legislature's passage of the California

27  Environmental Marketing Claims Act ("EMCA") as support for her materiality claim.  The

28  EMCA makes it "unlawful for any person to make any untruthful, deceptive, or misleading

environmental marketing claim, whether explicit or implied," and the term "environmental marketing claim . . . include[s] any claim contained in the [Green Guides] published by the [FTC]."  Cal. Bus. & Prof. Code § 17580.5(a).  The California Supreme Court has recognized that statutory recognition of materiality is highly persuasive.  *See Kwikset*, 246 P.3d at 890 (observing that the California Legislature's "specific[] outlawing" of the alleged deceptive representation "recognized the materiality of this representation").  While the EMCA does not specifically reference recyclability, the Green Guides, as noted above, impose specific criteria for a product to be marketed as recyclable.  Accordingly, the Court finds that the inference of reliance is appropriate in this case.

Keurig's citation at the hearing to *Ortega v. Nat. Balance, Inc.*, 300 F.R.D. 422, 429 (C.D. Cal. 2014), does not change this outcome.  *Ortega* did not involve any legislative recognition of materiality.  Instead, the *Ortega* court found that "the statements alleged to be misrepresentations are not 'so obviously unimportant' that the Court should decide that question" at the class certification stage.  300 F.R.D. at 429.  Similarly here, even if the Court were to dig deeper into the consumer surveys as Keurig urges, Plaintiff's claims are "sufficient such that materiality can and should be determined by a jury."  *Id.*  Accordingly, issues of reliance do not weigh against a finding of predominance for any claims.[4]

### b.   Change in Labels / Community Recycling Centers

Keurig also points to the change in the Products' labels over time to argue that the qualifications to its recyclability claims were not consistent over time and may have resulted in

---

[4] For the same reasons, the Court finds unpersuasive Keurig's argument that the class definition is overbroad.  Keurig contends that the class definition is overbroad because it "necessarily includes persons who bought [Pods] in circumstances where they (1) did not see or review any of the four different packaging statements that plaintiff claims are misleading, (2) did see them, but the [Pods] are in fact capable of being recycled in their community, or (3) like most, made their purchasing decisions for reasons having nothing whatsoever to do with the recyclability of the [Pods]."  Opp. at 24.  Keurig's claims as to the first and third circumstances simply reiterate its argument regarding reliance, which the Court already analyzed and found unpersuasive.  The Court further rejects Defendant's second argument because Plaintiff's theory of the case is that the Products are not recyclable in the substantial majority of communities.  So differences in whether the Products are recyclable in specific location do not render Keurig's class definition overbroad.  ]

United States District Court
Northern District of California

different representations to different class members.  Opp. at 14–16.  Specifically, Keurig describes three categories of labels: (1) labels on the initial four pilot project blends qualified the recyclability representation by directing consumers to "Check Locally" prior to 2019; (2) labels on Laughing Man boxes sold between December 2017 and Summer 2019 included the qualification "Check Locally" and noted that the Products were "not yet recycled in all communities"; and (3) all Products sold beginning in Summer 2019 again directed consumers to "Check Locally," and noted that the Products were "not recycled in all communities."  *Id.* at 14.

The Court does not find that the label changes preclude a finding of predominance.  "Check Locally" was included on all three labels and thus does not defeat predominance.  The qualifier that the Products were "not yet recycled in all communities" was in very fine print on two of the three labels.  *See* Dkt. No. 64-6 ("Hirsh Decl."), Ex. 8.  Importantly, Plaintiff argues that both qualifiers were insufficient to adequately inform a reasonable consumer such that Keurig's recyclable claim was still misleading.  Reply at 10.  While a recyclable claim may be permitted if recycling facilities are available to less than a substantial majority, the claim must include the percentage of communities that have access to such facilities, and where "[t]he lower the level of access to an appropriate facility is, the more strongly the marketing should emphasize the limited availability of recycling for the product."  16 C.F.R. § 260.12(b)(2).  Qualifiers such as "Recyclable where facilities exist" or "Check to see if recycling facilities exist in your area" are still deceptive under Plaintiff's theory "because they do not adequately disclose the limited availability of recycling program."  *Id.* at § 260.12(d).  All of Keurig's qualifiers are subject to these same standards, and whether they are sufficient (or insufficient) can be established through common proof.

