LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209
Ryan Berghoff, State Bar No. 308812
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
rberghoff@lexlawgroup.com

LAW OFFICE OF GIDEON KRACOV
Gideon Kracov, State Bar No. 179815
801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017
Telephone: (213) 629-2071
Facsimile: (213) 623-7755
gk@gideonlaw.net

Attorneys for Plaintiff
KATHLEEN SMITH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KEURIG GREEN MOUNTAIN, INC., <br><br> Defendant. | Case No.  4:18-cv-06690-HSG <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND FOR LEAVE TO AMEND COMPLAINT** <br><br> Date:       March 17, 2022 <br> Time:       1:00 p.m. <br> Location:  Courtroom 2, 4th Floor <br> Judge:     Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 8

BACKGROUND ................................................................................................ 10

    I.    Summary Of The Litigation. ............................................................. 10

    II.   Settlement Negotiations And Mediation. ....................................... 12

    III.  Summary Of The Settlement. ........................................................... 12

        A.    Benefit To Plaintiffs And The Settlement Class. ...................... 12

            1.    Changes To Business Practices. ........................................ 13

            2.    Payments To The Settlement Class Members. ................... 14

        B.    Release Of Class Members' Claims. ......................................... 15

        C.    Payment Of Plaintiffs' Reasonable Attorneys' Fees And Litigation Costs, And Service Awards To The Plaintiffs. ........................... 16

ARGUMENT ................................................................................................... 16

    I.    THE COURT SHOULD GRANT LEAVE TO FILE THE SECOND AMENDED COMPLAINT IN CONNECTION WITH THE PROPOSED SETTLEMENT .............................................................................. 16

    II.   THE CLASS DEFINITION CONTEMPLATED BY THE SETTLEMENT SATISFIES RULE 23 AND CERTIFICATION IS WARRANTED .......... 17

    III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT. ................................................................................ 19

        A.    The Applicable Legal Standard. ............................................... 19

        B.    The Settlement Is the Product Of Serious, Informed And Arm's-Length Negotiations. ................................................................. 20

        C.    The Settlement Has No "Obvious Deficiencies" And Treats No Members Of The Settlement Class Preferentially. ...................... 21

        D.    The Settlement Falls Within The Range of Possible Approval. ................. 24

    IV.  THE PROPOSED NOTICE TO THE CLASS IS APPROPRIATE .................. 26

        A.    The Method Of Notice Is Adequate. ......................................... 26

        B.    The Contents of the Proposed Notice Are Adequate. ................ 28

        C.    The Proposed Claims Administrator. ........................................ 29

    V.   THE INTENDED REQUEST FOR ATTORNEYS' FEES AND

EXPENSES ................................................................................................ 29

VI.     SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ............. 31

CONCLUSION .................................................................................................... 31

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

**TABLE OF AUTHORITIES**

Cases

*Accord Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015)..................................................................................... 24

*Altamirano v. Shaw Indus., Inc.*,
    No. 13-cv-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ............................ 16

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-CV-01196-HSG, 2020 WL 5798152 (N.D. Cal. Sept. 29, 2020) ......................... 23

*Astiana v. Kashi Co.*,
    295 F.R.D. 490 (S.D. Cal. 2013)................................................................................... 17

*Balderas v. Massage Envy Franchising*, LLC,
    No. 12-cv-06327 NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014) .............................. 25

*Briseno v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021)..................................................................................... 20

*Brown v. Hain Celestial Grp., Inc.*,
    No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016).......................... 9, 26

*Burgos v. Sunvalleytek Int'l*,
    No. 18-cv-06910-HSG, 2021 WL 2952828 (N.D. Cal. May 10, 2021)...................... 19, 23

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004)................................................................................... 19, 28

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998)..................................................................................... 22

*Cox v. Clarus Mktg. Group, LLC*,
    291 F.R.D. 473 (S.D. Cal. 2013)................................................................................... 23

*Downing v. Keurig Green Mountain, Inc.*,
    No. 1:20-cv-11673-IT, (D. Mass) ................................................................................ 12

*Eddings v. Health Net, Inc.*,
    No. CV 10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013)................... 22

*Fulford v. Logitech, Inc.*,
    No. 08-cv-02041 MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) .............................. 23

*Geis v. Nestle Waters North America, Inc.*,
    321 F. Supp. 3d 230 (Mass. 2018) ............................................................................... 18

*Glass v. UBS Fin. Servs., Inc.*,
    No. 06–4068, 2007 WL 221862, (N.D. Cal. Jan. 26, 2007) ............................................ 21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..................................................................................... 19

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................................ 19

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019).................................................................................. 18, 19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)........................................................................................ 19

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015).......................................................................... 22, 23, 30

*In re Portal Software Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)............................... 23

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 20, 28

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) (9th Cir. 2021)................................................... 30

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
  MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)......... 28

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012)......................................................................................... 26

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)........................ 9, 26

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)....................................................................................... 26

*McCabe v. Six Continents Hotels, Inc.*,
  No. 12-cv-04818NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ................................ 16

*Miller v. Ghirardelli Chocolate Co.*,
  No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ........................ 9, 26, 28

*Morrison v. Am. Nat'l Red Cross*,
  Case No. 19-cv-02855-HSG, 2021 WL 75743 (N.D. Cal. Jan. 8, 2021) ........................... 22

*Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 20

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... 19

*Radcliffe v. Experian Info. Solutions, Inc.*,
  715 F.3d 1157 (9th Cir. 2013)................................................................................... 21, 22

*Rael v. Children's Place, Inc.*,
  No. 3:16-CV-00370-GPC-LL, 2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .................... 19

*Rivas v. BG Retail, LLC*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

No. 16-cv-06458-BLF, 2020 WL 264401 (N.D. Cal. Jan. 16, 2020) ............................... 25

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 21, 28

*Schaffer v. Litton Loan Serv., LP.*,
   No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............. 25

*Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588
   (N.D. Cal. 2020) ........................................................................................ passim

*Spann v. JC Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ............................................................................ 19

*Staton v. Boeing, Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................ 22, 23

*Theodore Broomfiled v. Craft Brew Alliance, Inc.*,
   No 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................. 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943  (9th Cir. 1976) ................................................................................ 19

*Villanueva v. Morpho detection, Inc.*,
   No. 13-cv-05390-HSG, 2016 WL 1070523 (N.D. Cal. March 18, 2016) ......................... 25

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,
   173 F.3d 713 (9th Cir. 1999) ........................................................................ 17, 25

*Williams v. Costco Wholesale Corp.*,
   No. 02-cv-2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ......................... 20

*Zeizel v. Diamond Foods, Inc.*,
   No. C 10-01192 JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012) ........................... 9, 26

<u>Statutes</u>

C.C.P
   § 1781(d) .............................................................................................................. 27

C.C.P
   §1021.5 ................................................................................................................ 16

California Consumers Legal Remedies Act ("CLRA") ................................................. 16

Fed. R. Civ. P.
   23(b)(2) ................................................................................................................ 18

Fed. R. Civ. P.
   23(c)(1)(C) ............................................................................................................ 17

MGL
   § 93A ................................................................................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

**Treatises**

WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:25 (4th ed.
    2002)........................................................................................................................ 20

**Other Authorities**

GfK MRI's *Survey of the American Consumer®* ............................................................ 27

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 17, 2022 at 1:00 p.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., Plaintiff Kathleen Smith ("Plaintiff") will, and hereby does, move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (1) preliminarily approving the proposed settlement; (2) certifying a modified settlement class for settlement purposes only; (3) approving the form and manner of notice to the class; and (4) scheduling a final approval hearing before the Court. Plaintiff further moves for an Order granting leave to file a Second Amended Complaint in connection with the proposed Settlement.

The Court should grant the Motion because the settlement is the product of arm's-length, good-faith negotiations, and is fair, reasonable and adequate to the class such that the Court should authorize notice of its terms to class members and schedule a hearing for final approval of the proposed settlement.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Howard Hirsch and exhibits attached thereto, the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### <u>INTRODUCTION</u>

Plaintiffs Kathleen Smith and Mathew Downing ("Plaintiffs"),[1] on behalf of the proposed Settlement Class (defined herein), requests that the Court grant preliminary approval of the Settlement ("Settlement") reached with Defendant Keurig Green Mountain, Inc. ("Keurig" or "Defendant"), attached as Exhibit 1 to the Declaration of Howard Hirsch ("Hirsch Decl.") submitted herewith.  The Settlement resolves, on a national basis, Plaintiffs' claims for injunctive relief and class wide damages concerning Keurig's allegedly false and misleading labeling of its single serve coffee pods labeled as recyclable (the "Products").

The Settlement is fair, reasonable, and adequate, falling well within the range of class action settlements that merit preliminary approval.  First, the Settlement provides injunctive relief that fully remedies the alleged false representation at the heart of this case.  Specifically, the Settlement will prohibit Keurig from labeling, marketing, advertising, or otherwise representing that the Products are recyclable (through use of the word "Recycling" or any variation thereof or through the conspicuous use of the Chasing Arrow symbol or any variation thereof) without clearly and prominently including a revised qualifying statement, "Check Locally – Not Recycled in Many Communities."  Settlement § III.A.2.  This new qualifying language clearly puts consumers on notice that the Products are not recyclable in many communities.  Hirsch Decl. ¶ 8.  The Settlement would also require Keurig to present this new disclaimer in a substantially larger font size than the disclaimer on the current packaging, ensuring that consumers notice and understand the statement.  *Id*.  Because Keurig's labels also cross-reference its website for more information about the recyclability of the Products, the Settlement also requires changes to the content of Keurig's website (and other forms of advertising) to ensure consumers are not misled into believing the Products are more widely recyclable than they are.  Settlement § III.A.7.

Second, the Settlement provides for the non-reversionary payment of ten million dollars

---

[1] Plaintiff Smith requests that the Court grant leave to file the Second Amended Complaint, which adds Mathew Downing as a Plaintiff and expands the case to include a putative national class.

($10,000,000) in cash for the benefit of the Settlement Class (the "Settlement Fund").  Settlement § III.B.1.  This fund, which constitutes more than 10% of the maximum alleged actual damages to the class as a whole, represents a significant recovery for the Settlement Class in light of the substantial risks of decertification and trial.  Keurig charged approximately $6.40 for ten (10) single-serve coffee pods during the class period.  While hotly disputed by Keurig, Plaintiffs' expert has determined that the average actual damages a class member suffered was approximately $0.10 per 10 pods.  Hirsch Decl. ¶ 12.   Under the Settlement, each Settlement Class member can recover more than their actual damages by obtaining $0.35 per 10 pods with proof of payment, with a minimum of $6.00 and a maximum of $36.00 per household.  Settlement § III.B.4.  To be clear, customers did not purchase pods individually but instead purchased pods in packages that typically contained dozens of pods per package; therefore, the benefit provided by the settlement with proof of purchase may be substantial for any class members who kept records of their purchases (as reflected by the $36.00 maximum benefit per household).  Hirsch Decl. ¶ 13. Moreover, even as to class members who do did not keep such records, such Settlement Class member may recover $5.00 without proof of purchase.  Settlement § III.B.4.

These settlement benefits, which class members may obtain through a simple claims process (including an online claim form), are in line with, if not better than, other mislabeling settlements approved in this District, including cases involving alleged mislabeling of food and beverages.  *See*, *e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) (final approval of $6.5 million settlement); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) (final approval of $5.25 million settlement); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) (final approval of $3.375 million settlement); *Zeizel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012) (final approval of $2.6 million settlement); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) (final approval of $7.5 million cash and $1.85 million in coupons settlement).

Thus, the Settlement provides both injunctive relief and substantial monetary relief for

many thousands of purchasers of the Products who allegedly paid a premium over other coffee products that did not purport to be recyclable.  The Settlement is reasonable in light of the risks of continuing to litigate the case.  Plaintiffs' legal theory was completely untested at the time the case was filed, and Keurig has vigorously contested the claims throughout.  The parties reached the Settlement through arm's-length negotiations after over three years of hard-fought litigation, including: (1) substantial investigation by class counsel; (2) the completion of extensive fact discovery, including the review of hundreds of thousands of pages of documents, the issuance of over twenty-five non-party subpoenas, and the taking of numerous depositions; (3) significant motion practice, including an unsuccessful motion to dismiss, a successful motion for class certification, and Keurig's unsuccessful attempt to seek appellate interlocutory review of the Court's order granting class certification; and (4) two full-day mediation sessions.

Furthermore, the proposed notice plan provides Settlement Class members with the best notice practicable under the circumstances.  It will allow Settlement Class members a full and fair opportunity to evaluate the Settlement to decide whether to participate.  Accordingly, Plaintiffs request that the Court: (1) preliminarily approve the proposed Settlement; (2) certify a modified Settlement Class for settlement purposes only; (3) approve the form and manner of notice to the Settlement Class; and (4) schedule a final approval hearing before the Court pursuant to Rule 23(e) to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.  Plaintiffs further move for an Order granting leave to file a Second Amended Complaint in connection with the proposed Settlement.

## BACKGROUND

### I.     Summary Of The Litigation.

Plaintiff Smith filed her class action complaint in California Superior Court on October 1, 2018.  Plaintiff Smith alleged that Keurig's advertising, marketing, labeling, and sale of the Products as recyclable was false and misleading, in violation of California consumer protection laws.  On November 2, 2018, Keurig timely filed a notice of removal to this Court (ECF No. 1).

On December 7, 2018, Keurig filed a motion to dismiss (ECF No. 18).  Plaintiff Smith

then filed the operative First Amended Complaint on December 28, 2018 (ECF No. 20).  Keurig moved to dismiss the First Amended Complaint on January 28, 2019 (ECF No. 26).  The Court denied Keurig's motion to dismiss in its entirety (ECF No. 50) and Keurig filed its answer to the First Amended Complaint on July 15, 2019 (ECF No. 51).

Extensive discovery was completed prior to briefing on Plaintiff Smith's motion for class certification.  Discovery included the production and review of hundreds of thousands of pages of documents from parties and non-parties, preparing for and defending Ms. Smith's deposition, taking Rule 30(b)(6) depositions of Keurig employees, and serving and responding to over a hundred discovery requests.  Hirsch Decl. ¶ 5.  In addition, Plaintiff Smith served subpoenas on over twenty-five non-parties.  *Id.*  Plaintiff Smith also conducted many meet and confer efforts with Keurig and filed joint discovery letters and other requests for resolution of discovery disputes before this Court (ECF Nos. 59, 69).

On December 17, 2019, Plaintiff Smith filed her motion for class certification (ECF No. 65).  On September 21, 2020, the Court certified a class under both Rule 23(b)(2) and Rule 23(b)(3) (ECF No. 96).  On October 5, 2020, Keurig filed a Rule 23(f) petition before the Ninth Circuit seeking permission to appeal the Court's decision granting class certification (ECF No. 98).  On October 21, 2020, this Court set the scheduling order through trial, setting deadlines for the exchange of opening and rebuttal expert reports and the close of discovery.  On November 25, 2020, the Court of Appeals denied Keurig's petition (ECF No. 104).

Between November 25, 2020, and October 27, 2021, the parties continued to vigorously litigate this case, including conducting several non-party depositions, litigating disagreements regarding various case management issues (*see*, *e.g.*, ECF No. 111) and raising additional discovery disputes with the Court that the parties could not resolve through extensive informal meet and confer efforts (ECF Nos. 116, 122).

Plaintiff Downing filed his class action complaint in the United States District Court of Massachusetts on September 9, 2020, alleging substantially similar claims as Plaintiff Smith but on behalf of both a Massachusetts subclass and a national class.  Hirsch Decl. ¶ 6; *see also*

*Downing v. Keurig Green Mountain, Inc.*, No. 1:20-cv-11673-IT, (D. Mass) (Dkt. No. 1). On December 12, 2020, Keurig filed a motion to dismiss in that case along with a motion to strike the national class allegations. *Id.* On June 11, 2021, the Massachusetts District Court denied Keurig's motion to dismiss, but granted Keurig's motion to strike the nationwide class. *Id.*; *see also Downing v. Keurig Green Mountain, Inc.*, No. 1:20-cv-11673-IT, 2021 WL 2403811 (D. Mass. June 11, 2021). Plaintiff Downing filed a petition for permission to appeal the court's ruling striking allegations on behalf of a nationwide class, and that petition remains pending in the First Circuit. *Id.*

## II.       Settlement Negotiations And Mediation.

The parties have engaged in periodic settlement discussions throughout the pendency of this litigation, including two full-day mediation sessions. Hirsch Decl. ¶ 7. On May 11, 2021, the parties and their counsel participated in their first full-day mediation with Hon. Morton Denlow (Ret.). *Id.* The parties did not settle during that mediation session; however, the parties made significant progress towards resolving Plaintiffs' claim for injunctive relief. *Id.* The parties and their counsel then participated in multiple conference calls with Hon. Morton Denlow. *Id.* On September 21, 2021, the parties and their counsel participated in a second full-day mediation with Hon. Morton Denlow. *Id.* While the parties did not fully settle the case, they made additional progress. *Id.* On October 27, 2021, after further discussions with the parties and their counsel, the parties executed a settlement term sheet and requested the Court to stay all proceedings and set a deadline for the present motion. *Id.*[2]

## III.      Summary Of The Settlement.

### A.       Benefit To Plaintiffs And The Settlement Class.

The Settlement provides benefits to Plaintiffs and the Settlement Class by requiring Keurig to make material changes to its labeling, marketing and advertising of the Products, including prominently adding a revised qualifying statement "Check Locally – Not Recycled in Many

---

[2] Likewise, the *Downing* case and associated appeal have been stayed pursuant to the agreement of the Parties pending this Court's consideration of the Settlement.

Communities."  Settlement § III.A.1.  By making these modifications, Keurig will prevent future injury to future purchasers of the Products (including Settlement Class members).  In addition, Keurig agrees to provide $10 million for the benefit of the Settlement Class.  *Id.* § III.B.1.  While not included as a Settlement term, Keurig began modifying the Products in 2021 after this litigation was pending to include a more easily peelable lid to make the Products more likely to be successfully recycled, which Plaintiffs had also urged Keurig to do throughout the litigation. Hirsch Decl. ¶ 14.

### 1. Changes To Business Practices.

The Settlement directly addresses the alleged misrepresentation at the center of this case. The labels of the Products purchased by Plaintiffs boldly proclaimed in large type, "Have your cup and recycle it, too," and had no qualifying language other than "Check locally to recycle empty cup."  *See* ECF No. 20, ¶ 19; Hirsch Decl. ¶ 8.  While Keurig's labels have changed over time, the injunctive portion of the Settlement requires Keurig to modify all its labels, advertising, and marketing of the Products to qualify any recycling representation with the statement, "Check Locally – Not Recycled in Many Communities."  Settlement § III.A.1.  This qualifier must appear in close proximity to any representation regarding recycling and in a font size no smaller than 55% of the font size of any recyclable representation.  *Id.* § III.A.2.  The qualifying language required by the Settlement is substantially stronger than anything Keurig has ever included, and at least 20% larger than its current qualifier to ensure that consumers actually notice and read the qualification.  Hirsch Decl. ¶ 8.

In addition, because Keurig also makes recyclability representations in other print and online marketing, and because Keurig's labels cross-reference its website, the Settlement also addresses the content of Keurig's website and other forms of advertising to ensure those sources do not mislead consumers into believing the Products are recyclable everywhere.  Settlement § III.A.7.  For example, Keurig's website currently states, "Our new pods are made of polypropylene #5 plastic, which is accepted for recycling in the majority of communities across the United States," which could lead a consumer to believe that any community that accepts #5

plastic accepts the Products for recycling.  *Id.*, § III.A.8; Hirsch Decl. ¶ 9.  To redress this, the Settlement requires Keurig to include qualifying language or context indicating that not all communities that accept #5 plastic currently accept coffee pods or other small format items.  *Id.*  In addition, the Settlement requires any video content to feature a revised qualifier at the same time as the recycling representation in a sufficiently large font, such that a reasonable viewer could read it.  Settlement § III.A.7.  The Settlement also mandates modifications to Keurig's publicly available corporate responsibility and sustainability reports, requiring Keurig to use the new qualifications on any page referencing the recyclability of the Products.  *Id.*

### 2. Payments To The Settlement Class Members.

Keurig will contribute $10 million to the Settlement Fund, which will compensate purchasers of the Products who Plaintiffs allege were misled by Keurig's labeling practices. Settlement § III.B.1.  Settlement Class members who submit claim forms can receive $5.00 per household without proof of payment.  *Id.* § III.B.4.  Settlement Class members with proof of purchase may obtain $0.35 per 10 pods purchased for a maximum of $36.00 per household (and a minimum of $6.00).  *Id.*  Proof of purchase may include receipts, email or order or shipping confirmations.[3]  *Id.* § III.B.3.  To be clear, because consumers typically purchased pods in multi-pod packages containing dozens of pods, the typical recovery per transaction will be substantially greater than $0.35, depending upon the number of pods within each package the class member purchased.  Hirsch Decl. ¶ 13.

The Settlement does not permit any Settlement Fund money to revert to Keurig.  If the amounts ultimately paid on claims and expenses do not equal or exceed $10 million, the remainder of the Settlement Fund will be distributed to The Ocean Conservancy (75% of unclaimed funds) and Consumer Reports, Inc. (25% of unclaimed funds) for use in a manner that will provide the

---

[3] The Settlement Fund will be administered by Kroll Settlement Administration (the "Claims Administrator" or "Kroll") – an independent, qualified company – which shall approve claims submitted by affected members of the Class in accordance with a clear and objective procedure and subject to verification by the parties.

1   next best use of compensation to Settlement Class members arising out of claims that have been

2   made by Plaintiffs in this action.

3          The Ocean Conservancy's mission is to protect the ocean from global challenges by

4   creating science-based solutions for a healthy ocean and the wildlife and communities that depend

5   on it.  Hirsch Decl. ¶ 30.  The Ocean Conservancy has a program titled Fighting for Trash Free

6   Seas centered on ending the flow of plastic into the ocean.  *Id*.  The Ocean Conservancy estimates

7   that it has collected 341,836,857 pounds of trash, including plastic, from the ocean since 1986.[4]

8   *Id*.  As this case concerns plastic pollution in part due to the labeling of plastic products as

9   recyclable that are not in fact recycled, there is a close correlation between the Ocean

10  Conservancy's mission and the facts that give rise to the instant action.  *Id*.

11         Consumer Reports (formerly known as Consumers Union) advocates to ensure that

12  consumers can make informed choices and influence the marketplace.  *Id*.  Consumer Reports

13  stands by the principle that consumer products and services must be safe, effective, reliable, and

14  fairly priced.  *Id*.  It advocates for truth and transparency wherever information is hidden or

15  unclear and it pushes companies to address and remedy issues quickly with their products and

16  services.[5]  *Id*.  As this case concerns consumer deception due to the labeling of products as

17  recyclable, there is a close correlation between Consumer Reports' mission and the facts that give

18  rise to the instant action.  *Id*.

19         **B.      Release Of Class Members' Claims.**

20         In exchange for Keurig's agreement to change its business practices, including

21  modification of the labels on the Products, and provide $10 million for the benefit of the

22  Settlement Class, the Settlement releases Keurig from all claims for injunctive and monetary relief

23  arising out of Keurig's representations that the Products are recyclable.  Settlement § IV.

24

25  _____

26  [4] For more information about The Ocean Conservancy, visit https://oceanconservancy.org/about/.

27  [5] For more information about Consumer Reports, visit
    https://www.consumerreports.org/cro/about-us/what-we-do/advocacy/index.htm.

28

### C.   Payment Of Plaintiffs' Reasonable Attorneys' Fees And Litigation Costs, And Service Awards To The Plaintiffs.

The Settlement authorizes class counsel to seek to recover a portion of their attorneys' fees and costs incurred in prosecuting this action.  Following the Court's preliminary approval of the Settlement, class counsel will submit an application to the Court for an award of attorneys' fees not to exceed $3,000,000, plus reasonable expenses from the Settlement Fund.  Settlement § VIII.A.2.  Class counsel's application for attorneys' fees and expenses will be made in accordance with the California Consumers Legal Remedies Act ("CLRA"), Cal. Code of Civil Procedure §1021.5, Massachusetts General Laws § 93A ("MGL § 93A"), and the common fund doctrine.  Keurig retains the right to object to Plaintiffs' entitlement to such an award, or to the amount of an award Plaintiffs seek.  *Id.*

At the same time as they move for attorneys' fees and costs, class counsel will seek reasonable service award payments out of the Settlement Fund for the named Plaintiffs for their services as class representatives.  *Id.*, § VIII.B.  The amount of this award is not to exceed $5,000 for Plaintiff Smith and $1,000 for Plaintiff Downing.

<u>**ARGUMENT**</u>

## I.   THE COURT SHOULD GRANT LEAVE TO FILE THE SECOND AMENDED COMPLAINT IN CONNECTION WITH THE PROPOSED SETTLEMENT

As part of the Settlement, Plaintiff Smith seeks the Court's permission to file a Second Amended Complaint, which would redefine the class definition to be consistent with the proposed Settlement Class.  Hirsch Decl., ¶ 2, Ex. 2.  Rule 15(a)(2) permits plaintiffs to amend their pleading with the opposing party's written consent or the Court's leave.  "Where the parties have agreed to file an amended complaint as part of the class settlement, judges in this district have granted leave to amend, subject to the terms of the settlement."  *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818NC, 2015 WL 3990915, at *4 (N.D. Cal. June 30, 2015) (citations omitted); *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939-HSG, 2015 WL 4512372, at *10 (N.D. Cal. July 24, 2015); *Schneider*, 336 F.R.D. at 591 fn. 1.  Because the parties agreed that Plaintiffs could amend the Complaint to implement the terms of the Settlement, the Court should grant the motion for leave to file the Second Amended Complaint.

**II.   THE CLASS DEFINITION CONTEMPLATED BY THE SETTLEMENT SATISFIES RULE 23 AND CERTIFICATION IS WARRANTED**

On September 21, 2020, the Court granted class certification pursuant to Rules 23(b)(2) and 23(b)(3) (ECF No. 96).  Ordinarily, there would be no reason to revisit the class definition at this juncture.  However, the Settlement is conditioned upon the Court expanding the class definition from California purchasers of the Products to all purchasers of the Products in the United States.  The proposed modified class definition is as follows:

> All persons who purchased the Products (defined herein) in the United States for personal, family, or household purposes from June 8, 2016, through the present.

Excluded from the Settlement Class are all persons who opt out of the Settlement in a timely manner; counsel of record (and their respective law firms) for the parties; Defendant and any of its Affiliates (as defined in the Settlement), and all their immediate family members; any legal representative, heir or assign of Defendant; the Hon. Morton Denlow (Ret.) and his immediate family members; all federal court judges who have presided over this action, and their immediate family members; and those who purchased the Challenged Products for the purpose of resale. Settlement § I.A.12.

The Court can amend or alter the class definition at any time before a decision on the merits.  Fed. R. Civ. P. 23(c)(1)(C); *Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999) (citing Rule 23(c)(1), giving court "explicit permission to alter or amend a certification order before [a] decision on the merits").  Here, the requested modification should be granted because it is appropriate to include and award settlement proceeds to those consumers who were exposed to the same recyclable claims and practices as Plaintiffs and the certified California class throughout the United States.[6]

While the new class definition must satisfy Rule 23 requirements, *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013), those requirements are easily met here because the parties essentially seek only to add more people to the class who were exposed to the same practices, and

---

[6] If for any reason the Court does not approve the settlement, each party shall retain all their respective rights as they existed as of the date of the execution of the Settlement, including maintenance of the class certified by the Court on September 21, 2020.

1  who have the same claims, as Plaintiffs and the certified class.  Thus, the Court's prior analyses as

2  to the Rule 23(a) requirements have not changed.  *See Smith v. Keurig Green Mt., Inc.*, No. 18-

3  CV-06690-HSG, 2020 WL 5630051, at *1-6 (N.D. Cal. Sep. 21, 2020).

4         The requirements under Rule 23(b)(2) have also been met.  A plaintiff must show that "the

5  party opposing the class has acted or refused to act on grounds that generally apply to the class, so

6  that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as

7  a whole." Fed. R. Civ. P. 23(b)(2).  As the Court already found when it certified the class,

8  injunctive relief is appropriate respecting the class as a whole because Plaintiffs allege that the

9  Products are not recyclable in a substantial majority of communities in which they are sold and an

10  order enjoining Keurig from advertising its Products as recyclable would provide relief for all

11  proposed class members.  *Smith*, 2020 WL 5630051, at *7.

12         Finally, predominance under Rule 23(b)(3) holds true with the proposed Settlement Class.

13  Plaintiffs' claims continue to be based on the same facts and the same legal and remedial theories

14  as the claims of the Settlement Class because they are all based on Keurig's uniform use of

15  allegedly deceptive labels and advertisements.  *Smith*, 2020 WL 5630051, at *4-7; *see also In re*

16  *Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 559-60 (9th Cir. 2019).  Moreover,

17  Massachusetts consumer protection law might be applied nationally to the claims of all Settlement

18  Class members because Keurig is based in Massachusetts and all of the conduct at issue allegedly

19  emanated from Massachusetts.  *Geis v. Nestle Waters North America, Inc.*, 321 F. Supp. 3d 230,

20  241-42 (Mass. 2018) (allowing out-of-state residents to bring claims under Massachusetts

21  consumer protection law).[7]  *See also Hyundai*, 926 F.3d at 564-65 (applying California law to

22  nationwide class).  In any event, courts in this district, including this Court, routinely approve

23  national classes for purpose of settlement involving similar cases premised on misrepresentations.

24  *See*, *e.g.*, *Schneider*, 336 F.R.D. 588 (granting approval for leave to file amended complaint to

25  expand California, New York, and Maryland class to national class for claims based on

26  _____

27  [7] The District Court in the *Downing* action granted Keurig's motion to strike the national class
   allegations.  However, Plaintiff Downing appealed that ruling to the First Circuit.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT

misrepresentation, unjust enrichment, and declaratory relief); *Theodore Broomfiled v. Craft Brew Alliance, Inc.*, No 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (approving national settlement class for claims based on misrepresentation and unjust enrichment); *Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 WL 2952828 (N.D. Cal. May 10, 2021) (approving national settlement class for claims based on misrepresentation, breach of warranty, and unjust enrichment).  In addition, the superiority requirement of Rule 23(b)(3) remains satisfied because the ultimate recovery by the Settlement Class would be dwarfed by the cost of litigating on an individual basis, and any Settlement Class member who wishes to opt out may do so pursuant to the proposed notice plan.  *Smith*, 2020 U.S. WL 5630051, at *10-11; *see also Spann v. JC Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016) (noting that, "in the context of settlement, the other requirements of Rule 23(b)(3) . . . are rendered moot and are irrelevant").

In sum, because the Court's prior Rule 23 analysis applies to the Settlement Class, the class definition should be modified as requested.

## III.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

### A.     The Applicable Legal Standard.

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  A proposed settlement may be approved by the court if it is determined to be "fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Hyundai*, 926 F.3d at 556; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits …"  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Rael v. Children's Place, Inc.,* No. 3:16-CV-00370-GPC-LL, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020); *see also Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

Given that the full fairness and adequacy of a class settlement can only be assessed at the final approval hearing, at the preliminary approval stage the Court "need only review the Parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003 IEG (AJB), 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) (citing William B. Rubenstein, et al., NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) (citations omitted)).  While courts still must analyze post-certification settlements for collusion at final approval, courts in this district recognize that "the potential for collusion reaches its apex pre-class certification." *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021).  Here, not only has a class already been certified, but also none of the hallmarks of a collusive settlement are present.  Plaintiffs' counsel will not receive a disproportionate distribution of the settlement, there is no clear sailing arrangement regarding class counsel's motion for attorney fees, and the settlement does not allow for a reversion.

Preliminary approval of a settlement is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  The Settlement meets all the above criteria.[8]

### B.    The Settlement Is the Product Of Serious, Informed And Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel after meaningful discovery constitute prima facie evidence of a fair settlement.  *Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004).  The Parties' negotiations here were made in good-faith and at arm's length.  *See* Hirsch Decl. ¶ 3.  Class counsel have considerable experience in

---

[8] For compliance with the Northern District's "Procedural Guidance for Class Action Settlements," please see the accompanying declaration of class counsel.  *See* Hirsch Decl. ¶¶ 22-34.

class action litigation in general, and with the legal and factual issues of this case in particular.  *Id.*, at ¶ 19.  Moreover, the fact that the Settlement was reached only after participation in two formal mediation sessions with Judge Morton Denslow (Ret.) also weighs in favor of granting preliminary approval.  *See Glass v. UBS Fin. Servs., Inc.*, No. 06–4068, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007).

Furthermore, Plaintiffs obtained vital information from Keurig and non-parties in discovery pertaining to the legitimacy and scope of their claims, including information regarding the Products' labels and sales, and information regarding the recyclability of the Products.  Hirsch Decl. ¶ 5.  Likewise, Plaintiffs provided Keurig with discovery and data demonstrating the strength of their claims.  *Id.*  This exchange of information ensured sophisticated and meaningful settlement negotiations, which the parties conducted over several years.  *Id.*  In short, the parties were fully informed of all relevant facts when they reached the Settlement.

### C.     The Settlement Has No "Obvious Deficiencies" And Treats No Members Of The Settlement Class Preferentially.

The Settlement is fair and treats Settlement Class members equitably.  All Settlement Class members will receive the benefit of the injunctive relief.  And while the Settlement authorizes incentive awards to be determined by the Court for Plaintiff Smith in an amount not to exceed $5,000 and for Plaintiff Downing in an amount not to exceed $1,000, the Settlement is not conditioned on the Court's approval of the incentive awards.

Incentive awards are typical in class actions and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  In evaluating whether the Settlement grants preferential treatment to Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest.  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).  More important considerations, however, are "the number of class representatives, the average incentive award

amount, and the proportion of the total settlement that is spent on incentive awards." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  The Court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  Finally, the Court must evaluate whether a conflict exists due to the incentive award being conditioned on the class representatives' approval and support of the Settlement.  *Radcliffe*, 715 F.3d at 1161.

The amounts of the incentive awards requested are appropriate here given the time and risk of Plaintiffs' participation.  Plaintiffs expended a significant amount of time participating in this action and stuck their necks out on a completely untested legal theory regarding misleading recycling representations.  Plaintiff Smith spent more than three years prosecuting this action, and has spent many hours reviewing pleadings, responding to discovery requests, reviewing and producing documents, sitting for an all-day deposition, conferring with class counsel in person, by telephone and by email, and attending and actively participating in both mediation sessions.  Hirsch Decl. ¶ 17.  This litigation has also led to unwanted press attention for Plaintiff Smith.  *Id.*  Likewise, although Plaintiff Downing's case has not progressed as far as Plaintiff Smith (hence the smaller proposed incentive award for him), Mr. Downing has assisted his counsel in investigating the case, reviewing pleadings, and consulting with his attorneys concerning case and settlement strategy.  Hirsch Decl. ¶ 18.  These factors further support and justify the amounts requested.  *See*, *e.g.*, *Morrison v. Am. Nat'l Red Cross*, Case No. 19-cv-02855-HSG, 2021 WL 75743 (N.D. Cal. Jan. 8, 2021) (approving $5,000 incentive award from $377,000 settlement); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZX), 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving $6,000 incentive award from $600,000 settlement to compensate plaintiff for her time, effort and risk in prosecuting the action).

That the proposed incentive awards exceed class member benefits under the Settlement presents no problem, as the proposed awards do not come close to arising to the level of unduly

preferential treatment.  Indeed, courts routinely approve similar or greater incentive awards in settlements that likewise involved relatively modest individual class member payments.  *See, e.g.*, *Cox v. Clarus Mktg. Group, LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (approving a $5,000 incentive award where class members would receive a maximum payment of $36); *see also Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive award payments ranging from $5,000 to $40,000).

More importantly, there are only two class representatives who seek, at most, only three thousandths (0.0005%) of the $10 million Settlement Fund amount.  The amounts are reasonable considering the total amount of the awards in relation to the full amount of the Settlement Fund. *See Online DVD-Rental*, 779 F.3d at 947-948 (approving incentive awards that were roughly 417 times larger than $12 individual awards because the awards were reasonable, the number of representatives were relatively small, and the total amount of incentive awards "ma[d]e up a mere 0.17% of the total settlement fund"); *cf. Staton*, 327 F.3d at 976-77 (reversing approval of incentive awards that averaged $30,000 each for 29 class representatives, totaling $890,000, or roughly 6% of a potential $14.8 million settlement).  Thus, the Settlement does not improperly grant preferential treatment to Plaintiffs or segments of the Settlement Class.  *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5-6 (N.D. Cal. June 30, 2007).

While this Court rejected incentive awards for the named plaintiffs in *Schneider* 336 F.R.D. 588, 602 (N.D. Cal. 2020); *Ang v. Bimbo Bakeries USA, Inc*., No. 13-CV-01196-HSG, 2020 WL 5798152, at *12-13 (N.D. Cal. Sept. 29, 2020); and *Burgos*, No. 18-CV-06910-HSG, 2021 WL 2952828, at *10 (N.D. Cal. May 10, 2021), the settlement in this case does not raise the same concerns.  For example, in *Schneider*, the initial settlement had much lower claim amounts per class member.  Here, the settlement benefits per Settlement Class member are greater. Moreover, it is more likely here that Settlement Class members will provide proof of purchase because individuals typically purchase the Products regularly online or at the same retail outlets, in contrast to the sporadic fast food purchases in *Schneider*.  And Class Members may obtain substantial settlement benefits without proof of purchase.  In *Ang*, the Court was concerned about

1   the incentive awards since the absent class members were receiving no monetary relief.  That is

2   clearly not the case here.  And in *Burgos*, there was only evidence of minimal work done by

3   plaintiffs – they were not deposed and they only provided sparse details of what they actually did.

4   Here, Plaintiffs have provided detail with respect to the amount of actual work they performed,

5   and will provide even more in connection with final approval.  Finally, Plaintiffs' agreement to the

6   Settlement is not dependent on receiving an incentive award, and the Settlement is not conditioned

7   on the Court approving the awards.

8            **D.      The Settlement Falls Within The Range of Possible Approval.**

9            The terms of the Settlement fall well within the bounds of reasonableness.  The injunctive

10  relief afforded by the Settlement addresses the labeling and advertising claims at the heart of this

11  litigation.  In addition, the Settlement Fund of $10 million is substantial by any measure and

12  certainly falls within a range of possible approval.  This is particularly true given the real and

13  substantial risk that Plaintiffs could have successfully proven liability at trial yet still recovered

14  nothing because the fact and amount of restitution that could be recovered in this case are still

15  uncertain.  *Accord Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015);

16  *Smith*, 2020 U.S. Dist. 2020 WL 5630051, at *8-9.  Indeed, in granting class certification the

17  Court determined that Plaintiff Smith's proposed restitution model was not viable but agreed that

18  her proposal to measure damages based on a price premium method (using either induced demand,

19  difference-in-difference, or conjoint analysis) may be able to measure damages on a classwide

20  basis.  *Id.*  However, Keurig continues to dispute the Court's decision granting class certification,

21  arguing that certification was unwarranted because Plaintiffs failed to demonstrate that damages

22  can be calculated on a classwide basis.

23          Specifically, Keurig has argued in opposing class certification and appealing the Court's

24  class certification order (*see, e.g.,* ECF Nos. 75, 98) that the Court erred in finding sufficient

25  Plaintiffs' price premium damages model.  Keurig argues that because it did not sell the Products

26  at a higher price than comparable products not labeled as recyclable, there can be no damages to

27  Plaintiffs or the Settlement Class.  Defendant has also argued that class certification is not

28

appropriate because the Products may be recycled in some communities, and that purchasers of the

Products in such communities were neither misled nor damaged.  *Smith*, 2020 WL 5630051, at *9.

While Plaintiffs firmly believe that their liability case is strong and that the Court properly granted

class certification, there remains the possibility that the Court may decertify the class or find in

Keurig's favor on the merits at trial.  *See Vizcaino*, 173 F.3d at 721.

In evaluating the Settlement, it is relevant to determine what Settlement Class members

would likely recover were the case litigated.  Importantly, all Settlement Class members will

benefit from the injunctive relief.  In addition, Settlement Class Members who make a claim will

receive cash, and the amount that they receive will depend on the number of Products for which

they submit a claim.  The Settlement guarantees an immediate recovery to those making claims of

an amount much greater than the likely recovery a claimant could have recovered had Plaintiffs

prevailed at trial.  In addition, based on sales data provided confidentially by Keurig, Plaintiff

Smith's expert calculated national damages of $91 million during the relevant time period.

Accordingly, the $10 million proposed settlement would amount to over 10% of the aggregate

nationwide recovery under Plaintiffs' theories and methodologies.  *See Schneider*, 336 F.R.D. at

597 (approving settlement which represented 7.4% of estimated damages based on a national

class); *see also Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 WL 264401 (N.D. Cal. Jan.

16, 2020) (approving settlement which represented 6.12% of estimated damages); *Balderas v.*

*Massage Envy Franchising*, LLC, No. 12-cv-06327 NC, 2014 WL 3610945 (N.D. Cal. July 21,

2014) (granting preliminary approval for settlement which represented 5% of estimated damages);

*Villanueva v. Morpho detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal.

March 18, 2016) (collecting cases).  The Court's reliance on these figures must be tempered by the

additional costs and delay of trial coupled with the risk that Plaintiffs could prove liability yet still

recover nothing.  *See, e.g.*, *Schaffer v. Litton Loan Serv., LP.*, No. CV 05-07673 MMM (JCx),

2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are

tempered by factors such as losing at trial, the expense of litigating the case, and the expected

delay in recovery (often measured in years)."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

In sum, a number of factors militate toward Settlement. Even if Plaintiffs successfully proved their case at trial, the amount of monetary relief recovered, if any, could vary widely depending on other factors, including the Court's discretion as to whether and how much to award in monetary relief. Importantly, even if Plaintiffs recover damages, it may take years before Class Members would receive compensation, as Keurig would undoubtedly appeal any adverse judgment. In comparison, the Settlement provides for the injunctive relief requested and a guaranteed, fixed, immediate and substantial recovery of $10 million, which is in line with, if not better than, other mislabeling settlements approved in this Circuit and District. *See*, *e.g.*, *Miller*, 2015 WL 758094; *Larsen*, 2014 WL 3404531; *Zeisel*, 2012 WL 4902970; *Schneider*, 336 F.R.D. 588; *Brown*, 2016 WL 631880.

## IV.     THE PROPOSED NOTICE TO THE CLASS IS APPROPRIATE

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] settlement]."). Notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez*, 563 F.3d at 962).

### A.     The Method Of Notice Is Adequate.

The method proposed for providing notice to Settlement Class members is "reasonable" and should be approved. The notice plan is designed to reach at least 70% of Settlement Class members, with an average of two impressions per class member. Hirsch Decl., ¶ 21, Exh. 6, ¶ 3. Notice to the Settlement Class will be implemented shortly after entry of the Preliminary Approval Order. First, links to the relevant Settlement documents will be posted on the official Settlement

website and on class counsel's websites.  *Id.*, ¶ 25.  Second, the Claims Administrator will publish an advertisement in *People Magazine*, which reports a circulation of 3,418,000 with over 31,860,000 readers, as well as the California edition of *USA Today* in accordance with the CLRA (Cal. Civ. Code § 1781(d)).  *Id.*, ¶¶ 23, 28.  Third, press releases will be disseminated via the PR Newswire, which delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals.  *Id.*, ¶ 24.  Fourth, direct notice will be propounded via email to Settlement Class members who purchased the Products directly from Keurig.com.[9]  *Id.*, ¶ 27.  Fifth, internet and mobile advertisements targeting potential Settlement Class members will be run on various media services, including Facebook, Instagram, and Twitter.  *Id.*, ¶ 19.  According to GfK MRI's *Survey of the American Consumer*®, the industry standard for magazine audience ratings in the U.S., over 74% of single serve pod/K-Cup users are 35 years and older and over 67% have a college education or higher.  *Id.*, ¶ 18.  The online publication campaign will display advertisements targeted to Keurig and K-Cup purchasers using shopper data and will also target adults 35 years and older with a college education or higher.  *Id.*, ¶ 19.  Over 50 million online display, search and social media impressions will be served across a whitelist[10] of pre-vetted websites, multiple exchanges, and social media platforms.  *Id.*  Keyword search targeting will be employed to show advertisements to users in their Google search results for a list of search topics including Keurig settlement, coffee pod class action, Keurig pod coupons, Keurig pods, K-Cup sale, where to buy K-Cup pods, among others.  *Id.*, ¶ 20.  On Facebook and Instagram, advertisements will target people who like or follow Keurig pages, adults 35 years and older with a college education or higher, and coffee pages and groups.  *Id.*, ¶ 21.  On Twitter, advertisements will target those who

---

[9] Neither Plaintiffs nor Keurig have access to names and contact information for most Settlement Class Members since the Products were widely sold in the state at third-party retailers.

[10] A whitelist is a custom list of acceptable websites where ad content may be served.  Creating a whitelist helps to mitigate ad fraud, ensure ads will be served in relevant digital environments to the target audience and helps to ensure that ads will not appear next to offensive or objectionable content

have Tweeted about Keurig or have engaged with @Keurig, as well as retargeting uses who visit the Settlement website. *Id.*, ¶ 22. Lastly, the Claims Administrator will also send out Notices that comply with the Class Action Fairness Act.

The Notice will be provided to Settlement Class members in sufficient time to permit them to decide whether to participate in the Settlement, object, or opt out. The Court has approved substantially similar notice programs (*Schneider*, 336 F.R.D. at 596) as have other courts in the Northern District (*e.g.*, *Miller*, 2015 WL 758094, at *2-3, and *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). Accordingly, the notice plan should be approved.

**B.** **The Contents of the Proposed Notice Are Adequate.**

The content of the notice to class members "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Here, the proposed notice forms provide more than "sufficient detail." The notice defines the Settlement Class, explains Settlement Class members' rights, releases, and applicable deadlines, and describes in detail the Settlement's terms, including the procedures for allocating and distributing the Settlement Fund. Settlement, Exhs. B, C, E. The notice form plainly indicates the time and place of the fairness hearing and the method for objecting to or opting out of the Settlement. *Id.* It details the Settlement's provisions concerning proposed payment of attorneys' fees and service awards to the class representatives and provides contact information for class counsel. *Id.* The notice comports with settlement notices approved in other cases. *See*, *e.g.*, *In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the settlement, including class members' release of claims, their ability to opt out or object to the settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award members could expect to receive."); *Rodriguez*, 563 F.3d at 962-63 (because "[s]ettlement notices are supposed to present information about a proposed settlement

1  neutrally, simply, and understandably," they need not "detail the content of objections, or analyze
2  the expected value" of fully litigating the case).

3        **C.**      **The Proposed Claims Administrator.**

4        In connection with this Motion, Plaintiffs also request that the Court authorize the retention
5  of Kroll as Claims Administrator for the Settlement.  Kroll has extensive experience and is a
6  nationally recognized notice and claims administration firm.  Before selecting Kroll as the Claims
7  Administrator, counsel solicited bids from two potential notice administrators and engaged in
8  negotiations for the benefit of the class.  Counsel carefully considered each bid, evaluating each
9  administrator's assumptions, experience, and pricing.  Kroll offered reasonable pricing, extensive
10 experience in class actions, and a cost-effective publication notice program.  Kroll has estimated
11 that it will cost approximately $425,000 to implement the proposed notice and administration plan,
12 and the Settlement caps the notice and administration costs at $500,000.  The amount, which will
13 come out of the Settlement Fund, is reasonable, representing at most 5% of the total Settlement.

14 **V.**      **THE INTENDED REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

15       Class counsel intends to request an attorneys' fees award not to exceed 30% of the
16 Settlement amount ($3,000,000), plus out-of-pocket expenses, currently estimated at $525,000.
17 The Court should preliminarily approve the Settlement since these amounts are reasonable.

18       To provide the Court with more precise information about their hours and lodestar, class
19 counsel carefully reviewed their time records.  As of January 31, 2021, class counsel had devoted
20 5,465 hours to litigating this action, for a lodestar of $2,701,200.  *See* Hirsch Decl. ¶ 16.  Plaintiffs
21 have already spent additional time finalizing the Settlement and preparing the approval papers in
22 February and will assuredly expend significant additional attorney resources between now and the
23 final approval hearing (and likely thereafter for class member support).

24       While the benchmark for fees in the Ninth Circuit is 25% when awarding fees under a
25 common fund theory, courts generally start with the 25% benchmark and adjust upward or
26 downward depending on:

27       1.  The extent to which class counsel achieved exceptional results for the class;

28

2.   Whether the case was risky for class counsel;

3.   Whether counsel's performance generated benefits beyond the cash fund;

4.   The market rate for the particular field of law;

5.   The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and

6.   Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55).  Class counsel's work and success in this case merits an upward adjustment up to 30%, and a lodestar cross-check will also support Plaintiffs' requested adjustment.  Hirsch Decl. ¶ 28.  Plaintiffs' theory of the case—that the Products are not recyclable based on the Federal Trade Commission's Guides for Environmental Marketing Claims and California's Environmental Marketing Claims Act—was the first of its kind, remains largely untested, and was therefore extremely risky for class counsel.  *Id.*  Class counsel handled this case on a contingency basis and class counsel's skill and effort produced an extraordinary result against top-tier defense, including meaningful injunctive relief and a substantial cash fund.  *Id.*  Class counsel spent an enormous amount of time litigating this case for over three years, including procuring certification of a class of purchasers, a significant victory that paved the way for the Settlement.  *Id.*  Accordingly, Plaintiffs' efforts and success support their request for attorneys' fees between 25-30% of the total settlement fund of $10 million, as well as their costs.  *Id.*  Class counsel will more fully support their request, including detailing the facts relevant to the *Wells Fargo* factors, in their motion for attorneys' fees.

The types of expenses that class counsel seek reimbursement for are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, service of process, significant expert and consultant fees, mediation costs, online legal and factual research, reproduction costs, and messenger, courier and overnight mail expenses.  *See* Hirsch Decl. ¶ 28.  These expenses were critical to class counsel's success not only

in obtaining class certification but also in achieving this Settlement.

## VI.     SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events.  The parties suggest a schedule based on the following intervals:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Notice campaign to begin, including website, direct notice, and digital notice | Not later than thirty (30) calendar days following entry of the Preliminary Approval Order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | Not later than thirty (30) calendar days after the entry of the Final Settlement Order and Judgment |
| Last day for objections | Not later than forty-five (45) calendar days prior to the Final Approval Hearing |
| Last day for requests for exclusion from the Settlement Class | Not later than forty-five (45) calendar days prior to the Final Approval Hearing |
| Last day for motion in support of final approval of Settlement | July 21, 2022 |
| Final Approval hearing | August 11, 2022 |

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to file the Second Amended Complaint, preliminarily approve the proposed Settlement, provisionally certify the proposed Settlement Class, and schedule a formal fairness hearing on final settlement approval.


DATED: February 24, 2022                   Respectfully submitted,

                                           LEXINGTON LAW GROUP


                                      By:  /s/ Howard J. Hirsch
                                           Howard J. Hirsch
                                           Attorneys for Plaintiff KATHLEEN SMITH, on
                                           Behalf of Herself and All Others Similarly
                                           Situated