UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH,<br><br>   Plaintiff,<br><br>   v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>   Defendant. | Case No. 18-cv-06690-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 128 |

Pending before the Court is Plaintiff's motion for preliminary approval of a class action settlement. *See* Dkt. No. 128 ("Mot."). The Court held a hearing on April 14, 2022, after which the parties submitted supplemental declarations. *See* Dkt. Nos. 135, 138, 139. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

I.   **BACKGROUND**

   A.   **Factual Background**

Plaintiff Smith brings this consumer class action against Defendant Keurig Green Mountain, Inc., alleging that Defendant's "recyclable" labeling on its plastic single-serve coffee pods (the "Products") is false and misleading. *See generally* Dkt. No. 20. Plaintiff alleges that despite the fact that "Defendant advertises, markets and sells the Products as recyclable," municipal recycling facilities are not properly equipped to handle the pods, which are small and "inevitably contaminated with foil and food waste." *Id.* ¶¶ 2, 19. And Plaintiff alleges that "even to the extent facilities exist that are capable of segregating the Products . . . and then cleaning any contamination . . . the Products end up in landfills anyway as there is no market to reuse the Products or convert them into a material that can be reused[.]" *Id.* ¶ 2. Plaintiff contends that if she had known that the Products were not recyclable, she would not have purchased them, or

would have paid less for them. *Id.* ¶ 4.

Based on those facts, the complaint asserts the following causes of action: (1) breach of express warranty; (2) violations of California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"); (3) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") based on fraudulent acts and practices; (4) violations of the UCL based on unlawful acts; (5) violations of the UCL based on unfair acts and practices; and (6) unjust enrichment. *See id.* ¶¶ 50–99.

### B. Procedural History

Plaintiff Smith initially filed this action in Alameda Superior Court in September 2018, but Defendant removed the case to this Court. *See* Dkt. No. 1, Ex. B. After Defendant moved to dismiss the complaint, *see* Dkt. No. 18, Plaintiff filed a First Amended Complaint. *See* Dkt. No. 20. Defendant moved to dismiss the First Amended Complaint, and the Court denied the motion in June 2019. *See* Dkt. Nos. 26, 50. On September 21, 2020, the Court granted Plaintiff's motion for class certification, certifying a class of persons who purchased the Product for personal, family, or household purposes in California. *See* Dkt. No. 96. In the fall of 2020, Defendant unsuccessfully petitioned the Ninth Circuit for permission to appeal the Court's certification order. *See* Dkt. No. 98.

While Plaintiff Smith's case was ongoing, Plaintiff Downing filed a class action complaint in federal court in Massachusetts on September 9, 2020, alleging that Defendant violated Massachusetts's Consumer Protection Act, M.G.L. Chpt. 93A ("MCPA") when it advertised its pods as recyclable. *See Downing v. Keurig Green Mountain, Inc.*, No. 1:20-cv-11673-IT, (D. Mass.) (Dkt. No. 1). While Plaintiff Downing's claims on behalf of a Massachusetts class of consumers survived Defendant's motion to dismiss, the Massachusetts court struck his allegations proposing a nationwide class. Mot. at 11-12. Plaintiff Downing's petition for permission to appeal that ruling remains pending in the First Circuit. *Id.*

Since the inception of Plaintiff Smith's case, the parties have engaged in periodic settlement negotiations, including two full-day mediation sessions with the Hon. Morton Denlow (Ret.). *Id.* at 12. The last of these full-day mediation sessions occurred in September 2021, and

the parties executed a settlement term sheet in October 2021. *Id.* On February 24, 2022, Plaintiff Smith moved for preliminary approval of the settlement and for leave to file a second amended complaint. *See* Dkt. No. 128.

### C. Settlement Agreement

The key terms of the Stipulation of Settlement, Dkt. No. 128-1 ("Settlement Agreement" or "SA"), are as follows:

<u>Class Definition</u>: The Settlement Class is defined as:
> [A]ll Persons in the United States who purchased Keurig's Pods for personal, family or household purposes within the Class Period.

SA § I.12. The Class Period is from June 8, 2016 to the date Class notice is first published. *Id.* §I.16. Specifically excluded from the Class are (a) Defendant, (b) Defendant's Affiliates, (c) the officers, directors, or employees of Defendant and its Affiliates and their immediate family members, (d) any legal representative, heir, or assign of Defendant, (e) all federal court judges who have presided over this Action and their immediate family members; (f) the Hon. Morton Denlow (Ret.) and his immediate family members; (g) all persons who submit a valid and timely Request for Exclusion from the Class; and (h) those who purchased the Challenged Products for the purpose of resale. *Id.* § I.12.

<u>Settlement Benefits</u>: Defendant will make a $10,000,000 non-reversionary payment to a Cash Payment Account, which will cover payments to Class Members, settlement administration expenses capped at $500,000, incentive awards, and attorneys' fees and costs. *Id.* § VIII.A-B. Class Members who submit a claim without proof of payment will recover $5.00. *Id.* § VIII.B.4. Class Members who submit a claim with proof of payment will receive $0.35 for every ten pods purchased, with a minimum payment of $6.00, regardless of quantity purchased, and a maximum payment of $36.00. *Id.* Each household may only submit one claim. *Id.*

Defendant will also qualify its claims about pod recyclability with the disclaimer "Check Locally – Not Recycled in Many Communities." SA § III.A.1. Defendant will include this qualifying statement whenever it represents that the pods are recyclable, including on boxes and cartons, in electronic advertising and promotional materials, in video content, on its website, and

in publicly-available corporate responsibility and sustainability reports. SA § III.A.7. The Settlement Agreement sets minimum standards to ensure the visibility of the qualifying statement. *Id.* For example, if a box or carton markets the pods as recyclable, then the qualifying statement must be in close proximity to, and in a font size no smaller than 55% of the font size of, the recycling representation. *Id.*

*Cy Pres* Distribution: Settlement proceeds that are unclaimed will be donated to the Ocean Conservancy, a nonprofit environmental advocacy organization (75% of unclaimed funds), and Consumer Reports, Inc., a nonprofit consumer protection organization (25% of unclaimed funds). *Id*. § VIII.B.6.

Release: All Class Members will release:

> all Released Parties from any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses, and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown, suspected or unsuspected (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally), existing now or in the future, arising out of or related to (1) Recycling Representations made with respect to the Challenged Products prior to the Graphics Transition End Date and/or (2) Settlement Recycling Representations made with respect to the Challenged Products, provided, however, that this release shall not apply to claims or causes of action arising from a final determination or regulation made by a governmental entity pursuant to statute (such as California S.B. 343) that the Challenged Products, polypropylene products, or polypropylene products of the Challenged Products' dimensions (with such dimensions specified by such governmental entity) are not recyclable under such statute and are not otherwise permitted to make a qualified statement substantially similar to the Settlement Recycling Representation. For the purposes of this paragraph, a Recycling Representation shall be considered to have been "made," with respect to printed materials, as of the date of printing.

*Id.* § IV.A.

The Released Parties are Defendant and its Affiliates, Partner Brands, licensors, suppliers,

4

distributors, wholesalers, and retailers and all of their affiliated and subsidiary companies. *Id.* § I.40. "For the avoidance of doubt, Released Parties shall include all Persons in the stream of commerce for the labeling, marketing, sale, and/or distribution of the Challenged Products." *Id.*

The Released Parties agree to release Class Representatives, Class Members, and Class Counsel from:

> [A]ny and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution, or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

*Id.* § IV.E.

Class Notice: The Claim Administrator will publish the notice pursuant to the Notice Plan, which includes provisions for publication using People Magazine, the California edition of USA Today, PR Newswire, the Settlement website, Class Counsel's websites, and internet and mobile media conduits, such as Google Ads and Facebook. *See* Dkt. No. 128-1, Ex. D. The Claim Administrator will also send an email to the last known email addresses of all Class Members who purchased Products from Defendant's website during the Class Period. *Id.*

Opt-Out Procedure: In order to opt out of the settlement, Class Members must file Requests for Exclusion on the Request for Exclusion Form with the Claim Administrator no later than the Exclusion Deadline (45 days prior to Final Approval Hearing date). *Id.* § VI.D; *see* Dkt. No. 128-1, Ex. J.

Incentive Award: The Named Plaintiffs will apply for incentive awards in an amount not to exceed $5,000 for Plaintiff Smith and $1,000 for Plaintiff Downing. *Id.* § VIII.B.

Attorneys' Fees and Costs: Class Counsel will apply for attorneys' fees not to exceed 30% of the settlement fund ($3,000,000), as well as costs. *Id.* § VIII.A.2.

**II.     AMENDED COMPLAINT**

As part of the settlement agreement, the parties agreed that Plaintiff will file a second amended complaint, expanding the class definition to encompass a national class consistent with the proposed settlement. *Id.* § V. The proposed Second Amended Complaint also adds Matt Downing as a representative Plaintiff and his counsel as Class Counsel. *Id.* The proposed Second

Amended Complaint alleges causes of action for violations of California consumer protection laws, including the CLRA and UCL; violations of the MCPA; breach of express warranty; unjust enrichment; misrepresentation; and declaratory relief. *See generally* Dkt. No. 128-1, Ex. 2.

Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend her pleading with the opposing party's written consent. "Where the parties have agreed to file an amended complaint as part of the class settlement, judges in this district have granted leave to amend, subject to the terms of settlement." *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL 3990915, at *4 (N.D. Cal. June 30, 2015); *see also Miller v. Ghirardeli Chocolate Co.,* 12–cv–04936 LB, 2014 WL 4978433, at *7 (N.D.Cal. Oct. 2, 2014) (granting leave to amend for settlement purposes, but voiding the amendment if no final settlement occurs).

The Court grants Plaintiffs' request for leave to file a Second Amended Complaint. In the event that the proposed settlement is not finally approved by the Court or in the event that the settlement becomes null and void by its own terms, the Second Amended Complaint will be dismissed.

## III. PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider

6

manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id*. at 557 (citation omitted).

Because the parties' Settlement Class differs from the certified class, the Court must determine whether provisional certification of the Settlement Class is appropriate. Here, the material difference is that the parties seek to certify a nationwide class, while the previously certified class consists of those who purchased the Product in California. To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met.

### A. Rule 23(a) Certification

#### i. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that numerosity is satisfied here because joinder of the many people who purchased Defendant's products marketed as recyclable is not practical.

#### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include, at a minimum, what a reasonable consumer would understand Defendant's product packaging and advertising to mean; whether the pods are "recyclable"; and whether Defendant's representations are likely to deceive consumers.

7

Accordingly, the Court finds that the commonality requirement is met.

   **iii.** **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

Plaintiffs Smith and Downing's claims are similar to those of the Settlement Class. The representative Plaintiffs allege that Defendants falsely advertised its pods as recyclable, inducing Plaintiff Smith, Plaintiff Downing, and the rest of the class to purchase the Products and/or pay a premium for them. *See* SA § II; Dkt. No. 128-1, Ex. 2 ¶ 4. This is sufficient to satisfy the typicality requirement.

   **iv.** **Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that Plaintiff Smith, Plaintiff Downing, or proposed class counsel have a conflict with other Settlement Class Members. Lexington Law Group has represented plaintiffs in other "greenwashing" class actions, Shapiro Haber & Urmy has represented classes alleging

8

United States District Court
Northern District of California

violations of the MCPA, and both firms have been appointed class counsel in numerous federal and state class actions. Dkt. No. 128-1 ("Hirsch Decl.") ¶ 19; Dkt. No. 128-1, Ex. 5. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class, in this case and in the Massachusetts case filed by Plaintiff Downing, and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### B.  Rule 23(b)(2) Certification

As the Court noted when originally certifying a class of California purchasers, "Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). In this case, the settlement provides injunctive relief that will apply to all of Defendant's claims of pod recyclability throughout the United States. In other words, the injunctive relief will provide relief for all Settlement Class Members. The Court finds that its prior analysis under Rule 23(b)(2) also applies to the Settlement Class, and incorporates its previous analysis from the order certifying the California class. *See* Dkt. No. 96 at 18-19.

### C.  Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

#### i.  Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (citation and quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and quotations omitted).

1     The Court concludes that for purposes of settlement, common questions predominate here
2  because the Settlement Class Members were exposed to uniform representations regarding
3  recyclability and suffered the same injuries.[1] *See* Mot. at 18-19; Dkt. No. 96 at 7-17; *see also*
4  *Hyundai II*, 926 F.3d at 559 ("In consumer fraud cases, the crux of each consumer's claim is that a
5  company's mass marketing efforts, common to all consumers, misrepresented the company's
6  product[.]"). Common issues such as what a reasonable consumer would understand Defendant's
7  product packaging and advertising to mean, whether the pods are "recyclable," and whether
8  Defendant's representations are likely to deceive consumers predominate and warrant certifying
9  the nationwide class for settlement purposes. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-
10 23 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. Although the Class
11 Members will need to rely upon individual evidence to some extent to calculate their individual
12 damages, the "mere fact that there might be differences in damage calculations is not sufficient to
13 defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations and citations omitted).

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the Settlement Class Members by allocating costs among them.

---

[1] Prior to the Ninth Circuit's en banc opinion in *Hyundai II*, district courts in California were required to conduct a "rigorous predominance analysis" to analyze whether variations in state consumer protection laws precluded class certification. *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 707 (9th Cir.) ("*Hyundai I*"), *on reh'g en banc*, 926 F.3d 539 (9th Cir. 2019). But the en banc opinion in *Hyundai II* held that district courts do not need "to address choice-of-law issues beyond those raised by objectors" before certifying a settlement class. *Hyundai II*, 926 F.3d at 561–62. Thus, the Court at this stage need not analyze whether any differences in state laws prevent provisional class certification.

1  Although a case concerning the same controversy was begun in Massachusetts, it has not

2  progressed as far as this case, and the representative Plaintiff in the Massachusetts case has joined

3  as a representative Plaintiff in this case to seek nationwide relief. Further, this forum is

4  appropriate, and there are no obvious difficulties in managing this class action settlement.

5  The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are

6  met.

### D. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff Smith and Plaintiff Downing as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have expertise in representing plaintiffs in recyclability cases and class action suits, especially consumer class actions. *See* Hirsch Decl. ¶¶1-11, 17-20; Dkt. No. 128-1, Exs. 4 and 5. Accordingly, the Court appoints the law firms Lexington Law Group and Shapiro Haber & Urmy LLP as Class Counsel.

### IV. PRELIMINARY SETTLEMENT APPROVAL

#### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court

1    approves a class action settlement, it must conclude that the settlement is "fundamentally fair,

2    adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

3          Where the parties reach a class action settlement prior to class certification, district courts

4    apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required

5    under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).

6    Such settlement agreements "must withstand an even higher level of scrutiny for evidence of

7    collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

8    the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir.

9    2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A

10   more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not

11   secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a

12   duty to represent.'" *Id*. (citations and quotations omitted).

13         Courts may preliminarily approve a settlement and notice plan to the class if the proposed

14   settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

15   not grant improper preferential treatment to class representatives or other segments of the class;

16   (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

17   *Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)

18   (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain

19   provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d

20   1011, 1026 (9th Cir. 1998).

21       **B.**    **Analysis**

22       Because the parties seek to certify a nationwide Settlement Class that is broader than the

23   previously certified class, the Court applies the heightened standard in assessing whether to grant

24   preliminary approval of the class settlement. *See Roes*, 944 F.3d at 1049.

25         **i.**    **Evidence of Conflicts and Signs of Collusion**

26         The first factor the Court considers is whether there is evidence of collusion or other

27   conflicts of interest. *See id*. The Ninth Circuit has directed district courts to look for "subtle signs

28   of collusion," which include whether counsel will receive a disproportionate distribution of the

settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient. SA § III.B.6; *see* Mot. at 20. The Settlement Agreement does not contain a clear sailing arrangement, and Class Counsel may not request more than $3,000,000 in attorneys' fees, which is 30% of the fund. SA § VIII.A.2; *see* Mot. at 20, 29. Plaintiffs' counsel represents that their lodestar for the 5,465 hours worked as of January 31, 2022 is $2,701,200, which is roughly in the range of 30% of the fund. Mot. at 29.[2] The Court recognizes that Class Counsel obtained results for the prospective Settlement Class Members, as discussed below in Section IV(B)(iii). And Class Counsel assumed substantial risk in litigating what they represent is a novel legal theory on a contingency fee basis, and incurring costs without the guarantee of payment for their litigation efforts. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class, as was the case in *Roes*. *See Roes*, 944 F.3d at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were to award 30% in attorneys' fees, the majority of the settlement cash will still be distributed to Settlement Class Members. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case.

### 1. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipients are appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "'driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id.* (citation omitted). That is to say, a *cy pres* award must be

---

[2] Although the Motion has the date "January 31, 2021," the Court assumes Plaintiffs meant "January 31, 2022."

"'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]'" *Id.* (citations omitted). A *cy pres* distribution is not appropriate if there is "'no reasonable certainty' that any class member would benefit from it." *Id*. (citation omitted).

Here, the parties have selected the Ocean Conservancy to receive 75% and Consumer Reports, Inc. to receive 25% of the remainder of the funds. SA § III.B.6. The Ocean Conservancy, which protects "the ocean from global challenges by creating science-based solutions for a healthy ocean and the wildlife and communities that depend on it," has a "Fighting for Trash Free Seas" program that collects plastic waste that ends up in the ocean. Mot. at 15.[3] Consumer Reports "advocates to ensure that consumers can make informed choices and influence the marketplace" and "for truth and transparency wherever information is hidden or unclear." *Id.* Their efforts include pushing "companies to address and remedy issues quickly with their products and services." *Id.*

The Court preliminarily finds that the entities share the interests of the Settlement Class Members, who purchased products marketed as recyclable, in preventing consumer fraud in the context of labeling recyclable plastics. Accordingly, the Court preliminarily finds that there is a sufficient nexus between these two *cy pres* recipients and the Settlement Class.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have

---

[3] Since 2021, Keurig Dr Pepper Inc. has paid $15,000 a year to be a member of the Trash Free Seas Alliance, an initiative of the Ocean Conservancy. Dkt. No. 138. According to the company's Director of Sustainability, as part of its membership Keurig Dr Pepper Inc. works towards the goal of reducing plastic waste in the ocean, "provides technical advice to the Alliance and shares knowledge from the company's sustainability programs, but does not engage in setting policy for the Alliance and has no role directing the Alliance's activities." *Id.* Based on the limited relationship Keurig Dr Pepper Inc. has with the Trash Free Seas Alliance, the Court finds no evidence in the record at this stage to suggest that the Ocean Conservancy is an improper *cy pres* recipient.

consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (citation and quotations omitted).

Although the Settlement Agreement authorizes Plaintiffs Smith and Downing to seek incentive awards of no more than $5,000 and $1,000 respectively, *see* SA § VIII.B, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate Plaintiffs' award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, Plaintiffs' counsel represents that the settlement amount constitutes "more than 10% of the maximum alleged actual damages." Mot. at 9. Plaintiffs argue that the average recovery a Settlement Class Member would have recovered at trial would be $.10 per 10 pods, and "[b]ased on sales data provided confidentially by Defendant," Plaintiffs' expert calculated national damages to be $91 million. Hersch Decl. ¶ 23.e. Under the Settlement, each Settlement Class Member

15

who submits a claim will recover more per pod than the average expected to be recovered at trial, at either $5.00 with no proof of purchase or $0.35 per 10 pods with proof of purchase. SA § III.B.4. Those who submit a claim with proof of purchase will receive at least $6.00 and a maximum of $36.00. *Id.*[4] Therefore, the minimum amount to be recovered under this Settlement by each Class Member who submits a claim is $5.00 and the maximum is $36.00.

While much of the class will receive notice through the publication plan described below, those Settlement Class members who purchased single-serve coffee pods from Keurig.com will receive direct notice via email. According to a Senior Director at the Claims Administrator, Defendant has provided over 1.6 million email addresses for class members based on Keurig.com purchases. *See* Dkt. No. 139 ¶ 3. The Senior Director predicts that those class members who receive direct notice will have a "higher take rate," with direct notice recipients possibly claiming $2.4 million to $4 million in total. *Id.* ¶ 5. Overall, Plaintiffs' counsel anticipates a claim rate of 1-7%. Hersch Decl. ¶ 23.g.

In addition to the settlement payment, Defendant will change its labeling and advertising of its products nationwide to include the disclaimer "Check Locally – Not Recycled in Many Communities." Hersch Decl. ¶ 23.e. Plaintiffs' counsel submits that this is a "costly process" that benefits the Settlement Class but is not accounted for in the settlement amount. *Id.*

Plaintiffs acknowledge that they would face substantial risks in continuing to litigate this case, such as maintaining class treatment and proving damages. Mot. at 24-26. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv.     Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*     *     *

---

[4] According to the Claims Administrator, the class settlement website will include directions instructing class members how to download their Product purchase history from Keurig's website and other popular online retailers, such as Amazon.com and Walmart.com. Dkt. No. 139 ¶ 4.

1  Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

The parties have agreed that Kroll Business Services will be retained as the Claim Administrator. SA § I.8. Plaintiffs represent that neither they nor Defendant have a list of all Settlement Class Members, since the Products were widely sold by third-party retailers. Mot. at 27 n.9. However, the Claim Administrator will email notice to the over 1.6 million class members who purchased the Products during the Class Period directly from Defendant on its website. SA § VI.B; *see also* Dkt. No. 128-1, Ex. D; Dkt. No. 139 ¶ 3.

Given that direct notice appears to be infeasible for the majority of the Settlement Class, the Claim Administrator will implement a digital media campaign and publish a full-page advertisement in People Magazine, summary notice once a week for four weeks in the California edition of USA Today, and Spanish and English press releases over PR Newswire. *See* Dkt. No. 128-1, Ex. D. For the digital media campaign, the Claim Administrator "will place internet advertisements in English and Spanish targeting potential Class Members on Multiple Inventory

17

Exchanges, Google Ads, Facebook, Instagram, and Twitter" for thirty days. *Id.* Online advertising will be targeted, through means such as keyword search targeting; ads designed to reach adults 35 years and older, as this age group constitutes 74% of K-cup users; ads designed to reach adults with a college education or higher, as 67% of pod users have a college education; and social media ads that retarget users who visit the Settlement website. Dkt. No. 128-1, Ex. 6 (Finegan Decl.) ¶¶ 18-19; Mot. at 26-28. Notice will also be published on the settlement website and Class Counsels' websites. Mot. at 26-27. All told, the Claim Administrator estimates that "[o]ver 50 million online display, search and social media impressions will be served," and that the Notice Plan will reach 70% of Settlement Class Members on average over two times. Finegan Decl. ¶¶ 3, 19; Mot. at 26.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (citation omitted).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B). The Court finds that the content of the proposed notices, Dkt. No. 128-1, Exs. B and C, provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (citation and quotations omitted)).

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement and **GRANTS** Plaintiffs' request to file an amended complaint.

Plaintiffs are **DIRECTED** to file their amended complaint within five (5) days. The parties are also **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 7/8/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge