LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209
Ryan Berghoff, State Bar No. 308812
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
rberghoff@lexlawgroup.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH and MATTHEW DOWNING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | Case No. 4:18-cv-06690-HSG<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF:**<br><br>1. California Consumer Protection Laws;<br>2. Massachusetts Consumer Protection Law;<br>3. Express warranty;<br>4. Unjust Enrichment;<br>5. Misrepresentation; and<br>6. Declaratory Judgment<br><br>**DEMAND FOR JURY TRIAL** |

DOCUMENT PREPARED
ON RECYCLED PAPER

1      Plaintiffs Kathleen Smith and Matthew Downing (collectively referred to herein as

2  "Plaintiffs"), on behalf of themselves and all those similarly situated, based on information, belief

3  and investigation of their counsel, bring this Class Action Complaint ("Complaint") against

4  Defendant Keurig Green Mountain, Inc. ("Defendant"), and make the following allegations based

5  upon knowledge as to themselves and their own acts, and upon information and belief as to all

6  other matters as follows:

7                                         **INTRODUCTION**

8      1.     The problems associated with plastic waste management are increasing on a local,

9  national and global scale.  This affects the amount of plastic in the ocean, in freshwater lakes and

10  streams, on land, and in landfills.  Nearly 90% of plastic waste is not recycled, with billions of

11  tons of plastic becoming trash and litter.  As consumers become increasingly aware of the

12  problems associated with plastic waste, they are increasingly susceptible to marketing claims

13  reassuring them that the plastic used to make and package the products that they purchase are

14  recyclable.  Many consumers concerned with the proliferation of plastic waste actively seek to

15  purchase products that are either compostable or recyclable to divert such waste from the ocean

16  and landfills.  Seeking to take advantage of consumers' concerns, defendant Keurig Green

17  Mountain, Inc. ("Defendant") markets and sells plastic single serve coffee pods as recyclable,

18  when the pods cannot in fact be recycled in many communities.

19      2.     This Complaint seeks to remedy Defendant's unlawful, unfair and deceptive

20  business practices with respect to the advertising, marketing and sales of K Cup® single serve

21  coffee pods that are labeled as "recyclable" (the "Products").  The Products are advertised,

22  marketed and sold as recyclable.  However, even if consumers take the many steps required to

23  place the Products in their recycling bins, they are not in fact recyclable in many communities

24  because municipal recycling facilities ("MRFs") are not properly equipped to capture and

25  segregate such small materials, nor can they handle such materials since they are inevitably

26  contaminated with foil and food waste.  Furthermore, even to the extent facilities exist that are

27  capable of segregating the Products from the general waste stream, and then cleaning any

28  contamination in the Products, the Products often end up in landfills anyway as there are limited

markets to reuse the Products or convert them into a material that can be reused or used in manufacturing or assembling another item.

3.      Despite Defendant's marketing and advertising of the Products as recyclable, Defendant knows that the Products typically end up in landfills.  Defendant's representations that the Products are recyclable are material, false, misleading and likely to deceive members of the public.  These representations also violate California's legislatively declared policy against misrepresenting the characteristics of goods and services.

4.      Plaintiffs purchased the Products in reliance on Defendant's false representations that the Products are recyclable.  Plaintiffs viewed Defendant's false representations on the labels and other marketing materials for the Products.  If Plaintiffs had known that the Products were not recyclable in many communities, Plaintiffs would not have purchased the Products and would have instead sought out single serve pods or other coffee products that are otherwise compostable, recyclable or reusable.  At a minimum, Plaintiffs would not have paid as much as they did if they knew the Products could not be recycled in many communities.  Defendant thus breached its express warranty regarding the recyclability of the Products; violated the California Consumers Legal Remedies Act ("CLRA") by making representations that the Products have characteristics, benefits and qualities which they do not have and by advertising the Products without the intent to sell them as advertised; and violated M.G.L.  Chapter 93A and California's Business and Profession Code § 17200 based on fraudulent, unlawful and unfair acts and practices.

5.      Plaintiffs and the Class seek an order enjoining Defendant's acts of unfair competition and other unlawful conduct, an award of damages to compensate them for Defendant's acts of unfair competition, false and misleading advertising, and breaches of warranty, and restitution to the individual victims of Defendant's fraudulent, unlawful and unfair acts and practices.

## **PARTIES**

6.      Plaintiff Kathleen Smith is a resident of Lafayette, California.  Plaintiff Smith is concerned about the environment and seeks out products that are compostable, recyclable or reusable so that she can minimize her impact on the environment in general and on the country's

1   plastic waste problems in particular.  Therefore, Plaintiff Smith specifically selected the Products

2   in reliance on Defendant's representations that the Products are recyclable.  The false

3   representations are located on the labels and other marketing materials for the Products.  Had

4   Plaintiff Smith known that the Products are not recyclable in many communities she would not

5   have purchased the Products or would not have paid as much as she did for the Products.

6       7.      Plaintiff Matthew Downing is a resident of Marlborough, Massachusetts.  In or

7   around 2017, Mr. Downing purchased Products that were falsely labeled as recyclable based on

8   the labels indicating that the Products were, in fact, recyclable.  Had Plaintiff Downing known

9   that the Products were not recyclable in many communities, he would not have purchased the

10  Products or would not have paid as much as he did for the Products.

11      8.      Defendant Keurig Green Mountain, Inc. is a Delaware corporation with its

12  principal place of business in Burlington, Massachusetts.  Defendant Keurig Green Mountain,

13  Inc. manufactures, distributes and sells the Products.

14                          **JURISDICTION AND VENUE**

15      9.      This Court has jurisdiction over the subject matter of this action pursuant to 28

16  U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in

17  controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which

18  some members of the Class are citizens of different states than Defendant.  *See* 28 U.S.C. §

19  1332(d)(2)(A).  This Court has supplemental jurisdiction over the state law claims pursuant to 28

20  U.S.C. § 1367.

21      10.     By removing this case to federal court, Defendant has alleged that this Court has

22  jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28

23  U.S.C. § 1332(d)(2).  *See* Notice of Removal, filed Nov. 2, 2018 [ECF Docket No. 1] ("Notice of

24  Removal").

25      11.     This Court has jurisdiction over Defendant because it is a corporation or other

26  entity that has sufficient minimum contacts in California and has specifically marketed,

27  advertised, and made substantial sales in California, or otherwise intentionally availed itself of the

28  California market either through the distribution, sale or marketing of the Products in the State of

1    California so as to render the exercise of jurisdiction over it by the California courts consistent

2    with traditional notions of fair play and substantial justice.

3           12.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the

4    events or omissions giving rise to the claim occurred in this District.

5           13.     **Intra-district Assignment (L.R. 3-2(c) and (d) and 3.5(b))**:  An intra-district

6    assignment to the San Francisco/Oakland Division is appropriate because a substantial part of the

7    events or omissions which give rise to the claims asserted herein occurred in this Division,

8    including that Plaintiff Smith purchased the Products in Contra Costa County.  Pursuant to L.R.

9    3-2(c), all civil actions which arise in Contra Costa County shall be assigned to the San Francisco

10   Division or the Oakland Division.

11                                         **BACKGROUND FACTS**

12          14.     In the past decade, humans across the globe have produced 8.3 billion metric tons

13   of plastic, most of it in disposable products that end up as trash.  Of the 8.3 billion tons produced,

14   6.3 billion tons have become plastic waste and only 9% of that has been recycled.  The

15   Environmental Protection Agency estimates that Americans alone disposed of more than 33

16   million tons of plastic in 2014, most of which was not recycled.  While California set a goal to

17   achieve a 75% recycling rate by 2020, California's recycling rate is actually in decline.  In 2015,

18   California's recycling rate was 50%, dropping to 47% in 2015 and down to 44% in 2017.

19          15.     The staggering amount of plastic waste accumulating in the environment is

20   accompanied by an array of negative side effects.  For example, plastic debris is frequently

21   ingested by marine animals and other wildlife, which can be both injurious and poisonous.

22   Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can

23   leach harmful chemicals into ground water that is absorbed by humans and other animals.  Plastic

24   litter on the streets and in and around our parks and beaches also degrades the quality of life for

25   residents and visitors.  More recently, scientists have discovered that plastic waste releases large

26   amounts of methane, a powerful greenhouse gas, as it degrades.  Thus, plastic waste is also

27   thought to be a significant potential cause of global climate change.  Consumers, including

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Plaintiffs, actively seek out products that are compostable, recyclable or reusable to prevent the

2   increase in global waste and to minimize their environmental footprint.

3       16.    Single serve coffee pods have received extensive criticism for their contribution to

4   the plastic waste crisis.  For instance, on January 7, 2015, an anonymous person posted a

5   YouTube video entitled "Kill the K-Cup," which portrays an apocalyptic scene in which giant

6   alien monsters who are composed of K-Cups® invade a city and fire missile and bullet-like K-

7   Cups® at terrified citizens.   The video concludes with the message "Kill The K-Cup Before It

8   Kills Our Planet," and provides statistics to drive home the point that single serve coffee pods

9   have dire consequences to the environmental health of the planet.  Nearly 1 million people

10   viewed the video, which spawned the popular hashtag #KillTheKCup and the killthekcup.org

11   website.

12       17.    According to online estimates, in 2014 alone, over 9.7 billion K-Cups® were

13   produced, enough to circle the globe 12.4 times.  As consumer backlash to single serve coffee

14   pods has increased over the years, even the inventor of K-Cups®, John Sylvan, has publicly

15   stated his regret for inventing them and expressed doubts about whether they could ever be

16   recycled.

17       18.    The Legislature of the State of California has declared that "it is the public policy

18   of the state that environmental marketing claims, whether explicit or implied, should be

19   substantiated by competent and reliable evidence to prevent deceiving or misleading consumers

20   about the environmental impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  The policy

21   is based on the Legislature's finding that "littered plastic products have caused and continue to

22   cause significant environmental harm and have burdened local governments with significant

23   environmental cleanup costs."  *Id*.  § 42355(a).

24       19.    The California Business and Professions Code § 17580.5 makes it "unlawful for

25   any person to make any untruthful, deceptive, or misleading environmental marketing claim,

26   whether explicit or implied."  Pursuant to that section, the term "environmental marketing claim"

27   includes any claim contained in the Guides for use of Environmental Marketing Claims published

28   by the Federal Trade Commission (the "Green Guides").  *Ibid*; *see also* 16 C.F.R. § 260.1, *et seq*.

1   Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a

2   product or package is recyclable.  A product or package shall not be marketed as recyclable

3   unless it can be collected, separated, or otherwise recovered from the waste stream through an

4   established recycling program for reuse or use in manufacturing or assembling another item."  16

5   C.F.R. § 260.12(a).

6          20.     The Green Guides' definition of "recyclable" is consistent with reasonable

7   consumer expectations.  For instance, the dictionary defines the term "recycle" as: (1) convert

8   (waste) into reusable material, (2) return (material) to a previous stage in a cyclic process, or (3)

9   use again.  Oxford Dictionary, Oxford University Press 2018.  Accordingly, reasonable

10  consumers expect that products advertised, marketed, sold, labeled and/or represented as

11  recyclable will be collected, separated or otherwise recovered from the waste stream through an

12  established recycling program for reuse or use in manufacturing or assembling another item.

13         21.     In an attempt to counter negative publicity regarding the impacts of single serve

14  coffee pods and to take advantage of consumers' concerns with respect to the environmental

15  consequences caused by such products, Defendant advertises, markets and sells the Products as

16  recyclable.  More specifically, the packaging of Defendant's Products previously stated that

17  consumers can "Have your cup and recycle it, too," in large green font.  Adjacent to that

18  statement on Defendant's packaging were instructions for how to recycle, including illustrations

19  with the terms "PEEL," "EMPTY," and "RECYCLE," accompanied by the chasing arrows

20  symbol that is commonly used and understood to mean that a product is recyclable.  These claims

21  were uniform, consistent and prominently displayed on each of the Products' labels.  Following is

22  a representative example of an earlier iteration of a Product label:

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



22.     Recognizing the importance of front labels to consumers, Defendant designs the front panels of each Product to have a uniform look and to include the same recyclable claim. While Defendant's labels have been slightly modified over time, the representations at issue are uniform across all label iterations.  Specifically, every member of each Class purchased a Product that includes a prominent "Recyclable" or "Recycle" representation along with the "chasing arrows" recycling symbol on the front label, and prominent instructions to "Peel, Empty, Recycle" on the front or side label.  While the labels differ in terms of the brand or flavor of coffee, the recycling representations are consistent.

1

2

3

23.     Defendant's marketing, advertising and promotional materials for the Products, including Defendant's website, also uniformly represent that the Products are recyclable.  For instance, Defendant's website previously advertised the Products as recyclable as follows[1]:

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19







20

21

22

23

24

25

26

27

28

[1] https://www.keurig.com/recyclable (as of Dec. 20, 2018). Defendant's website has been periodically updated, but has consistently and uniformly represented the Products as recyclable.

DOCUMENT PREPARED ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





24.     The claims made by Defendant that the Products are recyclable are uniform, consistent and material.  Because the claims are false and misleading, ordinary consumers, including members of the Class, are likely to be deceived by such representations.

25.     Many MRFs in the United States are not properly equipped to capture materials as small as the Products or to segregate such small items from the general waste stream.  The problem of "smalls" is well-documented and well known in the recycling industry.  This problem is exacerbated because the Products' already small size is further reduced when the Products are compressed into recycling bins and then compacted by recycling collection trucks prior to being delivered to MRFs.  Ultimately, by the time they reach the sorting line of a typical recycling facility, the Products are likely to be crushed, compacted and mangled.  Of course, Plaintiffs and

consumers have no way of discerning the precise size and shape of the Products after consumers place the Products in their recycling bins.

26. Defendant's recycling instructions require consumers to go through a number of time-consuming steps in order to recycle the Products, including waiting until the Products cool, separating the foil lid from the plastic pod, and removing the pod's contents. Worse yet, Defendant's instructions exacerbate the deceptiveness of Defendant's representations that the Products are recyclable by making it less likely that the Products will actually be recycled. For instance, while Defendant instructs consumers to "peel [the] lid and dispose," the foil lid on the Products is extraordinarily difficult to remove as the foil sticks to the edge of the plastic cup and there is no extra tab (as one would find on a yogurt container, for instance) to use to peel off the lid.[2] From a recycling standpoint, the inevitable presence of foil on the Products is contamination that renders the Products impossible or extremely difficult to recycle.

27. In addition, while Defendant instructs consumers to "Empty" the Product and "Compose or dispose of contents," Defendant also explicitly states that the paper filter attached to the inside of the Products "can remain." By instructing consumers that they can leave the filter in place, Defendant is ensuring that some coffee grounds will also remain. In fact, in many of Defendant's advertisements, the Products are placed in the recycling bin with coffee grounds clearly visible, as evidenced by the web page depicted above. And in some of Defendant's video advertisements, both the coffee grounds and foil are visible in and on the Products as they are placed in the recycling bin.[3] Thus, following Defendant's instructions inevitably leads to further contamination issues, as the Products will be placed in recycling bins with foil remnants, used coffee grounds and a paper filter inside. From a recycling standpoint, this contamination renders the Products even more difficult to recycle. The fact that MRFs typically process waste at speeds of 25 to 40 tons per hour makes it even less likely that small, compacted and contaminated single

---

[2] In November 2021, likely in response to the claims alleged in this case, Keurig announced that it plans to introduce an "EASY-PEEL" lid on "select items." https://www.keurig.com/recyclable (last visited Jan. 25, 2022).

[3] https://www.keurig.com/recyclable (as of Dec. 20, 2018).

serve coffee pods such as the Products will be collected, separated or otherwise recovered from the waste stream.

28.     Even in the rare instance where the Products can be segregated and cleaned of any contamination, the Products still end up in landfills as there are limited markets to reuse the Products or convert them into a material that can be reused or used in manufacturing or assembling another item.

29.     Worse yet, by encouraging consumers to place the Products in recycling bins, Defendant is contaminating the recycling stream with unrecyclable materials that will hinder the ability of recycling facilities to properly recycle items that are legitimately recyclable.  And the contamination on the Products themselves is also likely to contaminate other materials that would otherwise be recyclable.  Environmentally motivated consumers who purchase the Products in the belief that they are recyclable are thus unwittingly hindering recycling efforts.  Moreover, Plaintiffs and consumers have no way of knowing whether the Products are actually segregated from the general waste stream, cleaned of contamination, or reused or converted into a material that can be reused or used in manufacturing or assembling another item.

30.     Most consumers believe that if the Products are accepted into a recycling program, then those Products are recyclable.  And consumers who spend the time and effort to follow Defendant's cumbersome recycling instructions do not expect that the Products will end up in a landfill.  However, the Products will often end up in a landfill as they cannot be recycled by many MRFs in the United States.  Defendant's representations that the Products are recyclable are therefore per se deceptive under the Green Guides and under California law.

31.     Many recycling facilities have refuted Defendant's recycling claims or otherwise instructed consumers to place single serve coffee pods, including those labeled as recyclable like the Products, in the trash.  For instance, the following California localities or waste management companies have explicitly stated that single serve coffee pods, including those labeled as recyclable like the Products, should be placed in the trash:

a.   Berkeley

b. Cal-Waste Recovery Systems (localities in Sacramento, Calaveras, Alpine and San Joaquin Counties)

c. El Dorado County

d. Eureka

e. Lake County

f. Lincoln

g. Los Angeles

h. Mission Country Disposal (Los Osos, Cayucos, Cambria and Harmony)

i. Monterey County

j. Mill Valley

k. Morro Bay

l. Paradise

m. Redding

n. Sacramento

o. San Luis Obispo County

p. South County Sanitary (Avila Beach, Shell Beach, Pismo Beach, Grover Beach, Oceano, Arroyo Grando and Nipomo)

q. Shasta County

r. Tri-CED Community Recycling (Hayward and Union City)

s. Truckee

32.     By way of example, San Luis Obispo County, Lake County, the Town of Truckee, and the City of Lincoln have all stated, "Coffee Capsules [Are] Never Recyclable Curbside." These jurisdictions go on to explain, "Coffee capsule creators often tout their products as 'recyclable.'  In theory, the plastic portion of a coffee capsule is (not the lid or filter).  In practice, however, the cups are actually too small to be captured and recycled in recycling facilities where objects are separated based on size and density."[4]

33.     The Green Guides are clear: "if any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive.  An item that is made from recyclable material, but because of its shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable."  16 C.F.R. § 260.12(d).  Here, the Products are

---

[4] https://www.iwma.com/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://lakecountyrecycles.com/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://www.keeptruckeegreen.org/guide/coffee-capsules/ (last visited Dec. 19, 2018)
https://www.recyclinginlincoln.com/guide/coffee-capsules/ (last visited Dec. 19, 2018).

DOCUMENT PREPARED
ON RECYCLED PAPER

1  not recyclable in many communities due to their small size, their contamination with foil, filter

2  paper and food waste, and the lack of a market to recycle them.  Defendant's marketing of the

3  Products as recyclable is thus a direct violation of the Green Guides.

4        34.     Because the Products are not recyclable in many communities, Defendant is

5  required to clearly and prominently qualify recyclable claims to avoid deception about the

6  availability of recycling programs and collection sites to consumers if consumers do not have

7  access to facilities that can recycle their products.  16 C.F.R. § 260.12(b).  A marketer may only

8  make an unqualified recyclable claim if a substantial majority of consumers or communities have

9  access to recycling facilities capable of recycling the items.[5]  *Id*. § 260.12(b)(1).  Because a

10  substantial majority of consumers do not have access to recycling facilities capable of recycling

11  the Products, Defendant must at a minimum qualify any recyclability claim about the Products.

12        35.     According to the Green Guides, marketers may qualify recyclable claims by

13  stating the percentage of consumers or communities that have access to facilities that recycle the

14  item.  16 C.F.R. § 260.12(b)(2).  In the alternative, marketers may use qualifications that vary in

15  strength depending on facility availability.  *Ibid*.  Thus, the strength of the qualification depends

16  on the level of access to an appropriate facility.  For example, if recycling facilities are available

17  to slightly less than a substantial majority of consumers or communities where the item is sold,

18  the Green Guides recommend that a marketer should qualify the recyclable claim by stating "this

19  product may not be recyclable in your area," or "recycling facilities for this product may not exist

20  in your area."  *Ibid*.  If recycling facilities are available only to a few consumers, the Green

21  Guides recommend a marketer to qualify its recyclable claim by stating "this product is

22  recyclable only in a few communities that have appropriate recycling facilities."  *Ibid*.  Under

23  these guidelines, to the extent Defendant can make any recycling claim at all for the Products,

24  Defendant must provide an unequivocally strong qualification for its recyclability claim because

25  few consumers have access to recycling facilities capable of recycling the Products.

26

27

28

---

[5] A "substantial majority" means at least 60 percent.  16 C.F.R. § 260.12(b)(1).

DOCUMENT PREPARED
ON RECYCLED PAPER

36.     Plaintiffs and most other consumers believe that if their municipality offers recycling services, then all products marketed as "recyclable" can be recycled.  Thus, most consumers will place the Products in the recycling bin under the false impression that the Products can be recycled, even though the Products cannot in fact be recycled in their area.  In addition, most consumers will not follow Defendant's cumbersome recycling instructions despite the fact that the Products cannot be recycled, and Defendant's instructions are misleading and incomplete.  Defendant's labeling, advertising and marketing claims that the Products are recyclable are therefore likely to deceive a reasonable consumer.

37.     Defendant's labeling for the Products states: "Not recycled in all communities." This statement does not comply with the Green Guides as it indicates that the Products are recycled in most or many communities, when they are not.  Defendant's qualification exacerbates the misrepresentation that the Products are recyclable by suggesting that the Products are recyclable in communities that have access to recycling facilities.

38.     Defendant has buried other disclaimers about the recyclability of the Products on its website.  For instance, Defendant's website has stated at some times, "[w]e recommend checking with your local municipality or waste hauler to determine if your community recycles #5 plastic."  *See* Defendant's Request for Judicial Notice In Support of Motion to Dismiss, Exh. 2 [ECF No. 19].  This disclaimer is problematic since, even if a local recycling facility was willing to answer such an inquiry, and even if the response was favorable, this does not mean that the facility is capable of recycling the Products due to their size, contamination, and the lack of a market for them to be recycled.  In fact, Defendant's webpage for Frequently Asked Questions ("FAQ") previously asked whether the new recyclable K-Cup® are recyclable everywhere, to which the website responds "[t]he new recyclable K-Cup® pods, which can be easily identified through our on-the-box packaging and with a #5 recycling symbol on the bottom of the pod itself, can be recycled in communities that accept #5 plastics.  Polypropylene (#5) is currently accepted for recycling in approximately 61% of communities in the U.S. and 93% of communities in

DOCUMENT PREPARED
ON RECYCLED PAPER

Canada.  Please check with your local community to confirm."[6]  Defendant's FAQ is misleading for the same reason its website disclaimer is misleading: it indicates to a consumer that the Products are recyclable solely because they are made of #5 plastic, regardless of their size, contamination, and lack of market for them to be recycled, which is not the case.

39.     Plaintiffs place a high priority on environmental concerns in general, and on the negative consequences regarding the proliferation of plastic waste in particular.  In shopping for coffee products for their homes, Plaintiffs were particularly concerned about the recyclability of single serve pods that contain coffee.  Based on the labeling and advertising of Defendant's Products, Plaintiffs believed that the Products are recyclable in all locations, including Lafayette, California, where Plaintiff Smith resides and in Marlborough, Massachusetts, where Plaintiff Downey resides.  Defendant's representations that the Products are recyclable are thus material to Plaintiffs.

40.     Plaintiffs purchased the Products numerous times over the last five years directly from Defendant's website believing the recycling claims both on the Products' packaging as well as the website.  For instance, on October 1, 2016 and November 25, 2016, Plaintiff Smith purchased from Defendant's website Green Mountain Coffee Roasters Breakfast Blend Decaf, K-Cup Box 24 ct., labeled as recyclable.  Plaintiffs purchased the Products in reliance on Defendant's representations that the Products are recyclable, when they are not in fact recyclable in many communities.  Plaintiffs followed Defendant's instructions on the labeling to recycle the Products, but were not aware that the Products would likely end up in a landfill anyway.  Had Plaintiffs and the other members of the Class known that the Products are not recyclable in many communities — contrary to Defendant's representations — they would not have purchased the Products or would not have paid as much as they did for the Products.

41.     Plaintiffs continue to desire to purchase recyclable single serve coffee pods.  Plaintiffs would purchase single serve coffee pods manufactured by Defendant in the future if Defendant's representations that the Products are recyclable are true.  Plaintiffs would like to buy

---

[6] http://www.keurigrecycling.com/faq/ (as of Dec. 20, 2018).

DOCUMENT PREPARED
ON RECYCLED PAPER

recyclable single serve coffee pods from Defendant in the future, but are unable to determine with confidence, based on the labeling and other marketing materials, whether the Products are truly recyclable. Plaintiffs would not have purchased the Products, or would not have paid as much as they did for the Products, if Defendant had disclosed that the Products were not recyclable in many communities.

42. Defendant is aware that the Products are not recyclable in many communities, yet Defendant has not undertaken any effort to notify its end-use customers of the problem. Defendant's failure to disclose that the Products are not recyclable is an omission of fact that is material to Plaintiff and the other members of the Class.

43. The conduct giving rise to Plaintiffs' claims—Keurig's deceptive campaign to falsely market and label the Products as recyclable—was orchestrated in and emanated from the Commonwealth of Massachusetts. Massachusetts has a significant interest, as codified by the Massachusetts Legislature in Chapter 93A, in regulating, punishing and preventing such wrongful conduct occurring within the Commonwealth.

44. Keurig developed its corporate strategy of marketing purportedly recyclable Products in Massachusetts, primarily from its Burlington, Massachusetts headquarters. Keurig designed the Product labels at issue in this case in Massachusetts and made the representations detailed in this complaint and disseminated them from its headquarters in Burlington, Massachusetts. The deceptive conduct alleged in the complaint substantially emanated from Massachusetts.

45. Keurig's product design staff for the Products is based in Massachusetts. Keurig's "Environmental Sustainability Engineers," who appear to have been responsible for engineering the purportedly recyclable Products, are based in Burlington, Massachusetts. For example, one such former Environmental Sustainability Engineer, Ali Blandina, indicates on her LinkedIn profile that she led all "MRF [materials recovery facility] testing across North America" for Keurig, including analysis of "how items flow through [a municipal recycling facility], evaluat[ing] how successfully they are sorted, and ultimately captured for further processing of

recycling material." According to her LinkedIn profile, she performed these functions for Keurig in Burlington, Massachusetts.

46.     Along the same lines, Keurig's former Director of Engineering and Technical Director, Jim Shepard, who was responsible for the "overall industrial design, technical development, and manufacturing execution of brewer systems and carafe pod systems" for Keurig, likewise performed these functions in Burlington, Massachusetts, according to his LinkedIn profile.

47.     Keurig's senior marketing staff are also based in Massachusetts.  For example, Brenda Armstead, Keurig's current Vice President of Brand Marketing for coffee, and its former Vice President of Consumer Insights for its coffee products, is based in Massachusetts. According to Ms. Armstead's LinkedIn profile, around the time of the launch of Keurig's purportedly recyclable Pods, she was "driving business strategies" based upon a "better understanding of [Keurig's] customers." She led the "Consumer Insights team," which she describes as "the central point of truth…for [Keurig]" as it infuses consumer "understanding into [Keurig's] innovation and product portfolio."

48.     Similarly, Keurig's Senior Director of Marketing, Lindsay Firmino, was located in Massachusetts.

49.     Keurig's former Chief Executive Officer, Brian P. Kelley, who stated in Keurig's Sustainability Report that "[t]he lack of recycling options for used K-Cup packs stands out front and center," of ways Keurig "can do better," and pledged that "100% of K-Cup packs will be recyclable," was based in Massachusetts.

50.     Keurig's employees responsible for Keurig's corporate strategies in connection with sustainability are also based in Massachusetts.  For example, Keurig's Chief Sustainability Officer from 2014 to present (and Director of Sustainability for years before that), Monique Oxender, is based in Massachusetts.  She describes herself as having been responsible for "brand enhancement through pro-active identification of sustainability issues…coupled with actionable and measurable strategies for implementation." Ms. Oxender specifically identifies as one of her "[c]ore areas of expertise" issues of "product stewardship (incl. recyclability)" and "general

1   management of the recyclable product platform." Ms. Oxender indicates she fulfilled these

2   responsibilities in Massachusetts.

3          51.    Another Keurig employee, Kristina Bosch Ladd, who indicates she "manage[s] the

4   company's…environmental footprints towards its 2020 sustainability targets," and "oversee[]s

5   recovery and recycling programs," is based in Massachusetts.

6          52.    These examples are not cherry-picked.  A review of the LinkedIn profiles of the

7   Keurig employees who appear to be most directly responsible for the deception Plaintiffs allege

8   in this complaint reflects that almost all such employees were based in Massachusetts at the time

9   of the wrongful conduct.  That is, Keurig's senior staff responsible for marketing, consumer

10  relations, and product design performed those functions in Massachusetts, making Massachusetts

11  the locus of the fraudulent and deceptive conduct that Plaintiffs allege.

12                              **CLASS ACTION ALLEGATIONS**

13         53.    Plaintiffs bring this suit on behalf of themselves and as a class action pursuant to

14  Federal Rule of Civil Procedure Rule 23(a), on behalf of themselves and the following Class of

15  similarly situated individuals in the United States (the "Class"):

16
17              All persons in the United States who purchased the Products for
                personal, family or household purposes from June 8, 2016 to the
18              present. Specifically excluded from the Class are (a) Defendant, (b)
                Defendant's Affiliates, (c) the officers, directors, or employees of
19              Defendant and its Affiliates and their immediate family members,
                (d) any legal representative, heir, or assign of Defendant, (e) all
20              federal court judges who have presided over this Action and their
                immediate family members; (f) the Hon. Morton Denlow (Ret.) and
21              his immediate family members; (g) all persons who submit a valid
                and timely Request for Exclusion from the Class; and (h) those who
22              purchased the Challenged Products for the purpose of resale.

23         54.    Plaintiff Smith brings this suit pursuant to Federal Rule of Civil Procedure Rule

24  23(a), on behalf of herself and the following Class of similarly situated individuals in California

25  (the "California Subclass"):

26              All persons who purchased the Products for personal, family or
                household purposes in California (either directly or through an
27              agent) during the applicable statute of limitations period (the

28

"Class").  Specifically excluded from the California Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant.  Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

55.     Plaintiffs meet all of the criteria required by Federal Rule of Civil Procedure 23(a).

56.     **Numerosity**: Plaintiffs are unable to state the precise number of potential members of the Class; however, the number of Class members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1).  This Court has already certified the California Subclass and Defendant has acknowledged that the California Subclass exceeds 100 individuals.

57.     **Commonality**: There is a community of interest among the members of the proposed Class in that there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2), including whether Defendant's labels, advertisements and packaging include uniform misrepresentations that misled Plaintiffs and the other members of the Class to believe the Products are recyclable when they are not.  Proof of a common set of facts will establish the liability of Defendant and the right of each member of the Class to relief.  This Court has already found that there is commonality for the California Subclass.

58.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  This Court has already found that class certification is appropriate under Rule 23(b)(3) as to the California Subclass.  These common legal and factual questions, which do not vary among Class members and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

> a.   whether Massachusetts law can be applied nationally to claims of all Class Members;
>
> b.   whether Defendant's recycling claims constitute intentional or negligent misrepresentation;
>
> c.   whether Defendant advertises and markets the Products as recyclable;

DOCUMENT PREPARED ON RECYCLED PAPER

     d.  whether the Products are recyclable as advertised and labeled by Defendant;

     e.  whether Defendant's marketing, advertising and labeling claims regarding the recyclability of the Products are likely to deceive a reasonable consumer;

     f.  whether Defendant knows the Products cannot be recycled in many communities;

     g.  whether Defendant's recycling instructions are adequate;

     h.  whether Defendant's representations regarding the recyclability of the Products are likely to be read and understood by a reasonable consumer;

     i.  whether Defendant's representations regarding the recyclability of the Products are in compliance with the Green Guides;

     j.  whether Defendant's claims regarding the recyclability of the Products are material to a reasonable consumer of the Products;

     k.  whether Defendant's conduct in advertising, marketing and labeling of the Products as recyclable constitutes a violation of California consumer protection laws;

     l.  whether Defendant's conduct in advertising, marketing and labeling of the Products as recyclable constitutes a violation of Massachusetts consumer protection laws;

    m.  whether Defendant's representations concerning the recyclability of the Products constitute express warranties with regard to the Products;

     n.  whether Defendant breached the express warranties it made with regard to the recyclability of the Products;

     o.  whether Defendant's representations regarding the recycling of the Products constitute representations that the Products have characteristics, benefits or qualities which they do not have;

     p.  whether Defendant advertised its Products without an intent to sell them as advertised;

     q.  whether Defendant has been unjustly enriched from the sale of the Products;

r.   whether Plaintiffs and the Class are entitled to a declaration of their rights with respect to Defendant's labeling the Products as recyclable;

s.   whether punitive damages are warranted for Defendant's conduct and, if so, an appropriate amount of such damages; and

t.   whether Plaintiffs and the Class members are entitled to injunctive, equitable and monetary relief.

59.   **Typicality**: Plaintiffs assert claims that are typical of the claims of the entire Class for purposes of Rule 23(a)(3).  All members of the Class have been subjected to the same wrongful conduct because they have purchased Products that are labeled and sold as recyclable when they are not in fact recyclable in many communities.  This Court has already held that Plaintiff Smith's claims are typical of the California Subclass.

60.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4).  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in complex litigation of this nature to represent them.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.  This Court has already held that Plaintiff Smith is an adequate representative of the California Subclass.

61.   Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting the Class as a whole.  Defendant utilizes advertising campaigns that include uniform misrepresentations that misled Plaintiffs and the other members of the Class.  This Court has already found that class certification is appropriate under Rule 23(b)(2) as to the California Subclass.

62.   Defendant utilizes marketing, advertisements and labeling that include uniform misrepresentations that misled Plaintiffs and the other members of the Class.  Defendant's claims regarding the recyclability of the Products are one of the most prominent features of Defendant's marketing, advertising and labeling of the Products.  Nonetheless, the Products are not in fact

recyclable in many communities.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

63.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.  Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims are concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members the Class who are not parties to the adjudications or may substantially impede their ability to protect their interests.

## **FIRST CAUSE OF ACTION**

**(Plaintiffs, on Behalf of Themselves, the Class and the General Public,
Allege Violations of Massachusetts General Laws Chapter 93A §§2 and 9
Based on Unfair and Deceptive Acts and Practices)**

64.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 63 of this Complaint.  Plaintiffs allege this claim on behalf of the Class.

65.     Pursuant to Massachusetts General Law, Part I, Title XV, Chapter 93A, §2, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

66.     Defendant's principal place of business is in Massachusetts, and many of Defendant's fraudulent acts and practices took place in the Commonwealth of Massachusetts.

67.     Defendant has engaged and continues to engage in conduct that is unfair and deceptive, and is likely to deceive members of the public.  This conduct includes, but is not limited to, representing that the Products are recyclable.

68.     Plaintiffs purchased the Products in reliance on Defendant's representations that the Products are recyclable.  Defendant's claims that the Products are recyclable are material, untrue and misleading.  These recyclable claims are prominent on all of Defendant's marketing, advertising and labeling materials, even though Defendant is aware that the claims are false and misleading.  Defendant's claims are thus likely to deceive Plaintiffs and reasonable consumers.  Plaintiffs would not have purchased the Products, or would not have paid as much for the Products, but for Defendant's false representations that the Products are recyclable.  Plaintiffs have thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

69.     Additionally, Defendant violated the following General Regulations of the Massachusetts Attorney General regarding Ch. 93A:

a.   940 C.M.R. 3.02(2), which states:

No statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another.

b.   940 C.M.R. 3.05(1), which states:

No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect.   This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof.

c.   940 C.M.R. 3.16(1)-(2), which states that:

Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . .violates Chapter 93A, §2.

d.   940 C.M.R. 6.03(2), which states:

Sellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell.

e.   940 C.M.R. 6.04(1)-(2), which states:

(1) Misleading Representations.  It is an unfair or deceptive act for a seller to make any material representation of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading, or if the seller does not have sufficient  information upon which a reasonable belief in the truth of the material representation could be based.

(2) Disclosure of Material Representations.  It is an unfair or deceptive act for a seller to fail to clearly and conspicuously disclose in any advertisement any material representation, the omission of which   would   have   the   tendency   or   capacity   to mislead reasonable buyers or prospective buyers. . . .

70.     Defendant has engaged and continues to engage in violations of Chapter 93A, Section 2 because regulations promulgated by the Massachusetts Attorney General under Chapter 93A, Section 2(c) provide that any act or practice that "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection…" 940 C.M.R. 3.16(3), violates Chapter 93A, Section 2.

71.     In compliance with the provisions of M.G.L Chapter 93A, on June 18, 2020, Plaintiff Downing provided written notice to Defendant pursuant to Section 9, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries

suffered by Plaintiff and requested that Defendant offer an appropriate consideration or other remedy to all affected consumers.  Defendant did not, within thirty days of Plaintiff Downing's demand, make a reasonable offer of relief for the unfair and deceptive acts Plaintiff Downing identified in his demand letter.  Accordingly, Plaintiffs seek damages pursuant to M.G.L Chapter 93A, §2.

72.     By committing the acts alleged above, Defendant has engaged in deceptive acts and practices in violation of Massachusetts General Law 93A, §2.

73.     As a result of Defendant's willful and knowing violation of Chapter 93A, §2, Keurig is liable to Plaintiffs and the Class for up to three times the damages that Plaintiff and the Class incurred or the statutory minimum award of $25 per purchase of a Product, whichever is greater.

74.     As a result of Defendant's failure to make a reasonable offer of settlement in response to Plaintiff Downing's written pre-suit demand for relief, Defendant is liable to Plaintiffs and the Class for up to three times the damages that Plaintiff and the Class incurred or the statutory minimum award of $25 per purchase of a Product, whichever is greater.

75.     An action for injunctive relief and restitution is specifically authorized under Massachusetts General Law 93A, §9.

76.     Keurig is also liable to Plaintiffs for all their costs, attorneys' fees, and interest. Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

## **SECOND CAUSE OF ACTION**

**(Plaintiffs, on Behalf of Themselves and the Class, Allege Breach of Express Warranty)**

77.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 73 of this Complaint.  Plaintiffs allege this claim on behalf of the Class.

78.     The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

DOCUMENT PREPARED
ON RECYCLED PAPER

-25-

79.     As detailed above, Defendant marketed and sold the Products as recyclable. Defendant's representations that the Products are recyclable constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

80.     Defendant's representations regarding the recyclability of the Products are uniformly made in the Products' advertising, internet sites and other marketing materials, and on the Products' labeling and packaging materials, and are thus part of the basis of the bargain between Defendant and purchasers of the Products.

81.     At the time that Defendant designed, manufactured, sold and distributed the Products, Defendant knew that the Products were not recyclable in many communities.

82.     As set forth in the paragraphs above, the Products are not recyclable in many communities and thus do not conform to Defendant's express representations to the contrary. Defendant has thus breached its express warranties concerning the Products.

83.     On July 23, 2018, Plaintiff Smith sent a pre-suit demand letter to Defendant notifying Defendant that the Products are not recyclable as warranted by Defendant.  On June 18, 2020, Plaintiff Downing sent a pre-suit demand letter to Defendant notifying Defendant that the Products are not recyclable as warranted by Defendant.  Defendant therefore has actual and constructive knowledge that the Products are not recyclable in many communities and were thus not sold as marketed and advertised.

84.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and Class members have suffered damages.

Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

## **THIRD CAUSE OF ACTION**

### **(Plaintiffs, on Behalf of Themselves and the Class, Allege Unjust Enrichment)**

85.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 81 of this Complaint.  Plaintiffs bring this claim on behalf of the Class.

86.     Defendant has engaged in deceptive and misleading conduct regarding its recyclable claims of the Products as set forth above.

DOCUMENT PREPARED
ON RECYCLED PAPER

87.     As a result of Defendant's conduct alleged herein, Plaintiffs conferred a benefit on Defendant by purchasing the Products.

88.     Defendant accepted and retained the benefit in the amount of the sales and/or profits it earned from sales of its Products to Plaintiffs and Class members.

89.     Defendant has monetarily benefitted from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust and inequitable for Defendant to be permitted to retain the benefit of its wrongful conduct.

90.     Plaintiffs and the Class members are entitled to restitution and/or damages from Defendant and/or an order of this Court proportionally disgorging all profits, benefits and other compensation obtained by Defendant from its wrongful conduct.  If necessary, the establishment of a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation may be created.

91.     Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

## **FOURTH CAUSE OF ACTION**

### **(Plaintiffs, on Behalf of Themselves and the Class, Allege Misrepresentation)**

92.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 88 of this Complaint.  Plaintiffs bring this claim on behalf of the Class.

93.     Defendant's recyclable representations on the Products have omitted material facts to the public, including Plaintiffs and Class members, about its products.  Through its advertising and other means, Defendant failed to disclose that the Products are not recyclable in many communities.

94.     At all relevant times Defendant was aware that its recyclable claims on the Products were deceptive and misleading, and purposefully omitted material facts regarding its recyclable claims in order to induce reliance by Plaintiffs and Class members and induced their decisions to purchase Defendant's Products.  At a minimum, Defendant negligently misrepresented and omitted material facts regarding its recyclable claims on the Products.

95.     Plaintiffs and the Class members reasonably and justifiably relied on Defendant's representations and omissions as set forth herein, and in reliance thereon, purchased Defendant's Products that they would not have otherwise purchased or paid the same amount for.  Had Plaintiffs known all material facts regarding Defendant's recyclable claims on the Products they would have acted differently and would not have been damaged by Defendant's conduct.

96.     As a direct and proximate cause of Defendant's misrepresentations and omissions, Plaintiffs and Class members were induced to purchase Defendant's Products and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of the bargain in that they bought products that were not what they were represented to be, and they have spent money on products that had less value than was reflected in the price they paid.

Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

## FIFTH CAUSE OF ACTION

### (Plaintiffs, on Behalf of Themselves and the Class Seek Declaratory Relief Pursuant to 28 U.S.C. § 2201)

97.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 93 of this Complaint.  Plaintiffs bring this claim on behalf of the nationwide Class.

98.     An actual controversy has arisen and now exists between Plaintiffs and the putative Classes and between Plaintiffs and Defendant, concerning the misleading and deceptive nature of Defendant's recyclable claims.  Plaintiffs and Class members contend that Defendant's recyclable claims are deceptive and misleading because the Products cannot be recycled in many communities.  Plaintiffs contend Defendant's recyclable representations are inconsistent with reasonable consumers' understanding of such representations.  Defendant contends that it can promulgate deceptive, confusing, and misleading recycling claims to suit its market and profit drive objectives.  Defendant contends that its use of its recycling claims is not deceptive or misleading to reasonable consumers.

99.     Accordingly, Plaintiffs are entitled to seek a judicial determination of whether Defendant's claims are deceptive and misleading to reasonable consumers.

100.    A judicial determination of the rights and responsibilities of the parties over

Defendant's recyclable claims is necessary and appropriate at this time so that the rights of the

Plaintiffs and the Class may be determined with certainty for the purposes of resolving this action

and so that the Parties and the marketplace will have a consistent understanding of what

recyclable claims mean.

Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

## SIXTH CAUSE OF ACTION

**(Plaintiff Smith, on Behalf of Herself and the California Subclass, Alleges Breach of Express Warranty)**

101.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1

through 97 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California

Subclass.

102.    As detailed above, Defendant marketed and sold the Products as recyclable.

Defendant's representations that the Products are recyclable constitute affirmations of fact made

with regard to the Products as well as descriptions of the Products.

103.    Defendant's representations regarding the recyclability of the Products are

uniformly made in the Products' advertising, internet sites and other marketing materials, and on

the Products' labeling and packaging materials, and are thus part of the basis of the bargain

between Defendant and purchasers of the Products.

104.    California has codified and adopted the provisions of the Uniform Commercial

Code governing express warranties (Cal. Com. Code § 2313).

105.    At the time that Defendant designed, manufactured, sold and distributed the

Products, Defendant knew that the Products were not recyclable in many communities.

106.    As set forth in the paragraphs above, the Products are not recyclable in many

communities and thus do not conform to Defendant's express representations to the contrary.

Defendant has thus breached its express warranties concerning the Products.

107.    On July 23, 2018, Plaintiff Smith sent a pre-suit demand letter to Defendant

notifying Defendant that the Products are not recyclable.  Defendant therefore has actual and

constructive knowledge that the Products are not recyclable in many communities and were thus not sold as marketed and advertised.

108.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff Smith and California Subclass members have suffered damages.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

## SEVENTH CAUSE OF ACTION

**(Plaintiff Smith, on Behalf of Herself and the California Subclass, Alleges Violations of the California Consumers Legal Remedies Act)**

109.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1 through 105 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California Subclass.

110.    Plaintiff Smith and the other California Subclass members purchased the Products for personal, family or household purposes.

111.    The acts and practices of Defendant as described above were intended to deceive Plaintiff Smith and the other California Subclass members as described herein and have resulted and will result in damages to Plaintiff Smith and the other California Subclass members.  These actions violated and continue to violate the CLRA in at least the following respects:

    a.    In violation of Section 1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations that the Products have characteristics, uses or benefits which they do not;

    b.    In violation of Section 1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Products are of a particular quality, which they are not; and

    c.    In violation of Section 1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the Products without the intent to sell them as advertised.

112.    By reason of the foregoing, Plaintiff Smith and the other California Subclass members have suffered damages.

113.    By committing the acts alleged above, Defendant violated the CLRA.

114.    In compliance with the provisions of California Civil Code § 1782, on July 23, 2018, Plaintiff Smith provided written notice to Defendant of her intention to seek damages under California Civil Code § 1750, *et seq.*, and requested that Defendant offer an appropriate consideration or other remedy to all affected consumers.  As of the date of this complaint, Defendant has not done so.  Accordingly, Plaintiff Smith seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a).

115.    Pursuant to California Civil Code § 1780(a)(2) Plaintiff Smith and the California Subclass members are entitled to an order enjoining the above-described wrongful acts and practices of Defendant, providing actual and punitive damages and restitution to Plaintiff Smith and the other California Subclass members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

## EIGHTH CAUSE OF ACTION

**(Plaintiff Smith, on Behalf of Herself, the California Subclass and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq.*  Based on Fraudulent Acts and Practices)**

116.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1 through 112 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California Subclass.

117.    Under Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

118.    Defendant has engaged and continues to engage in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, representing that the Products are recyclable.

119.    Plaintiff Smith purchased the Products in reliance on Defendant's representations that the Products are recyclable.  Defendant's claims that the Products are recyclable are material,

untrue and misleading.  These recyclable claims are prominent on all of Defendant's marketing, advertising and labeling materials, even though Defendant is aware that the claims are false and misleading.  Defendant's claims are thus likely to deceive Plaintiff Smith and reasonable consumers.  Plaintiff Smith would not have purchased the Products, or would not have paid as much for the Products, but for Defendant's false representations that the Products are recyclable. Plaintiff Smith has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

120.    By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

121.    An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

## NINTH CAUSE OF ACTION

**(Plaintiff Smith on Behalf of Herself, the California Subclass and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq*. Based on Commission of Unlawful Acts)**

122.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1 through 118 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California Subclass.

123.    The violation of any law constitutes an unlawful business practice under Business & Professions Code § 17200.

124.    As detailed more fully in the preceding paragraphs, the acts and practices alleged herein were intended to or did result in the sale of the Products in violation of the CLRA, California Civil Code §1750, *et seq*., and specifically California Civil Code § 1770(a)(5), § 1770(a)(7) and § 1770(a)(9).

125.    Defendant's conduct also violates Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or

deceptive acts or practices in or affecting commerce.  By misrepresenting that the Products are recyclable, Defendant is violating Section 5 of the FTC Act.

126.    Defendant's conduct also violates California Business & Professions Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Products are recyclable, Defendant is violating Business & Professions Code § 17500.

127.    Defendant's conduct also violates California Business & Professions Code § 17580.5, which makes it unlawful for any person to make any untruthful, deceptive or misleading environmental marketing claim.  Pursuant to § 17580.5, the term "environmental marketing claim" includes any claim contained in the Green Guides.  16 C.F.R. § 260.1, *et seq*.  Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  By misrepresenting that the Products are recyclable as described above, Defendant is violating Business & Professions Code § 17580.5.

128.    Defendant's conduct is also a breach of warranty.  Defendant's representations that the Products are recyclable constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Defendant and purchasers of the Products.  Because those representations are material, false and misleading, Defendant has breached its express warranty as to the Products and has violated California Commercial Code § 2313.

129.    By violating the CLRA, the FTC Act, Business & Professions Code §§ 17500 and 17580.5, and California Commercial Code § 2313, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.  Plaintiff Smith would not have purchased the Products, or would not have paid as much for Products, but for Defendant's unlawful business practices.  Plaintiff Smith

has thus suffered injuries in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

130.    An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

**TENTH CAUSE OF ACTION**

**(Plaintiff Smith, on Behalf of Herself, the California Subclass and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq*. Based on Unfair Acts and Practices)**

131.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1 through 127 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California Subclass.

132.    Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

133.    Defendant has engaged and continues to engage in conduct which is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.  This conduct includes, but is not limited to, advertising and marketing the Products as recyclable in many communities when they are not.  By taking advantage of consumers concerned about the environmental impacts of plastic waste, Defendant's conduct, as described herein, far outweighs the utility, if any, of such conduct.

134.    Defendant has engaged and continues to engage in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits and quality of goods for sale.  Defendant has further engaged, and continues to engage, in conduct that violates the legislatively declared policy of Cal. Pub.  Res. Code § 42355.5 against deceiving or misleading consumers about the environmental impact of plastic products.

135.    Defendant's conduct also violates the policy of the Green Guides.  The Green Guides mandate that "[a] product or package shall not be marketed as recyclable unless it can be

DOCUMENT PREPARED
ON RECYCLED PAPER

collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). It further states that "[a]n item that is made from recyclable material, but because of its shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable." 16 C.F.R. § 260.12(d). As explained above, the Products cannot be recycled. Nonetheless, some recycling facilities may accept the Products even though they must eventually send the Products to a landfill. It is unfair for Defendant to make a recyclable claim based on the fact that some recycling facilities may accept the Products, despite the recycling facilities' inability to actually recycle the Products. Moreover, consumers believe that products are recyclable when they are accepted by a recycling program, even if the recycling facilities end up sending the products to a landfill. Taking advantage of consumer perception of recycling programs violates the policy of the Green Guides.

136.    Defendant's conduct, including failing to disclose that the Products will likely end up in landfills and not be recycled, is substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have purchased the Products but for Defendant's representations that the Products are recyclable. Consumers are concerned about environmental issues in general and plastic waste in particular and Defendant's representations are therefore material to such consumers. Misleading consumers — and instructing them to follow cumbersome instructions in order to recycle the Products even though the Products will end up in a landfill despite those efforts — causes injury to such consumers that is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Defendant gains an unfair advantage over its competitors, whose advertising must comply with the CLRA, Cal. Pub. Res. Code § 42355.5, the FTC Act, Cal. Business & Professions Code § 17508, and the Green Guides. Since consumers reasonably rely on Defendant's representations of the Products and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

137.    Although Defendant knows that the Products are not likely to be ultimately recycled, Defendant failed to disclose that fact to Plaintiff Smith and the California Subclass.

138.    By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

139.    An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

140.    Plaintiff Smith would not have purchased the Products, or would not have paid as much for Products, but for Defendant's unfair business practices.  Plaintiff Smith has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

## ELEVENTH CAUSE OF ACTION

**(Plaintiff Smith, on Behalf of Herself and the California Class, Alleges Quasi-Contract Claim for Unjust Enrichment)**

141.    Plaintiff Smith realleges and incorporates herein by reference Paragraphs 1 through 137 of this Complaint.  Plaintiff Smith brings this claim on behalf of the California Subclass.

142.    Plaintiff Smith and the California Subclass members conferred benefits on Defendant by purchasing the Products.

143.    Defendant has knowledge of such benefits.

144.    Defendant voluntarily accepted and retained the benefits conferred.

145.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class members' purchases of the Products.

146.    Retention of that money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented through its labeling, advertising and marketing materials that the Products are recyclable when the Products are not in fact recyclable in many communities.

147. These misrepresentations and omissions caused injuries to Plaintiff Smith and the California Subclass members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the Products are not recyclable in many communities.

148. Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff Smith and the California Subclass members is unjust and inequitable, Defendant ought to pay restitution to Plaintiff Smith and the California Subclass members for its unjust enrichment.

149. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff Smith and the California Subclass members are entitled to restitution or disgorgement in an amount to be proved at trial.

Wherefore, Plaintiff Smith prays for judgment against Defendant, as set forth hereafter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief against Defendant as follows:

A. That the Court declare this a class action on behalf of the Class and California Subclass;

B. That the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

C. That the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits and quality Defendant has claimed;

D. That the Court order Defendant to cease and refrain from marketing and promotion of the Products that state or imply that the Products are recyclable to the extent they are not;

E. That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

F. That the Court order Defendant to notify each and every Class and California Subclass member of the pendency of the claims in this action in order to give such individuals an

DOCUMENT PREPARED
ON RECYCLED PAPER

1  opportunity to obtain restitution and damages from Defendant;

2     G.  That the Court order Defendant to pay restitution to restore all Class and California

3  Subclass members all funds acquired by means of any act or practice declared by this Court to be

4  an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising, plus

5  pre- and post-judgment interest thereon;

6     H.  That the Court order Defendant to disgorge all money wrongfully obtained and all

7  revenues and profits derived by Defendant as a result of its acts or practices as alleged in this

8  Complaint;

9     I.  That the Court award damages to Plaintiffs, the Class, and the California Subclass

10  to compensate them for the conduct alleged in this Complaint;

11     J.  That the Court award punitive damages pursuant to California Civil Code

12  § 1780(a)(4);

13     K.  That the Court award treble damages pursuant to Massachusetts General Laws,

14  Chapter 93A §9;

15     L.  That the Court grant Plaintiffs their reasonable attorneys' fees and costs of suit

16  pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d),

17  Massachusetts General Laws, Chapter 93A §§ 9 and 11, the common fund doctrine, or any other

18  appropriate legal theory; and

19     N.  That the Court grant such other and further relief as may be just and proper.

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

-38-

1

**JURY DEMAND**

2

Plaintiffs demand a trial by jury on all causes of action so triable.

3

4

Dated:    July 13, 2022                                    Respectfully submitted,

5

**LEXINGTON LAW GROUP**

6

7

_/s/    Howard Hirsch_

8

Howard Hirsch (State Bar No. 213209)
Ryan Berghoff (State Bar No. 308812)

9

LEXINGTON LAW GROUP
503 Divisadero Street

10

San Francisco, CA 94117

11

Telephone: (415) 913-7800
Facsimile: (415) 759-4112

12

hhirsch@lexlawgroup.com
rbergoff@lexlawgroup.com

13

14

**LAW OFFICE OF GIDEON KRACOV**
Gideon Kracov, State Bar No. 179815

15

801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017

16

Telephone: (213) 629-2071
Facsimile: (213) 623-7755

17

gk@gideonlaw.net

18

**SHAPIRO HABER & URMY LLP**

19

Edward F. Haber (BBO #215620)

20

Ian J. McLoughlin (BBO#647203)
Patrick J. Vallely (BBO #663866)

21

SHAPIRO HABER & URMY LLP
2 Seaport Lane

22

Boston, MA 02210

23

Telephone: (617) 439-3939
Facsimile: (617)439-0134

24

ehaber@shulaw.com
imcloughlin@shulaw.com

25

pvallely@shulaw.com

26

Attorneys for Plaintiffs

27

KATHLEEN SMITH and MATTHEW
DOWNING

28