LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209
Meredyth Merrow, State Bar No. 328337
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
mmerrow@lexlawgroup.com

Attorneys for Plaintiffs
KATHLEEN SMITH and MATTHEW DOWNING

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH and MATTHEW DOWNING, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>                    Defendant. | Case No.  4:18-cv-06690-HSG<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date:        December 8, 2022<br>Time:        2:00 p.m.<br>Location:  Courtroom 2, 4th Floor<br>Judge:      Hon. Haywood S. Gilliam, Jr. |

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENT .................................................................................2

II.   BACKGROUND ................................................................................................3

    A.    Procedural History. ...............................................................................3

    B.    Settlement Terms. ................................................................................4

        1.    The Settlement Provides Significant Injunctive Relief to All Class Members. ....................................................................................4

        2.    Keurig Must Contribute Substantial Sums To A Cash Payment To Compensate Class Members. ...............................................................5

        3.    Any *Cy Pres* Funds Will Be Awarded to Independent, Non-Profit Groups Who Will Use the Funds to Benefit the Class in a Manner That Is Closely Tied to the Goals of the Litigation. ................................6

    C.    Preliminary Approval and Notice to Settlement Class. ...........................................7

III.  ARGUMENT .................................................................................................9

    A.    The Settlement Class Should Be Certified As Rule 23's Requirements Are Satisfied. ........................................................................................9

    B.    Standards for Judicial Approval of Class Action Settlements. ................................10

    C.    The Strength of Plaintiffs' Case. ..................................................................12

    D.    The Risk, Expense, Complexity and Likely Duration of Litigation. ........................13

    E.    Risk of Maintaining Class Action Status Throughout Trial. ................................14

    F.    Amount Offered in Settlement. ..................................................................15

    G.    The Stage of Proceedings and the Amount of Discovery Completed. ....................17

    H.    Experience and Views of Counsel. ..............................................................17

    I.    Reaction of the Settlement Class. ..............................................................18

    J.    The Two Objectors Fail to Raise Any Valid Objections and Do Not Have Standing. .......................................................................................19

IV.   CONCLUSION .............................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

## CASES

3   *Alberto v. GMRI, Inc.*,
4        252 F.R.D. 652 (E.D. Cal. 2008) ...................................................................................... 17

5   *Bautista-Perez v. Juul Labs, Inc.*,
         No. 20-cv-01613-HSG, 2022 U.S. Dist. LEXIS 110872 (N.D. Cal. June 22,
6        2022) ............................................................................................................................ 9, 10, 12

7   *Bisaccia v. Revel Sys.*,
         No. 17-cv-02533-HSG, 2019 U.S. Dist. LEXIS 119286 (N.D. Cal. July 17,
8        2019) ...................................................................................................................................... 18

9   *Bower v. Cycle Gear, Inc.*,
         No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455 (N.D. Cal. Aug. 23,
10       2016) .............................................................................................................................. 9, 12, 13

11  *Boyd v. Bechtel Corp*,
         485 F. Supp. 610 (N.D. Cal. 1979) .............................................................................. 13, 17

12  *Brown v. Hain Celestial Grp.*, Inc.,
         No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18,
13       2016) ...................................................................................................................................... 18

14  *Ching v. Siemens Indus., Inc.*,
         No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27,
15       2014) .............................................................................................................................. 12, 13

16  *Chun-Hoon v. McKee Foods Corp.*,
         716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................................ 12

17  *Churchill Village LLC v. Gen. Elec.*,
18       361 F.3d 566 (9th Cir. 2004) .............................................................................................. 19

19  *Dennis v. Kellogg Co.*,
         697 F.3d 858 (9th Cir. 2012) .............................................................................................. 11

20
    *Downing v. Keurig Green Mountain, Inc.*,
21        No. 1:20-cv-11673-IT, 2021 U.S. Dist. LEXIS 110334 (D. Mass. June 11,
         2021) ...................................................................................................................................... 14

22
    *Duchimaza v. Niagara Bottling, LLC*,
23       2022 U.S. Dist. LEXIS 139837 (S.D.N.Y. Aug. 5, 2022) .................................................. 13

24  *Ellis v. Naval Air Rework Facility*,
         87 F.R.D. 15 (N.D. Cal. 1980).................................................................................. 11, 17

25
    *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
26       926 F.3d 539 (9th Cir. 2019) ................................................................................................ 3

27  *Fleming v. Impax Lab'ys Inc.*,
         No. 16-cv-06557-HSG, 2022 U.S. Dist. LEXIS 125595 (N.D. Cal. July 15,
28       2022) ...................................................................................................................................... 13

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................ 14

*Guttmann v. Ole Mexican Foods, Inc.*,
  No. 14-cv-04845-HSG, 2016 U.S. Dist. LEXIS 100534 (N.D. Cal. Aug. 1,
  2016) ........................................................................................................................ 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 9, 11

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-5198-EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29,
  2011) ........................................................................................................................ 11

*In re Aqua Metals, Inc. Sec. Litig.*,
  No. 17-cv-07142-HSG, 2022 U.S. Dist. LEXIS 36944 (N.D. Cal. Mar. 2,
  2022) .................................................................................................................. 11, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................. 11

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008) ................................................................................. 11

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................ 13, 17

*In re Omnivision*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 14, 18

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................... 10

*Kastler v. Oh My Green, Inc.*,
  No. 19-cv-02411-HSG, 2022 U.S. Dist. LEXIS 71753 (N.D. Cal. Apr. 19,
  2022) ........................................................................................................................ 18

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................... 13

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1986) ................................................................................. 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................ 11, 12

*Rodriguez v. West Publ. Corp.*,
  Case No. CV05-3222 R, 2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Sept. 10,
  2007) ........................................................................................................................ 19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 11, 13, 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ....................................................................................... 11

*Satchell v. Fed. Express Corp.*,
    No. 03-cv-2659-SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ............... 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ....................................................................................... 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................................... 18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................... 11

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ......................................................................................... 10

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ......................................................................................... 10

*Vargas v. Lott*,
    787 F. App'x 372 (9th Cir. 2019) ................................................................................... 10

*Williams v. First Nat'l Bank of Pauls Valley*,
    216 U.S. 582 (1910) ........................................................................................................ 10

## STATUTES

FRCP Rule 23 ................................................................................................................... 13

FRCP Rule 23(a) ........................................................................................................... 9, 10

FRCP Rule 23(b) .............................................................................................................. 9

FRCP Rule 23(b)(2) ...................................................................................................... 9, 10

FRCP Rule 23(b)(3) ......................................................................................................... 10

FRCP Rule 23(e) ........................................................................................................ 10, 11

FRCP Rule 23(e)(2) ......................................................................................................... 15

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 8, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., Plaintiffs Kathleen Smith and Matthew Downing ("Plaintiffs") on behalf of the proposed Class, will and hereby do respectfully move for entry of an order: (i) granting final approval of the proposed settlement set forth in the class action Stipulation of Settlement ("the Settlement"); and (ii) confirming certification of the Settlement Class as defined in the Settlement.[1]

Plaintiffs' motion is based on the attached Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement; the Declaration of Howard J. Hirsch in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Hirsch Decl.") and exhibits attached thereto (including the Declarations of Frank Ballard and Jeanne Finegan), the Settlement filed on February 24, 2022; all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing.

---

[1] All capitalized terms not defined herein shall have the same meanings set forth in the Settlement filed February 24, 2022. [ECF No. 128-1, Exh. 1].

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

The Settlement resolves the claims in the operative Second Amended Complaint (the "Complaint") in this case.  In the Complaint, Plaintiffs allege that Keurig Green Mountain, Inc. ("Keurig") engaged in false and misleading marketing and advertising of its K Cup® coffee pods labeled as recyclable (the "Challenged Products").  The lawsuit alleges that, contrary to Keurig's labeling and advertising, the Challenged Products are not widely recyclable.  The Settlement remedies the claims alleged in the lawsuit Plaintiffs filed on behalf of a nationwide class of purchasers of the Challenged Products, who allegedly paid a premium for them over comparable products that did not purport to be recyclable.  As discussed below, the Settlement gives Class Members the relief that Plaintiffs sought when they filed the Complaint by requiring Keurig to revise the labels and marketing of the Challenged Products to clarify that they are not recyclable in many communities, and to pay $10 million to the Class.

The Settlement is fair, reasonable, and adequate, and falls well within the range of class action settlements that merit final approval.  The Settlement provides significant injunctive relief by requiring Keurig to modify its labeling and advertising of the Challenged Products to disclose prominently that they are not recyclable in many communities.  These required changes to Keurig's business practices will benefit Class Members and all future purchasers of the Challenged Products by ensuring adequate disclosures as to the limited availability of recycling for the Challenged Products.

Keurig will also pay a total of $10 million into a settlement fund for the benefit of Class Members—which will be distributed to the Class Members via direct cash payments and to pay attorneys' fees and costs, incentive awards to the class representatives, and notice and administrative expenses.  Any unused or unclaimed funds will be distributed to *cy pres* recipients, The Ocean Conservancy (75% of unclaimed funds) and Consumer Reports (25% of unclaimed funds), two non-profit organizations that will use the funds to directly benefit the interests and needs of Class Members.  The Settlement leaves no possibility for any of the $10 million fund to revert to Keurig.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    By requiring changes to the labels and advertising of the Challenged Products, and by

2  making this substantial fund available, the Settlement provides an immediate, significant and

3  positive result for the Class.  In turn, Keurig will receive a release of all claims that were or could

4  have been raised in the Complaint relating to its labeling, marketing and advertising of the

5  Challenged Products as recyclable.  This settlement was reached after several years of

6  contentious litigation, extensive discovery, and rigorous and informed negotiations between the

7  parties and their experienced class action counsel in a process that was overseen by a seasoned,

8  neutral mediator.

9    The response of the Class to the Settlement overwhelmingly favors final approval.

10  Following preliminary approval, notice was served in accordance with the Court-approved notice

11  plan.  To date, there have been over 583,000 visits to the settlement website and approximately

12  250,000 claims have been received.  *See* Hirsch Decl., Exh. 1, Declaration of Frank Ballard

13  ("Ballard Decl.") at ¶12.  The notice plan is estimated to have reached an estimated 70% of the

14  targeted Class Members. *See* Hirsch Decl., Exh. 2, Declaration of Jeanne Finegan ("Finegan

15  Decl.") at ¶4.  Yet ***only two objections have been filed***, and only eleven individuals have elected to

16  opt out of the Settlement.  Ballard Decl. at ¶13.

17    The Settlement readily satisfies the Ninth Circuit's test to determine whether a settlement

18  is fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23(e).  *See Espinosa*

19  *v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 567 (9th Cir. 2019).

20  Therefore, the proposed Settlement should be finally approved by the Court.

**II.    BACKGROUND**

**A.    Procedural History.**

23    After nearly four years of contentious and robust litigation, Plaintiffs are pleased to seek

24  final approval of the Settlement now before the Court.  Because the Court is familiar with this

25  litigation, Plaintiffs refer the Court to the Procedural History sections set forth in both the

26  preliminary approval motion [ECF No. 128] and motion for attorneys' fees and costs [ECF No.

27  146].

28

1    In sum, from the inception of this case in 2018, the parties have engaged in multiple and

2  extensive discussions regarding potential settlement options, including two private mediations.

3  Hirsch Decl. at ¶3.  Through these discussions and through substantial written discovery,

4  deposition testimony, third party discovery, and independent investigation, Plaintiffs have

5  gathered vital information pertinent to the legitimacy and scope of their claims, including

6  documentation regarding recycling rates and labeling of the Challenged Products and the volume

7  of sales.  *Id.*  The parties were finally able to reach an agreement in principle in October 2021,

8  following two full days of mediation with Hon. Morton Denlow (Ret.) in May and September

9  2021, and extensive negotiations before, in between, and following those sessions.  *Id.*

10    **B.    Settlement Terms.**

11    In exchange for a release of all claims that were or could have been brought based on the

12  facts alleged in the Complaint, Keurig has agreed to modify all its labels, advertising, and

13  marketing of the Challenged Products to prominently qualify any recycling representation with

14  the statement "Check Locally – Not Recycled in Many Communities."  Settlement § III.A.1-8.

15  In addition, Keurig has agreed to contribute $10 million into an independently-administered

16  Class fund, which will be used to fund payments to purchasers of the Challenged Products who,

17  Plaintiffs contend, were misled by Keurig's past labeling practices—as well as to disseminate

18  notice to the Class such that affected persons may avail themselves of this remedial monetary

19  payment.  Settlement § III.B  This fund will also be used to pay for Plaintiffs' reasonable

20  attorneys' fees in an amount not to exceed $3 million, Plaintiffs' reasonable litigation costs,

21  notice and administrative costs and expenses, and to pay modest incentive awards to Plaintiffs

22  Smith and Downing of $5,000 and $1,000, respectively.  *Id.*

23    **1.    The Settlement Provides Significant Injunctive Relief to All
           Class Members.**

24

25    The Settlement directly addresses the alleged misrepresentation at the center of this case.

26  The Settlement provides significant injunctive relief to the Class by requiring Keurig to make

27  changes to its labeling, marketing and advertising of the Challenged Products, including

28  prominently adding to any recyclable claim a qualifying statement "Check Locally – Not

Recycled in Many Communities." Settlement § III.A.1. This qualifier must appear in close proximity to any representations regarding recycling the Challenged Products, and in a font size no smaller than 55% of the font size of any recyclable representation. *Id*. § III.A.2. The qualifying language required by the Settlement is substantially stronger than anything Keurig has ever included, and at least 20% larger than its current qualifier, to ensure that consumers actually notice and read the qualification. By making these modifications, Keurig will prevent injury to future purchasers of the Challenged Products, including Class Members.

In addition, because Keurig also makes recyclability representations in other print and online marketing, and because Keurig's labels cross-reference its website, the Settlement also addresses the content of Keurig's website and other forms of advertising to ensure those sources do not mislead consumers into believing the Challenged Products are more widely recyclable than they are. Settlement § III.A.7. The Settlement also requires any video content to feature a revised qualifier at the same time as the recycling representation in a sufficiently large font, such that a reasonable viewer could read it. *Id*. The Settlement also mandates modifications to Keurig's publicly available corporate responsibility and sustainability reports, requiring Keurig to use the new qualifications on any page referencing the recyclability of the Products. *Id*. Finally, the Settlement addresses specific representations Keurig has made in the past regarding the recyclability of the Challenged Products to ensure that consumers, including Class Members, are not misled. *Id.* at A.8.

### 2. Keurig Must Contribute Substantial Sums To A Cash Payment To Compensate Class Members.

The Settlement requires Keurig to pay $10 million in cash to establish a fund (the "Cash Payment") for payment of Class member claims, notice and administration costs to maximize Class Members' access to the funds being created for their benefit, incentive awards, and attorneys' fees and costs. Settlement, § III.B. The Cash Payment is being administered by the Kroll Settlement Administration LLC (the "Claim Administrator"), an independent, qualified company approved by the Court, which has been reviewing claims submitted by affected Class Members in accordance with a specified procedure and subject to verification by the parties. *Id.*

§ III.B.6; Ballard Decl. at ¶ 3.

Under the Settlement, each Class member can recover more than their actual damages by obtaining $0.35 per ten pods with proof of payment, with a minimum of $6.00 and a maximum of $36.00 per household.  Settlement § III.B.4.  Even Class Members who did not keep such records may recover $5.00 without proof of purchase.  *Id.*  Because customers did not purchase pods individually but instead purchased pods in packages that typically contained dozens of pods, the benefit provided by the Settlement with proof of purchase may be substantial for any Class Members who kept records of their purchases (as reflected by the $36.00 maximum benefit per household).  Hirsch Decl. at ¶6.

      **3.**    **Any *Cy Pres* Funds Will Be Awarded to Independent, Non-Profit Groups Who Will Use the Funds to Benefit the Class in a Manner That Is Closely Tied to the Goals of the Litigation.**

The Settlement allows no possibility that any of the $10 million Cash Payment will revert to Keurig.  Hirsch Decl. at ¶7.  Following distribution to Class Members, payment of notice and administration costs, attorneys' fees and costs, and incentive awards, the remainder of the Cash Payment will be distributed as *cy pres* to The Ocean Conservancy (75% of unclaimed funds) and Consumer Reports (25% of unclaimed funds) for use in a manner that will provide the next best use of compensation to Class Members arising out of the claims alleged by Plaintiffs in this action.  *Id.*  The Ocean Conservancy's mission is to protect the ocean from global challenges by creating science-based solutions for a healthy ocean and the wildlife and communities that depend on it.  The Ocean Conservancy has a program titled Fighting for Trash Free Seas centered on ending the flow of plastic into the ocean.  The Ocean Conservancy estimates that it has collected 341,836,857 pounds of trash, including plastic, from the ocean since 1986.  As this case concerns plastic pollution that is due in part to the improper labeling of plastic products as recyclable, there is a close correlation between the Ocean Conservancy's mission and the facts that give rise to the instant action. *Id.*

Consumer Reports (formerly known as Consumers Union) advocates to ensure that consumers can make informed choices and influence the marketplace.  Consumer Reports stands by the principle that consumer products and services must be safe, effective, reliable, and fairly

1   priced.  It advocates for truth and transparency wherever information is hidden or unclear and it

2   pushes companies to address and remedy issues quickly with their products and services.  As this

3   case concerns consumer deception due to the labeling of products as recyclable, there is a close

4   correlation between Consumer Reports' mission and the facts that give rise to the instant action.

5   Hirsch Decl. at ¶7.

6        **C.    Preliminary Approval and Notice to Settlement Class.**

7        On July 8, 2022, this Court issued an order conditionally certifying the Class and

8   preliminarily approving the Settlement [ECF No. 140].  The Court found that the requirements of

9   Federal Rule of Civil Procedure 23 were preliminarily satisfied, conditional certification was

10  warranted, the Settlement appeared reasonable, and the Class Notice plan was sufficient.  *Id*.

11  The Court also approved the designation of Kroll Settlement Administration LLC to serve as the

12  Claim Administrator for the Settlement.  *Id*.

13       Notice to the Class began in August 2022 pursuant to the Court-approved notice plan,

14  which was determined by the Court to be "'reasonably calculated, under all circumstances,' to

15  apprise all class members of the proposed settlement."  ECF No. 140 at 18:11-13; Ballard Decl.

16  at ¶¶9-10.  First, the Claim Administrator published a full-page advertisement in *People*

17  magazine – a publication which is widely read among the Challenged Products' target

18  demographic.  Finegan Decl. at ¶11.  Second, the Claim Administrator published a summary

19  notice in the California edition of USA Today once a week for four weeks.  *Id*. at ¶ 12.  Third,

20  the Claim Administrator provided email notice to the approximately 1.7 million email addresses

21  of Class Members who were direct purchasers of the Challenged Products from Keurig.com

22  during the Class Period.  Ballard Decl. at ¶¶7, 9 and 11.  Fourth, press releases in both English

23  and Spanish targeting all 50 states were sent to the PR Newswire service.  Finegan Decl. at ¶¶6

24  and 13.  The PR Newswire is disseminated nationwide and was subsequently rebroadcast by at

25  least 208 news sources, thereby increasing the potential reach of the Notice to consumers.  *Id*. at

26  ¶13.  Fifth, internet and mobile phone advertisements targeting potential Class Members ran on

27  various media services, resulting in over 63 million impressions for potential Class Members to

28  click on the banner ad and view the settlement website.  *Id*. at ¶4.  All notices direct Class

1  Members to a settlement website and toll-free telephone support system, which were set up by

2  the Claim Administrator.  Ballard Decl. at ¶¶6-8.  The website includes a more detailed notice

3  fully explaining the terms of the Settlement and all attendant Class member rights, as well as

4  links to the Settlement documents.  *Id.* at ¶8.  In an effort to facilitate providing proof of

5  purchase documentation, the website also includes instructions and links for Class Members to

6  download their purchase histories of the Covered Products from several major retailers.  *Id.*

7          In October 2022, the Parties sought and obtained Court approval to send additional email

8  notice to Class Members who bought the Challenged Products online at Keurig.com [ECF Nos.

9  152 and 153].  These individuals are the only Class Members for whom the Parties have contact

10  information.  These Class Members are also able to access their purchase history on Keurig's

11  website, making it even easier for them to submit claims with proof of purchase.  Because the

12  vast majority of total claims submitted at that time were from Class Members without proof of

13  purchase, the Parties anticipated that additional email notice to Keurig.com customers might

14  result in more claims from customers who purchased the Challenged Products and had proof of

15  purchase documentation.  As with the initial email notice, this second round included

16  instructions to Class Members as to how to download their purchase histories from Keurig's

17  website.

18          The notice program has worked very well.  Although the Claim Administrator has not

19  completed its tally of the claims, as of October 31, 2022, the claim statistics are as follows: (A)

20  there were 583,002 visits to the Settlement website; and (B) 247,295 claims submitted, which

21  will result in payments to Class Members of at least $1.25 million in cash.[2]  Ballard Decl. at ¶12.

22  The claims deadline is not until January 9, 2023, and the Claim Administrator anticipates

23  receiving approximately 450,000 total claims and approximately $2.5 million in payments to

24  Class Members.  *Id*. at ¶15; Hirsch Decl at ¶9.  Further, pursuant to the Court's Order, the

25  deadline for Class Members to opt out of or object to the Settlement was October 24, 2022.  As

26

27  [2] Of these total claims, 929 are paper claim forms received in the mail.  Those claim forms have
    not yet been processed and the amounts of those claims are not included in these totals.  Ballard
28  Decl. at ¶12.  The total claims include both approximately 8,000 claims with proof of purchase,
    with the remaining claims being without proof of purchase.  Hirsch Decl. at ¶9.

1   of that date, only two objections had been filed with the Court [ECF Nos. 144 and 154], and the

2   Claim Administrator only received eleven timely requests to opt out of the Settlement.  Ballard

3   Decl. at ¶13.

4          "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

5   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *see also Bower v. Cycle Gear,*

6   *Inc.*, No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455, at *7 (N.D. Cal. Aug. 23, 2016).

7   Here, while the notice program has been extremely successful, Notice and Administration costs

8   and expenses have increased from the $500,000 amount contemplated by the Settlement to

9   approximately $800,000 due to the higher than anticipated number of claims and due to changes

10  in the notice program to increase Class Member participation.  *See* Settlement § III.B.1.; Ballard

11  Decl. at ¶¶14-15, Exh. F.[3]  Because of these improvements to the notice plan, the Parties have

12  agreed to and are seeking Court approval of additional Notice and Administration costs of

13  $300,000.  Hirsch Decl. at ¶10.

14  **III.    ARGUMENT**

15        **A.    The Settlement Class Should Be Certified As Rule 23's Requirements**
              **Are Satisfied.**
16
17          "Final approval of a class action settlement requires, as a threshold matter, an assessment

18  of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)."

19  *Bautista-Perez v. Juul Labs, Inc.*, No. 20-cv-01613-HSG, 2022 U.S. Dist. LEXIS 110872, at *9

    (N.D. Cal. June 22, 2022) ; *see also Hanlon*, 150 F.3d at 1019-1022.

20
21          On July 8, 2022, this Court conditionally certified a national class pursuant to Rule 23(a),

22  finding that: (1) the class is so numerous that joinder of all members is impracticable; (2) there

23  are questions of law or fact common to the class; (3) the claims or defenses of the representative

24  parties are typical of the claims or defenses of the class; and (4) the representative parties will

25  fairly and adequately protect the interests of the class.  *See* ECF No. 140 at 6-9.  It also found

26  that the Settlement met the requirements of Rule 23(b)(2) and incorporated its previous analysis

27  _____
    [3] The specific changes are described in more detail in the accompanying Declaration of Frank
28  Ballard.

1   from its order certifying the California class on September 21, 2020. *See* ECF No. 96 at 18-19

2   and ECF 140 at 9:7-14.  Finally, this Court found that Plaintiffs also met the requirements of

3   Rule 23(b)(3) – concluding that "common questions predominate here because the Settlement

4   Class Members were exposed to uniform representations regarding recyclability and suffered the

5   same injuries."  *See* ECF No. 140 at 10:1-3.  It also concluded that "a class action enables the

6   most efficient use of Court and attorney resources and reduces costs to the Settlement Class

7   Members by allocating costs among them."  *Id*. at 10:22-23.

8          Because no facts affecting these requirements have changed since the Court preliminarily

9   approved the Class on July 8, 2022, the Court should incorporate its prior analysis and certify the

10  Settlement Class under Rules 23(a) and 23(b)(2) and 23(b)(3).  *Bautista-Perez*, 2022 U.S. Dist.

11  LEXIS 110872, at *9.

12         **B.     Standards for Judicial Approval of Class Action Settlements.**

13         It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are

14  the preferred means of dispute resolution [,] especially . . . in complex class action litigation."

15  *Vargas v. Lott*, 787 F. App'x 372, 377 (9th Cir. 2019).  Class action suits readily lend themselves

16  to compromise because of the difficulties of proof, the uncertainties of the outcome and the

17  typical length of the litigation.  "[T]here is an overriding public interest in settling and quieting

18  litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*,

19  529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d

20  437, 443 (9th Cir. 1989).[4]

21         Before the Settlement was reached, the Court certified a California class in a highly

22  contested motion, and Keurig unsuccessfully sought review of that class certification decision in

23  the Ninth Circuit.  Here, because the Settlement expands the certified California class to a

24  national class, the Court should apply "'a higher standard of fairness' and 'a more probing

25  inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co*., 697 F.3d 858,

26  _____

27  [4] The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995);

28  *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

864 (9th Cir. 2012) (citation omitted). *See also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

1048-49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946

(9th Cir. 2011)); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 U.S. Dist.

LEXIS 36944, at *12-13 (N.D. Cal. Mar. 2, 2022). However, in applying that heightened

standard of review, Plaintiffs believe it is appropriate to do so with the understanding that the

Court did certify a class before the Parties settled. In any case, in approving a proposed

settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must find that

the proposed settlement is "'fair, adequate and reasonable.'"[5] The Ninth Circuit has provided a

list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed
> settlement is to be evaluated, the universally applied standard is whether the
> settlement is fundamentally fair, adequate and reasonable. The district court's
> ultimate determination will necessarily involve a balancing of several factors
> which may include, among others, some or all of the following: the strength of
> plaintiffs' case; the risk, expense, complexity, and likely duration of further
> litigation; the risk of maintaining class action status throughout the trial; the
> amount offered in settlement; the extent of discovery completed, and the stage of
> the proceedings; the experience and views of counsel; the presence of a
> governmental participant; and the reaction of the class members to the proposed
> settlement.

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th

Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993);

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at

1026.

The district court must exercise sound discretion in approving a settlement. *Torrisi*, 8

F.3d at 1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661

F.2d 939 (9th Cir. 1981). However, "[a]n initial presumption of fairness is usually involved if

the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector

Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 U.S. Dist. LEXIS 48878, at *8 (N.D. Cal. Apr. 29,

2011). Here, the parties reached the Settlement after two full-day mediation sessions before an

impartial and experienced mediator, which strongly suggests the absence of collusion or bad

---

[5] *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *Pac. Enters.*, 47 F.3d at 377;
*Officers for Justice*, 688 F.2d at 625.

1   faith by the parties or counsel.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852

2   (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 U.S. Dist. LEXIS

3   99066, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in

4   the settlement process confirms that the settlement is non-collusive."); *see also Bower v. Cycle*

5   *Gear, Inc.*, No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455, at *14 (N.D. Cal. Aug. 23,

6   2016).  Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a

7   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

8   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

9   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

10  whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

11  The Ninth Circuit defines the limits of the inquiry to be made by the Court in the following

12  manner:

13          Therefore, the settlement or fairness hearing is not to be turned into a trial or
            rehearsal for trial on the merits.  Neither the trial court nor this court is to reach
14          any ultimate conclusions on the contested issues of fact and law which underlie
            the merits of the dispute, for it is the very uncertainty of outcome in litigation and
15          avoidance of wasteful and expensive litigation that induce consensual settlements.
            The proposed settlement is not to be judged against a hypothetical or speculative
16          measure of what ***might*** have been achieved by the negotiators.

17  *Id.* (emphasis in original).  As explained below and in the Declaration of Howard Hirsch,

18  application of these criteria demonstrates that the Settlement warrants final Court approval.

19          **C.      The Strength of Plaintiffs' Case.**

20          Difficulties and risks in litigating weigh in favor of approving a class settlement.

21  *Bautista-Perez*, 2022 U.S. Dist. LEXIS 110872, at *13.  "Generally, unless the settlement is

22  clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

23  with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist.

24  LEXIS 89002, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

25          The substantial relief secured by the Settlement is quite fair in light of the significant

26  hurdles faced by Plaintiffs and the Class.  For instance, Keurig strongly disputes that Plaintiffs

27  would be able to prove liability or be entitled to injunctive relief or monetary damages.  *See*

28  Hirsch Decl. at ¶11.  Although Plaintiffs have prevailed against the defenses Keurig has raised

1    thus far and succeeded in certifying a California class, there is considerable litigation risk for

2    Plaintiffs going forward.  *Id.*  For example, a recent decision in the Southern District of New

3    York rejected false advertising claims based on recyclable labels.  *See Duchimaza v. Niagara*

4    *Bottling, LLC*, 2022 U.S. Dist. LEXIS 139837 (S.D.N.Y. Aug. 5, 2022).  This ruling provides

5    ammunition to support Keurig's defenses and could undermine Plaintiffs' claims here.  And,

6    given that the legal issues regarding allegedly false recyclable representations on consumer

7    products are relatively novel and have not been widely litigated, there is always the risk that the

8    Court's orders denying Keurig's motions to dismiss in this case and the related *Downing* case

9    could be reversed on appeal, even if Plaintiffs prevailed at trial.  *Id.*

10              **D.       The Risk, Expense, Complexity and Likely Duration of Litigation.**

11                   To determine whether the proposed settlement is fair, reasonable and adequate, the Court

12   must balance the continuing risks of litigation against the benefits afforded to Class Members

13   and the immediacy and certainty of a substantial recovery.  *See  In re Mego Fin. Corp. Sec.*

14   *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

15   (9th Cir. 1998); *Boyd v. Bechtel Corp*, 485 F. Supp. 610, 616-617 (N.D. Cal. 1979).  In other

16   words, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to

17   lengthy and expensive litigation with uncertain results." *Fleming v. Impax Lab'ys Inc*., No. 16-

18   cv-06557-HSG, 2022 U.S. Dist. LEXIS 125595, at *17 (N.D. Cal. July 15, 2022), quoting

19   *Siemens Indus., Inc*., 2014 U.S. Dist. LEXIS 89002, at *4.

20                   Approval of the Settlement will mean injunctive relief and a present monetary recovery

21   for all eligible Class Members.  If not for the Settlement, this case was on track for expert

22   depositions and trial.  *See* Hirsch Decl. at ¶12.  A trial would have occupied a number of

23   attorneys for many weeks and would have required substantial and costly expert testimony on

24   both sides.  *Id.*  In addition, Plaintiffs would be required to successfully move for certification of

25   a national class under Rule 23 (or defend against decertification of the California class), survive

26   summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.

27   *See Bower v. Cycle Gear, Inc*., No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455, at *10

28   (N.D. Cal. Aug. 23, 2016); *see also Rodriguez*, 563 F.3d at 966 (recognizing that difficulties and

1  risks in litigating weigh in favor of approving a class settlement). "Because the parties

2  provisionally certified the class for the purposes of settlement, Plaintiffs avoided the risks

3  inherent in certifying and then maintaining class status throughout the litigation." *See Gen. Tel.*

4  *Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently

5  tentative"); *Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time."); *In*

6  *re Omnivision*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]here is no guarantee the

7  certification would survive through trial[.]"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 U.S. Dist.

8  LEXIS 36944, at *17.

9       Furthermore, a judgment favorable to the Class, in light of the contested nature of this

10  case, would unquestionably be the subject of post-trial motions and further appeals, which could

11  prolong the case for several more years. Therefore, delay, not just at the trial stage, but through

12  post-trial motions and the appellate process as well, could force Class Members to wait many

13  more years for any recovery, further reducing its value. Settlement of this litigation now ensures

14  a recovery, and eliminates the risk of no recovery at all. In sum, the risks posed by continued

15  litigation are substantial, and they would be present at every step of the litigation if it were to

16  continue.

17       **E.    Risk of Maintaining Class Action Status Throughout Trial.**

18       While this Court had already certified a California Class, the Settlement provides for a

19  national Class, which this Court conditionally certified on July 8, 2022 [ECF No. 140].

20  However, if Plaintiffs did not settle, they would need to file a new motion for class certification

21  as to the nationwide class. While Plaintiffs are confident they could successfully certify a

22  national Class, it is not certain, and this factor too weighs in favor of finally approving this

23  Settlement.[6] Alternatively, if Plaintiff Smith continued to litigate the case on behalf of the

24

25

26  ─────────────

[6] In fact, the Massachusetts District Court granted Keurig's motion to strike a nationwide class in
the *Downing* case. *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-cv-11673-IT, 2021 U.S.
27  Dist. LEXIS 110334 (D. Mass. June 11, 2021). Plaintiff Downing filed a petition for permission
to appeal the court's ruling, and that petition remains pending in the First Circuit (but has been
28  stayed pending approval of the Settlement).

1    certified California class, there is a risk that the Court could decertify the class or that its

2    certification order could be reversed on appeal.

3         **F.    Amount Offered in Settlement.**

4         Settlement by its nature is a compromise. Therefore, the law does not require a settlement

5    to reflect the best possible result in the litigation, but rather only that it falls within the ambit of

6    reasonableness.  Fed. R. Civ. P. 23(e)(2).  Here, the Settlement provides considerable injunctive

7    relief to the entire Class by requiring Keurig to make material changes to its labeling, marketing

8    and advertising of the Challenged Products, including prominently adding a revised qualifying

9    statement "Check Locally – Not Recycled in Many Communities" in large font size.  Settlement

10   § III.A.1-2.  By making these modifications to its business practices, Keurig will prevent future

11   injury to future purchasers of the Challenged Products (including Settlement Class Members).

12        In addition, the $10 million monetary recovery represents a substantial portion (over 10

13   percent) of the total amount that Plaintiffs believe to be their best-case scenario for recovery at

14   trial.  *See* Hirsch Decl. at ¶6.  The monetary provisions of the Settlement were based in part on a

15   damages model that measures premiums paid by consumers for the Challenged Products over

16   and above the prices paid by consumers for comparable coffee products that do not claim to be

17   recyclable.  *Id.* at ¶12.  Plaintiffs also seek disgorgement of profits, which, while easier to

18   calculate, has less precedential support and was rejected by the Court in certifying the California

19   class.  *Id.*  On both a class wide and individual basis, the monetary recovery represents a

20   substantial portion of the best-case recovery Plaintiffs could have expected at trial.  *Id.*  And the

21   unclaimed portion of the Cash Payment will be distributed as *cy pres* to The Ocean Conservancy

22   (75% of unclaimed funds) and Consumer Reports (25% of unclaimed funds), non-profit groups

23   that will use the money on projects that are consistent with the goals of the litigation.  Hirsch

24   Decl. at ¶¶7 and 12.

25        The notice and administration of the Settlement has been extremely successful, with

26   anticipated claims by approximately 450,000 Class Members who will collect anticipated

27   payments of at least $2.5 million.  Hirsch Decl. at ¶9.  However, because most of the claims have

28   been without proof of purchase (*i.e.*, $5.00 claims), it is likely that more money will go to the *cy*

*pres* recipients than the Class.  *Id.* at ¶15.[7]  While Plaintiffs would prefer to see more money get in the hands of Class Member, the reality is that the alleged damages in this case are small on a per Class Member basis; indeed, the amount each Class Member can claim exceeds the best-case damages recovery at trial.  This is the whole point of consumer class actions in the first place: to enable individuals who would otherwise lack an economic incentive to sue over small damages to aggregate their claims to make litigation of those claims feasible.  Just as it can be difficult to incentivize consumers to bring meritorious lawsuits for small damages, so too can it be challenging to incentivize consumers to make the effort to submit a claim for a relatively small cash payment.  This is one of the points of having *cy pres* awards at all: to ensure defendants do not retain their ill-gotten gains, while putting the settlement funds to the next best use in light of the practical challenges of distributing a large volume of relatively small payments.  *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("…numerous state courts have utilized cy pres or fluid recovery procedures to ensure that wrongdoers do not "retain ill gotten gains" simply because of the administrative difficulties traditionally associated with small per individual damages.").  Most importantly, irrespective of the amount of money claimed by Class Members, none of the $10 million Cash Fund will revert to Keurig.

To be sure, increased claim amounts per Class Member can improve the take rate and total amount distributed to Class Members.  However, the amount distributed to each Class Member must bear some reasonable relationship to the alleged damages to avoid a windfall.  And, for claims submitted without proof of purchase, there is an increased risk of fraudulent claims as the minimum amount is increased.  Here, Keurig contends that no damages were suffered by Class Members since the company did not change the price of the Challenged Products after it started labeling them as recyclable.  And, while hotly disputed by Keurig, Plaintiffs' expert has determined that the average actual damages a class member suffered was

---

[7] Plaintiffs estimate that, if the Court grants this Motion and Plaintiffs' pending Motion for Attorneys' Fees, Costs and Incentive Awards, the $10 million Cash Fund will be distributed as follows: (1) $2.5 million in direct payments to class members; (2) $3.124 million in *cy pres*; (3) $800,000 in notice and administration costs; (4) $3 million in attorneys' fees; (5) $570,000 in litigation costs; and (6) $6,000 in incentive awards to Plaintiffs.  Hirsch Decl. at ¶15.

1   $0.10 per 10 pods.  Hirsch Decl. at ¶6.  Thus, the recovery provided for by the Settlement of

2   $0.35 per 10 pods with proof of payment is actually better than an individual Class Member

3   would have obtained at trial.

4          Finally, the reasonableness of the Settlement is further underscored by the fact that it was

5   reached only after participation in a formal mediation before a qualified neutral mediator.  *See*

6   *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 666 (E.D. Cal. 2008) (brokering of settlement by

7   qualified mediator weighs in favor of preliminary approval of settlement by court).  Here, the

8   parties' agreement was reached with the assistance of Hon. Morton Denlow, a retired federal

9   magistrate judge and experienced member of JAMS Chicago who provided valuable assistance

10  and insights to the settlement process.  *See* Hirsch Decl. at ¶ 2.

11         **G.    The Stage of Proceedings and the Amount of Discovery Completed.**

12         The stage of the proceedings and the amount of discovery completed are additional

13  factors that courts consider in determining the fairness, reasonableness, and adequacy of a

14  settlement.  *See In re Mego,* 213 F.3d at 459; *Ellis*, 87 F.R.D. at 18; *Boyd v. Bechtel Corp.*, 485

15  F. Supp. 610, 616-17 (N.D. Cal. 1979).  Here, the Settlement was reached only after substantial

16  litigation and discovery, including several rounds of written discovery that included hundreds of

17  separate discovery requests, the review by Plaintiffs of hundreds of thousands of pages of

18  documents produced by Keurig, and depositions of key company personnel and Plaintiff Smith.

19  Hirsch Decl. at ¶3.  To verify this information and further investigate the claims, Plaintiffs also

20  served discovery on dozens of third parties which resulted in the significant production of

21  additional documents and three non-party depositions.  *Id*.  This discovery ensured sophisticated

22  and meaningful settlement negotiations, which were conducted periodically over the course of

23  the litigation.  *Id*.  In fact, the Settlement was not reached until the day the Parties' merits expert

24  reports were due.  As a result, the Parties have a comprehensive understanding of the strengths

25  and weaknesses of the case and have sufficient information to make an informed decision

26  regarding the fairness of the settlement.  *See In re Mego*, 213 F.3d at 459.

27         **H.    Experience and Views of Counsel.**

28         This action has been litigated and settled by experienced and competent counsel on both

1    sides of the case.  Plaintiffs' counsel is well known for their decades of experience and success in

2    complex and class action litigation.  Hirsch Decl. at ¶11.  The Court previously evaluated Class

3    Counsel's qualifications and experience, and found Lexington Law Group and Shapiro Haber &

4    Urmy to have prosecuted this action vigorously on behalf of the class.  ECF No. 140 at 8:27-9:5.

5    The Court also noted that Class Counsel "have expertise in representing plaintiffs in recyclability

6    cases and class action suits, especially consumer class actions." *Id*. at 11:17-19.  Defense

7    counsel are, likewise, extremely sophisticated and experienced litigators.

8         Courts have diverged on how much weight to assign counsel's opinions, and so this

9    factor's impact is modest. *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2022 U.S. Dist.

10   LEXIS 71753, at *17 (N.D. Cal. Apr. 19, 2022).  However, that such qualified and well-

11   informed counsel endorse the Settlement as being fair, reasonable and adequate, favors this

12   Court's approval of the Settlement.

13        **I.       Reaction of the Settlement Class.**

14        Another factor courts consider when determining whether to approve a settlement is the

15   reaction of the class.  "[T]he absence of a large number of objections to a proposed class action

16   settlement raises a strong presumption that the terms of a proposed class settlement action are

17   favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D.

18   523, 528-29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig*., 309 F.R.D. 573, 589 (N.D.

19   Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a

20   factor that supports settlement approval."); *Bisaccia v. Revel Sys*., No. 17-cv-02533-HSG, 2019

21   U.S. Dist. LEXIS 119286, at *14-15 (N.D. Cal. July 17, 2019). A "relatively small number" of

22   objections is "an indication of a settlement's fairness. [citations omitted]." *Brown v. Hain

23   Celestial Grp.*, Inc., No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 20118, at *29 (N.D. Cal.

24   Feb. 18, 2016); *Cf. Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) (court should consider

25   "reaction of the class members to the proposed settlement").  Similarly, "[i]t is established that

26   the absence of a large number of objections to a proposed class action settlement raises a strong

27   presumption that the terms of a proposed class settlement action are favorable to the class

28   members." *In re Omnivision Techs*., 559 F. Supp. 2d 1036, at 1043, *see also Guttmann v. Ole*

1  *Mexican Foods, Inc*., No. 14-cv-04845-HSG, 2016 U.S. Dist. LEXIS 100534, at *11 (N.D. Cal.

2  Aug. 1, 2016).

3        Here, notice was widely disseminated via email, print, and electronic publication to

4  millions of persons, including members of the Class.  The Class Members are well aware of the

5  Settlement—as of October 31, 2022, there have been a total of: (1) 583,002 visits to the

6  Settlement website; and (2) nearly 250,000 electronic claim forms received which would result

7  in payments to the Class of over $1.25 million in cash.  Yet, only two Class Members have

8  objected and only eleven have requested exclusion from the Settlement.  Ballard Decl. at ¶13;

9  ECF Nos. 144 and 154.  And with ten weeks remaining in the claims period, Plaintiffs anticipate

10  there will be approximately 450,000 claims filed, resulting in at least another $1 million in cash

11  payments to Class Members.  *Id*. at ¶15.  These numbers indicate that the Notice process has

12  been remarkably successful—and the Class's reaction to the proposed settlement has been

13  overwhelmingly positive, weighing in favor of approval.  *See, e.g., Churchill Village LLC v.*

14  *Gen. Elec*., 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately

15  90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05-3222 R, 2007

16  U.S. Dist. LEXIS 74849 at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction

17  where 54 of 376,301 class members objected).

18      **J.**    **The Two Objectors Fail to Raise Any Valid Objections and Do Not**
              **Have Standing.**

19

20        Of the over 247,000 Class Members who participated in the Settlement to date, only two

21  have filed objections to the Settlement. *See* ECF Nos. 144 and 154.  One objector did not object

22  to the Settlement but objected to the "lawsuit" generally without providing any basis for his

23  objection.  ECF No. 144.  The second objector stated that he was objecting to the Settlement

24  because "it is impossible to [sic] all of the plaintiff parties to this lawsuit to provide proof of

25  purchases."  ECF No. 154.  However, proof of purchase is not required for Class Members to

26  submit claims.  ECF No. 128-1, Exh. 1.  To the contrary, pursuant to the Settlement, Class

27  Members may receive $5.00 without proof of purchase.  ECF No. 128-1, ¶13.  Notably, this

28  objector did not provide any support for his objection, nor did he claim that the total amount of

compensation to Class Members was insufficient or that there were any shortcomings in the injunctive relief.  As a result of the objector's concession that the monetary and injunctive relief are sufficient to fully remedy any of his alleged damages as well as those of the absent Class Members, he cannot and does not identify any injury that he will suffer as a result of the Settlement.  Because the objector is in no way aggrieved by any aspect of the Settlement, he does not have standing to object.

Because the objections did not provide any basis for the Court to reverse its preliminary determination that the Settlement is fair and reasonable, the Court should grant Plaintiff's motion for final approval of the Settlement.

## IV.    CONCLUSION

For the reasons discussed herein and in the Hirsch Declaration, Plaintiffs respectfully request that the Court approve the Settlement of this litigation as fair, reasonable, and adequate.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   DATED: November 3, 2022

2

3

Respectfully submitted,

LEXINGTON LAW GROUP

4

By:   /s/ Howard Hirsch
      Howard J. Hirsch

5     Attorneys for Plaintiffs KATHLEEN SMITH and
      MATTHEW DOWNING, on behalf of

6     themselves and all others similarly situated.

7     LAW OFFICE OF GIDEON KRACOV
      Gideon Kracov, State Bar No. 179815

8     801 S. Grand Ave., 11th Floor
      Los Angeles, CA 90017

9     Telephone: (213) 629-2071
      Facsimile: (213) 623-7755

10    gk@gideonlaw.net

11    SHAPIRO HABER & URMY LLP
      Edward F. Haber

12    Ian J. McLoughlin
      Patrick J. Vallely

13    2 Seaport Lane
      Boston, MA 02210

14    Telephone: (617) 439-3939
      Facsimile: (617) 439-0134

15    ehaber@shulaw.com
      imcloughlin@shulaw.com

16    pvallely@shulaw.com

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT