UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN SMITH, | Case No. 18-cv-06690-HSG |
| Plaintiff, | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES** |
| v. | |
| KEURIG GREEN MOUNTAIN, INC., | Re: Dkt. Nos. 146, 155 |
| Defendant. | |

Before the Court are Plaintiffs' motions for final approval of a class action settlement and attorneys' fees, costs, and incentive award.  Dkt. Nos. 146, 155.[1]  The Court held a final fairness hearing on December 8, 2022.  *See* Dkt. No. 157.  The Court **GRANTS** Plaintiffs' motions.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Smith brings this consumer class action against Defendant Keurig Green Mountain, Inc., alleging that Defendant's "recyclable" labeling on its plastic single-serve coffee pods (the "Products") is false and misleading.  *See generally* Dkt. No. 141 ("SAC").  Plaintiff alleges that despite the fact that "Defendant advertises, markets and sells the Products as recyclable," *id.* ¶ 21, municipal recycling facilities are not properly equipped to handle the pods, which are small and "inevitably contaminated with foil and food waste," *id.* ¶¶ 2, 27.  And Plaintiff alleges that "even to the extent facilities exist that are capable of segregating the Products . . . and then cleaning any contamination . . . the Products often end up in landfills anyway as there are limited markets to reuse the Products or convert them into a material that can be reused."  *Id.*

---

[1] For ease of reference, the Court refers to the PDF pagination unless otherwise noted.

United States District Court
Northern District of California

¶ 2.  Plaintiff contends that if she had known that the Products were not recyclable, she would not have purchased them, or would have paid less for them.  *Id.* ¶ 4.

Based on those facts, the complaint asserts the following causes of action: violations of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A; breach of express warranty; unjust enrichment; misrepresentation; declaratory relief; violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.  *See* SAC ¶¶ 64–149.

**B.  Procedural History**

Plaintiff Smith initially filed this action in Alameda Superior Court in September 2018, but Defendant removed the case to this Court.  *See* Dkt. No. 1, Ex. B.  After Defendant moved to dismiss the complaint, *see* Dkt. No. 18, Plaintiff filed a First Amended Complaint, *see* Dkt. No. 20.  Defendant moved to dismiss the First Amended Complaint, and the Court denied the motion in June 2019.  *See* Dkt. Nos. 26, 50.  On September 21, 2020, the Court granted Plaintiffs' motion for class certification, certifying a class of persons who purchased the Product for personal, family, or household purposes in California.  *See* Dkt. No. 96.  In the fall of 2020, Defendant unsuccessfully petitioned the Ninth Circuit for permission to appeal the Court's certification order. *See* Dkt. Nos. 98, 104.

While Plaintiff Smith's case was ongoing, Plaintiff Downing filed a class action complaint in federal court in Massachusetts on September 9, 2020, alleging that Defendant violated the Massachusetts Consumer Protection Act when it advertised its pods as recyclable.  *See Downing v. Keurig Green Mountain, Inc.*, No. 1:20-cv-11673-IT (D. Mass.).  While Plaintiff Downing's claims on behalf of a Massachusetts class of consumers survived Defendant's motion to dismiss, the Massachusetts court struck his allegations proposing a nationwide class.  *See* Dkt. No. 155 at 19 n.6.  Plaintiff Downing's petition for permission to appeal that ruling remains pending in the First Circuit, but has been stayed pending approval of this settlement.  *See id.*

Since the inception of Plaintiff Smith's case, the parties have engaged in periodic settlement negotiations, including two full-day mediation sessions with the Hon. Morton Denlow (Ret.).  *See id.* at 16, 22.  The last of these full-day mediation sessions occurred in September

2

2021, and the parties executed a settlement term sheet in October 2021.  *See id.* at 9.  On February 24, 2022, Plaintiff Smith moved for preliminary approval of the settlement and for leave to file a second amended complaint.  *See* Dkt. No. 128.  The Court granted the motion on July 8, 2022, and Plaintiff Smith filed a Second Amended Complaint.  *See* Dkt. Nos. 140, 141.  Consistent with the proposed settlement, the Second Amended Complaint incorporated a nationwide class, violations of Massachusetts law, and Plaintiff Downing.  *See* SAC ¶¶ 7, 53, 64–76.

Plaintiffs now seek final approval of the class action settlement and attorneys' fees, costs, and incentive award.  *See* Dkt. Nos. 146, 155.

**C.    Settlement Agreement**

The key terms of Settlement Agreement, Dkt. No. 128-1, Ex. 1 ("Settlement Agreement" or "SA"), are as follows:

Class Definition: The Settlement Class is defined as "all Persons in the United States who purchased Keurig's Pods for personal, family or household purposes within the Class Period."  SA § I.A.12.  The Class Period is from June 8, 2016 to the date Class notice was first published.  *Id.* § I.A.16.  Specifically excluded from the Class are (a) Defendant, (b) Defendant's Affiliates, (c) the officers, directors, or employees of Defendant and its Affiliates and their immediate family members, (d) any legal representative, heir, or assign of Defendant, (e) all federal court judges who have presided over this Action and their immediate family members; (f) the Hon. Morton Denlow (Ret.) and his immediate family members; (g) all persons who submit a valid and timely Request for Exclusion from the Class; and (h) those who purchased the Challenged Products for the purpose of resale.  *Id.* § I.A.12.

Settlement Benefits: Defendant will make a $10,000,000 non-reversionary payment to a Cash Payment Account, which will cover payments to Class Members, settlement administration expenses,[2] incentive awards, and attorneys' fees and costs.  *Id.* §§ I.A.4; III.B.  Class Members who submit a claim without proof of payment will recover $5.00.  *Id.* § III.B.4.  Class Members

---

[2] Notice and administration costs have increased substantially from the parties' initial estimate. *See* Dkt. Nos. 160, 161, 165 at 1, 165-1 ("Fenwick Decl.") ¶ 7.  The Court **GRANTS** the request for approval of additional notice and administration costs, which shall not exceed $1,150,000.

United States District Court
Northern District of California

1    who submit a claim with proof of payment will receive $0.35 for every ten pods purchased, with a

2    minimum payment of $6.00, regardless of quantity purchased, and a maximum payment of

3    $36.00.  *Id*.  Each household may only submit one claim.  *Id*.

4            Defendant will also qualify its claims about pod recyclability with the disclaimer "Check

5    Locally – Not Recycled in Many Communities."  *Id.* § III.A.1.  Defendant will include this

6    qualifying statement whenever it represents that the pods are recyclable, including on boxes and

7    cartons, in electronic advertising and promotional materials, in video content, on its website, and

8    in publicly available corporate responsibility and sustainability reports.  *Id.* § III.A.7.  The

9    Settlement Agreement sets minimum standards to ensure the visibility of the qualifying statement.

10   *Id.*  For example, if a box or carton markets the pods as recyclable, then the qualifying statement

11   must be in close proximity to, and in a font size no smaller than 55% of the font size of, the

12   recycling representation.  *Id.*

13           *Cy Pres* Distribution: Settlement proceeds that are unclaimed will be donated to the Ocean

14   Conservancy, a nonprofit environmental advocacy organization (75% of unclaimed funds), and

15   Consumer Reports, Inc., a nonprofit consumer protection organization (25% of unclaimed funds).

16   *Id*. § III.B.6.

17           Release: All Class Members will release:

18               all Released Parties from any and all claims, demands, rights, causes
                 of action, suits, petitions, complaints, damages of any kind,
19               liabilities, debts, punitive or statutory damages, penalties, losses, and
                 issues of any kind or nature whatsoever, asserted or unasserted,
20               known or unknown, suspected or unsuspected (including, but not
                 limited to, any and all claims relating to or alleging deceptive or
21               unfair business practices, false or misleading advertising, intentional
                 or negligent misrepresentation, negligence, concealment, omission,
22               unfair competition, promise without intent to perform, unsuitability,
                 unjust enrichment, and any and all claims or causes of action arising
23               under or based upon any statute, act, ordinance, or regulation
                 governing or applying to business practices generally), existing now
24               or in the future, arising out of or related to (1) Recycling
                 Representations made with respect to the Challenged Products prior
25               to the Graphics Transition End Date and/or (2) Settlement Recycling
                 Representations made with respect to the Challenged Products,
26               provided, however, that this release shall not apply to claims or
                 causes of action arising from a final determination or regulation
27               made by a governmental entity pursuant to statute (such as

28

4

1

2

3

4

5

> California S.B. 343) that the Challenged Products, polypropylene products, or polypropylene products of the Challenged Products' dimensions (with such dimensions specified by such governmental entity) are not recyclable under such statute and are not otherwise permitted to make a qualified statement substantially similar to the Settlement Recycling Representation. For the purposes of this paragraph, a Recycling Representation shall be considered to have been "made," with respect to printed materials, as of the date of printing.

6   *Id.* § IV.A.

7     The Released Parties are Defendant and its Affiliates, Partner Brands, licensors, suppliers,

8   distributors, wholesalers, and retailers and all of their affiliated and subsidiary companies. *Id.*

9   § I.40. "For the avoidance of doubt, Released Parties shall include all Persons in the stream of

10  commerce for the labeling, marketing, sale, and/or distribution of the Challenged Products." *Id.*

11    The Released Parties agree to release Class Representatives, Class Members, and Class

12  Counsel from:

> [A]ny and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution, or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

13

14

15

16  *Id.* § IV.E.

17    <u>Class Notice</u>: The Claim Administrator implemented a digital media campaign per the

18  Notice Plan, which included publication in People magazine, the California edition of USA

19  Today, PR Newswire, and internet and mobile media conduits, such as Twitter and Facebook. *See*

20  Dkt. No. 155-1, Ex. 1 ("Ballard Decl.") ¶ 10; *Id.* Ex. 2 ("Finegan Decl.") ¶¶ 6–13. The Claim

21  Administrator also sent an email to the last known email addresses of all Class Members who

22  purchased Products from Defendant's website during the Class Period. *See* Ballard Decl. ¶ 9. The

23  parties provided additional notice to those who had not yet submitted a Claim Form or

24  unsubscribed from receiving emails. *See* Dkt. Nos. 152, 153; Ballard Decl. ¶ 11. After the parties

25  discovered that the emails of roughly 140,000 Class Members had been inadvertently omitted

26  from the notice list, the Claim Administrator sent email notice to the omitted Class Members. *See*

27  Dkt. Nos. 160, 161, 165, 165-1 ("Fenwick Decl."). The original deadline to submit claims was

28

United States District Court
Northern District of California

1    January 9, 2023, but the deadline was extended to January 30, 2023 for those who did not receive
2    the original notice.  *See* Fenwick Decl. ¶ 3.

3          <u>Opt-Out Procedure</u>: To opt out of the settlement, Class Members had to file Requests for
4    Exclusion with the Claim Administrator no later than October 24, 2022 (45 days before the Final
5    Approval Hearing date).  *See* Dkt. No. 143 at 2; SA § VI.D.  The opt out and objection deadline
6    was extended to January 30, 2023 for Class Members who did not receive the original notice.  *See*
7    Fenwick Decl. ¶ 3.

8          <u>Incentive Award:</u> The named Plaintiffs applied for incentive awards of $5,000 for Plaintiff
9    Smith and $1,000 for Plaintiff Downing.  Dkt. No. 146 at 8; SA § VIII.B.

10         <u>Attorneys' Fees and Costs</u>: Class Counsel applied for attorneys' fees of $3,000,000 and
11   $568,180 in costs.  *See* Dkt. No. 146; SA § VIII.A.2.

**II.    DISCUSSION**

**A.    Final Settlement Approval**

**i.    Class Certification**

15         Final approval of a class action settlement requires, as a threshold matter, an assessment of
16   whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and
17   (b).  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–22 (9th Cir. 1998).  Because no facts that
18   would affect these requirements have changed since the Court preliminarily approved the class on
19   July 8, 2022, this order incorporates by reference the Court's prior analysis under Rules
20   23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 140 at 6–11.

**ii.    The Settlement**

22         "The claims, issues, or defenses of a certified class may be settled . . . only with the court's
23   approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a
24   hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Where
25   the parties reach a class action settlement prior to class certification, the Ninth Circuit has
26   cautioned that such settlement agreements "'must withstand an even higher level of scrutiny for
27   evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)
28   before securing the court's approval as fair.'"  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

United States District Court
Northern District of California

1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).  Here, because the settlement expands the California class to a national class, the Court applies the higher standard.

The Ninth Circuit has identified several "subtle signs" the Court should consider to determine whether "class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Roes*, 944 F.3d at 1043.  These include: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.  *See id.* at 609.  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a.  Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice

1    must "clearly and concisely state in plain, easily understood language" the nature of the action, the

2    class definition, and the Class Members' right to exclude themselves from the class.  Fed. R. Civ.

3    P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all Class

4    Members, it does not require that each Class Member actually receive notice.  *See Silber v.*

5    *Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best

6    practicable" notice, not "actually received" notice).

7         The Court finds that the notice plan previously approved by the Court was implemented

8    and complies with Rule 23(c)(2)(B).  *See* Dkt. No. 140 at 17–18; Dkt. No. 155 at 12–14; Dkt. No.

9    165 at 2–3; Ballard Decl. ¶¶ 3–13; Fenwick Decl. ¶¶ 1–3.  The Court notes that the parties have

10   demonstrated diligence throughout the notice process, requesting and implementing two rounds of

11   additional notice beyond the original plan to address deficiencies.  *See* Dkt. Nos. 152–53, 160–61;

12   Ballard Decl. ¶ 11; Fenwick Decl. ¶ 2.  By February 8, 2023, Kroll Settlement Administration

13   LLC had (1) implemented the original notice plan, which included a digital media campaign and

14   email notice to 1.7 million people who purchased products from Defendant's website, Ballard

15   Decl. ¶¶ 3–13; Finegan Decl. ¶¶ 6–13, (2) sent a follow-up email notice to 1.4 million people who

16   had not yet submitted claims, Ballard Decl. ¶ 11, and (3) sent additional notice to 140,000 Class

17   Members inadvertently left off the original list, Fenwick Decl. ¶ 2.

18        Given these facts, the Court finds that the parties have sufficiently provided the best

19   practicable notice to the Class Members.

20                    **b.  Fairness, Adequacy, and Reasonableness**

21        Having found the notice procedures adequate under Rule 23(e), the Court next considers

22   whether the entire settlement comports with Rule 23(e).

23        In deciding the motion for preliminary approval, the Court considered all three signs of

24   collusion that the Ninth Circuit has identified.  *See* Dkt. No. 140 at 12–17; *see also McKinney-*

25   *Drobnis*, 16 F.4th at 607–08.  Nothing in the record changes the Court's preliminary conclusion

26   regarding these factors.  The proposed settlement is non-reversionary, does not contain a clear

27   sailing agreement, and the Court still scrutinizes the requests for attorneys' fees and incentive

28   awards to ensure Class Members' interests are protected under the settlement.  *See* Section II.B

United States District Court
Northern District of California

8

1   below.  The Court finds that other factors also indicate that the proposed settlement is fair,

2   adequate, and reasonable.

3
4            1.   **Strength of Plaintiffs' Case, Litigation Risk, and Risk of Maintaining
                  Class Action Status**

5            Approval of a class settlement is appropriate when plaintiffs must overcome significant

6   barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D.

7   Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement.

8   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally, unless the

9   settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

10  expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ,

11  2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

12           The Court finds that the $10 million offered in settlement is reasonable given the

13  complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case.

14  Defendant strongly disputes that Plaintiffs would be able to prove liability or entitlement to

15  injunctive or monetary relief.  *See* Dkt. No. 155-1 ¶ 11.  Plaintiffs note that the legal issues

16  regarding purportedly false recyclability representations are relatively novel and cite several

17  unfavorable recent decisions in similar cases.  *See id.*; Dkt. No. 155 at 18–19; Dkt. No. 156 ¶ 8.

18  Defendant vigorously defended itself from the beginning of this case, and continued litigation in

19  both this and the *Downing* case would undoubtedly present significant risk and years of delay in

20  any recovery for the Class.  The Court also notes that Defendant sought review of the Court's

21  class certification decision—albeit unsuccessfully—and if litigation were to continue, Plaintiff

22  would need to move for certification of a national class.  *See* Dkt. No. 155-1 ¶ 14.  By settling,

23  Plaintiffs avoid the need to clear that hurdle and the risk inherent in maintaining class action status

24  throughout litigation.  In reaching a settlement, Plaintiffs have ensured a favorable recovery for the

25  class.  *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class

26  settlement).  Accordingly, these factors also weigh in favor of approving the settlement.  *See*

27  *Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

28

*United States District Court*
*Northern District of California*

9

United States District Court
Northern District of California

1

### 2.  Settlement Amount

2

3

4

5

6

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $10 million settlement amount falls "within the range of reasonableness" given the risks and costs of litigation.  *See* Dkt. No. 155 at 20–22; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases).

7

8

9

10

11

12

13

14

Plaintiffs' counsel represents that the settlement amount constitutes more than 10% of the maximum alleged actual damages.  Dkt. No. 155 at 20.  Plaintiffs argue that the average recovery a Settlement Class Member would have recovered at trial would be $0.10 per 10 pods.  *Id.* at 21–22; *see also* Dkt. No. 155-1 ¶ 6.  Under the settlement, each Settlement Class Member who submits a claim with proof of purchase will recover more per pod than the average expected to be recovered at trial, at $0.35 per 10 pods with proof of purchase.  *See* Dkt. No. 155 at 22.  Those who submit a claim with proof of purchase will receive at least $6.00 and a maximum of $36.00. *See id.* at 11.

15

16

17

18

19

20

21

22

23

The claims process has gone better than expected, resulting in a higher anticipated distribution than the parties predicted.  The deadline to submit claims was January 9, 2023.  *See* Ballard Decl. ¶ 12.  For those Class Members who were inadvertently omitted from the original notice list, the deadline to submit claims was January 30, 2023.  *See* Fenwick Decl. ¶ 3.  As of February 8, 2023, the Claim Administrator had received 623,000 claims that appear to be valid pending final review for a total anticipated distribution to Class Members of $3.5 million.[3]  *See* Dkt. No. 165 at 2.  Further, the Settlement provides significant injunctive relief that gets at the heart of Plaintiffs' complaint by requiring Defendant to change its labeling and advertising nationwide and on its website.  *See* Dkt. No. 155-1 ¶¶ 4–5.

24

25

26

27

28

---

[3] In the motion for final approval, Plaintiffs predicted 450,000 valid claims yielding $2.5 million for the Class Members.  *See* Dkt. No. 155 at 13.  Given the updated numbers, it no longer appears that more money will go to the *cy pres* recipients than the class, which was one of the Court's concerns at the final fairness hearing.  *See* Dkt. No. 163 at 7.

United States District Court
Northern District of California

1    Finally, any residual funds will be distributed to two *cy pres* recipients, the Ocean

2  Conservancy[4] and Consumer Reports, Inc.  SA § III.B.6.  Where a class action settlement contains

3  a cy pres award provision, the "cy pres award must be guided by (1) the objectives of the

4  underlying statute(s) and (2) the interests of the silent Class Members, and must not benefit a

5  group too remote from the plaintiff class."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir.

6  2012) (internal quotations omitted).  The Court finds that the proposed entities share the interests

7  of the settlement Class Members, who purchased products marketed as recyclable, in preventing

8  consumer fraud in the context of labeling recyclable plastics.  Accordingly, the Court finds that the

9  *cy pres* distribution to the Ocean Conservancy and Consumer Reports, Inc. satisfies the Ninth

10  Circuit's requirements.  *See* Dkt. No. 140 at 13.

11    In sum, the Court finds that the recovery is significant, especially when weighed against

12  the litigation risks in this case.  In any event, "[i]t is well-settled law that a cash settlement

13  amounting to only a fraction of the potential recovery does not per se render the settlement

14  inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688

15  F.2d 615, 628 (9th Cir. 1982).  The Court finds under the circumstances that this factor weighs in

16  favor of approval.

17    **3.  Extent of Discovery Completed and Stage of Proceedings**

18    The Court finds that Class Counsel had sufficient information to make an informed

19  decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

20  (9th Cir. 2000).  The parties settled only after significant litigation, including class certification,

21  and extensive discovery.  *See* Dkt. No. 155 at 22; Dkt. No. 155-1 ¶ 3.  The parties engaged in

22  periodic settlement negotiations, including two full-day mediation sessions.  *See* Dkt. No. 155 at 9.

23

24    ─────────────────────

[4] Since 2021, Keurig Dr. Pepper Inc. has paid $15,000 a year to be a member of the Trash Free
25  Seas Alliance, an initiative of the Ocean Conservancy.  Dkt. No. 138.  According to the company's
Director of Sustainability, as part of its membership Keurig Dr. Pepper Inc. works towards the
26  goal of reducing plastic waste in the ocean, "provides technical advice to the Alliance and shares
knowledge from the company's sustainability programs, but does not engage in setting policy for
27  the Alliance and has no role directing the Alliance's activities."  *Id.*  Based on the limited
relationship Keurig Dr. Pepper Inc. has with the Trash Free Seas Alliance, the Court finds no
28  evidence in the record to suggest that the Ocean Conservancy is an improper *cy pres* recipient.

1    Thus, the Court is persuaded that Class Counsel entered settlement discussions with a substantial

2    understanding of the factual and legal issues and could properly assess the likelihood of success on

3    the merits.  This factor weighs in favor of approval.

4                              **4.   Reaction of Class Members**

5           The reaction of the Class Members supports final approval.  "[T]he absence of a large

6    number of objections to a proposed class action settlement raises a strong presumption that the

7    terms of a proposed class settlement action are favorable to the Class Members."  *Nat'l Rural*

8    *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin*

9    *User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and

10   objections in comparison to class size is typically a factor that supports settlement approval.").

11          As noted above, the Claim Administrator has received 623,000 apparently valid filed

12   claims for a total anticipated distribution to Class Members of $3.5 million, which is more than

13   anticipated.  As of February 7, 2023, the Claim Administrator had received twelve requests for

14   exclusion.  *See* Fenwick Decl. ¶ 5, Ex. B.  Two Class Members submitted letters to the Court

15   objecting to the settlement.  *See* Dkt. Nos. 144, 154.  The first stated, without explanation, that the

16   author believed the settlement was frivolous.  *See* Dkt. No. 144.  The second reasoned it was

17   impossible for all Class Members to provide proof of purchase.  *See* Dkt. No. 154.  But as Class

18   Counsel points out, Class Members may receive $5.00 without proof of purchase.  Having

19   considered the objections, the Court finds they do not require rejecting the settlement.

20          The Court finds that the minimal number of objections and opt-outs in comparison to the

21   reach of the notice and submitted claims indicates support among the Class Members and weighs

22   in favor of approval of the settlement.  *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d

23   566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 Class Members

24   objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10

25   (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 Class Members

26   objected).

27                                  *     *     *

28

United States District Court
Northern District of California

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice.  Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B.   Attorneys' Fees, Costs, and Service Award

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel asks the Court to approve an award of $3,000,000 in attorneys' fees and $568,180 in costs.  Dkt. No. 146 at 8; *see also* Dkt. No. 163.  Class Counsel also seeks an incentive award of $5,000 for Plaintiff Kathleen Smith and $1,000 for Plaintiff Matthew Downing.[5]  *See id.*

#### i.   Attorneys' Fees & Costs

##### a.  Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In a state law action—like this one—state law also governs the calculation of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees.  *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").  Here, California fee-shifting statutes also permit an award of attorneys' fees.  *See* Cal. Civ. Code § 1780(e); Cal. Code Civ. P. § 1021.5.

---

[5] In supplemental briefing, Plaintiffs assert that the Court may apply California or Massachusetts law to the fee analysis.  *See* Dkt. No. 163 at 9.  The Court will apply California law.  "Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019).  No party has suggested that applying California law gives rise to constitutional problems, and no objector has raised choice-of-law issues.  *See id.* at 561–62 (holding that district courts do not need to address choice-of-law issues "beyond those raised by the objectors").  By default, California law applies "unless a party litigant timely invokes the law of a foreign state," in which case that party "shoulder[s] the burden of demonstrating that foreign law" should apply.  *Id.*  Here, Plaintiffs agree that the Court can presume that California law applies.  *See* Dkt. No. 163 at 9–10.

United States District Court
Northern District of California

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506. Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

### b. Discussion

Class Counsel seeks $3 million in attorneys' fees and $568,180 in costs. *See* Dkt. No. 146 at 8. Class Counsel urges that its requested fees are below its lodestar, represent 30% of the $10 million settlement, and are appropriate under either the "percentage of the fund" or lodestar method. *See* Dkt. No. 146 at 17–24; Dkt. No. 163 at 18.

#### 1. Percentage of the Fund

Using federal law for guidance, 25% of the common fund is the benchmark for attorney fee awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Court considers the reasonableness of the percentage requested in light of the factors enumerated by the Ninth Circuit, with the 25% award as a starting point. That court has identified several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. The Court is cognizant of its obligations to review class fee awards with rigor:

1

2

3

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

4   *Vizcaino*, 290 F.3d at 1052 (quotation omitted).

5       The first and "most critical factor [in determining an attorneys' fee] is the degree of

6   success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  As previously discussed,

7   Class Counsel has obtained a significant result for the class, including a $10 million settlement

8   fund and meaningful changes to Defendant's labeling and advertising practices.  The monetary

9   benefit represents more than 10% of the potential aggregate class-wide damages, and class

10  members with proof of purchase will recover more than their individual estimated actual damages.

11  *See* Dkt. No. 146 at 12–14, 19–20.  Class members have submitted more than 623,000 valid

12  claims for a total anticipated distribution of $3.5 million.  *See* Dkt. No. 165 at 2.  Moreover, no

13  class member objected to the adequacy of the settlement amount.

14      This recovery must also be considered in light of the significant risks that Plaintiffs would

15  face in further litigating this case.  The risk that further litigation might result in Plaintiffs not

16  recovering at all is a significant factor in the award of fees.  *See Vizcaino*, 290 F.3d at 1048.  As

17  Plaintiffs have noted, they would face considerable difficulty obtaining a similar recovery through

18  litigation given the complexity of this case, the novel theory presented, and unfavorable recent

19  decisions.  *See, e.g.*, Dkt. No. 146 at 20 & n.6; Dkt. No. 156 ¶ 8 (citing two additional recent

20  decisions rejecting consumer class actions challenging recyclability representations).  As Class

21  Counsel acknowledged, it would also need to file a new motion for class certification as to the

22  nationwide class.  *See* Dkt. No. 155 at 19–20.

23      Class Counsel also litigated this case skillfully and professionally.  The risk that counsel

24  took in litigating this case on a contingency fee basis for more than four years weighs in favor of a

25  substantial attorneys' fee award.  *See Vizcaino*, 290 F.3d at 1050.  Further, Class Counsel engaged

26  in substantial motion practice, including successfully moving for class certification, and extensive

27  discovery practice.  *See* Dkt. No. 146 at 9–12.  Courts have found that the importance of assuring

28  adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies

United States District Court
Northern District of California

United States District Court
Northern District of California

1    providing those attorneys who accept matters on a contingent-fee basis a larger fee than if they

2    were billing by the hour or as a flat fee. *See  Vizcaino*, 290 F.3d at 1050.  And here, counsel spent

3    significant time on this case without any certainty that they would be compensated. *See* Dkt. No.

4    146 at 21–22.

5         Finally, courts have awarded similar fees in comparable cases, including in this Court.

6    *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600–602 (N.D. Cal. 2020)

7    (awarding 30% of the common fund in product labeling case).

8         Given all the above factors, especially the very large number of claims submitted, the

9    Court finds that an increase above the 25% benchmark is warranted here, and that 30% of the

10    common fund is appropriate under the circumstances.

### 2.  Lodestar Cross-check

12         Class Counsel urges that the requested fees are below their lodestar, which also weighs in

13    favor of finding them reasonable. *See* Dkt. No. 163 at 10–11.  As a final check on the

14    reasonableness of fees, the Court may compare the requested fees with counsel's bills under the

15    lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 ("Calculation of the lodestar, which

16    measures the lawyers' investment of time in the litigation, provides a check on the reasonableness

17    of the percentage award.").  The Court must "exclude from this initial fee calculation hours that

18    were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434.

19         In addition to summary charts of time spent for various categories of work, *see* Dkt. Nos.

20    146-1, 146-4, Class Counsel has provided the Court with detailed, line-by-line billing records.

21    Class Counsel states that as of December 31, 2022, it has incurred $3,035,250 in fees and spent

22    more than 6,000 hours prosecuting this case.  Class Counsel billed travel time at fifty percent and

23    did not include fees from timekeepers that billed fewer than seven hours to the case.

24         After carefully reviewing the records, the Court finds that the hours spent on this case were

25    reasonable given the posture of the case, the amount of substantive litigation, and the novelty of

26    the legal issues. *See Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2019 WL 4164731, at *4

27    (N.D. Cal. July 22, 2019) (finding reasonable Class Counsel's expenditure of 5,585 hours in a

28    three-year-old class action resulting in $16 million common fund settlement); *Hendricks v.*

1    *Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016)

2    (finding reasonable Class Counsel's expenditure of 3,366 hours in a three-year-old class action

3    resulting in $12 million common fund settlement).

4         Regarding hourly rates, the rates requested are between $300 to $575 for associates and

5    $720 to $925 for partners. *See* Dkt. Nos. 146-1 ¶ 37, 146-4 ¶ 21.  The Court finds that the billing

6    rates used to calculate the lodestar are in line with prevailing rates in this district for personnel of

7    comparable experience, skill, and reputation.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-

8    05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for

9    partners or senior counsel, $400 to $650 for associates).

10        Class Counsel is not seeking to recover the full lodestar amount.  This negative multiplier

11   suggests that the fee request is reasonable.  *See, e.g.*, *Nexus 6P*, 2019 WL 6622842, at *13 (30%

12   award was reasonable when the requested amount represented a negative lodestar

13   multiplier); *Rosado v. Ebay Inc.*, No. 5:12-CV04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal.

14   June 21, 2016) (conducting a lodestar cross-check and finding that a negative multiplier "strongly

15   suggests the reasonableness of the negotiated fee"); *Isquierdo v. W.G. Hall, LLC*, No. 15-CV-

16   00335-BLF, 2017 WL 4390250, at *8 (N.D. Cal. Oct. 3, 2017) (fact that the requested amount

17   constituted a reduction in the lodestar amount weighed in favor of its reasonableness).

18        An attorney who has created a common fund for the benefit of the class is entitled to

19   reimbursement of reasonable litigation costs from that fund.  *See Harris*, 24 F.3d 16 at 19

20   (quotations omitted).  Class Counsel is thus entitled to recover "those out-of-pocket expenses that

21   would normally be charged to a fee paying client."  *Id.*  Class Counsel represent they have

22   incurred $568,180 in costs. *See* Dkt. Nos. 146-1 ¶ 42–44, 146-4 ¶¶ 23–25.  The Court finds that

23   counsel's requested expenses are reasonable and grants the request.

24                               *        *        *

25         The Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to

26   Class Counsel $3,000,000 in attorneys' fees and $568,180 in costs, for a total of $3,568,180.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### ii.     Incentive Awards

Class Counsel requests an incentive award of $5,000 for Plaintiff Smith and $1,000 for Plaintiff Downing.  *See* Dkt. No. 146 at 25.  District courts have discretion to award incentive fees to named class representatives.  *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021).  The Court must "'evaluate the propriety of requested incentive payments' by considering, among other factors, 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation,' and any financial or reputational risks the plaintiff faced."  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (quoting *Roes*, 944 F.3d at 1057).  The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members."  *Id.*

Class Counsel represents that the class representatives were instrumental in achieving this settlement.  *See* Dkt. No. 146 at 25.  Plaintiff Smith has been actively involved in the litigation since the case was filed in 2018.  *See* Dkt. No. 146-2 ("Smith Decl.") ¶ 5.  She consulted extensively with Class Counsel, attended two mediations and a deposition, gathered documents for discovery requests, and reviewed litigation documents.  *See* Dkt. No. 146 at 26; Dkt. No. 146-1 ¶ 13; Smith Decl. ¶ 7.  As an example, Class Counsel stated at the final fairness hearing that it was thanks to Plaintiff Smith that they discovered email addresses had been inadvertently omitted from the initial notice list.  Plaintiff Smith also received unwanted press attention for her participation in this case.  *See* Smith Decl. ¶ 9.  Plaintiff Downing was also active in this litigation, but his complaint was filed in 2020 and the *Downing* case was stayed pending this settlement at an earlier stage.  *See* Dkt. No. 146 at 25; Dkt. No. 146-3 ("Downing Decl.") ¶ 6.

1

2

3

Considering all the circumstances, the Court finds that the $5,000 award for Plaintiff Smith and $1,000 award for Plaintiff Downing are reasonable to compensate them for their efforts.  The Court therefore **GRANTS** the request for an incentive award for a total amount of $6,000.

4

**III.    CONCLUSION**

5

6

7

8

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS** the motion for attorneys' fees and service award.  Dkt. Nos. 146, 155.  The Court awards attorneys' fees in the amount of $3,000,000; costs in the amount of $568,180; and service award to Plaintiffs Smith and Downing in the amount of $6,000.

9

10

11

12

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement.  The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order.  The judgment need not, and should not, repeat the analysis in this order.

13

**IT IS SO ORDERED.**

14

Dated:    2/27/2023

15

16

HAYWOOD S. GILLIAM, JR.
United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California