Importantly, Keurig's representation that the Products were recyclable was in comparatively large, visible font on all of its packaging.  *See* Hirsh Decl., Exs. 6–8.  It is this representation of recyclability that presents the predominant question at issue in this case: whether Keurig's representation that the Products are recyclable was misleading to consumers.  The slight variations in the label may add another question regarding the sufficiency of the qualification, but they do not change the basic question.

1    Similarly, the Court rejects Keurig's argument that the varying capabilities of materials

2    recovery facilities at recycling centers would present individual inquiries such that common issues

3    would not predominate.  As explained above, Plaintiff's class claims allege a general theory that

4    the Products are not recyclable in a substantial majority of communities such that the

5    representation is misleading.  Whether an individual class member's recycling facility happened to

6    accept the Products is irrelevant.  This common question can be addressed through classwide

7    proof, and individualized inquiries into the collection capabilities at each class member's

8    community recycling centers do not override the common issues.

9                   c.   Damages

10   With respect to the monetary relief sought by a putative class, predominance requires that

11   "damages are capable of measurement on a classwide basis, in the sense that the whole class

12   suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal

13   theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v.

14   Behrend*, 569 U.S. 27, 34 (2013)).  While a proffered model purporting to serve as evidence of

15   damages "need not be exact" at the class certification stage, it "must be consistent with [the

16   plaintiff's] liability case." *Comcast*, 569 U.S. at 35 (citations and internal quotation marks

17   omitted).  Keurig argues that individualized inquiries concerning damages preclude finding that

18   class issues predominate in this case.  Opp. at 17–20.

19   Plaintiff relies on her damages expert, Stephen F. Hamilton, Ph.D, to support her position

20   that there are "accepted and feasible methodologies for calculating the forms of monetary relief

21   alleged in this case, using available data from [Keurig] and third parties."  Dkt. No. 64-6, Ex. 3

22   ("Hamilton Decl.") at ¶ 17.  The Court begins by noting that Plaintiff does little in her brief to

23   develop the damages analysis of her expert and instead simply cites large swaths of his

24   declaration.  *See* Mot. at 21–22 (citing Hamilton Decl. at ¶¶ 44–53, 54–98).  As described by Dr.

25   Hamilton, Plaintiff offers varying methods for calculating restitution and monetary damages in

26   this case.

27   First, recognizing that the Products had some value to consumers despite the alleged

28   misrepresentations, Dr. Hamilton presents three primary methods for calculating restitution or

United States District Court
Northern District of California

United States District Court
Northern District of California

unjust gains: net sales, gross margin, and operating income.  *Id.* at ¶¶ 47–49, 53.  Dr. Hamilton's proposed net sales model represents the revenues obtained by Keurig from the sale of the Products ("after deducting adjustments such as returns, rebates, or discounts") and "is consistent with the notion that [Keurig] should not be able to retain any sales revenue received through selling falsely labeled [Keurig] products."  *Id.* at ¶ 45.  The proposed gross margin model is calculated by subtracting the cost of goods sold from the revenues.  *Id.*  Finally, the operating income model "represents the profits retained by [Keurig], after deducting operating expenses," and "is consistent with the notion that members of the proposed Class received a product with a value equal to the average overall cost of producing the product."  *Id.*

The problem with all of the proposed models is that they look to Keurig's gains, rather than the proposed class members' losses.  Although Dr. Hamilton carefully does not refer to "all profit" or "purchase price" when discussing the models,[5] the "net sales" model would award a higher value than all profits gained by Keurig since costs are not subtracted.  The "gross margin" model calculates a value equal to all profits (generally calculated by subtracting the cost of goods sold from their price).  The "operating income" model essentially starts with Keurig's profits then subtracts some additional expenses.  "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits."  *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1052 (N.D. Cal. 2015) (internal citation omitted).  Plaintiff's proposed models are most accurately described as nonrestitutionary disgorgement, which is an improper method of calculating restitution as a matter of law.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944 (Cal. 2003) (differentiating restitutionary disgorgement from nonrestitutionary disgorgement, which is the "surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice") (internal citation omitted); *see also Ang v. Bimbo Bakeries USA, Inc.*, No.

---

[5] However, when referring to the models in his reply, Dr. Hamilton does refer to the "gross profit" model instead of the "gross margin," and "net profit before tax" model instead of the "operating income" model.  *See* Dkt. No. 79-6, Ex. 3 ("Hamilton Reply") at ¶ 75.

13-cv-01196-HSG, 2018 WL 4181896, at *14 (N.D. Cal. Aug. 31, 2018).  Although Plaintiff tries to distinguish this case because the funds would be given to purchasers instead of a third party, that distinction is immaterial because the funds do not represent losses suffered by the proposed class: they simply measure Keurig's gains, calculated different ways.  After recognizing that the products have value to the proposed class, the proposed models fail to use that value to appropriately calculate restitution on a classwide basis.

Plaintiff's arguments to the contrary are unpersuasive.  Plaintiff quotes *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 449 (Cal. 1979), to argue that the purpose of UCL restitution is "to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains." Mot. at 21–22.  However, as the California courts have since explained, *Fletcher* concerned a bank's unfair business practice of overcharging interest, which "did not confer any benefit on consumers." *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 897 (Cal. Ct. App. 2015).  Because there was no benefit to consumers, the *Fletcher* court permitted a full refund restitution model, focused solely on ill-gotten gains.  *Id.* at 896–97.  Here, there plainly was a benefit conferred on consumers, as Plaintiff concedes.  Thus, using calculations focused solely on Keurig's profits or costs, untethered from some difference in consumer value between a Pod that was recyclable and the allegedly unrecyclable Pods received by the proposed class, does not provide a restitutionary remedy.

Plaintiff's expert also proposes damages methods "to calculate consumer overcharge using metrics on increased sales for the Challenged Products as a result of the recyclable claims," given that Keurig did not charge a higher price for the Products compared to non-recyclable Pods.  *Id.* at ¶ 55.  These methods include (1) the attributed cost method, which "measures the difference in the cost per unit for producing a [Keurig] product in a recyclable cup relative to a conventional cup"; (2) the price premium method using either (a) the induced demand method, which uses a regression framework "to measure the market demand response of introducing a recyclable packaging claim on the product label, allowing tests to be conducted on whether a product sold in a recyclable container indeed attracts significantly greater sales than a comparable product absent the recyclable claim," or (b) the difference-in-difference method, which similarly measures market

1    demand but also allows the "control [of] other changes in product attributes that can potentially

2    affect price"; and (3) conjoint analysis, which "is focused on directly measuring consumers'

3    willingness to pay for the product attribute of interest by eliciting the value of products with and

4    without the recyclable packaging representations" through consumer surveys.  *Id.* at ¶¶ 57, 59, 63,

5    74, 82.

6            Keurig first argues that the attributed cost method is not an adequate damages model

7    because the cost of producing a recyclable K-Cup is completely unrelated to the value consumers

8    place on recyclability.  Opp. at 20.  As noted above, the Court agrees that utilizing a cost model

9    does not bear any relation to any incremental value realized by consumers.

10           Keurig next argues that Plaintiff cannot "measure the 'value' of the recyclability attribute

11   by measuring increased sales, because there is no evidence that it affected sales."  Opp. at 19.

12   Specifically, Keurig contends that because there is no price difference between the Products and

13   non-recyclable K-Cups, Plaintiff's damages proposals are entirely conjectural.  *Id.* at 19–20.

14   However, "[t]he fact that the price of the product did not change after the representation does not

15   establish that there is no triable issue as to whether Plaintiffs paid a price premium."  *Schneider v.*

16   *Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018); *see also McCrary v. Elations*

17   *Co. LLC*, No. 13-cv-0242-JGB (SPX), 2014 WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) ("A

18   price premium may exist even though" the product "was sold at the same price" with and without

19   the alleged misrepresentation).  As Plaintiff's expert explains through an example:

20               For example, a 24-count package of GMCR Dark Magic coffee pods
             was first shipped under the recyclable claim during the week of June
21           13, 2019.  Prior to the week of June 13, 2019, [Keurig] sold this same
             product absent the recyclable packaging claims, allowing
22           econometric analysis to be conducted to measure the change in value
             resulting from the recyclable claim without the need to control for
23           other variables.

24   Hamilton Decl. at ¶ 78.  Significantly, there is no indication that the underlying products changed,

25   except for the recyclability claim.  The methodology to calculate a price premium in this manner

26   thus represents a plausible method to calculate damages consistent with Plaintiff's liability case.

27   Such a method appropriately accounts for some consumer value obtained from the Products and

28   focuses narrowly on determining what price premium, if any, resulted from the recyclability claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Keurig argues that Plaintiff's expert has not given any specific calculation and instead

2  presents a "wait-and-see" approach that has been rejected by the Ninth Circuit.  Opp. at 18 (citing

3  *Ward v. Apple Inc.*, 784 F. App'x 539 (9th Cir. 2019)).  The expert declaration in *Ward* proffered

4  only "theories of impact and damages" using "common methodology and data."  *Ward v. Apple*

5  *Inc.*, 12-cv-05404-YGR, 2018 WL 934544, at *3 (N.D. Cal. Feb. 16, 2018).  Here, by contrast,

6  Plaintiff proposes a model that is consistent with the specific nuances of Plaintiff's theory in this

7  case, accounting for factors including time for shelf conversion and multiple product attributes

8  valued by consumers.  Additionally, Plaintiff's expert, like Keurig's expert, details a hypothetical

9  scenario showing how the model works (even though the experts predictably disagree on whether

10  the solution is appropriate on a classwide basis).  *See* David Decl. at ¶¶ 47–50; Hamilton Reply at

11  ¶¶ 48–49.  Finally, Plaintiff's expert points to specific evidence—daily or weekly retail scanner

12  sales volume data—needed in order to give a meaningful estimate of damages using the induced

13  demand regression model.  Hamilton Decl. at ¶ 81; Hamilton Reply at ¶¶ 36–40.  Unlike *Ward*,

14  the proposed model is not purely theoretical, but can be applied concretely (as demonstrated by

15  both experts) once the appropriate data is obtained.

16  Accordingly, the Court finds that Plaintiff presents a plausible damages model, and thus

17  meets the last requirement to establish predominace.

18      **ii.  Superiority**

19  The superiority requirement tests whether "a class action is superior to other available

20  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The

21  Court considers four non-exclusive factors: (1) the interest of each class member in individually

22  controlling the prosecution or defense of separate actions; (2) the extent and nature of any

23  litigation concerning the controversy already commenced by or against the class; (3) the

24  desirability of concentrating the litigation of the claims in the particular forum; and (4) the

25  difficulties likely to be encountered in the management of a class action.  *Id.*  "Where classwide

26  litigation of common issues will reduce litigation costs and promote greater efficiency, a class

27  action may be superior to other methods of litigation."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

28  1227, 1235 (9th Cir. 1996).

United States District Court
Northern District of California

Plaintiff satisfies the superiority requirement.  Keurig's arguments regarding this requirement largely mirror its predominance arguments.  Pointing to the fourth factor, Keurig argues that individualized inquiries "are central to the question of liability."  Opp. at 20–21.  For the same reasons discussed above, Plaintiff's theory of the case—that the Products are not recyclable in a substantial majority of communities where they are sold—allows her to submit proof on a classwide basis and obviates any manageability concerns.

### C.   Rule (b)(2)

"Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  The "key" to finding a class certifiable under Rule 23(b)(2) "is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to all of the class members or as to none of them."  *Id.* (citation and internal quotation marks omitted) (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction . . . against the defendant," or "to an individualized award of monetary damages."  *Id.* at 360–61 (emphasis in original).

Keurig argues that Plaintiff lacks standing to seek injunctive relief because Keurig has added qualifying language that comports with the FTC's recommendations and Plaintiff is now fully informed regarding the Products' recyclability (or unrecyclability) such that she cannot be injured in the future.  Opp. at 22–23.  Importantly, Plaintiff's theory of the case is that the Products are not recyclable under the FTC's criteria, and that the qualifying language does not cure Keurig's inaccurate and misleading representations of recyclability.  The qualifying language thus does not strip Plaintiff of standing to seek injunctive relief.  Similarly, as the Court found in its order denying Defendant's motion to dismiss, Keurig's reliance on *Davidson* is misplaced.  889 F.3d at 969.  Because "Keurig could plausibly make recyclable Pods without changing their size: MRFs could evolve to be able to capture small plastics such as Pods, such that all Keurig would need to do is make it easier to clean out the Pods and remove their foil lids," the Court again holds that Plaintiff has standing to seek injunctive relief.  Dkt. No. 50 at 6–7.

Next, Keurig argues that the proposed injunctive relief is not indivisible and that Rule

1   23(b)(2) does not apply in this case.  Keurig argues, echoing the themes of several of its prior

2   arguments, that injunctive relief "cannot be granted to those consumers who live in communities

3   that do not recycle [the Products] (*i.e.*, those who are allegedly harmed) <u>and</u> those who live in

4   communities that do (*i.e.*, those who cannot be harmed)."  Opp. at 23 (emphasis in original).

5   Again, Keurig fails to take Plaintiff's theory of this case into account.  It is not individual

6   community recycling facilities' ability to collect the Products that is at issue.  Instead, Plaintiff

7   alleges that the Products are not recyclable in a substantial majority of communities in which they

8   are sold such that Keurig's representation is misleading.  The proposed injunctive relief—an order

9   to enjoin Keurig from advertising their products as recyclable—may be granted and provide relief

10  for all proposed class members.  Plaintiff thus satisfies the requirements of Rule 23(b)(2).

## IV.   MOTIONS TO FILE UNDER SEAL

12          Courts generally apply a "compelling reasons" standard when considering motions to seal

13  documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

14  *v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  "This standard derives from the

15  common law right 'to inspect and copy public records and documents, including judicial records

16  and documents.'"  *Id.* (quoting *Kamakana*, 447 F.3d at 1178).  "[A] strong presumption in favor of

17  access is the starting point."  *Kamakana*, 447 F.3d at 1178 (quotations omitted).  To overcome this

18  strong presumption, the party seeking to seal a judicial record attached to a dispositive motion

19  must "articulate compelling reasons supported by specific factual findings that outweigh the

20  general history of access and the public policies favoring disclosure, such as the public interest in

21  understanding the judicial process" and "significant public events."  *Id.* at 1178–79 (quotations

22  omitted).

23          Records attached to nondispositive motions must meet the lower "good cause" standard of

24  Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only

25  tangentially related, to the underlying cause of action."  *Id.* at 1179–80 (quotation omitted).  This

26  requires a "particularized showing" that "specific prejudice or harm will result" if the information

27  is disclosed.  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th

28  Cir. 2002); *see also* Fed. R. Civ. P. 26(c).  "Broad allegations of harm, unsubstantiated by specific

United States District Court
Northern District of California

1   examples of articulated reasoning" will not suffice.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

2   F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

3        Because the parties move to file documents related to a nondispositive motion, the Court

4   will apply the lower good cause standard.  The Court finds that the parties have provided good

5   cause for sealing portions of the various documents listed below because they contain confidential

6   business and proprietary information relating to the operations of Defendant Keurig.  *See Apple*

7   *Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 6115623 (N.D. Cal. Dec. 10,

8   2012); *see also Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017

9   (E.D. Cal. 2011); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-cv-0159-CW, 2014 WL

10  6901744 (N.D. Cal. Dec. 8, 2014).  Specifically, the parties have identified portions of the

11  unredacted version of the parties' briefs and exhibits as containing confidential and proprietary

12  business information.  The parties also narrowly tailor their requests to only cover the portions of

13  the briefs and exhibits that refer directly to confidential business operations or strategy.

14  Accordingly, the Court finds good cause to **GRANT** the motions to seal.  Dkt. Nos. 64, 74, 79.

15       //

16       //

17       //

18       //

19       //

20       //

21       //

22       //

23       //

24       //

25       //

26       //

27       //

28       //

United States District Court
Northern District of California

## V.    CONCLUSION

The Court finds that all the requirements of Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3) have been met in this case.  Accordingly, the Court **GRANTS** Plaintiff's motion for class certification and certifies the following class for Plaintiff's UCL, CLRA, Breach of Express Warranty, and Unjust Enrichment claims:

> All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) from June 8, 2016 through the present.

The Court appoints Plaintiff Kathleen Smith as Class representative and Lexington Law Group as Class Counsel in this action.  The Court also **SETS** a further case management conference on October 13, 2020, at 2:00 p.m. The parties shall meet and confer and submit a joint case management statement by October 8, 2020.  The joint statement should include a proposed case schedule through trial, as well as a brief discussion of any outstanding issues to resolve before trial.

Finally, the Court **GRANTS** the parties' administrative motions to seal, finding good cause to do so.  Dkt. Nos. 64, 74, 79.

**IT IS SO ORDERED.**

Dated:  9/21/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge